2011-02024
FILED
January 13, 2011
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

0003209332

Holly S. Burgess (State Bar No. 104575)
LAW OFFICES OF HOLLY S. BURGESS
680 Auburn-Folsom Road, Suite 109
Auburn, CA  95603
(530) 889-8900-Telephone
(530) 392-4641-Direct Dial
(530) 889-8988-Facsimile
hollyburgess@lohsb.com

Attorneys for Plaintiff/Debtor
JAMES L. MACKLIN

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>     JAMES L. MACKLIN,<br><br>                    Debtor,<br>_____<br>JAMES L. MACKLIN,<br><br>                    Plaintiff,<br><br>-vs.-<br><br>DEUTSCHE BANK NATIONAL TRUST CO., AS INDENTURE TRUSTEE FOR THE ACCREDITED MORTGAGE LOAN TRUST 2006-2 ASSET-BACKD NOTES; and all persons claiming by, through, or under such person, all persons unknown, claiming any legal or equitable right, title, estate, lien, or interest in the property described in the complaint adverse to Debtor's title thereto; and CORRESPONDENT DOES 1-10, Inclusive,<br><br>                    Defendant.<br>_____ | Case No.  2010-44610<br><br><br><br>**ADVERSARY PROCEEDING**<br><br>**DCN No. HSBA-01**<br><br>**ADV. NO. _____**<br><br><br>**COMPLAINT TO DETERMINE THE NATURE, EXTENT AND VALIDITY OF LIEN AND TO DISALLOW SECURED CLAIM, TILA VIOLATION, FRAUD, LIBEL, QUIET TILE, AND INJUNCTIVE RELIEF** |

COMES NOW Debtor and Plaintiff, JAMES L. MACKLN, herein, ("Debtor"), and respectfully alleges the following:

**ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

1. This adversary proceeding is brought pursuant to 11 U.S.C. §506 and Federal Rule of Bankruptcy Procedure 7001.

Case 11-02024    Filed 01/13/11    Doc 1

2. This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§151, 157 and 1334(b). Venue is proper pursuant to 28 U.S.C. §1409.

3. This adversary proceeding is a core proceeding as defined at 28 U.S.C. §157(b)(2)(b) and (b)(2)(K) in that it is an action to determine the nature, extent and validity of a lien on property evidenced by a deed of trust, and the allowance or disallowance of a secured claim. To the extent this proceeding is determined to be a non-core proceeding, Debtor consents to the entry of final orders or judgment by the bankruptcy court.

4. Debtor is an individual, and debtor of the within captioned bankruptcy case, having converted to a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on October 5, 2010 ("the Bankruptcy Case").

5. Debtor is and at all times mentioned herein is the owner and purchaser of real property located at: 10040 Wise Rd., Auburn, California (hereinafter referred to as "SUBJECT PROPERTY").

6. Debtor is informed and believes that defendant, Deutsche Bank National Trust Co., as Indenture Trustee for the Accredited Mortgage Loan Trust 2006-2 Asset-Backed Notes (Hereinafter, "Deutsche") a California Corporation licensed through the State of California Dept. of Corporations.

7. Debtor is informed and believes that Defendant has and is acting in concert with other unknown and un-named "Correspondents" to the subject transaction(s) identified herein. Debtor is ignorant of the true names and capacities of all Defendants sued herein as CORRESPONDENT, and therefore sue this Defendant by such fictitious names. Debtor will amend this complaint to allege their true names and capacities when ascertained. Debtor is informed and believe and thereon allege that each of these fictitiously named defendants claim some right, title, estate, lien, or interest in the hereinafter-described property adverse to Debtors' title and their claims, and each of them, constitute a cloud on Debtors' title to that property.

8. Debtor is informed and believes that defendant DEUTSCHE BANK NATIONAL TRUST COMPANY, as INDENTUE TRUSTEE of the ACCREDITED MORTGAGE LOAN

- 2 -
**COMPLAINT TO DETERMINE THE NATURE, EXTENT AND VALIDITY OF LIEN AND TO DISALLOW SECURED CLAIM, TILA VIOLATION, FRAUD, LIBEL, QUIET TILE, AND INJUNCTIVE RELIEF**

TRUST 2006-2 ASSET-BACKED NOTES UNDER THE MASTER SALES AND SERVICING AGREEMENT DATED JUNE 1, 2006, ITS ASSIGNS AND/OR SUCCESSORS IN INTEREST ("DEUTSCHE") is a trust corporation, doing business in the State of California, and a purported creditor of Debtor.

