FILED

February 24, 2011

CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

0003305154

**62**

Holly S. Burgess (State Bar No. 104575)
LAW OFFICES OF HOLLY S. BURGESS
680 Auburn-Folsom Road, Suite 109
Auburn, CA 95603
(530) 889-8900-Telephone
(530) 392-4641-Direct Dial
(530) 889-8988-Facsimile
hollyburgess@lohsb.com

Attorneys for Plaintiff/Debtor
JAMES L. MACKLIN

# UNITED STATES BANKRUPTCY COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | **CASE NO. 2010-44610** |
| JAMES L. MACKLIN, | **CHAPTER 7** |
| Debtor, | |
| JAMES L. MACKLIN, | **ADV. NO. 11-02024-E** |
| Plaintiff, | **DCN: HSB-003** |
| -vs.- | **EXHIBITS 1 -10 IN SUPPORT OF DECLARATION OF JAMES L. MACKIN IN SUPPORT OF PLAINTIFF/DEBTOR'S MOTION FOR PRELIMINARY INJUNCTION** |
| DEUTSCHE BANK NATIONAL TRUST CO., AS INDENTURE TRUSTEE FOR THE ACCREDITED MORTGAGE LOAN TRUST 2006-2 ASSET-BACKED NOTES; and all persons claiming by, through, or under such person, all persons unknown, claiming any legal or equitable right, title, estate, lien, or interest in the property described in the complaint adverse to Debtor's title thereto; and CORRESPONDENT DOES 1-10, Inclusive, | |
| Defendants. | |

///

///

///

-1-

**EXHIBITS 1 - 10 - DECLARATION OF JAMES L. MACKIN IN SUPPORT OF PLAINTIFF/DEBTOR'S MOTION FOR PRELIMINARY INJUNCTION**

1

### EXHIBIT INDEX:

2

Exhibit 1:          Interest Only Note

3

Exhibit 2:          Deed of Trust

4

Exhibit 3:          Chain of Title documents

5

Exhibit 4:          Loan Application

6

7

Exhibit 5:          Uniform Underwriting and Transaction Summary

8

Exhibit 6:          Accredited File Summary

9

Exhibit 7:          Letter dated September 30, 2010 from counsel for Deutsche Bank

10

Exhibit 8:          2005 Tax Return

11

Exhibit 9:          Financial Title Company wiring instructions

12

Exhibit 10:         Allonge to Note

13

14

Attached hereto and incorporated herein by this reference are **Exhibits 1 through 10** of

15

Plaintiff's **DECLARATION OF JAMES L. MACKLIN IN SUPPORT OF MOTION FOR**

16

**PRELIMINARY INJUNCTION.**

17

Dated:  February 24, 2011          LAW OFFICES OF HOLLY S. BURGESS

18

19

By:  _____ **/s/ Holly S. Burgess** _____.
                              Holly S. Burgess

20

Attorney for Plaintiff/Debtor JAMES L. MACKLIN

21

22

23

24

25

26

27

28

*In re Debtor:  James L Macklin-  Chapter 7*

**USBC Eastern District of California Case No:  10-44610**
**Adversary No. 11-02024-E**

**DECLARATION OF JAMES L. MACKLIN IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

Exhibit 1 - 000001
2/24/11

# EXHIBIT "1"

# Interest Only NOTE

*This is certified to be a true and correct copy of the original.*

Financial Title Company

April 14, 2006
[Date]

AUBURN
[City]

CA
[State]

10040 WISE ROAD
AUBURN, CA 95603
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 532,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Accredited Home Lenders, Inc.**
**A California Corporation**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **6.125 %**.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will make a payment every month. This payment will be for interest only for the first 60 months (unless I make a partial Prepayment, as described in Section 4 of this Note), and then will consist of principal and interest.

I will make my monthly payment on the 1st day of each month beginning on **June 01, 2006**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest it will be applied to interest before Principal. If, on **May 01, 2036**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **P.O. Box 502480 San Diego, CA 92150-2480** or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 2,715.42 for the first 60 months of this Note, and thereafter will be in the amount of U.S. $ 3,468.45. The Note Holder will notify me prior to the date of change in monthly payment.

## 4. BORROWER'S RIGHT TO PREPAY - Prepayment Charge Rider attached hereto.

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in

0603307230

MULTISTATE InterestFirst FIXED RATE NOTE-Single Family-Fannie Mae UNIFORM INSTRUMENT

-836N (0210)
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3

Form 3271 1/01

Initials

Exhibit 1 - 000002
2/24/11

writing to those changes; however, the principal and the interest required under this Note will be paid prior to the Maturity Date.

If I make a partial Prepayment during the first 60 months of this Note, a portion of any subsequent monthly payment that I make may be applied to reduce the Principal amount of the Note.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 10      calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be      6.000% of my overdue payment of interest and/or principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

0603307230

Form 3270 1/01

Exhibit 1 - 000003 of 3
2/24/11

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE.

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
JAMES LEN MACKLIN           -Borrower                                    -Borrower


_____ (Seal)          _____ (Seal)
                            -Borrower                                    -Borrower


_____ (Seal)          _____ (Seal)
                            -Borrower                                    -Borrower


_____ (Seal)          _____ (Seal)
                            -Borrower                                    -Borrower

*[Sign Original Only]*

Exhibit 1 - 000004
2/24/11
Page 3 of 3

0603307230

Form 3271 1/01

836N 02101

# PREPAYMENT CHARGE RIDER TO NOTE

THIS PREPAYMENT CHARGE RIDER TO NOTE is made this 14th day of April, 2006, and is incorporated into and shall be deemed to amend and supplement the Note or Adjustable Rate Note, as applicable (the "Note"), of the same date given by the undersigned Borrower(s) to Accredited Home Lenders, Inc., A California Corporation.

## NOTICE TO THE BORROWER

**DO NOT SIGN THIS PREPAYMENT CHARGE RIDER TO NOTE BEFORE YOU READ IT. THIS PREPAYMENT CHARGE RIDER TO NOTE PROVIDES FOR THE PAYMENT OF A PENALTY IF YOU WISH TO REPAY THE NOTE PRIOR TO THE DATE PROVIDED FOR REPAYMENT IN THE NOTE.**

**The provisions of this Prepayment Charge Rider to Note are authorized by applicable state law or the federal Alternative Mortgage Transaction Parity Act of 1982, 12 U.S.C. §§ 3801 et seq.**

## PREPAYMENT CHARGE

I/we may make a full prepayment or partial prepayments. However, if the aggregate amount of the prepayment(s) made during any twelve (12) month period within Sixty(60) months of the date of the Note exceeds twenty percent (20%) of the original principal amount of the Note, then as consideration for the acceptance of such prepayment(s), I/we agree to pay the holder of the Note a sum equal to six (6) months' interest on the amount by which such prepayment(s) exceed twenty percent (20%) of the original principal amount of the Note. Any prepayments made after said initial Sixty (60) month period shall not be subject to any prepayment charge.

I/we confirm that, prior to the closing of this mortgage loan, I/we were offered the option of obtaining a mortgage loan that did not require payment of a prepayment charge and that I/we are agreeing to this prepayment charge in exchange for a monetary benefit, including but not limited to a rate or fee reduction.

| | |
|---|---|
| _Borrower_     4·19·06 | _Borrower_     Date |
| JAMES LEN MACKLIN     Date | |
| _Borrower_     Date | _Borrower_     Date |
| _Borrower_     Date | _Borrower_     Date |
| _Borrower_     Date | _Borrower_     Date |

Standard - 5 yrs
CA 1st & 2nd - 5 yrs
KS 1st & 2nd - 5 yrs
MIN # 100176106033072308

Exhibit 1 - 000005
2/24/11    MACKLIN

Loan #  0603307230

*In re Debtor:  James L Macklin-  Chapter 7*

**USBC Eastern District of California Case No:  10-44610**

**Adversary No. 11-02024-E**

**DECLARATION OF JAMES L. MACKLIN IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

Exhibit 5 - 000047
2/24/11

**EXHIBIT "5"**

# Uniform Underwriting and Transmittal Summary

Borrower Name: JOSE LUIS MCKLIM     Date: 11-04-2011

Co-Borrower Name:     SSN:

Property Address: 10040 KIRK SKDO , ADOBBE , CA 95603

**Property Type**
- [X] 1 unit
- [ ] 2-4 units
- [ ] Condominium
- [ ] PUD [ ] Co-op
- [ ] Manufactured Housing
  - [ ] Single Wide
  - [ ] Multiwide

**Project Classification**

Freddie Mac
- [ ] II Condo
- [ ] II Condo
- [ ] I Condo

Fannie Mae
- [ ] P Limited Review New
- [ ] Q Limited Review Est.
- [ ] R Expedited New
- [ ] S Expedited Est.
- [ ] T Fannie Mae Review
- [ ] U FHA-approved
- [ ] E PUD
- [ ] F PUD
- [ ] 1 Co-op
- [ ] 2 Co-op

Project Name:

**Occupancy Status**
- [X] Primary Residence
- [ ] Investment Property
- [ ] Second Home

Additional Property Information
- Number of Units: 1
- Sales Price: $ 0.00
- Appraised Value: $ 665,000.00

Property Rights [X] Fee Simple [ ] Leasehold

**Loan Type**
- [X] Conventional
- [ ] FHA
- [ ] VA
- [ ] USDA/RHS

**Amortization Type**
- [X] Fixed-Rate—Monthly Payments
- [ ] Fixed-Rate—Biweekly Payments
- [ ] Balloon
- [ ] ARM (type)
- [ ] Other (specify)

**Loan Purpose**
- [ ] Purchase
- [ ] Cash-Out Refinance
- [ ] Limited Cash-Out Refinance (Fannie)
- [X] No Cash-Out Refinance (Freddie)
- [ ] Home Improvement
- [ ] Construction to Permanent

**Lien Position**
- [X] First Mortgage
- Amount of Subordinate Financing: $ 832,000.00
- [ ] HELOC, include balance and credit limit
- [ ] Second Mortgage

**Note Information**
- Original Loan Amount: $ 133,000.00
- Initial P&I Payment: $ 1,119.34
- Initial Note Rate: 9.800 %
- Loan Term (in months) 360

**Mortgage Originator**
- [ ] Seller
- [X] Broker
- [ ] Correspondent

**Buydown**
- [ ] Yes
- [X] No

Terms:

Broker/Correspondent Name and Company Name:

**If Second Mortgage**

Owner of First Mortgage
- [ ] Fannie Mae [ ] Freddie Mac
- [ ] Seller/Other

Original Loan Amount of First Mortgage:

Underwriter's Name:     Appraiser's Name/License #:     Appraisal Company Name:

**Stable Monthly Income**

| | Borrower | Co-Borrower | Total |
|---|---|---|---|
| Base Income | $ 29,340.03 | $ | $ 29,340.03 |
| Other Income | $ 0.00 | $ | $ 0.00 |
| Positive Cash Flow (subject property) | $ 0.00 | $ | $ 0.00 |
| Total Income | $ 29,340.03 | $ | $ 29,340.03 |

