

FILED

**02/25/11**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA
### OFFICE OF THE CLERK

In Re:   James L. Macklin

Case No.:   10-44610 Adversary 11-2024

**To Whom It May Concern:**

X,   Attached is a copy of an application/motion/objection submitted for filing without a separate Notice of Hearing with date and time set forth.   This motion/objection will be calendared <u>only</u> upon receipt of Notice of Hearing with date and time filled in along with a copy of the original application/motion/objection previously filed.

Attached is a copy of pleading(s) filed with multiple captions.  The pleading(s) will be docketed and filed in the first listed case referenced in the caption.  Copies will be placed in additional case files referenced in the caption <u>only</u> if copies are submitted for each file and are marked accordingly.

Dated:   2/25/11

For the Court
Wayne Blackwelder, Clerk

By: _____
Deputy Clerk
U.S. Bankruptcy Court
501 I Street, Suite 3-200
Sacramento, CA  95814-2322
(916) 930-4400

cc:  Case File

EDC 4-170 (Rev. 9/1/10)

FILED

February 24, 2011

CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

0003305158

**22**

Holly S. Burgess (State Bar No. 104575)
LAW OFFICES OF HOLLY S. BURGESS
680 Auburn-Folsom Road, Suite 109
Auburn, CA  95603
(530) 889-8900-Telephone
(530) 392-4641-Direct Dial
(530) 889-8988-Facsimile
hollyburgess@lohsb.com

Attorneys for Plaintiff/Debtor
JAMES L. MACKLIN

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re | CASE NO.  2010-44610 |
| JAMES L. MACKLIN, | ADV. NO. 11-02024-E |
| Debtor, | |
| | |
| JAMES L. MACKLIN, | DCN:  HSB-003 |
| Plaintiff, | **MOTION FOR PRELIMINARY INJUNCTION** |
| -vs.- | |
| DEUTSCHE BANK NATIONAL TRUST CO., AS INDENTURE TRUSTEE FOR THE ACCREDITED MORTGAGE LOAN TRUST 2006-2 ASSET-BACKED NOTES; and all persons claiming by, through, or under such person, all persons unknown, claiming any legal or equitable right, title, estate, lien, or interest in the property described in the complaint adverse to Debtor's title thereto; and CORRESPONDENT DOES 1-10, Inclusive, | **DATE:  March 17, 2011** **TIME:  1:30 p.m.** **DEPT.: 33, 501 I St., Sacramento, CA** |
| Defendant. | |

COMES NOW JAMES MACKLIN, THE PLAINTIFF, AND ASKS THIS COURT TO

GRANT AN INJUNCTION AGAINST DEUTSCHE BANK NATIONAL TRUST CO:

///

///

- 1 -

1   **MEMORANDUM OF POINTS AND AUTHORITIES**

2   **I.  INTRODUCTION**

3       1.      Plaintiff asks this court for an injunction prohibiting Deutsche, who wrongfully

4   took this property from him, when it did not have the right to do so, namely it did not own the

5   note, or the obligation thereunder.  The Deed of Trust must follow the Note.  The Note is the

6   evidence of the obligation. The obligation evidenced by the Note, as of the date of delivery to

7   Deutsche Bank (November, 2009) as indenture trustee for the benefit of "AMLT 2006-2" REMIC

8   Trust, is illegal under the laws of the REMIC Trust (IRS Rule 860 et. seq.) and under the trust

9   agreement established as the Trust Indenture and Sales and Servicing Agreement.  This represents

10   a breach of fiduciary duty and is VOID as a matter of law. Because the obligation is VOID as a

11   matter of law, it cannot establish a valid foundation of title for the indenture trustee, Defendant

12   Deutsche. Therefore, any conveyance is also VOID as a matter of law. The trustee, Defendant

13   Deutsche, assumes that the credit bid evidenced in their trustees' deed upon sale is a valid

14   conveyance, however, under Cal. Civ. Code 3439 et. seq., only a party with a valid secured

15   obligation may make such a credit bid. The evidence of the credit bid alone constitutes a

16   fraudulent conveyance.  At best, the obligation is unsecured and may not be conveyed as a credit

17   bid under California law.

18   **II.  ARGUMENT**

19       2.      A party seeking preliminary injunctive relief under Federal Rule of Civil Procedure

20   65 must show (1) a likelihood of success on the merits, (2) a significant threat of irreparable harm,

21   (3) that the balance of hardships favors the applicant, and (4) whether any public interest favors

22   granting an injunction. *Raich v. Ashcroft*, 352 F.3d 1222, 1227 (9th Cir. 2003), *vacated and*

23   *remanded on other grounds* by *Gonzalez v. Raich* 545 U.S. 1 (2005).  This case meets all the

24   criteria for the issuance of a preliminary injunction.

25       3.      Our court also uses an alternative test that requires the applicant to demonstrate

26   either: a combination of probable success on the merits and the possibility of irreparable injury; or

27   serious questions going to the merits and that the balance of hardships tips sharply in the

28   applicant's favor. *See First Brands Corp. v. Fred Meyer, Inc.,* 809 F.2d 1378, 1381 (9th Cir.

- 2 -

1987). These two tests are not inconsistent. Rather, they represent a continuum of equitable

discretion, whereby "the greater the relative hardship to the moving party, the less probability of

success must be shown." *Nat'l Ctr. for Immigrants Rights, Inc. v. INS*, 743 F.2d 1365, 1369 (9th

Cir.1984).

### 1. Plaintiff Has A Compelling Case on the Merits.

### A. The Note and Deed Were Defective from the Beginning

4.      The only possible party(ies) to this transaction who may have a claim have not

come forward. Plaintiff has asserted that the subject real property is, and always has been, un-

secured. Plaintiff is not asserting that some party in the future may or may not have claims, merely

that the property is not secured by any validly executed instrument submitted to the court or filed

with the Placer County Recorders' Office.

5.      The Note, together with the Deed, were drafted by the Defendant and their

Affiliates (See, Exhibit 1 to Declaration of Dan Edstrom bates number *000096-000097)* who had

an economic and legal advantage over the Plaintiff. The intent of the parties who drafted these

instruments was to circumvent the recording and fee requirements of the county and state wherein

the properties lie.

