

POSTED ON WEBSITE
NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | | |
|---|---|---|
| In re | ) | Case No. 10-44610-E-7 |
| | ) | |
| JAMES L. MACKLIN, | ) | |
| | ) | |
| Debtor(s). | ) | |
| _____ | ) | |
| | ) | |
| JAMES L. MACKLIN, | ) | Adv. Pro. No. 11-2024 |
| | ) | Docket Control No. HSB-3 |
| Plaintiff(s), | ) | |
| v. | ) | |
| | ) | |
| DEUTSCHE BANK NATIONAL TRUST | ) | |
| CO., | ) | |
| | ) | |
| Defendant(s). | ) | |
| _____ | ) | |

**This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of claim preclusion or issue preclusion.**

## MEMORANDUM DECISION AND OPINION

The court is presented with Debtor-Plaintiff James Macklin's motion for a preliminary injunction. He seeks an order enjoining Deutsche Bank National Trust Company "from taking any steps to sell [his] home, transfer title, or otherwise interfere with [his] possession and use of the home . . . ." Mr. Macklin's home is the real property commonly known as 10040 Wise Road, Auburn, California ("Wise Road Property"). The hearing was set pursuant to order of

the court and Deutsche Bank National Trust Company, as Trustee
("Deutsche Bank") of the  Accredited Mortgage Loan Trust 2006-2
Asset-Backed Notes ("2006-2 Trust"), filed its opposition.   The
hearing on the Motion was conducted on April 14, 2011.

As addressed by the court, Macklin has asserted various
theories by which a note and deed of trust against the Wise Road
Property ("Note" and "Deed of Trust") are unenforceable, and
thereby he is entitled to own the property free and clear of the
encumbrance.   The court determines that Macklin has not shown a
likelihood of prevailing on these theories.   For purposes of this
Motion for Preliminary Injunction, the court rejects the
contentions and arguments that the Note and Deed of Trust have
ceased to exist, have morphed into an obligation of some third-
party, or that the certificate holders, servicer, or other third-
parties have paid Macklin's obligation on the Note.[1]

Macklin has also attacked Deutsche Bank's documentation of
ownership of the Note and compliance with applicable state law
concerning the foreclosure sale.   From the evidence provided to the
court, a question has been raised as to whether Deutsche Bank and
its agents proceeded with the foreclosure sale in compliance with
California law.    Though this does not terminate Macklin's
obligation under the Note or the Note holder's interest in the
Macklin property secured in the Note, compliance with California
foreclosure law cannot be waived merely because an obligation is
owed.

---

[1]   The issues have been presented to the court in connection with
the Motion for Preliminary Injunction, and the court does not make any
final determination of the issues in this Adversary Proceeding.

**BACKGROUND**

Macklin refinanced his Wise Road Property in April 2006 and executed a Note and Deed of Trust in favor of Accredited Home Lenders, Inc.  It is alleged in the Complaint that subsequently the Note was transferred to unidentified parities and eventually transferred to Deutsche Bank.  Several documents for the substitution of the trustee under the Deed of Trust were recorded, and the Deed of Trust was assigned to Deutsche Bank, as indenture trustee for the 2006-2 Trust.  The Note and Deed of Trust transfers are summarized as follows:

    a.    April 14, 2006: $532,000.00 Note.  James Macklin Borrower, Accredited Home Lenders, Inc., Lender.  Macklin Exhibit 1, Deutsche Bank Exhibit A.

    b.    April 28, 2006 (recorded) Deed of Trust.  James Macklin Borrower/Trustor, Accredited Home Lenders, Inc. Lender, Financial Title Company Trustee, and Mortgage Electronic Registration Systems, Inc. ("MERS") Beneficiary solely as the nominee of Lender.

        The Deed of Trust states that "Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this [Deed of Trust], but, if necessary to comply with law or custom, MERS (as nominee of Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and cancelling this Security Instrument." Macklin Exhibit 2.

    c.    December 8, 2008 (recorded) Notice of Default and Election to Sell under Deed of Trust(dated December 4, 2008).  By Windsor Management Co., as agent for MERS. Deutsche Bank Exhibit E.

    d.    March 10, 2009, 9:31 a.m. (recorded) Substitution of Trustee (dated January 30, 2008, by MERS, notarized March 4, 2009, San Diego, California notary).  By MERS, Windsor Management, Co. identified as new trustee under Deed of Trust.  Deutsche Bank Exhibit F.

    e.    March 10, 2009, 9:32 a.m. (recorded) Notice of Trustee's Sale (dated March 9, 2009).  By Windsor Management Co. Deutsche Bank Exhibit G.

f.   November 25, 2009 (recorded) Notice of Trustee's Sale (dated November 12, 2009).  By Quality Loan Service Corp.  Deutsche Bank Exhibit I.

g.   November 25, 2009 (recorded) Substitution of Trustee (dated August 21, 2009, notarized August 21, 2009, Dakota, Minnesota notary).  Deutsche Bank, substituting Quality Loan Service Corporation as the trustee under the Deed of Trust.  Deutsche Bank Exhibit H.

h.   November 30, 2009 (recorded) Assignment of Deed of Trust (dated November 17, 2-[illegible], notarized November 17, 2-[illegible], Salt Lake City, Utah notary) to Deutsche Bank.  Deutsche Bank Exhibit J.

i.   December 21, 2009 (recorded) Trustee's Deed Upon Sale.  By Quality Loan Service Corporation as grantor/trustee, Deutsche Bank as grantee.  Deutsche Bank Exhibit K.