9.  The Defendants herein named as "all persons claiming by, through, or under such person, all persons unknown, claiming any legal or equitable right, title, estate, lien, or interest in the property described in the complaint adverse to Debtor's title thereto" (hereinafter referred to as "the unknown defendants") are unknown to Debtors. These unknown Defendants, and each of them, claim some right, title, estate, lien, or interest in the hereinafter-described property adverse to Debtors' title; and their claims, and each of them, constitute a cloud on Debtor's title to that property.

10. The Debtor is informed and believe and thereon allege that at all times mentioned herein, Defendants DOES 1 through 10 inclusive, were the agents and/or employees of "Deutsche" and in doing the things herein alleged were acting in the course and scope of such agency and/or employment and with the permission and consent of their co-defendants.

11. Debtor is ignorant of the true names and capacities of Defendants sued herein as DOES 1 -10, and therefore does sue these Defendants by such fictitious names. Debtor will amend this complaint to allege their true names and capacities when ascertained. Debtor is informed and believes and thereon alleges that each of these fictitiously named defendants claim some right, title, estate, lien, or interest in the hereinafter-described property adverse to Debtors' title and their claims, and each of them, constitute a cloud on Debtors' title to that property.

12. On or about September 27, 2010 (in the Chapter 13 case) Deutsche filed a Motion for Relief from Automatic Stay under 11 U.S.C. § 362 without Proof of Claim in the Bankruptcy Case, asserting a claim against Debtor, and further asserting that said claim is secured by a lien against real property belonging to Debtor located at 10040 Wise Rd., Auburn, California, which is Debtors' residence (hereinafter "the Property"). Attached as exhibit 2 to the Motion for Relief from Automatic Stay was a copy of a deed of trust in the amount of $ 532,000 in favor of Lender,

- 3 -

**COMPLAINT TO DETERMINE THE NATURE, EXTENT AND VALIDITY OF LIEN AND TO DISALLOW SECURED CLAIM, TILA VIOLATION, FRAUD, LIBEL, QUIET TILE, AND INJUNCTIVE RELIEF**

Accredited Home Loans (Hereinafter, "AHL") which deed of trust was recorded in or about April 28th, 2006, in the Placer County Recorder's Office.  Although there was purported assignment of the AHL Deed of Trust recorded in the Placer County Recorder's Office in November 2009, Debtor is informed and believes that such assignment was not done by AHL but fraudulently conveyed by the "nominee" of record, Mortgage Electronic Registration Systems, Inc. (Hereinafter, "MERS")

13.    MERS purportedly acted as nominee for AHL under a fraudulent assignment of AHL Deed of Trust, having no interest in the promissory note, assigned such deed of trust to Deutsche.  This Corporate Assignment of the Deed cites in its' language: "together with the Note". This represents an impossibility known to Defendant(s) in the Assignment. Deutsche represents the interest of the "AMLT 2006-2" trust, which is a REMIC Trust, governed under the laws of the State of New York. Under IRS Rule 860D(a)(4), the Note and Deed, as a "Qualified Mortgage", must have been conveyed to this trust, by lawful assignment and transfer, within 90 days of the closing date of this trust.

14.    As set forth Motion for Relief from Automatic Stay filed by Deutsche on or about , 2010, Deutsche asserts that it holds a claim against Debtor, as evidence by promissory note secured by a first deed of trust against the Property recorded on April 28th, 2006 in favor of Lender AHL in Placer County Recorder's Office.

15.    Although there is no valid assignment of the AHL Deed of Trust recorded in the Placer County Recorder's Office, Debtor is informed and believes that in 2006 AHL assigned its interest in the AHL Deed of Trust to an unknown entity, that it no longer has an interest in the AHL Deed of Trust or the promissory note secured thereby.

16.    MERS was never a party to the transaction, or entitled to payment from Debtor.

17.    Debtor is informed and believes that MERS is not a nominee under the AHL Deed of Trust and fraudulently assigned AHL Deed of Trust Deutsche and, that MERS never had any interest in the AHL Deed of Trust or the promissory note secured thereby.