**Qualifying Ratios**
- Primary Housing Expense/Income: 13.81 %
- Total Obligations/Income: 15.77 %
- Debt-to-Housing Gap Ratio (Freddie): %

**Qualifying Rate**
- [ ] Note Rate: 9.800 %
- [ ] ___ % Above Note Rate: %
- [ ] ___ % Below Note Rate: %
- [ ] Bought-Down Rate: %
- [ ] Other: %

**Risk Assessment**
- [ ] Manual Underwriting
- [ ] AUS
  - [ ] DU [ ] LP [ ] Other
- [ ] AUS Recommendation
- DU Case ID/LP AUS Key #
- LP Doc Class (Freddie)
- Representative Credit/Indicator Score: 682

Underwriter Comments:

**Loan-to-Value Ratios**
- LTV: 20.00 %
- CLTV/TLTV: 100.00 %
- HCLTV/HTLTV: %

**Level of Property Review**
- [ ] Exterior/Interior
- [ ] Exterior Only
- [ ] No Appraisal
- Form Number:

**Escrow (T&I)**
- [X] Yes [ ] No

**Present Housing Payment:** $ 2396.14

**Proposed Monthly Payments**
Borrower's Primary Residence
- First Mortgage P&I: $ 1118.14
- Second Mortgage P&I: $ 2849.30
- Hazard Insurance: $ 0.00
- Taxes: $ 0.00
- Mortgage Insurance: $ 0.00
- HOA Fees: $ 0.00
- Lease/Ground Rent: $
- Other: $ 0.00
- Total Primary Housing Expense: $ 3967.34

**Other Obligations**
- Negative Cash Flow (subject property): $ 0.00
- All Other Monthly Payments: $ 662.30
- Total All Monthly Payments: $ 4629.14

**Borrower Funds to Close**
- Required: $
- Verified Assets: $

Source of Funds:
No. of Months Reserves:
Interested Party Contributions: %

Community Lending/Affordable Housing Initiative [ ] Yes [ ] No
Home Buyers/Homeownership Education Certificate in file [ ] Yes [ ] No

Seller Name:
Seller Address:
Seller No.:     Investor Loan No.:
Seller Loan No.:
Master Commitment No.:
Contract No.:

Contact Name:
Contact Title:
Contact Phone Number:     ext.:
Contact Signature:
Date: 00831/4569

NMFL #1008 (FHUT, FNUB) Rev 11/14/2006
Freddie Mac Form 1077 / 05/08   Fannie Mae Form 1008 08/06
4502-26N 0607   VMP Mortgage Solutions, Inc. (800)521-7291

Exhibit 5 - 000048
2/24/11

Apr 10 2006 15:23   P.16

*In re Debtor:  James L Macklin-  Chapter 7*
**USBC Eastern District of California Case No:  10-44610**
**Adversary No. 11-02024-E**

**DECLARATION OF JAMES L. MACKLIN IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

Exhibit 2 - 000006
2/24/11

**EXHIBIT "2"**

Branch :F09,User :3031                    Comment:                    Station Id :OXBZ

Recording Requested By:
Accredited Home Lenders, Inc.
A California Corporation
Return To:
Accredited Home Lenders, Inc.
Attn: Post Closing Dept.
16550 West Bernardo Dr. Bldg 1
San Diego, CA 92127-1870

Prepared By:
Accredited Home Lenders, Inc.
A California Corporation
15090 Avenue of Science
San Diego, CA 92128

PLACER, County Recorder
JIM MCCAULEY
DOC- 2006-0046431
Acct 212-FINANCIAL TITLE COMPANY
Friday, APR 28, 2006 14:30:00
MIC    $3.00/AUT    $17.00/SBS    $18.00
BRC    $18.001                    1

TLI Pd    $55.00            Nbr-0001476398
                            baj/BJ/1-17

**RECORDING REQUESTED BY**
**FINANCIAL TITLE COMPANY**
621 5542 6 5r -823

―――――――[Space Above This Line For Recording Data]―――――――

**DEED OF TRUST**

MIN 100176106033072308

**DEFINITIONS**
Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated April 14, 2006
together with all Riders to this document.
(B) "Borrower" is JAMES LEE MACKLIN, A MARRIED MAN AS HIS SOLE AND SEPARATE
PROPERTY.

Borrower's address is 19040 WISE ROAD
AUBURN, CA 95603              . Borrower is the trustor under this Security Instrument.
(C) "Lender" is Accredited Home Lenders, Inc.
         A California Corporation
Lender is a Corporation
organized and existing under the laws of the State of California

                                                        0603307230

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS        Form 3005  1/01

-6A(CA) (0207)
Page 1 of 15

VMP MORTGAGE FORMS - (800)521-7291

Exhibit 2 - 000007
2/24/11

Lender's address is **15090 Avenue of Science**
**San Diego, CA 92128**
(D) "Trustee" is **FINANCIAL TITLE COMPANY**

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated **April 14, 2006**
The Note states that Borrower owes Lender **five hundred thirty-two thousand and 00/100**
Dollars

(U.S. $ **532,000.00**          ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **May 1, 2036**

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

8603307230

-6A(CA) (0207)                    Page 2 of 15                    Form 3005   1/01

Branch :F09,User :3031                    Comment:                    Station Id :OXBZ

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

| County | of | PLACER | : |
|---|---|---|---|
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

See Legal Description Addendum Page Attached

Parcel ID Number: 040-040-046                                   which currently has the address of
10040 WISE ROAD                                                                                    [Street]
AUBURN                                                    [City], California 95603          [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

0603307230

-6A(CA) (0207)                    Page 3 of 16                    Form 3005   1/01

Branch :F09,User :3031                    Comment:                                    Station Id :OXBZ

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

0603307230

-6A(CA) (0207)                    Page 4 of 15                              Form 3005  1/01

PLACER,CA
Document: DOT 2006.46431

Page 4 of 17
Exhibit 2 - 000010
2/24/11

Printed on 8/4/2009 11:25:37 PM

Branch :F09,User :3031                    Comment:                                Station Id :OXBZ

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

-6A(CA) (0207)              Page 6 of 15        Initials:              0603307230
                                                                      Form 3005  1/01

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

-6A(CA) (0207)                    Page 6 of 13                                      0603307230

                                                                                   Form 3005   1/01

Exhibit 2 - 000012
2/24/11

Branch :F09,User :3031

Comment:

Station Id :OXBZ

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

-6A(CA) (0207)          Page 7 of 15          0503307230          Form 3005   1/01

Exhibit 2 - 000013
2/24/11

Branch :F09,User :3031                    Comment:                    Station Id :OXBZ

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

-6A(CA) (0207)                    Page 8 of 15                    0693307236
Form 3005  1/01

Exhibit 2 - 000014
2/24/11

Branch :F09,User :3031                                    Comment:                                          Station Id :OXBZ

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

0603307230

Form 3905   1/81

-6A(CA) (8107)                          Page 9 of 15

Exhibit 2 - 000015
2/24/11

Branch :F09,User :3031                                    Comment:                                    Station Id :OXBZ

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

-6A(CA) (0207)                              Page 10 of 15                              0603307230

Form 3005  1/01

Exhibit 2 - 000016
2/24/11

Branch :F09,User :3031                    Comment:                    Station Id :OXBZ

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

0603307230

Form 3005 1/01

-6A(CA) (0207)                    Page 11 of 18

Branch :F09,User :3031                    Comment:                          Station Id :OXBZ

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

 -6A(CA) (0207)                    Page 12 of 15                    0693307230

                                                                    Form 3005   1/01

Branch :F09,User :3031                    Comment:                    Station Id :OXBZ

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

0603307230

-6A(CA) (0207)                    Page 13 of 15                    Form 3005   1/01

Exhibit 2 - 000019
2/24/11

Branch :F09,User :3031                    Comment:                                Station Id :OXBZ

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                          JAMES KEN MACKLIN            -Borrower

_____          _____ (Seal)
                                                                       -Borrower

_____ (Seal)   _____ (Seal)
                          -Borrower                                    -Borrower

_____ (Seal)   _____ (Seal)
                          -Borrower                                    -Borrower

_____ (Seal)   _____ (Seal)
                          -Borrower                                    -Borrower

0603307230

-6A(CA) (9207)                Page 14 of 15                Form 3005   1/01

Exhibit 2 - 000020
2/24/11

*In re Debtor:  James L Macklin-  Chapter 7*

**USBC Eastern District of California Case No:  10-44610**
**Adversary No. 11-02024-E**

**DECLARATION OF JAMES L. MACKLIN IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

Exhibit 6 - 000049
2/24/11

# EXHIBIT "6"



**ACCREDITED**
HOME LENDERS

15253 Avenue Of Science Building 3
San Diego, CA 92128
Telephone: (800) 645-6026
Fax: (866) 467-3654

**File Summary**
Borrower: MACKLIN, JAMES LEN
Co-Borrower:
Loan Number: 0603307230
Team: 80 - Central Valley
Print Date: 4/27/2006 3:04:01 PM
Registration Date: 3/30/2006 12:25:56 PM

File Name

| Category | File Notes |
|---|---|
| **Income** | 3/30/2006 1:59 PM traviag<br>The borrowers income was calculated using an average of deposits for 12 months bank statements. A 25% expense factors was taken out as well.<br><br>The borrower has successfully owned and operated his own construction business for the last 7 years and has been working in the business for the last 10 and a half years. The borrower shows an incredible amount of job stability. |
| **Summary** | 3/30/2006 2:03 PM traviag<br>This loan is a full doc 80/20 CLTV refinance. It is a 30 year fixed term with a 3 year prepay penalty. The subject property is located in Auburn, CA.<br><br>The borrower is looking to refinance his home to get some cash out to make some home improvements. The borrower has owned his home for 1 year and has paid his mortgage perfectly. The borrower has an excellent credit score of 676 and also has a lot of depth.<br><br>The borrower has great job stability with a solid income. |
| **Conditions** | 4/26/2006 10:16 AM monicabe<br>CONDITION #4 RECEIVED PAYOFF FOR OPTION ONE. STILL NEED PAYOFF FOR 2ND. |

Exhibit 6 - 000050
2/24/11



**ACCREDITED**
HOME LENDERS

15253 Avenue Of Science Building 3
San Diego, CA 92128
Telephone: (800) 645-6026
Fax: (866) 467-3654



# Risk Analysis

Borrower: MACKLIN, JAMES LEN
Co-Borrower:
Loan Number: 0603307230
Team: 80 - Central Valley
Underwriter: AU
Print Date: 4/27/2006 3:04:00 PM
Registration Date: 3/30/2006 12:25:56 PM

| Ratios and Calcs | Present | Proposed |
|---|---|---|
| Income | $23,683.00 | $23,683.00 |
| Positive Cash Flow | 0.00 | 0.00 |
| Total Income | $23,683.00 | $23,683.00 |
| Housing Cost | $3,802.12 | $4,250.59 |
| Housing DTI | 16.05 % | 17.94 % |
| Consumer Payments | $957.00 | $957.00 |
| Negative Cash Flow | 0.00 | 0.00 |
| Total Payments | $4,759.12 | $5,207.59 |
| Total DTI | 20.10 % | 21.99 % |

| | |
|---|---|
| Credit Score - Std. | 678 |
| Credit Score - Avg. | 673 |
| Time in Residence | 60.00 |
| # Dependants | 0 |
| Saves Monthly | ($448.47) |
| Gross Disposable | $18,475.41 |
| Real Estate Payoffs | $574,367.00 |
| Consumer Payoffs | $0.00 |
| Total Payoffs | $574,367.00 |

## Net Benefits

☐ Purchase money transaction with new housing cost reasonable compared to the current housing.