6.      The Note defines and describes solely the Lender, Accredited Home Lenders, Inc.,

as the Obligee/Beneficiary under the Note. Nowhere within the four corners of the Instrument is

the name MERS, Inc., MERSCORP., or MERS ever cited, referred to, or expressed or implied,

therefore, it its undisputed that the document names the Lender/Obligee as Accredited Home

Lenders, Inc. At section eight (8) of the subject Note,( See, Exhibit 1 to the declaration of Jim

Macklin)  it states *"...including the promise to pay the full amount. Any person who is a*

*guarantor, surety or endorser of this Note is also obligated to do these things. . "* If Defendant

makes the claim that the "Allonge" is the evidence of the endorsement to the Trust in blank, as

required by the REMIC Trust provisions, then the original Lender, or its' successor in interest, is

the Obligor under the terms of the Note as it was drafted by the Defendant(s). (.See, Exhibit 10 to

the declaration of Jim Macklin , the allonge)

7.    Within the Deed of Trust, as signed by Plaintiff, the drafters of this trust agreement have erroneously named MERS, Inc. as the Nominee Beneficiary for Accredited Home Lenders, Inc. "Accredited".  Nowhere within the four corners of this document is there a reference to an agency appointment, agreement, or expressed or implied agency of MERS to the Lender See, Cal. Civ. Code §§§ 2306, 2309, 2932.5; Cal. Civ. Code § 2932.5 "When beneficial interest under the promissory Note is assigned, the assignee may exercise a security interest in real property provided that the assignment is "duly acknowledged and recorded".  Under these California Code requirements, the Deed of Trust is defective and cannot convey any beneficial interest through the use of MERS in any capacity. Therefore, the Deed is at the least voidable, and appears to be void under California laws. No security interest can be conveyed by this defective Instrument, which was intentionally drafted by Defendant(s) and their Affiliates. At § 24 of the Deed of Trust 88(EX 2)  subject Deed, it states: " The Lender, at its' option…may substitute the trustee by an Instrument acknowledged and executed by the lender."  Nowhere within this Instrument, as drafted by the Defendant(s), does it state, imply, or give reference to the Nominee of the Lender being authorized to substitute the trustee.  Under Cal. Civ. Code § 2309, "an oral authorization is sufficient….except that an authority to enter into a contract required by law to be in writing can only be given by an Instrument in writing." Since the previous language of the Deed is clear and unambiguous as to the requirement of an Instrument acknowledged and executed, the necessity of compliance with Cal. Civ. Code is mandatory by any alleged agent, which MERS never was or can be.

8.    MERS was never the Obligee, never had a right to payment, never received a payment, never had an authorized agency agreement, never held the Note, never conveyed the Note, never had the authority to make substitutions of trustee, and never had any pecuniary or financial interest in the Note, together with the Deed of Trust. These facts are undisputed.  By virtue of conversion of a negotiable Instrument (Note) into a non-negotiable security (certificate of security), the Defendant has eliminated the individual security interest of the Note into a completely different obligation, known as "without recourse". This method of financing virtually guarantees that the two principals to the transaction will never know who one another are and also

1   eliminates the newly commingled good(Note) as a secured transaction. Under UCC 9-336,

2   governing securities, any commingled good takes on a new interest separate from the original

3   security. The investors have absolutely no rights to the asset since it was never lawfully held by

4   this trust, or any trust Plaintiff has been able to discover. The intermediaries simply act as fee-

5   based, un-authorized agents of both parties, who are  without the knowledge at the beginning to

6   understand who or what they may or may not owe a sum certain.

7         9.     Plaintiff refers the court to the following recent Bankruptcy cases whereby MERS'

8   entirety authority to convey interests related to a mortgage is permanently and irrevocably

9   quantified. *In Re: Ferrell L. Agard*, (2011)  USBC, Eastern Dist. N.Y. Case No. 810-77338.  In

10   Agard, the court found that MERS and its partners decided to create a business model designed to

11   avoid the requirements of mortgage recording processes.  The court found nothing presented in

12   evidence that the note in question was properly transferred or endorsed as required by New York

13   law.  As argued in this brief, California law requires nothing less.        "

14       In *LaSalle Bank, N.A. v. Bouloute*, No. 41583/07, 2010 WL 3359552, at *2 (N.Y. Sup. Aug. 26, 2010,

15   the Court concluded that MERS must have some evidence of authority to assign the mortgage in

16   order for an assignment of a mortgage by MERS to be effective. "Because MERS' members, the

17   beneficial note holders, purported to bestow upon MERS interest in real property sufficient to

18   authorize the assignments of mortgages, the alleged agency relationship must be committed to

19   writing by application of the statute of frauds.  In *Landmark v. Kesler*, a decision on MERS, the

20   Kansas Supreme court stated "The parties appear to have defined the word [nominee] in much the

21   same way that the blind men of Indian legend described an elephant- their description depended

22   upon which part they were touching at any given time. *Landmark Nat'l Bank v. Kesler*, 216 P. 3d

23   158 (Kansas, 2009).

24        In this case Plaintiff has shown the irrefutable and uncontroverted evidence to this Court

25   that MERS attempted to convey interests which they did not possess throughout the Defendants'

26   self-imposed chain of title. Therefore, none of Defendants' actions can be justified.  The power of

27   sale clause within the subject Deed of Trust is void and unenforceable by Defendant and their

28   Affiliates.

**B. The Trust and its' Requirements:**

10.    Defendant claims to represent the beneficial interests of the "Accredited Mortgage Loan Trust 2006-2" REMIC pass-through trust. This trust has been registered under the Securities and Exchange Commission for mortgage-backed securities issuance of certificated interests. Under the laws of New York, the governing trust documents (Sales and Servicing Agreement, Trust Indenture, Prospectus), which fall under New York law. See, Exhibit 2 to declaration of Dan Edstrom. The sales and servicing agreement clearly defines the necessary chain of assignments and necessary endorsements that must be evident in order for the asset (Note and Deed) to be conveyed into this trust and by what date (closing date; June 30th, 2006). See, Exhibit 1 to the declaration of Dan Edstrom, pages 000095-000096.