Macklin stopped making payments on the loan in 2008.  Deutsche Bank commenced nonjudicial foreclosure proceedings and asserts that it eventually purchased the home at a trustee sale held on December 14, 2009, and recorded its trustee's deed upon sale.  In January 2010, Deutsche Bank posted a notice to vacate the premises and later commenced an unlawful detainer action in the California Superior Court.

Macklin filed for bankruptcy protection pursuant to Chapter 13 of the Bankruptcy Code on September 16, 2010.  His case (No. 10-44610) was subsequently converted to a proceeding under Chapter 7.  Deutsche Bank sought relief from the automatic stay provided by 11 U.S.C. § 362(a).  After two hearings and permitting Macklin to offer supplemental arguments, the court granted relief from the automatic stay by an order entered on February 4, 2011. (Order, Bankr. E.D. Cal. No. 10-44610-E-7, Dckt. 100.)  The fourteen-day stay of enforcement provided by Federal Rule of Bankruptcy Procedure 4001(a)(3) expired on Friday, February 18, 2011.

Macklin sought a temporary restraining order.  The court held

an opposed hearing and announced its decision to issue a temporary restraining order after Macklin posted a $5,000.00 bond as security pursuant to Federal Rule of Civil Procedure 65.  To date, there is no evidence that the required security has been posted and the court has not issued the temporary restraining order.

## THE ADVERSARY PROCEEDING

Macklin filed this adversary proceeding on January 13, 2011. The complaint seeks to (1) determine the nature, extent, and validity of any lien held by Deutsche Bank, (2) determine that the underlying Note has been satisfied or converted to unsecured debt, (3) damages for Deutsche Bank's purported violation of the Truth in Lending Act by failing to notify Macklin that it obtained an interest in the mortgage loan, (4) a declaration that the assignments of the trust deeds were a fraudulent conveyance, (5) damages for libel, and (6) to quiet title in the real property commonly known as 10040 Wise Road, Auburn, California.  Macklin prays for $1 million in general damages, $750,000.00 special damages, punitive damages, attorneys' fees and costs, an order quieting title to the property in his favor, and other just relief.

### Standing to Bring Complaint

Deutsche Bank argues in opposition that Macklin does not have standing to prosecute this adversary proceeding because it is an asset of the Chapter 7 Estate that has not been abandoned by the Chapter 7 Trustee.  Standing is a Constitutional standard which requires there to be an actual case or controversy between the parties.

> Article III of the Constitution confines federal courts to decisions of "Cases" or "Controversies."  Standing to sue or defend is an aspect of the case-or-controversy

requirement.  (Citations omitted.)  To qualify as a party
with standing to litigate, a person must show, first and
foremost, "an invasion of a legally protected interest"
that is "concrete and particularized" and "actual or
imminent.'  (Citations omitted.) . . . Standing to defend
on appeal in the place of an original defendant, no less
than standing to sue, demands that the litigant possess
'a direct stake in the outcome.'  (Citations omitted.)

*Arizonans for Official English v. Arizona*, 520 U.S. 43, 64, 117
S.Ct. 1055 (1997).

Deutsche Bank asserts that when the Plaintiff filed this
Chapter 7 case, the Bankruptcy Code created the bankruptcy estate
which includes all of the claims at issue in this Adversary
Proceeding.  11 U.S.C. § 541(a).  In a Chapter 7 case, the Chapter
7 Trustee alone has the ability to sue on behalf of the bankruptcy
estate.  *Estate of Spirtos v. One San Bernardino County Superior
Court Case Numbered SPR 02211 (In re Estate of Spirtos)*, 443 F.3d
1172, 1176 (9th Cir. 2006); 11 U.S.C. § 323(b).  As one court
stated,

[A]ny unliquidated lawsuits initiated by a debtor
prepetition (or that could have been initiated by the
debtor prepetition) become part of the bankruptcy estate
subject to the sole direction and control of the trustee,
unless exempted or abandoned or otherwise revested in the
debtor.  The debtor lacks standing in a chapter 7 case to
prosecute claims that are property of the estate.

*In re Bailey,* 306 B.R. 391, 392-93 (Bankr. D.D.C. 2004) (citations
omitted).

The Wise Road Property is listed as an asset of the Debtor on
Amended Schedule A.[2]  On Amended Schedule C, Macklin claims a
$75,000.00 exemption in the Wise Road Property.  The claim secured
by the Deed of Trust at issue in this adversary proceeding is in

---

[2]  The Amended Schedules reference are found in bankruptcy case
No. 10-44610, Docket Entry 56, Eastern District of California.

the amount of $659,000.00, Amended Schedule D, and the value of the Wise Road Property is listed at $659,000.00.[3] If these numbers are accurate, then there is no value in the property for the Estate. On December 24, 2010, the Chapter 7 trustee filed his report of no distribution.   (Bankr. E.D. Cal. No. 10-44610 Dckt. 71.)   The bankruptcy discharge was entered on February 2, 2011. (Bankr. E.D. Cal. No. 10-44610 Dckt. 101.)