/ / /

18. Deutsche's fraudulent claim under the AHL Deed of Trust is entirely unsecured and there is no security that attaches to the AHL Deed of Trust.

19. In this case, foreclosure has been filed, the entity filing the foreclosure has no pecuniary in the mortgage loan. The foreclosing entity is a third party. The entity lacks standing and the capacity to foreclose. The entity has no first hand knowledge of the loan, no authority to testify or file affidavits as to the validity of the loan documents or the existence of the loan. The entity has no legal authority to draft mortgage assignments relating to the loan. The foreclosing entity and its agents regularly commit perjury in relation to their testimony.

20. AHL, the "Lender", on the original Promissory Note was not the lender. The originators of the loan immediately and simultaneously securitized (allegedly) the note through the means of conversion of an Article III negotiable Instrument (U.C.C.) into Article IX (U.C.C.), non-negotiable paper. The beneficial interest in the note was never in the lender. In this case, MERS, acting as nominee for AHL under the assignment of AHL Deed of Trust, was never intended to be the assignee of the mortgage loan. Windsor Management Company ("WINDSOR") a Servicer, or some party, has declared default and is not in privity with the lender. The true owner (s) or beneficiary(s) of the mortgage loan has not declared a default, cannot declare a default under its' Trust Agreement, and does not have an interest in the Note that allows for any remedial actions to be undertaken by the Beneficial Interest Holder(s).

21. The obligations reflected by the note allegedly secured by assignment of AHL Deed of Trust to MERS have been satisfied in whole or in part because the investors who furnish the funding for these loans have been paid to the degree that extinguishments of the debts has occurred with the result that there exist no obligations on which to base any foreclosure on the property owned by Debtor. Defendants have and continue to cloud the title and illegally collect payments and attempt to foreclose upon the property of the Debtor when they do not have lawful rights to foreclose, and are not holders-in-due-course of the notes.

22. The mortgage loan assigned to MERS, as nominee, is, at most, an unsecured debt. The only parties entitled to collect on the unsecured debt would be the holder-in-due-course and

- 5 -

COMPLAINT TO DETERMINE THE NATURE, EXTENT AND VALIDITY OF LIEN AND TO DISALLOW SECURED CLAIM, TILA VIOLATION, FRAUD, LIBEL, QUIET TILE, AND INJUNCTIVE RELIEF

beneficial owner(s) of the original Promissory Note (the original "Lender of Record"), *if* the asset is still booked as an asset and has not been sold and de-recognized as an asset under FASB 140. Those unknown parties have not come forward in this case.

23. Certain individuals, who were the employees of the Servicers, WINDSOR and/or Select Portfolio Servicing ("SPS"), and even the employees of the law firms, executed and notarized forged documents as to the ownership of the loan. The affiants have committed counts of fraud, perjury and forgery of the mortgage loan.

24. Defendant Deutsche, represented itself as a "Trustee" coming to Court and are actually not common law Trustees, rather, they are special Corporate Trustees with limited ministerial duties. These rights, duties and obligations do not include any remedial actions as they relate to the assets of the REMIC Trust (See: ***Master Sales and Servicing Agreement, Trustees' Rights and Duties***). The Servicers, like WINDSOR and SPS, are merely administrative entities, under limited power of attorney, who collect the mortgage payments and escrow funds. The Servicer has no greater power than its' Principal, the Trustee, and lacks the authority to bring any action on behalf of the REMIC Trust. The Trust participants have executed Trust Agreements, under oath, with the Security Exchange Commission ("SEC"), and the Internal Revenue Service ("IRS"), as mortgage asset "pass-through" entities wherein they can never own or manage the mortgage loan assets in the REMIC Trust. This allows them to qualify as a Tax Free Real Estate Mortgage Investment Conduit ("REMIC") rather than an ordinary Real Estate Investment Trust ("REIT"). As long as the Trust is a qualified REMIC, no income tax will be charged to the beneficial certificateholders.