☐ Purchase money transaction; new housing cost substantially increased compared to current housing cost ,but DTI is 45% or less; or there is substantial discretionary income to support the transaction.

☐ Refinance transaction with borrowers total monthly payment reduced by 5% or more.

☐ Refinance transaction with a new lower interest rate ,but total monthly payments reduced less than 5%

☐ Refinance transaction to payoff delinquent debt and leave any remaining debt current

☐ Refinance transaction to pay off a loan with a balloon payment.

☒ Refinance transaction with cash to borrower exceeding 10% of the loan amount or $10,000

☐ Refinance transaction to pay off existing adjustable rate loaninto new fixed rate loan.

☐ Refinance transaction to change title vesting or ownership in subject property.

Exhibit 6 - 000051
2/24/11

*In re Debtor:  James L Macklin-  Chapter 7*
**USBC Eastern District of California Case No:  10-44610**
**Adversary No. 11-02024-E**

**DECLARATION OF JAMES L. MACKLIN IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

Exhibit 3 - 000021
2/24/11

**EXHIBIT "3"**

Recording Requested B,
Title Court Service

Recording requested by:

When recorded mail to:
Windsor Management, Co.
15253 Avenue of Science
San Diego, CA 92128

PLACER, County Recorder
JIM MCCAULEY
DOC- 2009-0018889-00
Acct 100-TITLE COURT SERVICE, INC
Tuesday, MAR 10, 2009 09:31:54
MIC     $3.00 RUT      $3.00 SBS     $2.00
ERD     $1.00 RED      $1.00 REC     $5.00
Ttl Pd    $15.00       Rcpt # 0001893924
                                 J1f/JL/1-3

---

Space above this line for recorders use

TS # CA-08-01507-CS          Order # 080122247-CA-LGI          Loan # 0603307230

## Substitution of Trustee

WHEREAS, JAMES LEN MACKLIN, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY was the original Trustor, FINANCIAL TITLE COMPANY was the original Trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR ACCREDITED HOME LENDERS, INC., A CALIFORNIA CORPORATION was the original Beneficiary under that certain Deed of Trust dated 4/14/2006 and recorded on 4/28/2006 as Instrument No. 2006-0046431, in book xxx, page xxx of Official Records of PLACER County, CA; and

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and stead of said original Trustee, or Successor Trustee, thereunder, in the manner provided for in said Deed of Trust,

NOW, THEREFORE, the undersigned hereby substitutes Windsor Management Co.,as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

Exhibit 3 - 000022
2/24/11

Substitution of Trustee - CA
TS # CA-08-01507-CS
Page 2

Dated: 1/30/08

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,
INC., AS NOMINEE FOR ACCREDITED HOME LENDERS
INC., A CALIFORNIA CORPORATION

By:    Joseph Sanfilippo

State of CALIFORNIA         )
County of SAN DIEGO         )

On  MARCH  4        , 2009 before me, _____ Christiana Juarez _____ , personally
appeared  JOSEPH SANFILIPPO _____ , who proved to me on the basis of satisfactory
evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged
to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) in the instrument the person(s), or the entity upon behalf of which person(s) acted, executed
the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

CHRISTIANA JUAREZ
Commission # 1725561
Notary Public - California
San Diego County
My Comm. Expires Feb 18, 2011

Signature _____

Exhibit 3 - 000023
2/24/11

## Affidavit of Mailing
## for Substitution of Trustee By Code

TS No.: **CA-08-01507-CS**
Trustor: JAMES LEN MACKLIN, A MARRIED MAN AS HIS SOLE AND SEPARATE
PROPERTY

I, Cindi Stewart, declare: That I am an officer, agent or employee of **Windsor Management Co.**
whose business address is:

15253 Avenue of Science
San Diego, CA 92128

I am over the age of eighteen years; On 3/9/2009, by Certified and First Class mail, enclosed in
a sealed envelope with postage fully prepaid, I deposited in the United States Mail, a copy of
the attached Substitution of Trustee to the trustee of record under the Deed of Trust described
in said Substitution, and;

, A copy of the attached Substitution has been mailed prior to the recording thereof, in the
manner provided in Section 2924(b) of the Civil Code of the State of California to all persons to
whom a copy of the Notice of Default would be required to be mailed by the provisions of said
section.

I certify (or declare) under penalty of perjury under the laws of the State of California that the
foregoing is true and correct.

Date: 3/9/2009

Cindi Stewart

Exhibit 3 - 000024
2/24/11

Recording Requested By:
Title Court Service

Recording requested by:

When recorded mail to:

Quality Loan Service Corp.
2141 5th Avenue
San Diego, CA 92101
619-645-7711

PLACER, County Recorder
JIM MCCAULEY
DOC- 2009-0101490-00
Acct 108-TITLE COURT SERVICE, INC
Wednesday, NOV 25, 2009 08:52:08
MIC     $3.00|AUT     $3.00|SBS     $2.00
ERD     $1.00|RED     $1.00|REC     $5.00
Ttl Pd   $15.00     Rcpt # 0001995323
                            oeg/CG/1-3

Space above this line for recorders use

TS # CA-09-304774-RT          Order # 090576095-CA-DCI
MERS MIN No.:
100176106033072308

## Substitution of Trustee

    WHEREAS, JAMES LEN MACKLIN , A MARRIED MAN AS HIS SOLE AND
SEPARATE PROPERTY was the original Trustor, FINANCIAL TITLE COMPANY was the
original Trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS
NOMINEE FOR ACCREDITED HOME LENDERS, INC. A CALIFORNIA CORPORATION A
CORPORATION was the original Beneficiary under that certain Deed of Trust dated 4/14/2006
and recorded on 4/28/2006 as Instrument No. 2006-0046431, in book xxx, page xxx of Official
Records of PLACER County, CA; and

    WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

    WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of
Trust in place and stead of said original Trustee, or Successor Trustee, thereunder, in the
manner provided for in said Deed of Trust,

    NOW, THEREFORE, the undersigned hereby substitutes QUALITY LOAN SERVICE
CORPORATION ,as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or
neuter, and the singular number includes the plural.

            "This instrument is being recorded as an
            ACCOMMODATION ONLY, with no
            Representation as to its effect upon title"

Exhibit 3 - 000025
2/24/11

Substitution of Trustee - CA
TS # CA-09-304774-RT
Page 2

Dated:
8-21-09

Deutsche Bank National Trust Company, as Indenture
Trustee, on behalf of the holders of the Accredited
Mortgage Loan Trust 2006-2 Asset Backed Notes by
Select Portfolio Servicing, Inc as Attorney in Fact

By: _____

Wayne Hessler

Duly Appointed Officer

State of Minnesota
County of Dakota )

On ____8-21-09____ Date before me, _____Mark Bischof_____ a notary public, personally
appeared _____Wayne Hessler_____ who proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s),
or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _____MN_____
that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Se[al]

MARK BISCHOF
NOTARY PUBLIC - MINNESOTA
MY COMMISSION
EXPIRES JAN. 31, 2013

See Attached "Exhibit A"

Exhibit 3 - 000026
2/24/11

## Exhibit "A"
## Affidavit of Mailing
## for Substitution of Trustee By Code

TS No.: **CA-09-304774-RT**

Trustor: JAMES LEN  MACKLIN , A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY

I, Ryan McKenzie, declare: That I am an employee of **Quality Loan Service Corp.**, an agent for beneficiary, whose business address is:

    2141 5th Avenue
    San Diego, CA 92101

I am over the age of eighteen years and in accordance with California Civil Code Section 2934, I caused a copy of the attached Substitution of Trustee to be mailed, in the manner provided in Section 2924(b) of the Civil Code of the State of California, to the trustee of record under the Deed of Trust described in said Substitution and to all persons to whom a copy of the Notice of Default would be required to be mailed by the provisions of said section.

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed at San Diego, CA on 11/23/2009.

/s/

Ryan McKenzie

Exhibit 3 - 000027
2/24/11

Recording Requested By:
Title Court Service

Recording Requested By:
SELECT PORTFOLIO SERVICING, INC.

When Recorded Return To:

BILL KOCH
SELECT PORTFOLIO SERVICING, INC
3815 SW TEMPLE
SALT LAKE CITY, UT 84115

0905576095

PLACER, County Recorder
JIM McCAULEY
DOC- 2009-0101918-00
Acct 100-TITLE COURT SERVICE, INC
Monday, NOV 30, 2009 08:00:00
MIC    $3.00!AUT    $2.00!SBS    $1.00
ERD    $1.00!RED    $4.00!REC    $4.00
Ttl Pd    $12.00    Rcpt # 0001995884
                              J1c/JC/1-2

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Placer, California    SELLER'S SERVICING #: 0011896863    "MACKLIN"
INVESTOR #: U20
MERS #: 100176106033072308

For Value Received, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR
ACCREDITED HOME LENDERS, INC., A CALIFORNIA CORPORATION, A CORPORATION hereby grants, assigns
and tranfers to DEUTSCHE BANK NATIONAL TRUST COMPANY, AS INDENTURE TRUSTEE, ON BEHALF OF
THE HOLDERS OF THE ACCREDITED MORTGAGE LOAN TRUST 2006-2 ASSET BACKED NOTES  at 3815 SW
TEMPLE, SALT LAKE CITY, UT  84115 all beneficial interest under that certain Deed of Trust dated 04/14/2006 . in
the amount of $532,000.00, executed by JAMES LEN MACKLIN, A MARRIED MAN AS HIS SOLE AND SEPARATE
PROPERTY. to MERS AS NOMINEE FOR ACCREDITED HOME LENDERS, INC.  A CALIFORNIA CORPORATION
and Recorded: 04/28/2006  as Instrument No.: 2006-0046431 in Placer County , State of California

Together with the note or notes therein described or referred to, in said Deed of Trust, the money due and to
become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

In witness whereof this instrument is executed.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR ACCREDITED HOME
LENDERS, INC., A CALIFORNIA CORPORATION, A CORPORATION
On 20 NOV 17 2009

_____    ⊠ Nov 17 2009
Bill Koch, Assistant Secretary

"This instrument is being recorded as an
ACCOMMODATION ONLY, with no
reoresentation as to its effect upon title"

STATE OF UTAH
COUNTY OF Salt Lake

On Nov. 17 2009_____, before me, SHIRLEY TUITUPOU, a Notary Public in and for Salt Lake in the State of Utah,
personally appeared Bill Koch, Assistant Secretary, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
AS NOMINEE FOR ACCREDITED HOME LENDERS, INC., A CALIFORNIA CORPORATION, A CORPORATION,
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,    ⊕ Public in and
_____              for Salt Lake.
SHIRLEY TUITUPOU
Notary Expires: 11/12/2012 #576792

SHIRLEY TUITUPOU
Notary Public State of Utah
My Commission Expires on:
November 12, 2012
Comm. Number: 576792

(This area for notarial seal)

*SOM*SOMAMRC*11/13/2009 03:56:27 PM* AMRC83AMRC0000000000000000381430* CAPLACE* 0011896863 CASTATE_TRUST_ASSIGN_ASSN *ACK*ACKAMRC*

Exhibit 3 - 000028
2/24/11

# CERTIFICATE OF ILLEGIBILITY
## Government Code 27361.7

I certify under penalty of perjury under the laws of the State of California that the Notary Seal on the document to which this statement is attached reads as follows:

Name of Notary: _Shirley  Tuitupow_

Date Commission Expires: _to 11/12/12._

Commission Number: _576792_

County of Commission: _Salt Lake_

State of Commission: _Utah_

Manufacturer Number: _____
  (In California this number is on the left and right side of the seal.)