11.    New York Trust Law, which governs and restricts the actions of the trustee, Defendant Deutsche, states every sale, conveyance or other act of the trustee in contravention of the trust is void. N.Y. CLS EPTL § 7-2.4, *Application of Muratori*, 183 Misc. 967, 970 (N.Y. Sup. Ct. 1944); See also: Dye v. Lewis, 67 Misc. 2d 426, 324 NYS2d 968 (1972 4th Dept.). "The authority of the trustee to whom a mortgage had been delivered under a trust indenture was subject to any limitations imposed by the trust instrument, and every act in contravention of the trust was void."

12.    In order to effectively assign a right in this case, the necessary chain of assignments would have been 1) Accredited must have assigned the Note and deed to MERS by physical transfer and delivery and be duly acknowledged and recorded (Cal. Civ. Code §§ 2932.5, 2306, 2309); 2) MERS, Inc. must assign, by the same method as above, to Accredited Mortgage Loan REIT Trust (Depositor); 3) Accredited Mortgage Loan REIT Trust must assign, as above, to Accredited Mortgage Loan Trust 2006-2 "AMLT 2006-2" must assign, as above, to Deutsche Bank Nat'l Trust Co., as Indenture Trustee on behalf of the equitable investors. This amounts to a total of four (4) separate and individual assignments and endorsements which were never executed. Under NY Code § 7-2.4, the asset must be conveyed pursuant to the language of the trust  agreement …punctiliously, or the conveyance is void.  No attempt to comply with this mandate is evident anywhere in any records evidenced to any Court.

13.    Further, assuming arguendo that MERS did have the authority to convey any beneficial interests, the Note and Deed must have been conveyed by June 30th, 2006 (See, Exhibit 1 to the declaration of Dan Edstrom, pages 000095-000096). Without these requisite assignments, the trust lacks the critical standing to bring any action, especially by its' trustee, Defendant Deutsche Bank. Any alleged attempted conveyance is void from the beginning.

14.    The only alleged assignment to Defendant of beneficial interest comes from an alleged MERS agent See, Exhibit 3 to the declaration of Jim Macklin, wherein a "Wayne Hessler", as a duly appointed officer of Select Portfolio Services, as Attorney-in-fact for Deutsche Bank, on behalf of the certificate holders of "AMLT 2006-2", executes a Substitution of Trustee in favor of "Quality Loan Services ("QLS") which then grants the alleged authority for "QLS" to convey title to Deutsche in the subsequent trustees sale. Under Cal. Civ. Code § 1095, this represents a counterfeit and a forgery executed by Defendant, Deutsche and its' Affiliates at the direction of the Defendant.    A series of impossibilities exists for many reasons, not the least of which is: "Wayne Hessler" executed this substitution of trustee before the Corporate assignment of Deed granted any beneficial interest to Deutsche Bank as Indenture Trustee (See, Exhibit 3, the declaration of Jim Macklin) which would grant authority to "Wayne Hessler" to substitute any trustee. But worse, the Corporate Assignment of Deed of Trust, together with the Note, is a blatant impossibility. If the Note was assigned into this trust back in June, 2006, how and why would a second assignment be effected or even necessary? And where is the original, trust mandated assignment by Accredited or MERS? And, how would MERS purport to assign the beneficial interests of its' principal, Accredited Home Lenders, Inc., during the pendency of their bankruptcy without the express written permission and authority of the Bankruptcy Trustee (filed April, 2009)? Without the necessary chain of assignments and endorsements, the "AMLT 2006-2" REMIC Trust cannot ever make the claim that it is the creditor and, thus, Deutsche Bank as Indenture Trustee, cannot represent their interests in this, or any, Court in California.

15.    As noted at *In Re Vargas, 396 B.* 511, *519-17,* under the Federal Rules of Evidence, particularly Rule 803, "MERS could never satisfy the requirements of the application of computerized records in the Ninth (9th) Circuit. MERS has no employees and no first-hand

1   knowledge of evidence necessary for testimony." Again, assuming arguendo that MERS made a

2   valid assignment, they never held the Note or were entitled to payment, and, there is no competent

3   fact witness that Defendant Deutsche may rely upon for testimony or has brought forth in this

4   matter.

5          **C. Notice of Default was Defective**

6          16.    Plaintiff contends there is a serious misrepresentation and in fact false

7   representation in the Notice of Default, the Notice of Trustee's Sale and the Trustee's Deed Upon

8   Sale.

9          17.    Material misstatements allow a court to void a trustee's sale. *Angell v.Superior*

10   *Court,* 73 Cal.App.4th 691, 699-700 (1999); *Little v. CFS Service Corp.,* 188Cal.App.3d 1354,

11   1360 (1987). Here, the Notice of Default identified MERS as the beneficiary, rather than

12   Accredited or Deutsche (See, Exhibit 3to the declaration of Jim Macklin)  This statement is

13   crucial, as the beneficiary determines when a default has occurred and what the homeowner can do

14   to cure it. *In re Maisel,* 378 B.R. 19, 21- 22 (Bankr. D. Mass. 2007); *In re Nosek,* 386 B.R. 374,

15   380 (Bankr. D. Mass. 2008). A homeowner who finds himself in default wants to contact the

16   entity that has the power to deal with his loan. It thus is vital that the Notice of Sale identify the

17   *actual* beneficiary.  In Mr. Macklin's case, the Notice of Default said the beneficiary was MERS.

18   (Macklin Dec., at ¶ 4, Exhibit 1, at page 000003.)  However, it directed him to contact  Windsor

19   Management Company for help, rather than MERS. (*Ibid.*)    According to the  Trustee's Deed of

20   Sale, Quality Loan Service Corporation was the beneficiary under Macklin's Deed of Trust, who

21   sold the property to Deutsche. (See, Exhibit 3 to the declaration of Jim Macklin Macklin)

22   However, the Accredited Mortgage Loan Trust 2006-2 Asset Backed Notes was created on June 1,

23   2006, according to the Master Sales and Servicing Agreement filed with the Securities and

24   Exchange Commission. ( By that point, the Accredited Mortgage Loan Trust 2006-2 Asset Backed

25   Notes had to have purchased the Macklin loan, along with thousands of others.

26          18.    According to Deutsche's own documents, it believes it owned the loan as of 2006.