While an exemption does not remove the asset from the bankruptcy estate, the Plaintiff has rights in the Wise Road Property.   The Trustee has manifested his intention to take no action as to the alleged rights and asserted defect in the prepetition foreclosure.   Such is the Trustee's prerogative, and may well reflect his determination that the various asserted claims are of such dubious merit that the ultimate resolution will be a foreclosure under the Deed of Trust.   That does not preclude Macklin from asserting those rights, or investing the time and money in making Deutsche Bank, 2006-2 properly conduct the trustee's sale.   Macklin may seek a formal abandonment from the Trustee.

The contention that Macklin does not have standing to bring this action is overruled.

### ANALYSIS

The Ninth Circuit Court of Appeals recently addressed the standard for issuing a preliminary injunction, citing to the Supreme Court ruling in *Winter v. Natural Res. Def. Council, Inc.*:

---

[3]   Based on the statements of Macklin at the hearing, it appears that he is actually contending that the value of the Wise Road Property is less than $659,000.00.

7

> A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of the equities tips in his favor, and that an injunction is in the public interest.

555 U.S. 7, 129 S. Ct. 365, 374 (2008).  In a subsequent ruling, a Ninth Circuit panel expressly disapproved prior Ninth Circuit decisions suggesting a lesser, sliding scale standard than the plaintiff being likely to prevail both on the merits and suffer irreparable harm.  *American Trucking Associations, Inc. v. City of Los Angeles, et. al.*, 559 F.3d 1046, 1052 (9th Cir. 2009).

However, another Ninth Circuit Panel, *Alliance For the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011), determined that a sliding scale standard remains under *Winter*.  Joining the Second and Seventh Circuits in interpreting *Winter*, this Ninth Circuit Panel ruled that the "serious questions" version of the sliding scale test for preliminary injunctions remains viable.  In the Ninth Circuit, this test is stated as, "A preliminary injunction is appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Alliance For the Wild Rockies v. Cottrell*, 632 F.3d at 1134-35, quoting *Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008) (en banc). The plaintiff must also establish the other two prongs for the issuance of a preliminary injunction – that the balance of the equities tips in his favor, and that an injunction is in the public interest.

Macklin must establish the right to a preliminary injunction under either of the two standards in the Ninth Circuit.

///

8

## Choice of Law

As a preliminary matter, the court must determine which law applies to the interpretation of the Note and Deed of Trust at issue in this case.   Macklin urges that the court must apply New York law because the Master Sales and Servicing Agreement — one of the governing documents of the trust — elects the application of New York law for its interpretation. Deutsche Bank offers no arguments in opposition.

The simple fact is that California law applies to the interpretation of the Note and Deed of Trust entered into by this Plaintiff.   First, the Deed of Trust expressly elects to apply California law.   "This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located." (Ex. 2 to the Decl. of James Macklin, Dckt. 29 p. 21.) The Note, which is silent as to choice of law, relates to property located in California and was executed in California.   Macklin sights to no authority which supports the proposition that a later agreement, to which he was not a party, somehow requires the application of New York law.

## Success on the Merits

Macklin argues in a twenty-two-page brief that he presents a "compelling case on the merits."   Macklin's case centers on three basic theories.   The contentions are that the Note and Deed of Trust are void because of substantive defects, that the Note and Deed of Trust were not properly transferred into the trust, and the nonjudicial foreclosure sale was defective.   Though many of these arguments are based on patent misstatements of the law, an issue has been raised concerning whether the nonjudicial foreclosure sale

was in compliance with California law and effective to transfer title from Macklin to Deutsche Bank.

### Attack on Validity of the Note and Deed of Trust

The substance of Macklin's argument is that the Note and the Deed of Trust have been rendered void or there has been a transmogrification[4] of the Note and Deed of Trust into something other than a debt for which Macklin has an obligation to pay for the monies he borrowed.  A variant of this argument is one in which Macklin contends that other persons have paid his debt for him through default swaps or investors who purchased interests in 2006-2 Trust.  The conclusion reached in all of these arguments is that Macklin owns the property free and clear of the Deed of Trust and has no obligation for the monies he borrowed.  Macklin fails to show a legal basis for these arguments or likelihood of success on the merits for any of these grounds.

Macklin argues that the Deed of Trust is void because it granted Mortgage Electronic Registration System ("MERS") the beneficial interest in the trust deed.  Because MERS was not named in the Note, Macklin argues that the Note is voidable since the agency relationship between MERS and the lender and its successors must appear within the four-corners of the Note.  In advancing the

---

[4] Though people may associate the term "transmogrification" with the Calvin and Hobbs comic strip, it is a long-standing term in the English language for the act of changing something or someone with fantastic or grotesque effect.  THE MERRIAM-WEBSTER DICTIONARY AND THESAURUS *available at* http://www.merriam-webster.com.  For Macklin's arguments to succeed, there must be a fantastic transformation of his Note (a negotiable instrument) into an equity participation interest of third-parties acquiring interests in the 2006-2 Trust.  For attorneys schooled in the Commercial Code and transactions involving instruments, such a transformation is a grotesque distortion of the law.

recently-developed, novel legal theory, Macklin offers no citation to any legal authority. The court cannot find any support for this illogical conclusion that Macklin is forgiven his debt because of future agency relationships involving holders of the Note. To accept Macklin's argument would require overthrowing hundreds of years of well-established agency law.