25. Importantly, Deutsche, as "Trustee" or custodian, must have the mortgages recorded in the investors name as the beneficiaries of the Trust within 90 days of the "closing date" ***(IRS Rule 860D (a)(4))***, as defined within the REMIC Trust Agreement. Every mortgage in the Trust should have been publicly recorded in Placer County where the property is located with a mortgage in the name of "Accredited Mortgage Loan Trust 2006-2 Asset Backed Notes" under the Master

- 6 -

COMPLAINT TO DETERMINE THE NATURE, EXTENT AND VALIDITY OF LIEN AND TO DISALLOW SECURED CLAIM, TILA VIOLATION, FRAUD, LIBEL, QUIET TILE, AND INJUNCTIVE RELIEF

Sales and Servicing Agreement dated June 1st, 2006. Such mortgage would have had been publicly recorded in the year 2006.

26. The promissory note was never conveyed pursuant to the Trust mandates and the mortgages were never conveyed or recorded pursuant to the proper chain of custody and Assignment within the Trust Agreement(s).

27. In this scenario, even if the foreclosing entity produces a copy of a note, or even an alleged original, the mortgage loan was not conveyed into the trust under the requirements of the prospectus for the trust or the REMIC requirements of the IRS. Mere possession of an Instrument does not confer the status of a person entitled to enforce the Instrument.

28. Consequentially, the end result is that the required Trust asset, or any part thereof (mortgage note or security interest), was not legally transferred to the Trust to allow the Trust to ever be considered a "holder" of a mortgage loan. Neither the "Trust" nor the Servicers, WINDSOR and SPS, would ever be entitled to bring a foreclosure or declaratory action. The Trust will never have standing or be a real party in interest before this Court.

29. The transfer of mortgage loans into the Trust in which Deutsche is the Trustee after the "cut off date" (in this case 2006), destroys the trust's REMIC tax exempt status, and this Trust would owe millions of dollars to the IRS and the State of California as the income would be taxed at of one hundred percent (100%), if the Court were to find in favor of the Defendant(s). Subsequent to the "cut off date" listed in the prospectus, whereby the mortgage notes and security for these notes had to be identified, and the Note and Mortgages transferred, within 90 days, and thereafter, the pool is <u>permanently closed</u> to future transfers of mortgage assets.

30. Defendants fraudulently conveyed Debtors' mortgage loan, which fraudulently recorded on or about December 21, 2009, in an attempt to transfer a Mortgage Assignment into a REMIC after that REMIC's "cut off" and "closing dates".

31. Therefore, the lack of lawful acquisition of Debtors' mortgage loan violates the prospectus presented to the investors and the IRS REMIC requirements.

32. Debtor signed a Promissory Note and Mortgage. They were unknowingly converting their property into an alleged asset of a Trust, while their credit and signatures were used to sell securities, the profits of which were to used to fund the predatory "loan",(unbeknownst to Debtor, the loan papers were processed with an inflated appraisal and stated his income to be $30,000 per month) without his consent or knowledge of the terms and conditions of the contract. Under the controlling trust documents, a percentage of the homeowner's monthly payment stream was used as a guarantee. This guarantee and payment under the guarantee has resulted in accounting documents obtained by Debtor that show all payments have been made on Debtors' alleged obligation. A portion of Debtor's monthly mortgage payment was used to insure and pay his alleged obligation without his knowledge or consent and the payment is current through at least December 2010. California Commercial Code §3602(a) and UCC 3-602(a) provides that an obligation paid is an obligation extinguished. Debtor was never informed of the nature of the scheme. He was deliberately induced into signing a Negotiable Instrument which was never intended as such, but intended as collateral for the sale of securities. Under the terms of the Master Sales and Servicing Agreement ("MSSA"), his mortgage obligation has been paid. His alleged "default" is a fiction.

33. The fact that this "loan" was actually the proceeds from the sale of securities, and not a loan as it is defined under the laws of California, was a "Material disclosure" which was deliberately and intentionally undisclosed. The failure to disclose the identity of the true lender at closing was also a "material disclosure"; the nature of which would make the contract (a unilateral agreement) void under California contract law.