Place of Execution: _Auburn, Ca_

Signature: _____ Date: _11/30/09_

Exhibit 3 - 000029
2/24/11

From Apr. 14th — current

Recording requested by:

When recorded mail to:

Windsor Management Co.
15253 Avenue of Science
San Diego, CA 92128

_____

Space above this line is for recorder' s use.

TS#CA-08-01507-CS                    Order#080122247-CA-LGI                    Loan#0603307230

## Notice of Trustee's Sale

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 4/14/2006.  UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.  IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 to the Financial code and authorized to do business in this state, will be held by duly appointed trustee. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, with interest and late charges thereon, as provided in the note(s), advances, under the terms of the Deed of Trust, interest thereon, fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below. The amount may be greater on the day of sale.

Trustor(s):      **JAMES LEN MACKLIN, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY**

Recorded:      **4/28/2006 as Instrument No. 2006-0046431 in book xxx, page xxx of Official Records in the office of the Recorder of PLACER County, California;**

Date of Sale:    **3/30/2009 at 10:00 AM**

Place of Sale:   **At the main entrance to the Municipal Courthouse, 11546 "B" Avenue, Auburn, CA.**

Amount of unpaid balance and other charges: **$561,894.06**

The purported property address is:      **1004 WISE ROAD**
                                        **AUBURN , CA 95603**

Assessors Parcel No.                    **040-040-046-000**

TS # CA-08-01507-CS
Loan # 0603307230
Notice of Trustee's Sale

The undersigned Trustee disclaims any liability for any incorrectness of the property address or other common designation, if any, shown herein. If no street address or other common designation is shown, directions to the location of

Exhibit 3 - 000030
2/24/11

the property may be obtained by sending a written request to the beneficiary within 10 days of the date of first publication of this Notice of Sale.

If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.

Date: _____                          **Windsor Management Co.**

**Cindi Stewart,**
**15253 Avenue of Science**
**San Diego, CA 92128**
**1-858-451-7322**

In compliance with California Civil Code 2923.5(c) the mortgagee, trustee, beneficiary, or authorized agent declares: that it has contacted the borrower(s) to assess their financial situation and to explore options to avoid foreclosure; or that it has made efforts to contact the borrower(s) to assess their financial situation and to explore options to avoid foreclosure by one of the following methods: by telephone; by United States mail; either 1st class or certified; by overnight delivery; by personal delivery; by e-mail; by face to face meeting.

THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Exhibit 3 - 000031
2/24/11

Recording Requested By:
Title Court Service

Recording requested by:

When recorded mail to:

Windsor Management Co.
15253 Avenue of Science
Building #3
San Diego, CA 92128

080122247

TS No.: CA-08-01507-CS

PLACER, County Recorder
JIM McCAULEY
DOC- 2008-0094154-00
Acct 100-TITLE COURT SERVICE,INC
Monday, DEC 08, 2008 08:55:20
MIC    $3.00:AUT    $2.00:SBS    $1.00
ERD    $1.00:RED    $1.00:REC    $4.00
Ttl Pd    $12.00    Rcpt # 0001862149
                                ba j/BJ/1-2

Space above this line for Recorder's use

Loan No.: 0603307230

## IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION.**   You may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account (normally five business days prior to the date set for the sale of your property). No sale may be set until three months from the date this notice of default is recorded (which date of recordation appears on this notice). This amount is $21,168.60 as of 12/4/2008 and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have the pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**Accredited Home Lenders, Inc.**
**C/O Windsor Management Co.**
**15253 Avenue of Science**
**San Diego, CA 92128**
**1-858-451-7322**

Exhibit 3 - 000032
2/24/11

TS No.: CA-08-01507-CS
Loan No.: 0603307230
**Notice of Default and Election To Sell Under Deed of Trust**

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

## Remember, **YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

NOTICE IS HEREBY GIVEN: That the undersigned is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated 4/14/2006, executed by JAMES LEN MACKLIN, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY, as Trustor, to secure certain obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR ACCREDITED HOME LENDERS, INC., A CALIFORNIA CORPORATION, as beneficiary, recorded 4/28/2006, as Instrument No. 2006-0046431, in Book xxx, Page xxx of Official Records in the Office of the Recorder of PLACER County, California describing land therein: **as more fully described in said Deed of Trust.**

Said obligations including 1 NOTE(S) FOR THE ORIGINAL sum of $532,000.00, that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the undersigned; that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

Installment of principal and interest plus impounds and / or advances which became due on 9/1/2008 plus amounts that are due or may become due for the following: late charges, delinquent property taxes, insurance premiums, advances made on senior liens, taxes and/or insurance, trustees fees, and any attorney fees and court costs arising from or associated with beneficiaries effort to protect and preserve its security must be cured as a condition of reinstatement.

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

The Beneficiary or its designated agent declares that it has contacted the borrower, tried with due diligence to contact the borrower as required by California Civil code § 2923.5, or the borrower has surrendered the property to the beneficiary or authorized agent, or is otherwise exempt from the requirements of § 2935.5

Dated: 12/4/2008                    **Windsor Management Co., AS AGENT FOR BENEFICIARY**
                                    BY: LSI Title Company

                                    _CATLY GARCIA_

### THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit report agency if you fail to fulfill the terms of your credit obligations.

Exhibit 3 - 000033
2/24/11

From Apr. 14th — current

Recording requested by:

When recorded mail to:

Windsor Management Co.
15253 Avenue of Science
San Diego, CA 92128

Space above this line is for recorder's use.

TS#CA-08-01507-CS          Order#080122247-CA-LGI          Loan#0603307230

## Notice of Trustee's Sale

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 4/14/2006. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 to the Financial code and authorized to do business in this state, will be held by duly appointed trustee. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, with interest and late charges thereon, as provided in the note(s), advances, under the terms of the Deed of Trust, interest thereon, fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below. The amount may be greater on the day of sale.

Trustor(s):      **JAMES LEN MACKLIN, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY**

Recorded:       **4/28/2006 as Instrument No. 2006-0046431 in book xxx, page xxx of Official Records in the office of the Recorder of PLACER County, California;**

Date of Sale:   **3/30/2009 at 10:00 AM**

Place of Sale:  **At the main entrance to the Municipal Courthouse, 11546 "B" Avenue, Auburn, CA.**

Amount of unpaid balance and other charges: **$561,894.06**

The purported property address is:       **1004 WISE ROAD
AUBURN , CA 95603**

Assessors Parcel No.          **040-040-046-000**

TS # CA-08-01507-CS
Loan # 0603307230
Notice of Trustee's Sale

The undersigned Trustee disclaims any liability for any incorrectness of the property address or other common designation, if any, shown herein. If no street address or other common designation is shown, directions to the location of

Exhibit 3 - 000034
2/24/11

the property may be obtained by sending a written request to the beneficiary within 10 days of the date of first publication of this Notice of Sale.

If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.

Date: _____          **Windsor Management Co.**

**Cindi Stewart,**
**15253 Avenue of Science**
**San Diego, CA 92128**
**1-858-451-7322**

In compliance with California Civil Code 2923.5(c) the mortgagee, trustee, beneficiary, or authorized agent declares: that it has contacted the borrower(s) to assess their financial situation and to explore options to avoid foreclosure; or that it has made efforts to contact the borrower(s) to assess their financial situation and to explore options to avoid foreclosure by one of the following methods: by telephone; by United States mail; either 1st class or certified; by overnight delivery; by personal delivery; by e-mail; by face to face meeting.

THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Exhibit 3 - 000035
2/24/11

Recording Requested by
Title Court Service

Trustee's Deed Upon Sale
1 | Page

Recording requested by:

When recorded mail to:

Select Portfolio Servicing, Inc.
3815 S.W. Temple
Salt Lake City, UT 84115-4412

PLACER, County Recorder
JIM MCCAULEY
**DOC- 2009-0108075-00**
Acct 100-TITLE COURT SERVICE,INC
Monday, DEC 21, 2009 09:13:15
MIC    $3.00:AUT    $2.00:SBS    $1.00
ERD    $1.00:RED    $1.00:REC    $4.00
Ttl Pd    $12.00    Rcpt # 0002003286
                                 smm/SM/1-2

Forward tax statements to the address given above

Space above this line for recorders use

TS # CA-09-304774-RT          Order # 090576095-CA-DCI

# Trustee's Deed Upon Sale

A.P.N.: 040-040-046                    Transfer Tax: $0.00

The undersigned grantor declares:
The grantee herein **IS** the foreclosing beneficiary.
The amount of the unpaid debt together with costs was:    **$623,986.20**
The amount paid by the grantee at the trustee sale was:    **$342,550.24**
The documentary transfer tax is:                          **None**
Said property is in the City of: AUBURN, County of PLACER

**QUALITY LOAN SERVICE CORPORATION** , as Trustee, (whereas so designated in the Deed of Trust hereunder more particularly described or as duly appointed Trustee) does hereby **GRANT** and **CONVEY** to

**Deutsche Bank National Trust Company, as Indenture Trustee, on behalf of the holders of the Accredited Mortgage Loan Trust 2006-2 Asset Backed Notes**

(herein called Grantee) but without covenant or warranty, expressed or implied, all right title and interest conveyed to and now held by it as Trustee under the Deed of Trust in and to the property situated in the county of PLACER, State of California, described as follows:

A PORTION OF THE EAST HALF OF SECTION 18, TOWNSHIP 12 NORTH, RANGE 8 EAST, M.D.M., BEING ALSO A PORTION OF THE TRACT OF LAND SHOWN AND DESIGNATED AS PARCEL "A", AS SHOWN ON THE MAP ENTITLED, "PARCEL MAP NO. 70586", FILED FOR RECORD DECEMBER 14, 1973, IN BOOK 5 OF PARCEL MAPS, PAGE 16, DESCRIBED AS: BEGINNING AT THE NORTH CORNER OF THE PARCEL OF LAND DESCRIBED HEREBY, BEING A POINT IDENTICAL WITH THE NORTH CORNER OF THE LAND SHOWN AND DESIGNATED PARCEL "A" ON THE ABOVE MENTIONED PARCEL MAP; THENCE ALONG THE BOUNDARY OF SAID PARCEL "A" ON THE FOLLOWING THREE CONSECUTIVE COURSE: (1) SOUTH 43° 50' EAST 129.81 FEET, (2) SOUTH 55° 26' EAST 170.19 FEET TO THE EAST CORNER THEREOF, AND (3) SOUTH 21° 41' 20" WEST FOR A DISTANCE OF 390.00 FEET; THENCE NORTH 68° 18' 40" WEST 394.28 FEET TO A POINT ON THE NORTHWESTERLY BOUNDARY LINE OF THE LAND SHOWN AND DESIGNED AS PARCEL "A" ON THE ABOVE MENTIONED PARCEL MAP; THENCE ALONG THE NORTHWESTERLY BOUNDARY OF SAID PARCEL "A" ON THE FOLLOWING TWO COURSES: (1) NORTH 27° 51' EAST FOR A DISTANCE OF 261.39 FEET AND (2) NORTH 42° 01' EAST 236.67 FEET TO THE POINT OF BEGINNING.