27   When the Notice of Default was issued in 2008, it should have identified Deutsche as the trustee,

28   rather than MERS. The Notice should have directed Macklin to Deutsche, rather than Windsor

1   Management. The Notice of Default made a material misrepresentation when it said the

2   beneficiary was MERS and advised Macklin to call Windsor to keep his home. That

3   misrepresentation voids the sale and means the Trustee's Deed of Sale should be cancelled and

4   title restored to Mr. Macklin.

5   **D. The Sale of Mr. Macklin's Home is Void**

6   19.    The note, at issue here, made payable to Accredited Home Lenders, Inc., is a

7   negotiable instrument as defined by UCC and Cal. Commerical Code, providing for interest and

8   an unconditional promise to pay the lender, Cal. Comm. Code §3104. A party is entitled to

9   enforce a negotiable instrument if it is "the holder of the instrument, a nonholder in possession of

10  the instrument who has the rights of a holder, or a person not in possession of the instrument who

11  is entitled to enforce the instrument. *Cal. Comm. Code §3301.*

12  20.    The court may ask who is the "holder of the note? Cal Commercial Code

13  §1201(20) defines a holder as "the person in possession if the instrument is payable to bearer or, in

14  the case of an instrument payable to an identified person, if the identified person is in possession."

15  "Mere ownership or possession of a note is insufficient to qualify an individual as a 'holder'."

16  *Adams v. Madison Realty & Dev. Inc., 853 F.2d 163, 166 (3d Cir. 1988).* Where, as here, the

17  ownership of an instrument is transferred, the transferee's attainment of the status of "holder"

18  depends on the negotiation of the instrument to the transferee. *Cal. Comm. Code §3201(a).*

19  21.    The two elements required for negotiation, both of which are missing here, are the

20  transfer of possession of the instrument to the transferee, and its endorsement by the holder. *Cal.*

21  *Comm. Code§3201(b).* Also, *See: Cal. Comm. Code §3302(a),(1),(c), wherein "A person does not*

22  *acquire rights of a holder in due course of an instrument taken (1) by legal process or by purchase*

23  *in an execution, (2) by purchase in an execution, bankruptcy, or creditors' sale or similar*

24  *proceeding.* The instrument may not bear evidence of a forgery. Plaintiff contends the Allonge

25  produced to him by Defendants is a forgery. See, Exhibit 10 to the declaration of Jim Macklin.

26  As to the issue of possession, we are not certain on this record whether the party in possession of

27  the note is before this court. What we do know is that the note was allegedly purchased by the

28  "Depositor" (Accredited Mortgage REIT Trust, a different entity than the Accredited Mortgage

1    loan Trust 2006-2) to the REMIC Trust but never came into the possession of the Depositor, as

2    evidenced by the lack of recording a duly acknowledged and recorded instrument within the land

3    title records in Placer County. Because the Depositor never had possession of the note, it can not

4    qualify as a "holder" under the California UCC and, therefore, cannot ever assign interest in that

5    which it never possessed.

6         22.    The second element required to negotiate an instrument to the transferee, i.e.,

7    endorsement of the instrument by the holder, is also missing here. *Cal. Comm. Code §3204.* An

8    endorsement means "a signature, other than that of a signer as maker, drawer, or acceptor, that

9    alone or accompanied by other words is made on an instrument for the purpose of negotiating the

10   instrument, restricting payment of the instrument, or incurring endorser's liability on the

11   instrument   The endorsement may be on the instrument itself, or it may be on "a paper affixed to

12   the instrument." Id. Such a paper is called an "allonge", defined as "[a] slip of paper sometimes

13   attached to a negotiable instrument for the purpose of receiving further endorsements when the

14   original paper is filled with endorsements." See Black's Law Dictionary at 88 (9th Ed. 2009).

15   The significance of endorsement and affixation requirements to achieve holder status, and thereby

16   qualify to enforce a note against the maker, was explained by the Third Circuit in *Adams v.*

17   *Madison Realty & Dev. Inc.*, 853 F.2d at 168. The court explained that the maker of the note must

18   have certainty regarding the party who is entitled to enforce the note. From the maker's standpoint,

19   therefore, it becomes essential to establish that the person who demands payment of a negotiable

20   instrument, actually has been lawfully assigned the Note, together with the Deed, with the

21   necessary and identifiable endorsements.  Otherwise, the obligor is exposed to the risk of double

22   payment, or at least to the expense of litigation incurred to prevent duplicative satisfaction of the

23   instrument.  These risks provide makers with a recognizable interest in demanding proof of the

24   chain of title.  Consequently, plaintiff here, as maker of the note, may properly press defendant to

25   establish its holder status.

26        23.    Since Defendant Deutsche has only offered into evidence in this court a rebuttable

27   presumption of "duly perfected" title in the form of a trustees' deed upon sale, and has never made

28   the claim that it is or was a holder of the original Note with lawful endorsements, containing all of

the intervening assignments, as required by the controlling Sales and Servicing Agreement, (See, Exhibit 2 to the declaration of Dan Edstrom, pages   ) they cannot dispossess Plaintiff of his property.

24.     Further, Defendant must make the claim before this court that they are, in fact, the true creditor and holder of the original instrument Note, with all of the proper endorsements and duly acknowledged and recorded intervening assignments of the Deed, with the entitlement rights to enforce such. Defendant never even alleges that they are a holder who is entitled to enforce the Note, nor can they, based upon the evidence before this Court. The allonge See Exhibit 10 to the declaration of Jim Macklin, is facially defective and contains absolute proof of Defendants' attempt to create a valid endorsement without authority, thereby evidencing a false and misleading filing in this Court. There is not even a date stamp upon which the Court may rely upon as to accuracy and timeliness of the alleged assignment. Also, the allonge evidences only a "mark" as a signature without identifying an individual who may be called upon to testify as to the validity of this endorsement. Lastly, the allonge contains no Notary stamp to verify the date and person authorized to execute such an instrument.

25.     Under the chain of intervening assignments required by the Sales and Servicing Agreement, (See, Exhibit 2 to the declaration of Dan Edstrom, pages 000096-000098), which is the controlling document that would evidence the mortgage loan trust as the real party in interest, it is impossible for Defendant to make the claim that these series of mandatory assignments and endorsements are lawfully executed, establishing the legal foundation for their alleged trustees deed upon sale..