Additionally, courts have widely found that MERS may act as an agent for the owner of a Note secured by the Deed of Trust, including assigning the beneficial interest in the Deed of Trust. *See Baisa v. Indymac Fed. Bank*, No. CIV-09-1464 WBS JMR, 2009 WL 3756682, at *3 (E.D. Cal. Nov. 6, 2009) ("MERS had the right to assign its beneficial interest to a third party"); *Weingartner v. Chase Home Finance, LLC*, 702 F. Supp. 2d 1276, 1280 (D. Nev. 2010) (Courts often hold that MERS does not have standing as a beneficiary because it is not one, regardless of what a Deed of Trust says, but that it *does have standing as an agent of the beneficiary* where it is the nominee of the lender (who is the 'true' beneficiary). (emphasis added)). Where the recording of the assignment of the beneficial interest in the Deed of Trust is to the party that now owns the underlying Note, there is little reason to believe that the assignment is not proper. *See Henley v. Hotaling*, 41 Cal. 22, 28 (1871) (holding the Note and Deed of Trust are inseparable); *accord Seidell v. Tuxedo Land Co.*, 216 Cal. 165, 170 (1932); Cal. Civ. Code § 2936.

Macklin's next argument that the "securitization of the Note" destroyed Deutsche Bank's security interest is equally unpersuasive. This argument is based on a reading of California Commercial Code § 9336 which relates to security interests and

priorities in commingled goods.  A Note and Deed of Trust are not "goods" as that term is used in the Commercial Code. *See* Cal. Com. Code § 9102(44).[5]  Since the Note and Deed of Trust do not qualify as goods under California law, Commercial Code § 9336 is inapplicable and Macklin's argument fails.

Further, Macklin's argument would eviscerate the Commercial Code and the concept of negotiable instruments.  Division 3 of the California Commercial Code establishes a comprehensive body of law addressing instruments and negotiable instruments (such as a promissory Note), the negotiation of such instruments, and the rights of persons acquiring instruments.  Division 3 is substantially the same as Article 3 of the Commercial Codes enacted in other states.  By this argument, Macklin attempts to rewrite commercial law, Division 3 of the Commercial Code, and alter the Note he executed and delivered to obtain the loan monies he desired.  The fact that the Note is purchased by entities which sell securities does not alter the Note.  Thus Macklin's contention that the Note and collateral were destroyed does not have merit.

### Attack on Transfer into the Trust

Macklin argues that the Note itself was not properly transferred into the Accredited Mortgage Loan Trust 2006-2 Asset-Backed Notes.  This argument centers on the alleged failure of the parties to transfer the beneficial interest in the trust deed until

---

[5]  "'Goods' means all things that are movable when a security interest attaches. The term includes (i) fixtures, (ii) standing timber that is to be cut and removed under a conveyance or contract for sale, (iii) the unborn young of animals, (iv) crops grown, growing, or to be grown, even if the crops are produced on trees, vines, or bushes, and (v) manufactured homes. . . ." Cal Com. Code § 9012(44).  Division 3 of the California Commercial Code expressly addresses instruments and negotiable instruments.

nearly two years after the closing date of the Trust.   Macklin
argues that the Master Sale and Servicing Agreement required that
the Note and deed be transferred no less than four times[6] and each
of these assignments must be acknowledged in the county land
records.  However, the plain language of the Agreement contemplated
that the transfers would not be accompanied by an assignment of the
beneficial interest in the Deed of Trust.   The agreement provides:

> Section 2.05. <u>Delivery of Mortgage Loan Documents</u>. (a) In
> connection with the transfer and assignment of the
> Mortgage Loans, the Depositor shall, on or before the
> Closing Date, in the case of a Closing Date Mortgage Loan
> and two business days prior to the related Subsequent
> Transfer Date in the case of a Subsequent Mortgage Loan,
> deliver, or cause to be delivered, to the Indenture
> Trustee (as pledgee of the Issuing Entity pursuant to the
> Indenture), the following documents or instruments
> constituting the Indenture Trustee's Mortgage File with
> respect to each Mortgage Loan so transferred or assigned:
>
> . . .
>
> (ii) the related original Mortgage with evidence of
> recording indicated thereon or a copy thereof certified
> by the applicable recording office and if the Mortgage
> Loan is registered on the MERS System, such Mortgage or
> an assignment of the mortgage shall reflect MERS as the
> mortgagee of record and shall include the MIN for such
> Mortgage Loan; . . . .

(Ex. 2 to the Decl. of Daniel Edstrom, Dckt. 30, Bates Stamp
000097.)  The plain language of the document provides that the Note
and Deed of Trust were to be transferred to Deutsche Bank by that
date, not that the beneficial interest was to be formerly
transferred on the county land records.   In fact, the agreement
contemplated that MERS would remain listed as the holder of the

---

[6] Macklin argues that the Note and Deed of Trust must have been
transferred from Accredited Home Lenders, Inc. to MERS, from MERS to
Accredited Mortgage Loan REIT Trust, from Accredited Mortgage Loan
REIT Trust to Accredited Mortgage Loan Trust 2006-2, and then from
Accredited Mortgage Loan Trust 2006-2 to Deutsche Bank National Trust
Company as Indenture Trustee.

1  beneficial interest on the county's records.