34. As required by SEC, this Trust has a Master Sales and Servicing Agreement ("MSSA") which dated February 1, 2006 and must be publicly filed. The only purpose for the MSSA is for the administration and distribution of funds to the investors and the obligation of the so called Trustee in administering the Trust. The investors who put up money for the Trust and who received the securities certificates or Bonds, are purported to not be parties to the MSSA. However, under the Step Transaction Doctrine, as adopted by the Courts, these transactions are

- 8 -

**COMPLAINT TO DETERMINE THE NATURE, EXTENT AND VALIDITY OF LIEN AND TO DISALLOW SECURED CLAIM, TILA VIOLATION, FRAUD, LIBEL, QUIET TILE, AND INJUNCTIVE RELIEF**

interdependent of one another and interrelated and, therefore, fall under the scope of a "single transaction", as defined by the Doctrine. The Borrowers and the Investors are the true Principals to the transaction, with the only financial and pecuniary interest in the transaction(s).

35. The MSSA merely sets forth what happens after the mortgages are bundled together. However, the MSSA also sets forth a **Cut Off Date**. The Cut off date is the date on which all mortgage loans in the Trust must be identified and set out in the SEC required list of mortgage loans.

36. Like the cut off date, this Trust had a **Closing Date**. The Closing Date, in this case: June 1st, 2006, is the date that the individually identified mortgages were to be transferred through the Custodian for the benefit of the investors. The Trust Custodian must certify that for each mortgage loan, the Trust Custodian has possession of the original Promissory Note, all original endorsements and assignments transferring the Note and proof that the ownership of the Note has been lawfully transferred for the benefit of the investors. Further proof of the ownership of a mortgage loan is required by a public recording of the Mortgage or Assignment of the mortgage itself. This MUST have occurred by the closing date.

37. In this case, Debtors' mortgage was never part of the Trust scheme as Deutsche represented to the Court because alleged assignment of the mortgage loan into the trust did not occur until on or about November 25th, 2009; wherein the Trust closing date was June 1, 2006.

38. Deutsche, as the Indenture Trustee, claims to be acting on behalf of the Trust and claims that it has acquired the loan from MERS, who was not the party in AHL deed of trust. The multiple transfers of title of the mortgage loan between the originator, AHL, The REIT Trust, The Depositor and the REMIC Trust is simply ignored as it can never be proved or shown to the Court. Chain of Mortgage assignment is broken as CORRESPONDENT(s) and MERS were never the mortgagee of record under a Mortgage Assignment and has absolutely no legal tie to the investors in the Trust.

39. The assignment of Debtors' mortgage was signed and notarized many years after the actual date of the "loan" and the date listed with the SEC and IRS as the "Closing" of the REMIC. In this case, if found to be true, this Trust has been operating illegally as a tax exempt REMIC.

40. Here, the Note and Mortgage were severed or bifurcated when the AHL deed of trust was fraudulently assigned to MERS as nominee for Accredited Home Lenders, Inc. Accredited Home Lenders, Inc. never loaned any money to the Debtors, nor did they extend their own credit. MERS was never a beneficiary under the Note. MERS purportedly held the Mortgage as "nominee" for AHL, an assignee of a fraudulently conveyed deed of trust. Since then, the only party who could authorize the mortgage assignment for a bankrupt mortgage assignee (AHL filed for Bankruptcy protection in April, 2009, U.S.B.C. District of Delaware, Case No: 09-11516), would be the Bankruptcy Trustee. In this case, MERS, Inc. has made an assignment of an asset during the pendency of a Bankruptcy proceeding on behalf of a bankrupt entity, a violation of the bankruptcy code.

41. An assignment from MERS was a legal nullity. MERS never had an interest in this fraudulently conveyed mortgage and Note.

42. The MERS attempted assignment of the mortgage was done by an agreement between MERS and the Defendants. These Defendants used false information regarding the individuals executing such mortgages and assignments, holding such individuals out to be officers of MERS. In a substitution of trustee dated recorder on November 25, 2009, but executed by Wayne Hessler" on August 21, 2009 as a "duly appointed officer of Deutsche", Deutsche did not hold a beneficial interest as shown by the Corporate Assignment of Deed of Trust recorded on November 30, 2009, wherein MERS tries to assign rights to Deutsche.

43. Defendant Deutsche filed and caused to be filed MERS mortgage and assignments of mortgage in the public record and provided these false documents to prove chain of title that does not exist to the Court as part of its Motion for Relief from Automatic Stay.