"This Instrument is being recorded as an
ACCOMMODATION ONLY, with no
Representation as to its effect upon title"

Exhibit 3 - 000036
2/24/11

Trustee's Deed Upon Sale

2 | Page

This conveyance is made in compliance with the terms and provisions of the Deed of Trust executed by **JAMES LEN MACKLIN , A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY**, as trustor, dated 4/14/2006, and recorded on 4/28/2006 as instrument number 2006-0046431, in Book xxx, Page xxx of Official Records in the office of the Recorder of PLACER, California, under the authority and powers vested in the Trustee designated in the Deed of Trust or as the duly appointed trustee, default having occurred under the Deed of Trust pursuant to the Notice of Breach and Election to Sell under the Deed of Trust recorded on 12/8/2008, instrument no 2008-0094154-00, Book , Page , of Official records. Trustee having complied with all applicable statutory requirements of the State of California and performed all duties required by the Deed of Trust including sending a Notice of Default and Election to Sell within ten days after its recording and a Notice of Sale at least twenty days prior to the Sale Date by certified mail, postage pre-paid to each person entitled to notice in compliance with California Civil Code 2924b

Default occurred as set forth in a Notice of Breach and Election to Sell which was recorded in the office of the Recorder of said County.

All requirements of law regarding the mailing of copies of notices or the publication of a copy of the Notice of Breach and Election to Sell or the personal delivery of the copy of the Notice of Breach and Election to Sell and the posting and publication of copies of the Notice of Sale have been complied with.

Said property was sold by said Trustee at public auction on 12/14/2009 at the place named in the Notice of Sale, in the County of PLACER, California, in which the property is situated. Grantee, being the highest bidder at such sale, became the purchaser of said property and paid therefore to said trustee the amount being **$342,550.24** in lawful money of the United States, or by the satisfaction, pro tanto, of the obligations then secured by said Deed of Trust.

Date: **12/15/2009**

**QUALITY LOAN SERVICE CORPORATION**

By: _____

**Karla Sanchez, Assistant Secretary**

State of California    )
County of San Diego )

On ___12·17·09___ before me, **Michelle Nguyen** a notary public, personally appeared **Karla Sanchez**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)
**Michelle Nguyen**

**MICHELLE NGUYEN**
COMM. #1665032
NOTARY PUBLIC • CALIFORNIA
SAN DIEGO COUNTY
Comm. Exp. MAY 8, 2010

THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Exhibit 3 - 000037
2/24/11

*In re Debtor:  James L Macklin-  Chapter 7*
**USBC Eastern District of California Case No:  10-44610**
**Adversary No. 11-02024-E**

**DECLARATION OF JAMES L. MACKLIN IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

Exhibit 4 - 000038
2/24/11

**EXHIBIT "4"**

## Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when □ the income or assets of a person other than the Borrower (including the Borrower's spouse) will be used as a basis for loan qualification or □ the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

Borrower _____

Co-Borrower _____

| Mortgage Applied for: | □ VA | □ Conventional | □ Other (explain): | Agency Case Number | Lender Case Number |
|---|---|---|---|---|---|
| | □ FHA | □ USDA/Rural Housing Service | | | 00XXXXXXXX |

| Amount | Interest Rate | No. of Months | Amortization Type: | ☒ Fixed Rate | □ Other (explain): |
|---|---|---|---|---|---|
| $ 534,000 | 6.125 % | 360 | | □ GPM | □ ARM (type): |

Subject Property Address (street, city, state & ZIP)    No. of Units
10040 WEBB ROAD, AUBURN, CA 95603    1

Legal Description of Subject Property (attach description if necessary)    Year Built
SEE ENCLOSED    1975

| Purpose of Loan | □ Purchase | □ Construction | □ Other (explain): | Property will be: |
|---|---|---|---|---|
| | ☒ Refinance | □ Construction-Permanent | | ☒ Primary Residence  □ Secondary Residence  □ Investment |

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a + b) |
|---|---|---|---|---|---|
| | $ | $ | $ | $ | $ |

Complete this line if this is a refinance loan.

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements | □ made  □ to be made |
|---|---|---|---|---|---|
| 2001 | $ 825,000.00 | $ 0.00 | FIXED-TERM REFINANCE | | Cost: $ 0.00 |

Title will be held in what Name(s)    Manner in which Title will be held    Estate will be held in
XXX XXXXXX    INDIVIDUALLY    ☒ Fee Simple  □ Leasehold (show expiration date)

Source of Down Payment, Settlement Charges, and/or Subordinate Financing (explain)
CASH ON HAND

### Borrower
Borrower's Name (include Jr. or Sr. if applicable)    Co-Borrower's Name (include Jr. or Sr. if applicable)
XXXXX XXX XXXXXX

| Social Security Number | Home Phone (incl. area code) | DOB | Yrs. School | Social Security Number | Home Phone (incl. area code) | DOB | Yrs. School |
|---|---|---|---|---|---|---|---|
| XXX-XX-XXXX | 916-XXX-0657 | XX/XX/XXXX | 15 | | | | |

□ Married  ☒ Unmarried (include single, divorced, widowed)  □ Separated    Dependents (not listed by Co-Borrower) No. 0    □ Married  □ Unmarried  □ Separated    Dependents (not listed by Borrower)

Present Address (street, city, state, ZIP)  ☒ Own  □ Rent 4/11 No. Yrs.    Present Address (street, city, state, ZIP)  □ Own  □ Rent ___ No. Yrs.
10040 WEBB ROAD
AUBURN, CA 95603

Mailing Address, if different from Present Address    Mailing Address, if different from Present Address

If residing at present address for less than two years, complete the following:

Former Address (street, city, state, ZIP)  □ Own  □ Rent ___ No. Yrs.    Former Address (street, city, state, ZIP)  □ Own  □ Rent ___ No. Yrs.

### Employment Information

| Name & Address of Employer  □ Self Employed | Yrs. on this job | Name & Address of Employer  □ Self Employed | Yrs. on this job |
|---|---|---|---|
| JIM CONSTRUCTION | 7.27 | | |
| 10040 WEBB ROAD | Yrs. employed in this line of work/profession | | Yrs. employed in this line of work/profession |
| AUBURN, CA 95603 | 10.42 | | |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|
| SELF EMPLOYED / CONSTRUCTION | 916-XXX-0657 | | |

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer  □ Self Employed | Dates (from - to) | Name & Address of Employer  □ Self Employed | Dates (from - to) |
|---|---|---|---|
| | | | |
| | Monthly Income | | Monthly Income |
| | $ | | $ |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

| Name & Address of Employer  □ Self Employed | Dates (from - to) | Name & Address of Employer  □ Self Employed | Dates (from - to) |
|---|---|---|---|
| | | | |
| | Monthly Income | | Monthly Income |
| | $ | | $ |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

Freddie Mac Form 65  7/05
Fannie Mae Form 1003  7/05    00XXXXXXXX
□-21N (0806) NMFL #1003N (APP1, APP2) Rev 11/14/2006
Page 1 of 5
VMP Mortgage Solutions, Inc. (800)521-7291    Initials: ___



Exhibit 4 - 000039
2/24/11

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | 29,360.03 | | 29,360.03 | Rent | 0.00 | |
| Overtime | 0.00 | | 0.00 | First Mortgage (P&I) | 2,396.00 | 3,362.90 |
| Bonuses | 0.00 | | 0.00 | Other Financing (P&I) | 0.00 | 1,159.72 |
| Commissions | 0.00 | | 0.00 | Hazard Insurance | 0.00 | 105.70 |
| Dividends/Interest | 0.00 | | 0.00 | Real Estate Taxes | 0.00 | 534.17 |
| Net Rental Income | 0.00 | | 0.00 | Mortgage Insurance | 0.00 | 0.00 |
| Other (before completing, see the notice in "describe other income," below) | 0.00 | | 0.00 | Homeowner Assn. Dues | 0.00 | 0.00 |
| | | | | Other | 0.00 | 0.00 |
| Total | 29,360.03 | | 29,360.03 | Total | 2,396.00 | 5,161.49 |

* Self-Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

Describe Other Income    Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

B/C | | Monthly Amount

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed about that spouse or other person also.