26.     Defendant Deutsche Bank acts as agent, allegedly, for the equitable investors of the REMIC Trust and cannot act outside of the authority or capacity of its' principal.  See, *e.g., Greer v. O'Dell* , 305 F.3d 1297, 1303. The signatures of the remaining certificate-holders of "AMLT 2006-2" REMIC Trust, in their voting majority and signed under penalty of perjury, must be evidenced to this court in order for the equitable claim of a person entitled to enforce and possession of the original Note, together with the Deed, to be made by Defendant on behalf of  the

1    investors as principal. (See, Exhibit 1to the declaration of Dan Edstrom) *Trust Indenture, Section*

2    *5.03, 5.06, mandatory vote by majority authorizing any and all actions by the trustee, Deutsche.*

3         27.    The entirety of this matter, as discussed above, has been adjudicated by the

4    Bankruptcy Court  in nearly identical fashion by Chief Judge Judith Wizmur, *U.S. Bankruptcy*

5    *Court, District of New Jersey, In Re: John T. Kemp; Kemp v. Countrywide, Case No. 08-18700-*

6    *JHW. Nov. 16th, 2010.*

7         28.    In Re: Rickie Walker, Eastern District of California, Bankruptcy Case No:  10-

8    21656 the court noted, It is well established Ninth Circuit Law that assignment of the Deed does

9    not assign the underlying Note and the right to payment,  and that the security interest is an

10   incident of the debt : 4 Witkin Summary of California Law, Secured Transactions in Real Property

11   § 105 (10th edition)." (In Re: Walker); In re: foreclosure cases, 521 F Supp. 2d 650, 653 (S.D.

12   Ohio 2007); In Re Vargas B.R. 511, 520 (BK. CD Cal. 2008); Landmark Nat'l Bank v. Kesler,

13   216 P. 3d 158 (Kansas, 2009); La Salle Bank v. Lamy, 824 N.Y.S. 2d 769 (N.Y. Sup. Ct. 2006);

14   *Also See: In Re Agard, N.Y., Case No. 810-77338, US B.K., Eastern Dist. N.Y.*

15        29.    Under Cal. Civ. Code 2936 the holder of the note prevails regardles of the order in

16   which the interests were transferred.  See, *Adler  v. Sargen*(1895) *109 Cal. 42, 49-50.*

17        30.    Defendant has offered no evidence that the rebuttable presumption that the trustees'

18   deed is valid.  The trustees' deed is predicated on a series of facially and substantively false and

19   misleading documents known by defendant to be criminally false and defective See, Cal. Penal

20   Code §§§ 115, 530.5, 470-483 et. seq. Defendant, in fact, has offered into evidence in the related

21   civil case, an "allonge" which again, on its' face, is incomplete and void for defect. See, Exhibit

22   10 to the declaration of Jim Macklin, the allonge.  An allonge is only allowable if there is no room

23   on the Note itself for an endorsement. See, *Pribus v. Bush* (1981)  118 Cal. App. 3d 1003.

24        31.    The copy of the Note, is disputed as to its' authenticity by Plaintiff, I as the back

25   side of the instrument has more than enough room to provide for the missing endorsement, much

26   like a person would endorse the back of a check (negotiable instrument). Nowhere on this allonge

27   is a named person identified, a date of the alleged endorsement, or a Notary stamp evident. The

28   allonge is ineffective and shows that Defendant  is not a holder-in-due-course because they are not

1    a holder at all.  Plaintiff is informed and believes that as a result of the woefully poor evidence

2    presented by Defendant in this case, the most likely creditor, if any now exists, would be the

3    original "lender", Accredited Home Lenders, since no other form of legal or lawful assignment or

4    endorsement is in evidence before this court,  yet they have not brought forth a claim, nor would

5    they be able to under their current bankruptcy status.  It appears that the Plaintiffs'Note and deed

6    were not named as an asset in the Bankruptcy estate of Accredited Home Lenders, Inc. Failure to

7    list a mortgage loan as property of the bankruptcy estate is a criminal violation of *Title 18, U.S.C §*

8    *152* .

9         32.     Under Uniform Commercial Code section 3-202(2), an allonge must be so firmly

10   affixed to the instrument that it becomes part of it in order for the endorsements to be valid.

11   Endorsements on an allonge are often considered invalid if there is still room on the instrument for

12   endorsements. See: New York State Law Re: Allonges; Blacks Law, 9th at 88, Definition of

13   "allonge". Negotiable Instruments, especially promissory notes as an unconditional promise to pay

14   a sum certain to a person certain, fall under the strict authority of the Uniform Commercial Code.

15        33.     "[Defects] and irregularities in a sale under a power render it merely voidable .

16   However, substantially defective sales have been held void where the defect lay in a particular as

17   to which the statutory provision was regarded as mandatory.  See, *55 Am.Jur.2d, Mortgages, §*

18   *746*, p. 673) § 775, p. 691.  Because the Trustee's Deed and the Notice thereof  is predicated upon

19   the authority of the trustee, as substituted by MERS without authority, the recitals within the

20   trustee's sale is void.

21        34.     Importantly, the Loan Application (See, Exhibit 4 to the declaration of Jim

22   Macklin) and its Accompanying Underwriting Transmittals (See, Exhibit 5 to the declaration of

23   Jim Macklin),  Credit Report, Appraisal of Real Property (See Exhibit 4 to the declaration of Jim

24   Macklin, and all documents See, Exhibit 6 -8 to the declaration of Jim Macklin used internally as

25   Authority to "Lend" Are forgeries and filled with false information as input by Defendant and

26   Defendants' affiliates.

27        35.     As can be seen on Exhibit 6, the original lender, "Accredited, imputed, or caused

28   to be imputed, certain vital information as it regarded Plaintiffs' monthly income, length of time