2  Macklin also misses the mark in this argument since he is
3  attempting to assert compliance with contractual provisions for
4  which he has no right or interest.  He has not asserted that he is
5  a party to the Master Sale and Servicing Agreement or a third-party
6  beneficiary of that Agreement.   He does not assert any basis for
7  claiming rights under those agreements to which he is not a party.
8  Further, he does not show any basis for asserting rights to the
9  extent that certificate holders in of the 2006-2 Trust have claims
10 against the promoters of that trust or Deutsche  Bank, the 2006-2
11 Trust, or servicers working for the 2006-2 Trust.

12 At the hearing Macklin offered another novel theory: since the
13 Note has been transferred into the 2006-2 Trust, there is no
14 "beneficiary" for the Deed of Trust since Deutsche Bank does not
15 have a beneficial interest in that trust.   No legal basis was
16 asserted by Macklin that assets of a trust were effectively
17 abandoned unless the trustee of the trust was also a beneficiary of
18 the trust.  Macklin's argument ignores the legal rights and powers
19 of the trustee of a trust.

20
21
**Issues Relating to Transfer of the Note to Deutsche Bank,
2006-2 Trustee and the Nonjudicial Foreclosure**

22 However, Macklin does raise an issue concerning the
23 documentation of any transfer of the Note and whether the statutory
24 foreclosure procedures were followed by Deutsche Bank and its
25 agents.   Though not the focus of his contentions, the court must
26 seriously consider how parties come to the interests they purport
27 to assert in these proceedings.   Though prevailing on this issue
28 may be a pyrrhic victory since it does not destroy Macklin's

obligation secured by the Property, there is no "the-debtor-actually-owes-the-money" exception for compliance with the Civil Code for a nonjudicial foreclosure.

This issue relates to the basic premise that it is the owner of the Note who has the right to enforce the security for the Note. Irrespective of how transfer of collateral is purported to be made it is well-established law in California that a Deed of Trust does not have an identity separate and apart from the Note it secures. "The Note and the mortgage are inseparable; the former as essential, the later as an incident. An assignment of the Note carries the mortgage with it, while an assignment of the latter alone is a nullity." *Carpenter v. Longan*, 83 U.S. 271, 274 (1872); *Accord Henley v. Hotaling*, 41 Cal. 22, 28 (1871); *Seidell v. Tuxedo Land Co.*, 216 Cal. 165, 170 (1932); Cal. Civ. Code § 2936. Therefore, if one party receives the Note an another receives the Deed of Trust, the holder of the Note prevails regardless of the order in which the interests were transferred. *Adler v. Sargent*, 109 Cal. 42, 49-50 (1895).

### Assignment to Deutsche Bank

The first issue raised is whether the Note has been transferred to Deutsche Bank. If the Note has been transferred, then the security will follow. For this Note, two competing allonges to the Note have been presented to the court. The first allonge offered by Macklin is represented to have been obtained through discovery in a related civil action.[7] This allonge,

---

[7] The production of this allonge was not contested at the hearing, with it being represented by Deutsche Bank, that it was part of general discovery and most likely was a copy of an allonge which was in a file.

15

Exhibit 10 to the Macklin Declaration, reads:

> PAY TO THE ORDER OF:
>
> _____[illegible mark]
> WITHOUT RECOURSE
>
> _____
> Assistant Secretary
> Accredited Home Lenders, Inc., A California Corporation

Macklin argues that this allonge is fatally defective because it is not notarized or dated. However, he fails to cite to any authority imposing such a requirement.[8]  The court will not create requirements for the negotiation of instruments which do not otherwise exist at law.  It is not for the court to create requirements on a case-by-case basis, which would have the effect of rendering otherwise negotiable instruments non-negotiable in the business community because of the uncertainty as to what courts may require on an *ad hoc* basis.

Moreover, any argument that the allonge is ineffective, since space remains on the Note itself for the placement of an endorsement, also fails.  California law clearly permits the use of an allonge even if there is space on the Note. Cal. Com. Code § 3204 ("For the purpose of determining whether a signature is made on an instrument, a paper affixed to the instrument is a part of the instrument."); *see also* Official Comment to Cal. Com. Code § 3204 ("The last sentence of subsection (a) is based on subsection (2) of former Section 3-202. An indorsement on an allonge is valid even though there is sufficient space on the

---

[8]  Though the law rewards creativity and hard work, merely stating contentions without any support only works to diminish the credibility of the  party.  Even when making new law, the courts establish a legal basis and consistent theory to support change.

16

instrument for an indorsement.") Macklin's reliance on *Pribus v. Bush*, 118 Cal. App. 3d 1003 (1981), is misplaced since that decision interprets former Section 3202 which was superseded when the current version of Section 3204 was enacted in 1992.

The second allonge was offered by Deutsche Bank in support of its opposition to this motion.  This allonge, the last two pages of Exhibit A (Dckt. 39), reads:

PAY TO THE ORDER OF:

_____ **SEE ATTACHED
WITHOUT RECOURSE

 /s/ Scott T Stevens
Scott T Stevens
Assistant Secretary
Accredited Home Lenders, Inc., A California Corporation

The attached document reads:

ATTACHMENT
Deutsche Bank National Trust Company, as Indenture Trustee, on behalf of the holders of the Accredited Mortgage Loan Trust 2006-2 Asset Backed Notes

Deutsche Bank, represented to the court and Macklin that it had the original Note, with allonge attached, in court at the hearing.  No request was made by Macklin to review the represented original Note or compare it to the copies filed with the court.  No basis was given, other than the existence of a copy of an allonge as part of discovery in another case, for the court to question that the copy provided by Deutsche Bank was not an accurate representation of the original Note and allonge.[9]  Merely raising a question based on a copy from a file obtained in discovery in another case does not

_____

[9] One could infer from Macklin's conduct at the hearing that he did not need to review the Note and allonge because he already knew what they provide.