/ / /

/ / /

## FIRST CLAIM FOR RELIEF
### [Declaratory Relief to Determine an Interest in Property]
### [F.R.B.P 7001(2) and 7001(9)]

44. Debtor re-alleges and incorporates the allegations contained in paragraphs 1 through 25, inclusive, as though set forth at length herein.

45. Debtor alleges that they hold an interest in the Property free and clear of any interest of defendants, in that the lien evidenced by the AHL Deed of Trust has no value since it is wholly unsecured, and that accordingly, the AHL Deed of Trust is null and void.

46. Debtor is informed and believes that a controversy exists as Defendants allege that the AHL Deed of Trust cannot be determined to be null and void because it is allegedly secured by the Property.

47. Debtor is informed and believes and thereon alleges that Defendants dispute the contention alleged in paragraph 27.

48. An actual controversy exists between Debtor and Defendants with regard to the validity, nature and extent of their interests in the Property.

49. It is necessary that this Court declare the actual rights and obligations of the parties and make a determination as to the validity, nature and extent of Defendants' interest in the Property.

**WHEREFORE**, Debtor prays for judgment against Defendants as follows:

1. That the Court determine the nature and extent and validity of Defendants' interest in the real property located at 10040 Wise Rd., Auburn, California;

2. That the Court determine that the amount of the lien secured by the AHL Deed of Trust is zero;

3. That the Court determine that the claim allegedly owed to Deutsche by Debtors is wholly unsecured;

4. That the Court determine that the AHL Deed of Trust is null and void;

5. For attorney fees and costs of suit incurred herein; and,

6. For such other and further relief as the court deems just and proper.

**SECOND CLAIM FOR RELIEF**
**[Declaratory Relief to Determine Status of Deutsche Claim]**
**[11 U.S.C. § 506 and F.R.B.P 7001]**

50. Debtor re-alleges and incorporate the allegations contained in paragraphs 1 through 31, inclusive, as though set forth at length herein.

51. Debtor alleges that the lien evidenced by the AHL Deed of Trust has no value since it is wholly unsecured, that Deutsche's claim is not allowable as a secured claim, and that accordingly, the AHL Deed of Trust is null and void.

52. Debtor is informed and believes that Deutsche alleges the AHL Deed of Trust cannot be determined to be null and void because it is secured by the Property.

53. Debtor is informed and believes and thereon alleges that Deutsche disputes the contention alleged in paragraph 33.

54. An actual controversy exists between Debtor and Deutsche with regard to the status of Deutsche's claim as secured or unsecured.

55. It is necessary that this Court declare the actual rights and obligations of the parties and make a determination as to whether Deutsche's claim against Debtor shall be allowable as secured or unsecured.

**WHEREFORE**, Debtor prays for judgment against Defendants as follows:

1. That the Court determine the nature and extent and validity of Defendants' interest in the real property located at 10040 Wise Rd., Auburn, California;

2. That the Court determine that the amount of the lien secured by the AHL Deed of Trust is zero;

3. That the Court determine that the claim allegedly owed to Deutsche by Debtors is wholly unsecured;

4. That the Court determine that the AHL Deed of Trust is null and void;

5. For costs of suit incurred herein; and,

6. For such other and further relief as the court deems just and proper.

### THIRD CLAIM FOR RELIEF
### [As to Defendant Deutsche]
### [15 U.S.C. § 1641(g)]

56. Debtors re-allege and incorporate the allegations contained in paragraphs 1 through 63, inclusive, as though set forth at length herein.

57. On or about November 25th, 2009, MERS purportedly assigned the AHL Deed of Trust to Defendant Deutsche and recorded such assignment in the Placer County Recorder's Office. Deutsche has not shown any supporting documents as a foundation for its position that it was properly assigned the note and the deed.

58. In May 2009, "The Helping Families Save Their Homes Act of 2009" was enacted into law that calls for notice to the consumer when a "mortgage loan" is transferred or assigned. The provision was effective immediately and violations are subject to TILA liability.