Completed ☐ Jointly ☒ Not Jointly

| ASSETS | Cash or Market Value | LIABILITIES and Pledged Assets. List the creditor's name, address, and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities, which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | | Name and address of Company | $ Payment/Months | $ |
| | | CHASE | 21.00 9 | 166.00 |
| List checking and savings accounts below | | | | |
| Name and address of Bank, S&L, or Credit Union | | Acct. no. 4057559032482 | | |
| WELLS FARGO BANK | | Name and address of Company | $ Payment/Months | $ |
| | | WESCOM | 5.00 37 | 105.70 |
| Acct. no. 9877057063 | 68,000.00 | | | |
| Name and address of Bank, S&L, or Credit Union | | Acct. no. 430051442099170 | | |
| | | Name and address of Company | $ Payment/Months | $ |
| | | HSBC NV | 10.00 11 | 108.70 |
| Acct. no. | | | | |
| Name and address of Bank, S&L, or Credit Union | | Acct. no. 5790450005838001 | | |
| | | Name and address of Company | $ Payment/Months | $ |
| | | HSBC NV | 10.00 11 | 108.00 |
| Acct. no. | | | | |
| Name and address of Bank, S&L, or Credit Union | | Acct. no. 5790450005838 | | |
| | | Name and address of Company | $ Payment/Months | $ |
| | | WELLS FARGO BANK | 269.00 36 | 9,566.00 |
| Acct. no. | | | | |
| Stocks & Bonds (Company name/number & description) | | Acct. no. 300521455845800001 | | |
| | | Name and address of Company | $ Payment/Months | $ |
| | | BANK OF THE WEST | 347.00 44 | 15,007.00 |
| Life insurance net cash value | | | | |
| Face amount $ | | Acct. no. 57605284 | | |
| Subtotal Liquid Assets | 85,000.00 | Name and address of Company | $ Payment/Months | $ |
| Real estate owned (enter market value from schedule of real estate owned) | 615,000.00 | OPTION ONE MORTGAGE CO | <2,396.00> 182 | <460,000.00> |
| Vested interest in retirement fund | 0.00 | | | |
| Net worth of business(es) owned (attach financial statement) | 0.00 | Acct. no. 6060415344351 | | |
| Automobiles owned (make and year) | | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| | | | | |
| Other Assets (itemize) | | Job Related Expense (child care, union dues, etc.) | $ | |
| | | | | |
| Total Assets a. | 680,000.00 | Total Monthly Payments | 663.00 | |
| | | Net Worth (a minus b) ▶ $ 654,860.00 | Total Liabilities b. | 25,140.00 |

0062913232

Freddie Mac Form 65 7/05
Fannie Mae Form 1003 7/05
PB-21N (3007)

Exhibit 4 - 000040
2/24/11

(P9.3)

Apr 10 2006 15:20    P.06

90'd    02:SI 900Z 0I ɹdⱯ

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or O for Co-Borrower. | Borrower: | Agency Case Number |
| | JAMES LEON MOCKLIN | |
| | Co-Borrower: | Lender Case Number |
| | | 0062013231 |

E/R APR Lxxxx-xxx

INDEX: 4.430, MARGIN: 4.250, Payment Adjustment Term (Months): 24
VI. Liabilities (Cont. )

Liability # 8
Organization Name                        : WILSHIRE CREDIT CORP
Address

Account Number                           : 968161
Monthly payments / Months left to pay    : <$1,009.00> / < 116>
Unpaid Balance                           : <$114,532.00>

California applicants: Under California Civil Code 1812.30(), credit applications for the obtainment of money, goods, labor, or services shall clearly specify that the applicant, if married, may apply for a separate account.

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
| X | | X | |

Freddie Mac Form 65  7/05
Fannie Mae Form 1003  7/05
21N (0507)

Exhibit 4 - 000041
2/24/11

(P9.4)

P.08          Apr 10 2008 15:20          08.9

**Schedule of Real Estate Owned** (If additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 10040 WISE ROAD NEWCASTLE, CA 95658 | R | SF | $ 615,000.00 | $ 480,000.00 | $ 0.00 | $ 2,395.00 | $ 0.00 | $ 0.00 |
| | | | | | | | | |
| Totals | $ 615,000.00 | $ 480,000.00 | $ 0.00 | $ 2,395.00 | $ 0.00 | $ 0.00 |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |

---

| a. Purchase price | $ | 0.00 |
|---|---|---|
| b. Alterations, improvements, repairs | | 0.00 |
| c. Land (if acquired separately) | | 0.00 |
| d. Refinance (incl. debts to be paid off) | | 0.00 |
| e. Estimated prepaid items | | 3,483.31 |
| f. Estimated closing costs | | 3,427.00 |
| g. PMI, MIP, Funding Fee | | 0.00 |
| h. Discount (if Borrower will pay) | | 10,640.00 |
| i. Total costs (add items a through h) | | 17,549.31 |
| j. Subordinate financing | | 133,000.00 |
| k. Borrower's closing costs paid by Seller | | 0.00 |
| l. Other Credits (explain) | | |
| | | |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | | 532,000.00 |
| n. PMI, MIP, Funding Fee financed | | 0.00 |
| o. Loan amount (add m & n) | | 532,000.00 |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | | (647,439.69) |

If you answer "Yes" to any questions a through i, please use continuation sheet for explanation.

| | Borrower | Co-Borrower |
|---|---|---|
| | Yes | No | Yes | No |
| a. Are there any outstanding judgments against you? | | X | | |
| b. Have you been declared bankrupt within the past 7 years? | | X | | |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | | X | | |
| d. Are you a party to a lawsuit? | | X | | |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? | | X | | |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? | | X | | |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | | X | | |
| h. Is any part of the down payment borrowed? | | X | | |
| i. Are you a co-maker or endorser on a note? | | X | | |
| j. Are you a U.S. citizen? | X | | | |
| k. Are you a permanent resident alien? | | X | | |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | X | | | |
| m. Have you had an ownership interest in a property in the last three years? | X | | | |
| (1) What type of property did you own — principal residence (PR), second home (SH), or investment property (IP)? | PR | |
| (2) How did you hold title to the home — solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | S | |

*(Acknowledgement and agreement text — illegible fine print)*

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | | X | |

*(Information for Government Monitoring Purposes — illegible fine print)*

| BORROWER | CO-BORROWER |
|---|---|
| I do not wish to furnish this information | I do not wish to furnish this information |
| Ethnicity: Hispanic or Latino ☐  Not Hispanic or Latino ☒ | Ethnicity: Hispanic or Latino ☐  Not Hispanic or Latino ☐ |
| Race: American Indian or Alaska Native ☐  Asian ☐  Black or African American ☐  Native Hawaiian or Other Pacific Islander ☐  White ☒ | Race: American Indian or Alaska Native ☐  Asian ☐  Black or African American ☐  Native Hawaiian or Other Pacific Islander ☐  White ☐ |
| Sex: Female ☐  Male ☒ | Sex: Female ☐  Male ☐ |

| To be Completed by Interviewer | Name and Address of Interviewer's Employer |
|---|---|
| This application was taken by: | WELLS FARGO BANK, N.A. |
| ☐ Face-to-face Interview | 3010 LAVA RIDGE CT |
| ☐ Mail | ROSEVILLE, CA 95661 |
| ☒ Telephone | |
| ☐ Internet | |
| Interviewer's Name (print or type) | |
| Interviewer's Signature | Date |
| Interviewer's Phone Number (incl. area code) | |
| 916-780-3104 | |

Exhibit 4 - 000042
2/24/11

P9.5

2nd

## Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower", as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when [X] the income or assets of a person other than the Borrower (including the Borrower's spouse) will be used as a basis for loan qualification or [X] the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

| Mortgage Applied for: | [ ] VA [X] Conventional [ ] Other (explain): [ ] FHA [ ] USDA/Rural Housing Service | Agency Case Number | Lender Case Number 0062914569 |
|---|---|---|---|
| Interest Rate 127.000 ... | No. of Months 10.25  % 360/180 | Amortization Type: [X] Fixed Rate [ ] GPM [ ] Other (explain): [ ] ARM (type): | |

**Subject Property Address** (street, city, state & ZIP)
10040 WISE ROAD , AUBURN , CA 95603    No. of Units 1

**Legal Description of Subject Property** (attach description if necessary)    Year Built 1975
SEE REPORT

| Purpose of Loan | [X] Purchase [ ] Construction [ ] Refinance [ ] Construction-Permanent [ ] Other (explain): | Property will be: [X] Primary Residence [ ] Secondary Residence [ ] Investment |
|---|---|---|

**Complete this line if construction or construction-permanent loan.**

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a + b) |
|---|---|---|---|---|---|
| | $ | $ | $ | $ | $ |

**Complete this line if this is a refinance loan.**

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements [ ] made [ ] to be made |
|---|---|---|---|---|
| 2001 | $ 525,000.00 | $ 0.00 | RATE-TERM REFINANCE | Cost $ 0.00 |

Title will be held in what Name(s)    Manner in which Title will be held    Estate will be held in:
AUG REPORT    INDIVIDUALLY    [X] Fee Simple [ ] Leasehold (show expiration date)

Source of Down Payment, Settlement Charges, and/or Subordinate Financing (explain)
CASH ON HAND

### Borrower

| Borrower's Name (include Jr. or Sr. if applicable) | Co-Borrower's Name (include Jr. or Sr. if applicable) |
|---|---|
| JAMES LEON MACKZUM | |

| Social Security Number 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 | Home Phone (incl. area code) 916-786-0857 | DOB 03/20/1962 | Yrs. School 13 | Social Security Number | Home Phone (incl. area code) | DOB | Yrs. School |
|---|---|---|---|---|---|---|---|
| [X] Married [ ] Unmarried (incl. single, divorced, widowed) [ ] Separated | Dependents (not listed by Co-Borrower) No. 0 Ages | | [ ] Married [ ] Unmarried [ ] Separated | Dependents (not listed by Borrower) No. Ages | | | |

| Present Address (street, city, state, ZIP) [X] Own [ ] Rent ___ No. Yrs. 10040 WISE ROAD AUBURN, CA 95603 | Present Address (street, city, state, ZIP) [ ] Own [ ] Rent ___ No. Yrs. |
|---|---|

| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |
|---|---|

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP) [ ] Own [ ] Rent ___ No. Yrs. | Former Address (street, city, state, ZIP) [ ] Own [ ] Rent ___ No. Yrs. |
|---|---|

### Employment Information

| Name & Address of Employer [ ] Self Employed | Yrs. on this job 7.27 | Name & Address of Employer [ ] Self Employed | Yrs. on this job |
|---|---|---|---|
| JLM CONSTRUCTION 10040 WISE ROAD AUBURN, CA 95603 | Yrs. employed in this line of work/profession 10.42 | | Yrs. employed in this line of work/profession |

| Position/Title/Type of Business SELF EMPLOYED / CONSTRUCTION | Business Phone (incl. area code) 916-786-0857 | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer [ ] Self Employed | Dates (From - to) | Name & Address of Employer [ ] Self Employed | Dates (From - to) |
|---|---|---|---|
| | | | |
| | Monthly Income $ | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |

| Name & Address of Employer [ ] Self Employed | Dates (From - to) | Name & Address of Employer [ ] Self Employed | Dates (From - to) |
|---|---|---|---|
| | | | |
| | Monthly Income $ | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |

Freddie Mac Form 65  7/05
Fannie Mae Form 1003  7/05    0062914569
-3174 (0807) WMFL #1003N (APP1, APP2) Rev 11/14/2005
Page 1 of 4    Initials: _____
VMP Mortgage Solutions, Inc. (800)521-7291

Exhibit 4 - 000040
2/24/11

(Pg. 6)

Apr 10 2006  15:21    P.12

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 29,340.03 | $ | $ 29,340.03 | Rent | $ 0.00 | |
| Overtime | 0.00 | | 0.00 | First Mortgage (P&I) | 2,396.00 | $ 1,118.14 |
| Bonuses | 0.00 | | 0.00 | Other Financing (P&I) | 0.00 | 2,849.30 |
| Commissions | 0.00 | | 0.00 | Hazard Insurance | 0.00 | 0.30 |
| Dividends/Interest | 0.00 | | 0.00 | Real Estate Taxes | 0.00 | 0.30 |
| Net Rental Income | 0.00 | | 0.00 | Mortgage Insurance | 0.00 | 0.30 |
| Other (before completing, see the notice in "describe other income," below) | 0.00 | | 0.00 | Homeowner Assn. Dues | 0.00 | 0.30 |
| | | | | Other: | 0.00 | 0.30 |
| Total | $ 29,340.03 | $ | $ 29,340.03 | Total | $ 2,396.00 | $ 3,967.54 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

Describe Other Income   Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| | | $ |
| | | |
| | | |

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed about that spouse or other person also.