- 13-

residing at subject property, assets on hand (cash in the bank), value of subject real property, years of employment, and total debt-to-income ratio. This is verified by the brokers' admission (See, Exhibit 6 to the declaration of Jim Macklin, page 4, bottom left) that, in fact, the entire loan application information was derived from a telephone interview, yet Plaintiff provided all income and tax information as it was a full doc. transaction. The appraised value given to the subject real property is defined as $615,000.00, however, the appraised value jumps to $665,000.00 without any notice to the Borrower (See, Exhibit 4 to the declaration of Jim Macklin). The Borrower is imputed as having $65,000.00 in a Wells Fargo account that never had that amount in it, ever. Plaintiffs' debt-to-income ratio is expressed as approximately 21%. This was false. In Exhibit 6, to the declaration of Jim Macklin, the confirmation of a "full doc" loan is evidenced by the lender, Accredited, meaning that the Borrowers' income tax returns and income statements must have been verified by some person of authority within the lenders' personnel. However, a simple review of the Plaintiffs' 2005 federal income tax return, See, Exhibit 8 to the declaration of Jim Macklin) Exhibit Ex. 8, shows that Plaintiff earned $100,484.00 in the taxable year prior to the loan year, not the imputed amount of $352,000.00. This false and misleading information was inserted into Plaintiffs' application, without his knowledge, asserting that the monthly income of Plaintiff was $29,360.03. Because this was, in fact, a full doc loan, and Plaintiff supplied the lender, an affiliate of defendant, with the true and correct tax returns and income statements, the lender has represented false and misleading information to the true equitable investors.

36.    This amounts to securities fraud. Exhibit 9 to the declaration of Jim Macklin indicates that a "warehouse lender" was used in this transaction, which is evidence of a violation of Reg. Z (table funding) and is further evidence that Plaintiff had no opportunity to know the true character of the loan or its' terms and conditions as defined by the REMIC Trust documents.

37.    The lender conveyed a predatory loan into the securitization trust and blatantly violated the terms and conditions of the "AMLT 2006-2" trust. This also violates N.Y. laws of trust and  CLS EPTL § 7-2.4 apply here, as well. The trust cannot hold a predatory loan, or its' payment stream as a derivative, as an asset of the trust or it violates

the trust agreements. The lender, Accredited, was acting in concert with Defendant, Deutsche Bank, as evidenced by the trust agreements themselves. Signatures by both lender and Defendant acted in concert and filed these documents with the S.E.C., under oath and penalty of perjury.

>   E.  *Mers, Windsor Mangement Company, Quality Loan Service Corporation had No Power to Foreclose as they did not hold the requisite interest in the Note or Deed of Trust.*

38.     The real question is who legally had the power to begin the foreclosure on Mr. Macklin's home by declaring a default.  As one court has held, "those parties who do not hold the note or mortgage and who do not service the mortgage do not have standing to pursue motions for relief or other actions arising from the mortgage obligation." *In re Nosek,* 386 B.R. at 380; *In re Schwartz,* 366 B.R. 265, 270 (Bankr. D. Mass. 2007).  Another court ruled, "The plaintiff must show that it is the holder of the note and the mortgage at the time the [foreclosure] complaint was filed.  The foreclosure plaintiff must also show, at the time the foreclosure action is filed, that the holder of the note and mortgage is harmed, usually by not having the received payments on the note." *In re Foreclosure Cases,* 521 F.Supp.2d 650, 653 (S.D. Ohio 2007).

39.     These cases follow an old rule of promissory note law—only the owner or "holder" of a note can enforce it. "'Holder' with respect to a negotiable instrument, means the person in possession if the instrument is payable to the bearer. . . .[¶] The term 'holder' is similarly defined when used in connection with a mortgage. . . (mortgage holder is 'one to whom property is mortgaged; the mortgage creditor or lender.'" *In re Nosek,* 386 B.R. at 380, *quoting* M.G.L.A. 106 § 1-201 (20), *and* BLACK'S LAW DICTIONARY, 1034 (8th ed. 2004).

40.     California law follows this rule, as the California courts only allow the holder of a mortgage to enforce rights under the mortgage, including the right to foreclosure on and sell the property. *Pribus v. Bush,* 118 Cal.App.3d 1003, 1009-1010 (1981).  This rule is a logical extension of the principle that only parties to a contract can sue to enforce it. *Buckner v. Tamarin,* 98 Cal.App.4th 140, 142 (2002), *quoting Benasra v. Marciano,* 92 Cal.App.4th 987, 990 (2001). During the foreclosure proceedings, and during the unlawful detainer action, Deutsche never

1    offered any documentary proof that it owned Macklin's loan. It never proved it was the "holder."

2    It never produced evidence that MERS or Accredited had assigned it the note and that it had

3    recorded the assignment. (See, the declaration of Jim Macklin, paragraphs 17-20)

4         41.    The California foreclosure statutes must be strictly construed. Failure to follow the

5    statutes means a foreclosure sale must be overturned. *Anderson v. Heart Federal Savings and*

6    *Loan Association,* 208 Cal.App.3d 202, 211 (1989); *Miller v. Cote,* 127 Cal.App.3d 888, 894

7    (1982). The statutes require that the actual holder of the note prove it is the owner when it starts

8    the foreclosure process. Because Deutsche never presented evidence it was the holder of

9    Macklin's loan, and cannot prove ownership now, the foreclosure on Macklin's home should be

10   overturned.

11        *F.  The Deed of Trust must be Strictly Construed*

12        42.    Deeds of Trust are governed by the law of trusts, but, because the power of sale is

13   drastic, the Deed of Trust must be narrowly interpreted. *Bank of America v. La Jolla Group,* 129

14   Cal.App.4th 706, 712 (2005). "A power of sale in a deed of trust is a creature of contract, arising

15   from the parties' agreement. . . . The statutory scheme governing non-judicial foreclosures does

16   not expand the beneficiary's sale remedy beyond the parties' agreement, but instead provides

17   additional protection to the trustor. . . ." *Ibid.* Mr. Macklin is the Trustor of his own trust. The

18   Macklin Deed of Trust said that it secured "to Lender: the repayment of the Loan, and . . . the

19   performance of Borrower's covenants and agreements under this Security Instrument and the

20   Note. . . ." (See, Exhibit 2 to the declaration of Jim Macklin).  The Deed of Trust included power

21   of sale language, but required the "Lender" to give notice to Macklin if it intended to declare a

22   default and sell the property.  (See, Exhibit 2 to the declaration of Jim Macklin) The "Lender "was

23   Accredited.   The Deed of Trust never defined the word "Lender" to include possible successors or

24   assigns of Accredited.   Strictly construed, the Deed of Trust gave Accredited alone the right to

25   declare a loan default. The document does not mention MERS, Windsor Management or Qualilty

26   Loan Service Corporation.  Accredited drafted the document and it was presented to Mr. Macklin

27   on a "take it or leave it" basis.  This is an adhesion contract and must be construed against the

28

1   drafter. Accredited which is now in bankruptcy, remains responsible for any deed of trust defects.