17

establish a likelihood of prevailing on the issue that there is not an allonge documenting the transfer of the Note to Deutsche Bank.

### Issue of Compliance with California Law For Notice of Default, Notice of Sale, and Conducting a Nonjudicial Foreclosure

Generally, when attacking a foreclosure sale, the trustor-debtor must tender the amount he owes on the Note. *Arnolds Management Corp. v. Eischen*, 158 Cal. App. 3d 575, 578 (1984). However, if a foreclosure sale is void or it is otherwise inequitable, the tender requirement may be waived. *Standley v. Knapp*, 113 Cal. App. 91, 102 (1931); *Humboldt Sav. Bank v. McCleverty*, 161 Cal. 285, 291 (1911); *see also* 4 MILLER & STAR CALIFORNIA REAL ESTATE § 10:212 (3d ed.). Therefore, to the extent Macklin properly alleges that the foreclosure was procured through fraud, then he is not required to tender the cure in this adversary proceeding.

If Deutsche Bank did not properly own the Note, then it and its agents could not exercise authority under the Deed of Trust. To the extent this represents fraud, the state court's decision in the unlawful detainer action does not have perclusive effect. *Vella v. Hudgins*, 20 Cal. 3d 251, 254-57 (1977).[10]

Macklin asserts that Deutsche Bank was acting beyond its authority when it conducted the nonjudicial foreclosure sale and such is a misrepresentation of Deutsche Bank's powers. Macklin argues that the Trust Indenture requires Deutsche Bank to obtain a

---

[10] Additionally, the unlawful detainer proceeding does not have preclusive effect in that the summary judgment in the state court action was entered against Macklin's son. It is not contended that Macklin acquired his interest in the property from his son or is otherwise bound by a summary judgment not entered against him.

majority vote of the Noteholders before it may conduct foreclosure proceedings.   The Agreement patently provides the opposite:

> [I]f an Event of Default occurs and is continuing, the Indenture Trustee *may*, and shall at the written direction of the Holders of Notes representing at least 50% of the Class Note Balance of the Outstanding Notes, proceed to protect and enforce its rights and the rights of the Noteholders by any Proceedings the Indenture Trustee deems appropriate to protect and enforce any such rights, whether for the specific enforcement of any covenant or agreement in this Indenture or in aid of the exercise of any power granted herein, or enforce any other proper remedy.

(Ex. 1 to the Decl. of Daniel Edstrom, Dckt. 30, Bates Stamp 000022 (emphasis added).)   The language is clear; Deutsche Bank *may* proceed to protect and enforce its rights and the rights of the Noteholders if a default occurs, but Deutsche Bank *must* do so if at least half of the Noteholders so instruct it.   Macklin's focus on the "shall at the written direction" language does not change the fact that Deutsche Bank had the authority to act to enforce rights in the event of a default.

Macklin's arguments also fail a plain reading of the Indenture.   Admittedly, some of Macklin's confusion could be attributed to the convoluted nature of the Indenture and the underlying transactions.[11] This is a detailed, legal document which creates specifically defined terms which are similar to the terms used in Macklin's transaction.   The "Notes" referenced in the Indenture are not Notes held in the trust (such as Macklin's Note), but Notes issued under the Indenture to the investors.   Section 2.01, 2.05, Exhibit 1.   The "issuing entity" for the Notes is

---

[11]   While Macklin may personally be clinging to every desperate and ill-founded argument to keep the property for free, this does not explain any "confusion" of Macklin's counsel in submitting a patently invalid argument.

defined to be the 2006-2 Trust. (Appendix 1 to Ex. 1 to the Decl. of Daniel Edstrom, Dckt. 30, Bates Stamp 000069.)  An "event of default" is defined in Section 5.01 of the Indenture to be a default by the Issuer, the 2006-2 Trust, for a Note it issues. (Ex. 1 to the Decl. of Daniel Edstrom, Dckt. 30, Bates Stamp 000021.)   This argument by Macklin, that Deutsche Bank cannot enforce the Macklin Note and Deed of Trust which are assets of the 2006-2 Trust, is baseless.

Macklin also argues that the trustee's sale is void because Deutsche Bank, 2006-2 Trust, and the trustees, Windsor Management and Quality Loan Servicing, were acting outside of their authority when they foreclosed because they were not in physical possession of the Note.  As Deutsche Bank points out, California law has no such requirement. *Alvara v. Aurora Loan Services*, No. C-09-1512 SC, 2009 WL 1689640, at * 6 (N.D. Cal. June 16, 2009) ("[U]nder California law, trustee need not possess a Note in order to initiate foreclosure under a Deed of Trust."); *Farner v. Countrywide Home Loans, Inc.*, No. 08-CV 2193, 2008 WL 189025, at * 2 (S.D. Cal. Jan. 29, 2009) ("[T]here does not appear to be any requirement under California law that the original Note be produced in order to render the foreclosure proceedings valid."); *Quintos v. Decision One Mortgage Co., LLC*, No. 08-CV-1757 JM (POR), 2008 WL5411636, at * 3 (S.D. Cal. Dec. 29, 2008) ("Cal. Civ. Code § 2924 outlines the requirements for non-judicial foreclosures in California, and does not include providing the original Note prior to the sale").