59. 15 U.S.C. § 1641 was amended by adding at the end the following:

> *(g) NOTICE OF NEW CREDITOR.-*
> *(1) IN GENERAL.- In addition to other disclosures required by this title, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including-*
> *(A) the identity, address, telephone number of the new creditor;*
> *(B) the date of transfer;*
> *(C) how to reach an agent or party having authority to act on behalf of the new creditor;*
> *(D) the location of the place where transfer of ownership of the debt is recorded; and*
> *(E) any other relevant information regarding the new creditor.*

60. From the record, it appears that Deutsche became the alleged new owner or assignee on November 25th, 2009.

61. To date, Debtors have not received any notice as required by 15 U.S.C. § 1641(g).

**WHEREFORE**, Debtor prays for judgment against Defendant Deutsche Bank as follows:

1. Statutory damage in the amount of $4,000.00;

2. For attorney fee and costs of suit incurred herein; and

3. For such other and further relief as the court deems just and proper.

COMPLAINT TO DETERMINE THE NATURE, EXTENT AND VALIDITY OF LIEN AND TO DISALLOW SECURED CLAIM, TILA VIOLATION, FRAUD, LIBEL, QUIET TILE, AND INJUNCTIVE RELIEF

## FOURTH CLAIM FOR RELIEF
### [As to All Defendants]
### [Fraud in Conveyance]

62. Debtor re-alleges and incorporates the allegations contained in paragraphs 1 through 71, inclusive, as though set forth at length herein.

63. On or about November 25th, 2009, Defendants defrauded Debtor by purporting to have authority to assign AHL Deed of Trust that secured the promissory note in favor of lender, AHL, to Deutsche. In the specific language of the Deed of Trust between Debtor and AHL, the only party authorized to make an assignment is the **LENDER**, **Accredited Home Lenders Inc.,** not a Nominee.

64. These Defendants were strangers to this transaction, having no interest in the Note or Deed of Trust, nor having any authority from either AHL or Debtor to assign the AHL Deed of Trust, together with the Note to anyone.

65. MERS, a Nominee for AHL, purportedly received assignment of the AHL Deed of Trust, together with note. MERS was and is a foreign corporation, having no authority to conduct business in the State of California, fraudulently acted as nominee for AHL as beneficiary under the AHL Deed of Trust without Debtors' consent.

66. Upon information and belief, Debtor therefore alleges that MERS, Accredited Home Lenders, Inc. nor Deutsche paid <u>any</u> consideration for the promissory note, despite the false statement in the Trustee's Deed upon sale. It should be noted that the transfer fee was <u>$0.00</u> in the Trustee's Deed, indicating no money changed hands. Upon information and belief, Debtor alleges that MERS and Deutsche had full knowledge of such fraudulent conveyance because they recorded and accepted the assignment and alleged endorsement of promissory note from MERS. This occurred after the REMIC Trust cut-off date as prescribed by IRS Rule 860D(a)(4).

67. Even if MERS and Deutsche did not have such knowledge, their actions were reckless because simple verification of document on its face would reveal that neither MERS nor Deutsche had any connection or party to the subject transaction.

- 14 -

COMPLAINT TO DETERMINE THE NATURE, EXTENT AND VALIDITY OF LIEN AND TO DISALLOW SECURED CLAIM, TILA VIOLATION, FRAUD, LIBEL, QUIET TILE, AND INJUNCTIVE RELIEF

68. All Defendants mentioned herein participated in the fraud by processing a falsified assignment of Deed of Trust. Deutsche falsely represented to Debtor that they received valid assignment of the AHL Deed of Trust and enforceable endorsement of promissory note to procure payments from Debtor that they were not entitled to receive.

69. The representations made by said Defendants were in fact false. The true facts were that MERS could not act as a nominee for Accredited Home Lenders, Inc. in receiving the assignment of the Deed of Trust. In fact, MERS had no interest in the promissory note and could not assign or enforce the promissory note executed in favor of AHL.

70. On or about December 7, 2009, MERS falsely represented that they had a beneficial interest in the Note and fraudulently executed an Assignment of Deed of Trust, purportedly assigned _together with the note_ and all right accrued under Deed of Trust, to Defendant Deutsche.

71. When Defendant MERS made these representations, they knew them to be false and made these representations with the intention to deceive and defraud Debtor to induce them to act in reliance on these representations in the manner herein alleged with the expectation that Debtor would so act.