Completed [ ] Jointly   [X] Not Jointly

| ASSETS | Cash or Market Value | LIABILITIES and Pledged Assets. List the creditor's name, address, and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities, which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Description Cash deposit toward purchase held by: | $ | Name and address of Company CHASE | $ Payment/Months 21.00 | $ 166.10 |
| List checking and savings accounts below Name and address of Bank, S&L, or Credit Union CLOSING/ESCROW WELLS FARGO BANK | | Acct. no. 427978880229622 | | |
| | | Name and address of Company VISA/CARD | $ Payment/Months 5.00   37 | $ 185.10 |
| Acct. no. 7050 | $ 65,000.00 | Acct. no. 4432698170 | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company HSBC NV | $ Payment/Months 10.00   11 | $ 108.10 |
| Acct. no. | | Acct. no. 600005365801 | | |
| Name and address of Bank, S&L, or Credit Union | $ | Name and address of Company HSBC NV | $ Payment/Months 10.00   11 | $ 108.10 |
| Acct. no. | | Acct. no. 600005839 | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company WELLS FARGO BANK | $ Payment/Months 253.00   36 | $ 9,566.00 |
| Acct. no. | | Acct. no. 00021455384580001 | | |
| Stocks & Bonds (Company name/number & description) | $ | Name and address of Company BANK OF THE WEST | $ Payment/Months 347.00   44 | $ 15,007.00 |
| Life insurance net cash value Face amount: $ | $ | Acct. no. 370700264 | | |
| Subtotal Liquid Assets | | Name and address of Company OPTION ONE MORTGAGE CO | $ Payment/Months <2,396.00>   192 | $ <460,000.00> |
| Real estate owned (enter market value from schedule of real estate owned) | $ 65,000.00   $ 618,000.00 | | | |
| Vested interest in retirement fund | $ 0.00 | Acct. no. 051001534361 | | |
| Net worth of business(es) owned (attach financial statement) | $ 0.00 | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| Automobiles owned (make and year) | $ | | | |
| Other Assets (itemize) | $ | Job Related Expense (child care, union dues, etc.) | $ | |
| Total Assets a. | $ 683,000.00 | Total Monthly Payments | $ 662.00 | |
| | | Net Worth (a minus b) ▶ $ 654,860.00 | Total Liabilities b. | $ 28,140.00 |
| | | | | 00621014869 |

Exhibit 4 - 000044
2/24/11

(Pg.7)

Apr 10 2006 15:22   P.13

Schedule of Real Estate Owned (if additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) ▼ | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| XXXX XXXX XXXXXX, CA 99903 | R | SF | $ 615,000.00 | $ 460,000.00 | $ 0.00 | $ 2,396.00 | $ 0.00 | $ 0.00 |
| Totals | | $ 615,000.00 | $ 460,000.00 | $ 0.00 | $ 2,396.00 | $ 0.00 | $ 0.00 |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|

| | | |
|---|---|---|
| a. Purchase price | $ 0.00 |
| b. Alterations, improvements, repairs | 0.00 |
| c. Land (if acquired separately) | 0.00 |
| d. Refinance (incl. debts to be paid off) | 0.00 |
| e. Estimated prepaid items | 360.82 |
| f. Estimated closing costs | 298.00 |
| g. PMI, MIP, Funding Fee | 0.00 |
| h. Discount (if Borrower will pay) | 0.00 |
| i. Total costs (add items a through h) | 678.82 |
| j. Subordinate financing | $32,000.00 |
| k. Borrower's closing costs paid by Seller | 0.00 |
| l. Other Credits (explain) | |

| | |
|---|---|
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 133,000.00 |
| n. PMI, MIP, Funding Fee financed | 0.00 |
| o. Loan amount (add m & n) | 133,000.00 |
| p. Cash from/to Borrower (subtract j, k, l, & o from i) | (564,324.18) |

If you answer "Yes" to any questions a through i, please use continuation sheet for explanation.

| | Borrower Yes No | Co-Borrower Yes No |
|---|---|---|
| a. Are there any outstanding judgments against you? | ☐ ☒ | ☐ ☐ |
| b. Have you been declared bankrupt within the past 7 years? | ☐ ☒ | ☐ ☐ |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | ☐ ☒ | ☐ ☐ |
| d. Are you a party to a lawsuit? | ☐ ☒ | ☐ ☐ |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgement? | ☐ ☒ | ☐ ☐ |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? | ☐ ☒ | ☐ ☐ |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | ☐ ☒ | ☐ ☐ |
| h. Is any part of the down payment borrowed? | ☐ ☒ | ☐ ☐ |
| i. Are you a co-maker or endorser on a note? | ☐ ☒ | ☐ ☐ |
| j. Are you a U.S. citizen? | ☒ ☐ | ☐ ☐ |
| k. Are you a permanent resident alien? | ☐ ☒ | ☐ ☐ |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | ☒ ☐ | ☐ ☐ |
| m. Have you had an ownership interest in a property in the last three years? | ☒ ☐ | ☐ ☐ |

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described in this application; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated in this application; (6) the Lender, its servicers, successors or assigns may retain the original and/or an electronic record of this application, whether or not the Loan is approved; (7) the Lender and its agents, brokers, insurers, servicers, successors, and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the Lender, its servicers, successors or assigns may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

Acknowledgement. Each of the undersigned hereby acknowledges that any owner of the Loan, its servicers, successors and assigns, may verify or reverify any information contained in this application or obtain any information or data relating to the Loan, for any legitimate business purpose through any source, including a source named in this application or a consumer reporting agency.

| Borrower's Signature [X] | Date | Co-Borrower's Signature X | Date |
|---|---|---|---|

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may not discriminate either on the basis of this information, or on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation and surname if you have made this application in person. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER ☐ I do not wish to furnish this information | CO-BORROWER ☐ I do not wish to furnish this information |
|---|---|
| Ethnicity: ☐ Hispanic or Latino ☒ Not Hispanic or Latino | Ethnicity: ☐ Hispanic or Latino ☐ Not Hispanic or Latino |
| Race: ☐ American Indian or Alaska Native ☐ Asian ☐ Black or African American ☐ Native Hawaiian or Other Pacific Islander ☒ White | Race: ☐ American Indian or Alaska Native ☐ Asian ☐ Black or African American ☐ Native Hawaiian or Other Pacific Islander ☐ White |
| Sex: ☐ Female ☒ Male | Sex: ☐ Female ☐ Male |

| To be Completed by Interviewer This application was taken by: | Interviewer's Name (print or type) | Name and Address of Interviewer's Employer |
|---|---|---|
| ☐ Face-to-Face Interview | Interviewer's Signature | WELLS FARGO BANK, N.A. |
| ☐ Mail | Date | 3010 LAVA RIDGE CT |
| ☒ Telephone | Interviewer's Phone Number (incl. area code) | ROSEVILLE, CA 95661 |
| ☐ Internet | (866) 780-0104 | |

Freddie Mac Form 65    7/05
Fannie Mae Form 1003    7/05

0062924569

Exhibit 4 - 000045
2/24/11

(PG.8)

APR 10 2006 15:22    P.14

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower JAMES LEN MCCAIN | | Agency Case Number: |
| | Co-Borrower | | Lender Case Number: 0062914849 |

**20-30 Yr Fixed**
**VI. Liabilities (Cont. )**


**Liability # 8**
Origination Name :                    : WILSHIRE CREDIT CORP
Address

Account Number                    : A58181
Monthly payments / Months left to pay  : <$1,009.00> / < 110>
Unpaid Balance                    : <$114,522.00>

California applicants Under California Civil Code 1812.303, credit applications for the obcaburent of money, goods, labor, or services shall clearly specify that the applicant, if married, may apply for a separate account.

I/We Acy unnsuspged that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature | Date | Co-Borrower's Signature: X | Date |

Freddie Mac Form 65 7/05
Fannie Mae Form 1003 7/05
-81N (0407)                                                        0062914849

Page 4 of 4

Exhibit 4 - 000046
2/24/11

APR 10 2006 15:23        P.15

*In re Debtor:  James L Macklin-  Chapter 7*
**USBC Eastern District of California Case No:  10-44610**
**Adversary No. 11-02024-E**

**DECLARATION OF JAMES L. MACKLIN IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

Exhibit 9 - 000057
2/24/11

**EXHIBIT "9"**

# FINANCIAL
# TITLE COMPANY

Date: April 20, 2006

Accredited Home Lenders, Inc.
15253 Ave of Science, Bldg. 3
San Diego, CA 92128
Attention: Funding Dept.

Escrow No.: 42518842-823-MFP
Loan No: 0603307231
Borrower: James Len Macklin
Property: 10040 Wise Road
Auburn, CA 95603

In connection with the above referenced loan, we enclose the following documents executed as required:

☑ Original Note, plus certified copies
☐ Certified copies of Grant Deed
☑ Acknowledged copy of your instructions
☑ Loan application
☑ Additional Loan documents
☐

☑ Certified copies of Deed of Trust
☑ Certified copies of escrow instructions
☑ Regulation Z/Itemization of amount financed
☑ Evidence of insurance
☐ Loan conditions provided to escrow

*ATTENTION LENDER: Any endorsements to be attached to the policy of title insurance must be specifically requested in writing, with the appropriate endorsement number provided, prior to funding. Financial Title Company cannot rely upon instructions that are general in nature and will not be liable or responsible for the issuance of endorsements not specifically requested in the lenders instructions.*

*In order that we may accommodate the RESPA Regulations in completing the HUD-1 statement, please submit to escrow your instructions which specifically itemize all fees, costs, expenses or credits to be disclosed on the HUD-1 Closing statement. This includes any items that were paid outside close (POC). Please provide the name of the payee and the amount to be disclosed.*

*Please be advised that due to the extraordinary refinance levels our industry is experiencing, we are unable to provide Title Insurance Policies in less than 90 days. Please contact the undersigned should you need a policy in a shorter time frame.*

*BY YOUR ACCEPTANCE OF THE ENCLOSED LOAN DOCUMENTS AND FUNDING OF THIS LOAN, ALL REQUIREMENTS OF YOUR LOAN INSTRUCTIONS ARE DEEMED TO BE SATISFIED AND APPROVED.*

☑ Please Fund On: April 24, 2006        ☐ Please Hold Funding until further instructed

| WIRING INSTRUCTIONS: | |
|---|---|
| Centennial Bank | Account No.: 2400659 |
| Englewood, CO | Routing No.: 107006981 |
| Please Reference Escrow No.: 42518842-823-MFP | Borrower: James Len Macklin |

IMPORTANT: WE MUST BE NOTIFIED OF THE DATE AND AMOUNT OF FUNDS WIRED

When funding figures are available, please call the undersigned at: (916) 351-2910.