2   Those defects should not be ignored so Deutsche can take Mr. Macklin's home.

3         43.    It is an undisputed fact that MERS has never owned, held, or been a party entitled

4   to enforce the Note in this instant matter. MERS has never been named or implied as the obligee

5   under the Note).

6         44.    In California, MERS cannot be the Beneficiary on any Deed absent being the

7   obligee of payment. MERS was never the trustee under the deed of Trust. As the beneficiary

8   only, MERS was never the oblige under the note and had no powers of trustee as set out Cal.

9   Probate Code §17200. However, under the deed of trust in this case, Mr. Macklin is the

10   "remainder beneficiary" under the subject Deed and has the right to direct the trustee of a

11   defective Deed of Trust. (See, Exhibit 2 to the declaration of Jim Macklin)

12         45.    The deed has erroneously named MERS as beneficiary without the corresponding

13   Note ever naming MERS anywhere within the Instrument. Since defendants' sole representation to

14   this court is the rebuttable presumption that it somehow has magically acquired beneficial interest

15   by assignment from MERS, a party who never possessed the Note or was entitled to payment

16   under the Note, then the burden of proof falls upon the party making such a claim. As this court

17   recognizes, MERS as the beneficiary under the Deed of trust, must be the oblige. The beneficiary

18   must be the obligee of the secured transaction (usually the payee of a Note), because otherwise the

19   deed of trust in its' favor is meaningless. *Watkins v. Bryant* (1891) 91 C 492; *Nagle v. Macy*

20   (1858) 9 C 426. The deed is merely an incident of the obligation and has no existence apart from

21   it. *Goodfellow v. Goodfellow* (1933) 219 C 548; *Adler v. Sargent* (1895) 109 C 42; *Turner v.*

22   *Gosden* (1932) 121 CA 20.

23         46.    The only assignment ever recorded by MERS was during the pendency of its'

24   principal, Accredited's bankruptcy. Because, MERS cannot and does not possess "agency

25   status", as directed by a writing it cannot effect any transfer or assignment. *See, Cal. Civ. Code §*

26   *230...: "agent can never have authority, actual or ostensible, to do an act which is...known to be a*

27   *fraud upon the principal."*

28

47.    In this case, there is no writing authorizing MERS to transfer a beneficial interest under the note. Under, Cal. Civ. Code§ 2309... "an oral authorization is sufficient...except that an authority to enter into a contract required by law to be in writing can only be given by an instrument in writing." Further, under Cal. Civ. Code § 2932.5... "when beneficial interest under the promissory note is assigned, the assignee may exercise a security interest in real property provided that the assignment is "duly acknowledged and recorded. There is no such assignment, much less a acknowledged or recorded. MERS was regularly used by the banking industry to record false deeds and other untrue documents in the County Recorder's Office, without the proper assignment to do so. This entire transaction is a violation of California recording laws. Furthermore, it is an unfair business practice prohibited by California Business and Professions Code §17200. While physical possession of the note is not required, a recorded interest in the note must be both acknowledged and recorded. Under California Civ. Code § 2932.5, when the beneficial interest under the promissory note is assigned, the assignee may exercise a security interest in real property provided that the assignment is "duly acknowledged and recorded." No such recording exists in this case.

48.    Defendant has attempted to evidence a rebuttable trustees' deed which, upon inspection of the preceding foundational recordations made by showing this is a false deed. See, Macklin Exhibit 3. The filing of and presentation of these false documents, Defendants' vexatious pleadings (See *Yau v. Deutsche*, U.S. District Court for the Central District, Case No: SACV11-6 JVS) throughout the both the federal and state court systems, represents a pattern of conduct by the Defendant(s) against the citizens of this state. The Court must discover the substance of the contentions presented by Defendant, especially since the Plaintiff has rebutted the presumption of validity of the recorded documents.

49.    11 U.S.C. Section 105(a) permits a bankruptcy court to issue remedies for "wrongful conduct, such as bad faith or unreasonable, vexatious conduct, by any party or representative that has appeared before the court." *In re Cabrera-Mejia*, 402 B.R. 335, 346 (Bankr. C.D. Cal. 2008). Pursuant to section 105(a), a court may issue sanctions where a party or counsel has violated a court order or rule. *In re Evergreen Sec., Ltd.*, 570 F.3d 1257, 1273 (11th

Cir. 2009); *Galloway v. EMC Mortgage Corp. (In re Galloway)*, 05-13504, 2010 WL 364336, at

*5 (Bankr. N.D. Miss. Jan. 29, 2010) (imposing sanctions for violation of a confirmation order); *In*

*re Stone*, 166 B.R. 269, 274 (Bankr. W.D. Pa. 1994).  A court may issue sanctions pursuant to

section 105(a), among other reasons, if a party has made false statements or filings to the court.

*See Goldman v. Morgan (In re Morgan)*, 573 F.3d 615, 628 (8th Cir. 2009) (affirming removal of

chapter 13 trustee as sanction pursuant to section 105(a) for giving misleading testimony); *Watson*

*v. Stonewall Jackson Mem'l Hosp. Co. (In re Watson)*, No. 10-1292, 2010 WL 4496837, at *3

(Bankr. N.D.W.Va. Nov. 1, 2010).  "When a creditor files a false or fraudulent proof of claim,

which is deemed allowed by § 502(a), and entitled to prima facie presumption of validity and

amount by Rule 3001(f), the creditor is abusing the bankruptcy process."); *In re Jacobsen*, No. 07-

41092, 2009 WL 3245418, at *16 (Bankr. E.D. Tex. Sept. 30, 2009) (imposing sanctions pursuant

to section 105(a) against 3 debtor for filing materially misleading schedules and falsifying other

documents used in the bankruptcy proceeding); *In re Varona*, 388 B.R. 705, 717 (Bankr. E.D. Va.