Almost lost in the clutter of misstatements about the Indenture, allegations without any support in law or fact, and the

selective reading of documents, Macklin does raise an issue concerning how Deutsche Bank conducted the noticing of the foreclosure sale. The court starts with the basic premise that for Deutsche Bank to proceed with a foreclosure it had to be entitled to payment on the Note. Cal. Civ. Code §§ 2932.5, 2936; Cal. Comm. Code § 3301.

Deutsche Bank presents the Note with an allonge to document the transfer of the Note. However, the allonge is undated. The Assignment of the Deed of Trust, which was recorded on November 30, 2009, has an illegible date as to when it was executed. Presumably, it was executed on or about November 17, 2009, shortly before it was recorded. Further, one could presume that a November 17, 2009 date for the Assignment of the Deed of Trust would correspond with the allonge to transfer the Note to Deutsche Bank.

But the Substitution of Trustee by Deutsche Bank recorded on November 29, 2009, purporting to substitute Quality Loan Service Corp. for Windsor Management Co. as trustee under the Deed of Trust, states that it was signed by Deutsche Bank on August 21, 2009. This would be well in advance of the November 17, 2009 assignment of the Deed of Trust. No explanation has been provided for these apparently inconsistent dates. The court will not merely assume that Deutsche Bank acquired the Note much earlier but did not record the Notice of Assignment of Deed of Trust until a later date.

Recent cases have discussed whether a Deed of Trust is subject to various provisions of the Civil Code which reference mortgages, mortgagees, or other encumbrancers. Several trial courts have concluded that Civil Code § 2932.5 does not apply when the

encumbrancer is enforcing rights pursuant to a Deed of Trust. Though of persuasive value, these trial court cases are not binding precedent for this court.

In considering what is mean by "mortgagee or other encumbrancer" holding a power of sale, the court first considers the distinction between a "mortgage" and a "Deed of Trust." For a Deed of Trust, title is vested in the trustee, who has a power to sell the property upon the event of specified contractual defaults. This allows for the sale of the collateral without judicial intervention. But this is a limited "title" in the trustee. As addressed by the California Supreme Court in *Bank of Italy Nat. Trust & Sav. Assn. v. Bentley*, 217 Cal. 644, 656 (1933), the legal title held by the trustee is to the extent necessary for execution of the trust, but does not carry with it the incidents of ownership. In practical effect, a Deed of Trust is a mortgage with a power to convey, with the incidents of ownership retained by the trustor. The Deed of Trust is treated as an encumbrance on the real property, and given protection as a lien rather than an interest in the land subject to a materialman's lien. *Hollywood Lumber Co. v. Love*, 155 Cal. 270 (1909).[12]

Over the years, courts and the Legislature have continued to diminish the distinction between a Deed of Trust and mortgage, other than the fundamental difference that the power of sale under the Deed of Trust is exercised nonjudicially, while the mortgage

---

[12]  At the time of the *Hollywood Lumber Co.* decision, the term "encumbrances" includes taxes, assessments, and all liens upon real property, which continues to be the definition today.  Cal. Civ. Code § 1114.

still requires judicial intervention.[13]   The Legislature has made both deeds of trust and mortgages subject to time limitations on enforcement, Civil Code §§ 880.02-887.09 (Marketable Record Title Act) and created a right of redemption following a judicial sale under either a mortgage or Deed of Trust, Cal. Civ. Proc. Code § 729.010.   In stating its intent behind the Marketable Record Title Act, the Legislature confirmed that real property is a basic resource of the people and title transactions should proceed with economy and expediency.   For this to be achieved, real property records must clearly and accurately document title to the property. Cal. Civ. Code § 880.020.   Because there is no judgment or order supporting a nonjudicial foreclosure sale, documentation of compliance with California law for a nonjudicial foreclosure sale is essential.   Only the official record contains the documentation of who was entitled to enforce the rights under the Deed of Trust.

On previous occasions, the California Supreme Court has applied a statute referencing a "mortgage" to deeds of trust when it impacts the rights of the borrower.   In *Security Pacific National Bank v. Wozab*, 51 Cal. 3d 991, 998, the court applied the one-action rule, Code of Civil Procedure 726(a), to obligations secured by a Deed of Trust as well as other personal property.   *See also Walker v. Community Bank*, 10 Cal. 3d 729, 732 n.1 (1974).

---

[13]   The respected treatise on California law, MILLER AND STARR, CALIFORNIA REAL ESTATE, 3RD EDITION, echos the erosion of the distinction between mortgages and deeds of trust on all but the basic nonjudicial power of sale.   For all practical purposes a mortgage with a power of sale has a similar legal effect and economic function as a Deed of Trust.   *Id.* at § 10:1.   While placing "title" in the trustee, the Deed of Trust works as a lien on the real property. The trustor (Macklin in this case) retains all incidents of ownership, including the ability to transfer title. *Id.* at § 10.2.