72. Debtor, at the time these representations were made by Defendants and at the time Debtor took the actions alleged herein, was ignorant of the falsity of the Defendants' representations and believed them to be true. In reliance on these representations, Debtor was induced to make payments to these Defendants when they were not entitled to such money.

73. The aforementioned conducts of the Defendants were intentional misrepresentation, deceit, or concealment of material facts known to the Defendants with the intention on the part of the Defendants of thereby depriving the Debtor of property or legal rights or otherwise causing injury, and was despicable conduct that subjected the Debtor to a cruel and unjust hardship in conscious disregard of the Debtors' rights, so as to justify an award of exemplary and punitive damages.

### FIFTH CLAIM FOR RELIEF
[As to All Defendants and All Persons Claiming by,
Through, or Under Such Person, All Persons Unknown, Claiming Any Legal

**Or Equitable Right, Title, Estate, Lien, or Interest in the Property
Described in the Complaint Adverse to Debtors' Title Thereto and DOES 1-10]
[LIBEL]**

74. Debtor re-alleges and incorporates the allegations contained in paragraphs 1 through 86, inclusive, as though set forth at length herein.

75. The conduct of Defendants constitutes libel that tends to defame, disparage, and injure Debtor in his business and reputation and has also caused pain and suffering.

76. Such libel has occurred on a continuing basis from approximately April, 2006 through the present.

77. As a result of Defendants' acts and omissions, Debtor has been injured in an amount yet to be ascertained.

78. The conduct of these Defendants as alleged herein was willful, fraudulent, malicious, and oppressive. As a result, Debtor requests an award of punitive damages.

**SIXTH CLAIM FOR RELIEF
[As to Deutsche Bank and All Persons Claiming by,
Through, or Under Such Person, All Persons Unknown, Claiming Any Legal
Or Equitable Right, Title, Estate, Lien, or Interest in the Property
Described in the Complaint Adverse to Debtors' Title Thereto and DOES 1-10]
[QUIET TITLE]**

79. Debtors re-allege and incorporate the allegations contained in paragraphs 1 through 91, inclusive, as though set forth at length herein.

80. Debtors are the owner of the 10040 Wise Rd., Auburn, California, real property now held by the Debtors' estate.

81. The basis of Debtors' title is a deed granting the above-described property in fee simple to Debtor.

82. Debtor is informed and believes and on such information and belief alleges that Defendants Deutsche and DOES 1-10 and all persons claiming, by, through, or under such person, all persons unknown, claiming any legal or equitable right, title, estate, lien, or interest in the property described in the Complaint adverse to Debtors' title thereto, claim an interest adverse to Debtor in the above-described property as adverse interest the holder of a deed of trust against the

subject property. The deed of trust was recorded on April 28, 2006 in the Official Records of the County of Placer. Some of the Defendants including Deutsche, MERS and unknown defendants, specifically those additionally designated as DOES 1-10, inclusive claim interests in the property adverse to Debtor as assignees and successors of Defendants.

83. Debtor is seeking to quiet title as of a date to be determined.

## PRAYERS FOR RELIEF
## THIRD TO SIXTH CLAIMS

WHEREFORE, Debtor prays for judgment on the Third through Sixth claims as follows:

1. General damages in the sum of $1,000,000.00;

2. Special damages in the sum of $750,000.00;

3. For a declaration and order quieting title in the Property in favor of Debtor;

4. For punitive damages in an amount appropriate to punish the Defendants and deter others from engaging in similar misconduct;

7. For attorney fees and costs of suit incurred herein; and,

8. For such other and further relief as the court deems just and proper.

DATED:  January 13, 2011                    Respectfully Submitted,

                                               LAW OFFICES OF HOLLY S. BURGESS

                                               By:   /s/ Holly S. Burgess                    .
                                                    Holly S. Burgess
                                                    Attorney for Plaintiff/Debtor,
                                                    James L. Macklin

**VERIFICATION**

I, JAMES L. MACKLIN, verify that the foregoing Adversary Complaint has been reviewed by me; and that the allegations therein are true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 12th day of January, 2011 in Auburn, Placer County, California.

/s/ JAMES L. MACKLIN              .
JAMES L. MACKLIN