Financial Title Company

By: _____
   April McHugh for Fatima Pacheco

81 Blue Ravine Rd. # 120    Folsom, CA 95630 • (916) 351-2910 • Fax (916) 353-5070

Exhibit 9 - 000058
2/24/11

*In re Debtor:  James L Macklin-  Chapter 7*
**USBC Eastern District of California Case No:  10-44610**
**Adversary No. 11-02024-E**

**DECLARATION OF JAMES L. MACKLIN IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

Exhibit 7 - 000052
2/24/11

**EXHIBIT "7"**

# CARR McCLELLAN
INGERSOLL THOMPSON & HORN

Professional Law Corporation

Robert A. Bleicher
rbleicher@carr-mcclellan.com

September 30, 2010

**VIA FEDEX**

Mr. James L. Macklin
10040 Wise Road
Auburn, CA  95603

Re:    Macklin v. Select Portfolio, et al.

Dear Mr. Macklin:

In accordance with FRCP Rule 26(a)(1)(A), Defendants produce copies of the documents they believe support their defenses in this action.  These records consist of (1) the same documents that were attached to the supporting declaration of Diane Weinberger filed in support of Defendants' Motion for Summary Judgment and (2) further records related to your loan at issue. The witness who Defendants believe is most knowledgeable regarding these documents is Diane Weinberger of Defendant Select Portfolio Servicing, Inc., 315 S. West Temple Street, Salt Lake City, Utah 84115 and she can be contacted through us.

Please call me if you have any questions.

Sincerely,

Robert A. Bleicher

RAB:dlp

Enclosures

29801-00001\iManage\3434579.2

Exhibit 7 - 000053
2/24/11

*In re Debtor:  James L Macklin-  Chapter 7*
**USBC Eastern District of California Case No:  10-44610**
**Adversary No. 11-02024-E**

**DECLARATION OF JAMES L. MACKLIN IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

Exhibit 8 - 000054
2/24/11

**EXHIBIT "8"**

MAC025 02/16/2006 12:24 PM

**SCHEDULE C**
**(Form 1040)**

Department of the Treasury
Internal Revenue Service    (99)

# Profit or Loss From Business
(Sole Proprietorship)

▶ Partnerships, joint ventures, etc., must file Form 1065 or Form 1065-B.

▶ Attach to Form 1040 or 1041.    ▶ See Instructions for Schedule C (Form 1040).

OMB No. 1545-0074

**2005**

Attachment
Sequence No.  **09**

Name of proprietor

JIM MACKLIN

Social security number (SSN)

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

| | |
|---|---|
| **A** Principal business or profession, including product or service (see page C-2 of the instructions) | **B** Enter code from pages C-8, 9, & 10 |
| CEMENT | ▶ 238390 |
| **C** Business name. If no separate business name, leave blank. | **D** Employer ID number (EIN), if any |
| SPRAY N SEAL | |

**E** Business address (including suite or room no.) ▶  5815 TUDOR WAY
City, town or post office, state, and ZIP code   LOOMIS          CA 95650

**F** Accounting method:  (1) [X] Cash  (2) [ ] Accrual  (3) [ ] Other (specify) ▶

**G** Did you "materially participate" in the operation of this business during 2005? If "No," see page C-3 for limit on losses ............ [X] Yes  [ ] No

**H** If you started or acquired this business during 2005, check here ........................ ▶ [ ]

## Part I  Income

| | | | |
|---|---|---|---|
| 1 | Gross receipts or sales. Caution. If this income was reported to you on Form W-2 and the "Statutory employee" box on that form was checked, see page C-3 and check here ..................... ▶ [ ] | **1** | 362,918 |
| 2 | Returns and allowances | **2** | |
| 3 | Subtract line 2 from line 1 | **3** | 362,918 |
| 4 | Cost of goods sold (from line 42 on page 2) | **4** | 98,252 |
| 5 | Gross profit. Subtract line 4 from line 3 | **5** | 264,666 |
| 6 | Other income, including Federal and state gasoline or fuel tax credit or refund (see page C-3)   SEE STMT 1 | **6** | 221 |
| 7 | Gross Income. Add lines 5 and 6 ........................................ ▶ | **7** | 264,887 |

## Part II  Expenses. Enter expenses for business use of your home only on line 30.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 8 | Advertising | **8** | 981 | 18 | Office expense | **18** | 1,316 |
| 9 | Car and truck expenses (see page C-3) | **9** | 14,040 | 19 | Pension and profit-sharing plans | **19** | |
| 10 | Commissions and fees | **10** | 65 | 20 | Rent or lease (see page C-5): | | |
| 11 | Contract labor (see page C-4) | **11** | | a | Vehicles, machinery, and equipment | **20a** | 5,579 |
| 12 | Depletion | **12** | | b | Other business property | **20b** | |
| 13 | Depreciation and section 179 expense deduction (not included in Part III) (see page C-4) | **13** | 1,456 | 21 | Repairs and maintenance | **21** | 3,693 |
| | | | | 22 | Supplies (not included in Part III) | **22** | 6,348 |
| | | | | 23 | Taxes and licenses | **23** | 513 |
| | | | | 24 | Travel, meals, and entertainment: | | |
| 14 | Employee benefit programs (other than on line 19) | **14** | | a | Travel | **24a** | 703 |
| 15 | Insurance (other than health) | **15** | 19,958 | b | Deductible meals and entertainment (see page C-5) | **24b** | 1,753 |
| 16 | Interest: | | | 25 | Utilities | **25** | 3,391 |
| a | Mortgage (paid to banks, etc.) | **16a** | 3 | 26 | Wages (less employment credits) | **26** | 64,495 |
| b | Other | **16b** | | 27 | Other expenses (from line 48 on page 2) | **27** | 28,279 |
| 17 | Legal and professional services | **17** | 2,930 | | | | |

| | | | |
|---|---|---|---|
| 28 | Total expenses before expenses for business use of home. Add lines 8 through 27 in columns .............. ▶ | **28** | 155,503 |
| 29 | Tentative profit (loss). Subtract line 28 from line 7 .............................. | **29** | 109,384 |
| 30 | Expenses for business use of your home. Attach Form 8829 | **30** | 8,900 |
| 31 | Net profit or (loss). Subtract line 30 from line 29. | | |
| | ● If a profit, enter on Form 1040, line 12, and also on Schedule SE, line 2 (statutory employees, see page C-6). Estates and trusts, enter on Form 1041, line 3. | **31** | 100,484 |
| | ● If a loss, you must go to line 32. | | |
| 32 | If you have a loss, check the box that describes your investment in this activity (see page C-6). | | |
| | ● If you checked 32a, enter the loss on Form 1040, line 12, and also on Schedule SE, line 2 (statutory employees, see page C-6). Estates and trusts, enter on Form 1041, line 3. | **32a** [ ] All investment is at risk. | |
| | ● If you checked 32b, you must attach Form 6198. Your loss may be limited. | **32b** [ ] Some investment is not at risk. | |

For Paperwork Reduction Act Notice, see page C-7 of the instructions.

Schedule C (Form 1040) 2005

DAA

Exhibit 8 - 000055
2/24/11

MACU25 02/16/2006 12:24 PM

JIM MACKLIN   CEMENT                                    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

Schedule C (Form 1040) 2005                                              Page 2

**Part III   Cost of Goods Sold (see page C-6)**

**33** Method(s) used to value closing inventory:   a ☒ Cost   b ☐ Lower of cost or market   c ☐ Other (attach explanation)

**34** Was there any change in determining quantities, costs, or valuations between opening and closing inventory? If "Yes," attach explanation ...........................................................   ☐ Yes   ☒ No

| | | |
|---|---|---|
| **35** Inventory at beginning of year. If different from last year's closing inventory, attach explanation | **35** | 0 |
| **36** Purchases less cost of items withdrawn for personal use | **36** | |
| **37** Cost of labor. Do not include any amounts paid to yourself | **37** | |
| **38** Materials and supplies | **38** | 97,772 |
| **39** Other costs   SEE STATEMENT 2 | **39** | 480 |
| **40** Add lines 35 through 39 | **40** | 98,252 |
| **41** Inventory at end of year | **41** | 0 |
| **42** Cost of goods sold. Subtract line 41 from line 40. Enter the result here and on page 1, line 4 | **42** | 98,252 |

**Part IV   Information on Your Vehicle.** Complete this part **only** if you are claiming car or truck expenses on line 9 and are not required to file Form 4562 for this business. See the instructions for line 13 on page C-4 to find out if you must file Form 4562.

**43** When did you place your vehicle in service for business purposes? (month, day, year) ▶ ......................... .

**44** Of the total number of miles you drove your vehicle during 2005, enter the number of miles you used your vehicle for:

**a** Business ..................   **b** Commuting (see instructions) ..................   **c** Other ..........................

| | | |
|---|---|---|
| **45** Do you (or your spouse) have another vehicle available for personal use? | ☐ Yes | ☐ No |
| **46** Was your vehicle available for personal use during off-duty hours? | ☐ Yes | ☐ No |
| **47a** Do you have evidence to support your deduction? | ☐ Yes | ☐ No |
| **b** If "Yes," is the evidence written? | ☐ Yes | ☐ No |

**Part V   Other Expenses.** List below business expenses not included on lines 8-26 or line 30.

| | |
|---|---|
| TELEPHONE SERVICE BUSINESS | 6,034 |
| PAYROLL TAXES/STATE/FEDERAL | 6,374 |
| DUES AND SUBSCRIPTIONS | 438 |
| MISCELLANEOUS | 572 |
| TRUCK AND AUTO | 14,718 |
| ADDITIONAL | 143 |

**48** Total other expenses. Enter here and on page 1, line 27 ...........   **48**   28,279

DAA                              Exhibit 8 - 000056                 Schedule C (Form 1040) 2005
                                      2/24/11

*In re Debtor:  James L Macklin-  Chapter 7*
**USBC Eastern District of California Case No:  10-44610**
**Adversary No. 11-02024-E**

**DECLARATION OF JAMES L. MACKLIN IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

Exhibit 10 - 000059
2/24/11

# EXHIBIT "10"

Loan No:   0603307230

Mortgagee: JAMES LEN MACKLIN

Address:    10040 WISE ROAD
            AUBURN, CA 95603

Loan Amount:$ 532,000.00

# ALLONGE TO NOTE

PAY TO THE ORDER OF:

_____

WITHOUT RECOURSE

_____

Assistant Secretary
Accredited Home Lenders, Inc., A California Corporation

MIN # 100176106033072308          MACKLIN          Loan # 0603307230
AHL 620017.UFF                     Page 1 of 1

Exhibit 10 - 000060
2/24/11