2008) (after extended analysis, concluding that "the Court's power to remedy and punish for the

filing of a false or fraudulent claim is within the strictures of its authority pursuant to 11 U.S.C. §

105").

      50.     The remedial use of section 105 is not limited by a requirement that bad faith be

demonstrated for the court to act. *In re Dempsey*, 247 F. App'x 21, 25 (7th Cir. 2007) (holding

court's use of section 105(a) to impose a one-year filing bar was justified despite absence of bad

faith); *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1190 (9th Cir. 2003) (holding that a

court's use of its contempt power under section 105 does not require bad faith); *Bartock v. BAE*

*Systems Survivability Sys., LLC (In re Bartock)*, 398 B.R. 135, 161 (Bankr. W.D. Pa. 2008);

*Cochran v. Reatch (In re Reath)*, No. 06-1531, 2006 WL 3524458, at *6 (Bankr. D.N.J. Dec. 6,

2006); *see also In re Evergreen Sec., Ltd.*, 570 F.3d at 1273 (requiring bad faith for a court to

sanction a litigant pursuant to its inherent authority but not mentioning bad faith as a requirement

for sanctioning a litigant pursuant to section 105). The court's power to remedy an abuse of

process or the violation of a court's order should not hinge on the intent (or lack thereof) of a

litigant, but rather on the effect that a litigant's actions have on the court's proceedings regardless

of whether the abuse or violation was in bad faith or otherwise. Plaintiff is informed and believes that Defendant has purposefully failed to file any proof of claim in this case to avoid the certainty of perjury and fraud upon this Court. The reliance of Defendant on the invalid, trustees' Deed upon Sale which was not surprisingly filed as an "accommodation only" to avoid liability and culpability, shows the intent of omission of foundation evidence supporting their claim.

51.     If the court cannot declare the true creditor in this case, at least it can declare Deutsche has no standing a creditor in this case and that it wrongfully holds title to property which rightfully belongs to Mr. Macklin.

*G. Deutsche is Not a Bona Fide Purchaser*

52.     Deutsche contends that the Notice of Default and Notice of Sale and Trustee's Deed Upon Sale complied with the foreclosure statutes. These recitals, according to Deutsche, set up a conclusive presumption that the foreclosure was proper. Yet, the presumption applies only if the person who buys a home at a foreclosure sale is a bona fide purchaser. *Homestead Savings v. Darmiento,* 230 Cal.App.3d 424, 436 (1991). Unless a bona fide purchaser has bought the property, the presumption is not conclusive, and can be rebutted. *Moeller v. Lien,* 25 Cal.App.4th 822, 831-832 (1994); *Homestead Savings v. Darmiento,* 230 Cal.App.3d at 436. Deutsche cannot claim to be bona fide purchaser. The Trustee's Deed of Sale identified it as the grantee and was sold the property under the original Deed of Trust. It order for the which mean it bought the loan from Quality Loan (the trustee), not the original lender Accredited. (See, Exhibit 3, Trustee's deed upon sale.) Mr. Macklin has alleged and has proved that the foreclosure sale violated California's foreclosure statutes. He thus has rebutted the presumption of legality that Deutsche says attaches to the foreclosure sale.

53.     In short, Mr. Macklin has a strong case on the merits because he has at least three grounds for overturning the foreclosure sale of his home—the Notice of Default contained a material misrepresentation, Deutsche cannot prove it was the holder of his loan when foreclosure began, and the foreclosure violated the narrow terms of the Deed of Trust.

3. <u>Irreparable Harm and Balance of Hardships</u>

54.     Mr. Macklin will suffer irreparable harm if the court does not impose a preliminary injunction against Deutsche to prevent it from taking possession of Mr. Macklin's home before the merits of the adversary complaint are decided.  The balance of the hardships between Mr. Macklin and Deutsche are obvious, but especially in light of two facts.  First, if not injunction is issued, Deutsche (or someone) is still assured of recouping its principal and can keep the down payment and years of payments it has collected from Mr. Macklin.  Mr. Macklin will be dispossessed of his unique property and will lose his entire investment in the property.

55.     Second, as shown by the loan level file, (See, Exhibit 3 and 4 to the declaration of Dan Edstrom, pages 000178 and 000216-217) Deutsche can show no damages.  The loan level file shows Mr. Macklin's loan is current.  If Deutsche wins a judgment against Mr. Macklin, it still can receive title to the home. It is fully secured.

### 4. Public Interest favors Mr. Macklin

56.     Public interest favors a injunction in this case.  The public interest is served by the protection of the borrower's home.  A foreclosure sale based on falsehoods in the Notice of Default and violations of California foreclosure law as described above, undermines the public interest.  The misstatements in the Notice of Default, Deutsche's inability to prove it is the owner of the Macklin loan, and the narrow language of the Deed of Trust, raise serious doubts as to the validity of the foreclosure process.  Plaintiff believes that sanctions against Defendant is not only appropriate, but a legal necessity to do what is in the publics' interests.

## IV. CONCLUSION

57.     Because Defendant has filed a false deed (and other documents as stated herein) in the County Recorder documents, no title may pass.  Plaintiff has shown likely success on the merits of his claim against Deutsche.  He asks the court to grant the injunction.  Additionally, this Court has the express authority to set aside the trustees deed upon sale herein and Plaintiff asks the Court do so.  Plaintiff has shown that Deutsche should have no interest in Plaintiff's property and it should be restored to him.  This Court also possesses the inherent power to quiet title to the estate property of Plaintiff, which Plaintiff prays the Court to so order.

58.     For these reasons, Mr. Macklin respectfully requests that the Court issue the

following orders:

        a.     A preliminary injunction against Deutsche forbidding it from taking any steps to sell Mr. Macklin's home, transfer title, or otherwise interfere with Mr. Macklin's possession and use of the home, which will remain in effect a pending the trial and judgment on Mr. Macklin's adversary complaint, or until further order of the Court.

Dated: February 24, 2011        Respectfully submitted,

LAW OFFICES OF HOLLY S. BURGESS

By:  /s/ **HOLLY S. BURGESS**

HOLLY S. BURGESS
Attorneys for Debtors