Civil Code § 2932.5 provides that, where a power of sale for real property is given to a mortgagee or other encumbrancer to secure an obligation, such power of sale may be exercised by the assignee who is entitled to receive payment of the obligation "if the assignment is duly acknowledged and recorded." If the assignment has not been recorded, then the power cannot be exercised. The application of Civil Code § 2932.5 to all encumbrances, including deeds of trust, works to protect the borrower (trustor), lender (beneficiary), trustee, purchaser at a foreclosure sale, and subsequent owners of the property. Before persons purport to take action and exercise rights under a Deed of Trust, the assignment documenting the acquisition of those rights is recorded with the county recorder. This results in the real property records clearly and unambiguously stating who held the rights and who asserted the rights. This minimizes title disputes years later as to whether a notice of default or notice of sale was given by a properly authorized party and whether the purported sale under the Deed of Trust is void. This imposes the minimalist of burdens on the beneficiary acquiring a Note secured by a Deed of Trust - recording the notice of assignment before purporting to change the trustee or authorize a foreclosure.

In the present case, Macklin and Deutsche Bank have demonstrated that the recording of the assignment of the Deed of Trust post-dated Deutsche Bank recording documents purporting to change the trustee to Windsor Management and then Windsor Management purporting to give a notice of sale. Though there are only days by which Deutsche Bank, 2006-2 failed to record the assignment of the trust deed, a record has been created that

someone not of record title purported to take action on a Deed of Trust prior to compliance with Civil Code § 2932.5. Issues of title and the record upon which future generations of owners will reply cannot be subject to a would-you-believe-I-missed-it-by-that-much implied waiver of this statutory requirement.

Macklin has shown a likelihood of prevailing on the issue of the purported foreclosure sale not having been properly conducted, thereby resulting in a void deed. The court issues the preliminary injunction on this ground.

## GRANTING OF PRELIMINARY INJUNCTION

Solely on the grounds asserting that Deutsche Bank, 2006-2 did not properly follow the procedures for substituting the trustee under the Deed of Trust and noticing the sale, the court finds a likelihood of Macklin prevailing on the merits. In that case, Macklin would still be the owner of the Wise Road Property and entitled to possession of the Wise Road Property. Allowing Deutsche Bank, 2006-2 to obtain possession of the Wise Road Property from Macklin would result in an irreparable harm to Macklin in the loss of the occupancy and possession of the property. As between Macklin and Deutsche Bank, 2006-2, the equities are in Macklin's favor and Deutsche Bank must properly comply with the law to foreclose on Macklin's interest in the Wise Road Property. The issuance of a preliminary injunction in this case furthers public policy of not only upholding California law as to proper nonjudicial foreclosure sales under a Deed of Trust, but also protects the real property title records from inconsistent and untimely recording of documents.

In this case the grounds established by Macklin are for a

determination that the purported trustee's deed is void.  Not only
is this potential to void foreclosure grounds to not require a
tender by the plaintiff, *Bank of America N.A. v. La Jolla Group II*,
129 Cal. App. 4th 706, 710, 717 (2005), but it is also grounds for
not requiring a bond. Federal Rule of Bankruptcy Procedure 7065
expressly provides that the court may issue a preliminary
injunction without requiring a bond.  In this adversary proceeding,
the court determines that security is required, but will not order
the posting of a third-party bond.[14]  Macklin shall fund a cash bond
with the Clerk of the Court in the amount of $1,500.00 a month,
with the first payment due on May 10, 2011, and continuing to be
made by the tenth day of each month until a total of $18,000.00 has
been deposited by Macklin with the court.  This cash bond
constitutes the security required by the court pursuant to Federal
Rule of Civil Procedure 65(c).  This amount is subject to
adjustment by further order of the court.

Because the Motion for Preliminary Injunction is packed with
claims, contentions, arguments, and inflammatory comments indicting
the mortgage system, rather than focused on the one ground which
provides a likelihood of prevailing (or showed any merit) at this
juncture, either party may seek relief from this order pursuant to
Federal Rule of Civil Procedure 60(b) and Federal Rule of
Bankruptcy Procedure 9024.  This is to allow the parties to focus
on the actual grounds for the preliminary injunction.  Both parties

---

[14]  Earlier in this adversary proceeding the court was prepared to
issue a temporary restraining order upon the posting of a $5,000.00
bond, but none was posted.  Rather than risking the issuance of this
order not being effective due to an inability to post a bond, the
court requires the posting of a cash bond with the Clerk of the Court.

must recognize that such a motion is not merely an opportunity to re-tread old arguments in the hopes that the court may find merit where none exists.   Further, if the cash bond payments are not timely made, Deutsche Bank, 2006-2 may seek an order vacating the preliminary injunction, which shall be set for hearing as provided in Local Bankruptcy Rule 9014-1(f)(1) or (f)(2).

This Memorandum Opinion and Decision constitutes the court's findings of fact and conclusions of law in support of issuing the preliminary injunction.   The court shall issue a separate order for the preliminary injunction.

Dated: May 19, 2011

RONALD H. SARGIS, Judge
United States Bankruptcy Court

This document does not constitute a certificate of service. The parties listed below will be served a separate copy of the attached document(s).

Holly Burgess
680 Auburn Folsom Road, Suite 109
Auburn, CA 95603

James Macklin
670 Auburn-Folsom Rd #106-303
Auburn, CA 95603

Robert Bleicher
216 Park Rd
PO Box 513
Burlingame, CA 94001

Thomas Aceituno
PO Box 189
Folsom, CA 95763

Office of the U.S. Trustee
Robert T Matsui United States Courthouse
501 I Street, Room 7-500
Sacramento, CA 95814