**FILED**

June 17, 2011

CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

0003572718

**46**

Holly S. Burgess (Bar No. 104575)
LAW OFFICES OF HOLLY S. BURGESS
680 Auburn-Folsom Road, Suite 109
Auburn, CA 95603
(530) 889-8900-Telephone
(530) 392-4641-Direct Dial
(530) 820-1526-Facsimile
hollyburgess@lohsb.com

Attorneys for Plaintiff/Plaintiff
JAMES L. MACKLIN

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA - SACRAMENTO DIVISION

| | |
|---|---|
| **JAMES L. MACKLIN,**<br><br>    **Plaintiff.** | **Chapter 7**<br><br>**Case No. 10-44610** |
| **JAMES L. MACKLIN,**<br><br>    **Plaintiff,**<br><br>v.<br><br>**DEUTSCHE BANK NATIONAL TRUST CO., AS INDENTURE TRUSTEE FOR THE ACCREDITED MORTGAGE LOAN TRUST 2006-2 ASSET-BACKED NOTES, et al.**<br><br>    **Defendants.** | Adv. Pro. No. 11-02024<br><br>**FIRST AMENDED ADVERSARY COMPLAINT FOR:**<br>1. VIOLATIONS OF TRUTH IN LENDING ACT;<br>2. VIOLATIONS OF REAL ESTATE SETTLEMENT PROCEDURES ACT;<br>3. VIOLATIONS OF FAIR CREDIT REPORTING ACT;<br>4. FRAUD;<br>5. UNJUST ENRICHMENT;<br>6. CIVIL RICO VIOLATIONS;<br>7. VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE §17200<br>8. BREACH OF SECURITY INSTRUMENT<br>9. WRONGFUL FORECLOSURE<br>10. QUIET TITLE<br><br>**PLAINTIFF DEMANDS A JURY TRIAL** |

COMES NOW Plaintiff and Plaintiff James L. Macklin, ("Plaintiff"), and respectfully alleges the following:

///

## JURISDICTION

1.     This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§151, 157 and 1334(b). Venue is proper pursuant to 28 U.S.C. §1409.

2.     This adversary proceeding is a core proceeding as defined at 28 U.S.C. §157(b)(2)(b) and (b)(2)(K) in that it is an action to determine the nature, extent and validity of a lien on property evidenced by a deed of trust, and the allowance or disallowance of a claim. To the extent this proceeding is determined to be a non-core proceeding, Plaintiff consents to the entry of final orders or judgment by the bankruptcy court.

3.     This adversary proceeding is brought pursuant to 11 U.S.C. §506 and Federal Rule of Bankruptcy Procedure 7001.

## PARTIES

4.     Plaintiff is an individual, and Plaintiff of the within captioned bankruptcy case, having converted to a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on October 5, 2010 ("the Bankruptcy Case").

5.     Plaintiff is and at all times mentioned herein is the owner and purchaser of real property located at: 10040 Wise Rd., Auburn, California (hereinafter referred to as "SUBJECT PROPERTY").

6.     Plaintiff is informed and believes that defendant, Deutsche Bank National Trust Co., as Indenture Trustee for the Accredited Mortgage Loan Trust 2006-2 Asset-Backed Notes, Its Assigns and/or Successors In Interest ("Deutsche")  is a California Corporation licensed through the State of California Dept. of Corporations.

7.     Plaintiff is informed and believes that Defendant has and is acting in concert with other unknown and un-named "Correspondents" to the subject transaction(s) identified herein. Plaintiff is ignorant of the true names and capacities of all Defendants sued herein as

FIRST AMENDED ADVERSARY COMPLAINT

Correspondent, and therefore sue this Defendant by such fictitious names.  Plaintiff will amend this complaint to allege their true names and capacities when ascertained.  Plaintiff is informed and believe and thereon allege that each of these fictitiously named defendants claim some right, title, estate, lien, or interest in the hereinafter-described property adverse to Plaintiffs' title and their claims, and each of them, constitute a cloud on Plaintiffs' title to that property.

8.    The Defendants herein named as "all persons claiming by, through, or under such person, all persons unknown, claiming any legal or equitable right, title, estate, lien, or interest in the property described in the complaint adverse to Plaintiff's title thereto" (hereinafter referred to as "the unknown defendants") are unknown to Plaintiffs.  These unknown Defendants, and each of them, claim some right, title, estate, lien, or interest in the hereinafter-described property adverse to Plaintiffs' title; and their claims, and each of them, constitute a cloud on Plaintiff's title to that property.

9.    The Plaintiff is informed and believe and thereon allege that at all times mentioned herein, Defendants DOES 1 through 10 inclusive, were the agents and/or employees of "Deutsche" and in doing the things herein alleged were acting in the course and scope of such agency and/or employment and with the permission and consent of their co-defendants.

10.    Plaintiff is ignorant of the true names and capacities of Defendants sued herein as DOES 1 -10, and therefore does sue these Defendants by such fictitious names.  Plaintiff is informed and believes and thereon alleges that each of these fictitiously named defendants claim some right, title, estate, lien, or interest in the hereinafter-described property adverse to Plaintiffs' title and their claims, and each of them, constitute a cloud on Plaintiffs' title to that property.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

11.    Not only are is the Plaintiff the victim of fraud, unlawful and predatory lending and an underlying conspiracy to commit fraud, but Mr. Macklin is also facing the pending loss of his

home through foreclosure initiated and advanced by Defendants in violation of the notice and standing requirements of California foreclosure law.

**Predatory Loan and False "Workout" Agreement**

12.     At the time of his loan in April 2006, Plaintiff did not know that he was party to a predatory loan (not a true full documentation loan, at a rate he could not afford and had no realistic ability to re-pay). By comparing the original loan transaction documents, with documents obtained from counsel for Deutsche Bank, the following is ascertained:  From the inception of the transaction a "loan" by Accredited Home Lenders, Inc., ("AHL") was the intent and object of understanding of Mr. Macklin, the party that actually advanced funds to escrow was "Centennial Bank of Colorado" (See, **Exhibit 18,** Wiring instructions) and not Accredited Home Lenders, Inc., as named on the promissory note and deed of trust.  Plaintiff had no understanding or knowledge that a third party lender was being used as the source of funds at closing.  The "surrogate" lender approved a loan application that contained fraudulent information, which was entered onto the application by agents/affiliates of Defendant, which was unknown to Plaintiff.  Plaintiff, as a condition to loan approval, produced and delivered to Defendants' agent his true and accurate tax records and bank statements prior to the application being taken over the telephone, which was far from consistent with the income data entered on the application by Defendant's agent, such as, Plaintiff did not reside at the property for the years that were input onto the application by Defendant's agent;  Plaintiff never earned $29,000.00 per month as described by Defendant's agent on the loan application;  and Plaintiff had $65,000.00 in a Wells Fargo checking account that was identified by Defendant's agent as cash on hand in the application. See, **Exhibit 14,** Loan Application documents.

13.     Plaintiff did not know that the true providers of consumer credit in his "loan transaction" were a group of Wall Street investment bankers who had pre-sold Mortgage-backed

securities (MSB) to unsuspecting investors using the bogus loan application(s) created by the

Defendant's agent, Accredited.  These MBS's were investments made not on the true value of the

real property, (See, **Exhibit 9, MSSA, Mack 139 at §2.01(c)** but upon securities agreements that

guaranteed a flow money through complex financial engineering, whether or not the property was

worth the purported appraisal furnished by the sham Lender of record.   As herein alleged below,

because the Plaintiff's had no chance to cure any possible "default" on the note secured by his

mortgage.  The surrogate lender identified on his note, AHL, (See, **Exhibit 2,** deed of trust) instantly

and simultaneously converted the note in a "table-funded" transaction (which is presumed to be

predatory under 12 CFR 226 (Regulation Z)) into an Article IX security.  There was no Holder-in-

due-course, with to discuss alternatives to foreclosure as required by California foreclosure laws. As

explained more fully below, Plaintiff has standing to challenge the foreclosure based on Defendants

use of the MBS for two reasons:  1) The Defendant, Deutsche Bank Nat'l Trust Co. as Indenture

Trustee for the Accredited Mortgage Loan Trust 2006-2 ("AMLT 2006-2") must have all

intervening endorsements and assignments of both the Note and Deed of Trust, identifying the

Depositor of the trust (Accredited REIT Trust, a separate entity from "AMLT 2006-2 (See, **Exhibit**

**9, bates page number 139-146.**) as a party in the record chain of assignments and endorsements

and as strictly construed under the trust agreements, within the time parameters established by the

agreements (June 1, 2006), and under the statutory construction of the Laws of California and;  2)

Plaintiff's monthly mortgage payment, in part, was used to secure loan loss guarantees and other

insurances and credit enhancements by the Servicer of the MBS, as mandated by the Trust

Agreements in order to secure the financing for the subject loan(s), herein believed to be WINDSOR

MANAGEMENT COMPANY ("WINDSOR") and/or QUALITY LOAN SERVICE

CORPORATION ("QUALITY LOAN"). (See, **Exhibit 17, Mack567**) These insurances are

designed to pay in the event of delinquency of monthly payments by any of the over 6,000 loans

within the pool and provide guarantees of full payment to the securities investors who funded the credit lines used as "loan financing".  Defendants have no standing to foreclose either non-judicially, or judicially, on Plaintiffs' property as they represent the interests of the "AMLT 2006-2" trust, a party that has not been harmed or damaged.

14.     Plaintiff signed a promissory note naming Accredited Home Lenders, Inc., not Centennial Bank of Colorado, as the Obligee/Beneficiary of aforementioned payments. (See **Exhibit 1, note and Exhibit 18, wiring instructions)** The Note he signed does not represent the transaction that occurred, the money wired to escrow clearly came from a different source that was never disclosed to Plaintiff.  He signed a deed of trust to the note. The Deed of Trust ("DOT") names MERS, Inc. as the nominee of Beneficiary Accredited Home Lenders, Inc. The deed also names MERS, Inc. as the beneficiary. However, under California law, the Beneficiary of a Note, and Deed of Trust securing that Note, must be the obligee entitled to payment. It became apparent to Plaintiff that the DOT was improperly drafted by Defendant, Deutsche Bank Nat'l. Trust Co., as indenture trustee for the benefit of the certificate holders of Accredited Mortgage Loan Trust 2006-2 ("AMLT 2006-2").

15.     Plaintiff executed a valid Qualified Written Request and request to Accredited in June, 2008, after finding a series of false information had been recorded and accepted as true by Deutsche Banks' affiliate, Accredited Home Lenders, Inc., on his original loan application See, **Exhibit 14.**  He determined that an interest only "loan" had been executed instead of a "30 yr. fixed conventional" loan, which he was told he was signing.  Plaintiff disputed the validity of the entire loan and offered the property, which was the alleged security of the loan, back to the lender, AHL. He was summarily ignored by the lenders' representative servicer and was, instead, sent a copy of the note and a payment history, which was perfect in payment history at the time. See, **Exhibit 15,** letters from Roup & Associates.

16.     At no time did the servicer, or its' successor in interest, Select Portfolio Services, Inc., provide proper responses to Plaintiff's inquiries ,which included a demand for the identity of the creditor (Title 15 USC § 1641(g)), nor did they timely provide Plaintiff with a full accounting as required.  The surrogate Lender, the servicer and their counsel, Roup & Associates, also failed to respond to Plaintiff's Notice of Rescission. The servicer stated that his claims were "not a servicing issue", and that he should address these with the new creditor, whom they refused to identify. See, **Exhibit 15,** At no time did the servicer, or its' successor in interest, Select Portfolio Services, Inc., provide proper responses to Plaintiff's inquiries ,which included a demand for the identity of the creditor (Title 15 USC § 1641(g)), nor did they timely provide Plaintiff with a full accounting as required.  The surrogate Lender, the servicer and their counsel, Roup & Associates, also failed to respond to Plaintiff's Notice of Rescission. The servicer stated that his claims were "not a servicing issue", and that he should address these with the new creditor, whom they refused to identify. See, **Exhibit 15,** letter from Roup & Associates.

17.     At no time did the servicer identify the alleged creditor, "AMLT 2006-2", or its' indenture trustee, Deutsche Bank Nat'l. Trust Co. as the new "creditor". Plaintiff was forced to conduct his own investigation into the labyrinth known as securitization in order to discover who could claim to be the creditor of his loan transaction.

18.     After many certified letters to the alleged authoritative parties, Plaintiff rescinded his loan transaction timely and in writing, to the Lender, servicer, and counsel retained by Select Portfolio Servicing, Inc., Roup & Associates. Not one of the parties named above ever responded to his debt dispute and Notice of Rescission timely or properly.  The letter from Roup was received by Plaintiff until until 45 days after their receipt of the rescission letter, which under TILA provisions, violated the lawful time permitted for a response.  Plaintiff offered a full tender of the property after the rescission notice.

19.     On or about August, 2009, Servicer "Select" made a verbal offer, through a telephone call by one of their authorized rep./agents, to reduce the principal amount of the loan if a full payment was received from Plaintiff within 30 days.  Deutsche's agents  induced Plaintiff to enter into an illusory "Workout Agreement", whereby if Plaintiff continued to make his payments, they would offer an opportunity to cure loan default, but in truth was merely a ruse through which Deutsche dupes homeowners into paying thousands of dollars immediately before losing their home to foreclosure.  Plaintiff honored this request in good faith in hopes that an agreement would be reached.  The servicer never followed through with their offer and continued to make threats of foreclosure without ever having answered any of Plaintiff's disputes or honoring his Notice of Rescission.  But Deutsche and/or its servicers promise was empty; it foreclosed on Plaintiff 's home without any notice that the loan modifications was denied and without allowing Plaintiff access to any "cure method" despite the promises to do.  As a result Deutsche and/or its servicers fraudulently induced Plaintiff into entering the Workout Agreements and broke their promises to Plaintiff.  Based on information and belief, Deutsche has reaped illicit profits from these actions and on countless other unsuspecting homeowners, adding to their profit, which exceeds $100 million

20.     These acts are the subject of a prosecutorial lawsuit filed by the U.S. Attorney General against Deutsche, entitled *United States of America v. Deutsche Bank AG and MortgageIT, Inc.,* No. 11 Civ. 2976 (S.D. N.Y. filed May 3, 2011).

**Chain of Title Problems**

**21.** On or about September 27, 2010 (in the Chapter 13 case) Deutsche filed a Motion for Relief from Automatic Stay under 11 U.S.C. § 362 **without Proof of Claim** in the Bankruptcy Case, asserting a claim against Plaintiff, and further asserting that said claim is secured by a lien against real property belonging to Plaintiff located at 10040 Wise Rd., Auburn, California, which is

Plaintiffs' residence (hereinafter "the Property"). It thereafter filed an Unlawful Detainer lawsuit to dispossess Plaintiff of his property in the Placer County Court entitled *Deutschd Bank N.A. v. Jason L. Mackllin*, Case No. M-CV-0045238.  On or about April 28, 2006, a mortgage deed of trust was recorded (See, **Exhibit 2)** in the Placer County Recorder's Office, with Plaintiff as the Borrower and Accredited Home Loans ("AHL") as the lender.   Although there was purported assignment of the AHL Deed of Trust recorded in the Placer County Recorder's Office in November 2009, from Mortgage Electronic Registration Systems, Inc. ("MERS") Deutsche, Plaintiff is informed and believes that such assignment was not done by AHL but fraudulently conveyed by the "nominee" of record, MERS.  At the time of the Notice of Default, **Exhibit 3,** the recorded interests contradict the assertion that DEUTSCHE or QUALITY LOAN was the foreclosing beneficiary. Starting from the beginning, the chain of recordation is as follows:

| Filed: 4/28/2006 | **DEED OF TRUST**<br><br>**[Attached as Exhibit "2"]** | Borrower/Trustor: | James L. Macklin |
| | | Lender: | Accredited Home Lenders, Inc. |
| | | Trustee: | Financial Title Company |
| | | Nominee: | MERS |
| | | Loan Amount: | $532, 000 |
| Filed: 12/8/2008 | **NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST**<br><br>**[Attached as Exhibit " 3"]** | Trustor: | James Macklin |
| | | Contact to stop foreclosure: | Accredited Home Lenders, Inc., c/o Windsor Management Co. |
| | | Present Beneficiary: | Windsor Management Co., as Agent for Beneficiary, by LSI Title Company |
| | | Signers: | Cathy Garcia |
| | | Date signed: | 12/4/2008 |

- 9 -

| | | | |
|---|---|---|---|
| Filed:<br>3/10/2009 | **SUBSTITUTION OF TRUSTEE**<br><br>**[Attached as Exhibit "4"]** | Orig Trustor: | James Macklin |
| | | Orig Trustee: | Financial Title Company |
| | | New Trustee: | Windsor Management Company |
| | | Orig beneficiary: | Accredited Home Loans |
| | | Present beneficiary: | MERS as nominee for Accredited Home Lenders |
| | | Signer: | By: Joseph SanFilippo for MERS |
| | | Dated: | 1/30/2008 |
| Filed:<br>11/25/2009 | **SUBSTITUTION OF TRUSTEE**<br><br>**filed with the disclaimer:**<br><br>**"This instrument is being recorded as an ACCOMMMODA-TION ONLY, with no representation as to its effect upon title"**<br><br>**[Attached as Exhibit "5"]** | Orig Trustor: | James Macklin |
| | | Orig Trustee: | Financial Title Company |
| | | New Trustee: | Quality Loan Service Corp, |
| | | Orig beneficiary: | Accredited Home Loans |
| | | Present Beneficiary: | Deutsche Bank National Trust Company, as Indenture Trustee, on behalf of the holders of the Accredited Mortgage Laon Trust 2006-2 Asset Backed Notes by Select Portfolio Servicing, Inc as Attorney in fact |
| | | Signer: | Wayne Hessler, duly appointed officer |
| | | Date Signed: | August 21, 2009 |
| Filed:<br>11/30/2009 | **CORPORATE ASSIGNMENT OF DEED OF TRUST**<br><br>**[Attached as Exhibit "6"]** | Grantor: | MERS as nominee for Accredited Home Lenders |
| | | Grantee//Beneficiary: | Deutsche Bank National Trust Company, as Indenture Trustee, on behalf of the holders of the Accredited Mortgage Laon Trust 2006-2 Asset Backed Notes |
| | | Signer: | MERS as nominee for Accredited Home Lenders |
| | | Signature: | By: Bill Koch, Assistant Secretary |
| | | Date signed: | 11/17/2009 |

- 10 -

FIRST AMENDED ADVERSARY COMPLAINT

| | | Trustors: | James Macklin |
|---|---|---|---|
| Filed: 3/10/2009 | **NOTICE OF TRUSTEE'S SALE** [Attached as Exhibit "19"] | Trustee: | Windsor Management Co. |
| | | Notice sent by: | Windsor Management Co. |
| | | Signer: | Cindi Stewart |
| | | Dated: | 3/9/2009 |
| Filed: 12/21/2009 | **TRUSTEE'S DEED UPON SALE** **filed with the disclaimer:** **"This instrument is being recorded as an ACCOMMMODA-TION ONLY, with no representation as to its effect upon title"** [Attached as Exhibit "7"] | Grantor/ trustee: | Quality Loan Service |
| | | Grantee// Beneficiary: | foreclosing beneficiary/ Deutsche Bank National Trust Company, as Indenture Trustee, on behalf of the holders of the Accredited Mortgage Laon Trust 2006-2 Asset Backed Notes |
| | | Signer: | Quality Loan Service |
| | | Signature: | By: Karla Sanchez, Assistant Secretary |
| | | **Date signed:** | 12/**15**/2009 |
| | | **Date notarized:** | 12/**17**/2009 |

22.    As can be plainly seen, in the first Substitution of Trustee, dated 3/10/2009, the Lender did not execute this document. A simple reading of the Deed of Trust as executed by Plaintiff, at section 24, clearly evidences the language that the Lender, and only the Lender, is authorized to substitute the trustee. The last sentence of section 24 states that this section governs to the exclusion of all other language in the document. MERS, whether a "Nominee" or not, has not established any agency under this section or anywhere at all in the Deed under Cal. Civ. Code §§ 2306 and 2309.  At the time of the notice of default in this case, the beneficiary was still the surrogate lender, AHL, while  FINANCIAL TITLE was the trustee.  The notice of default was by WINDSOR as agent for the current Beneficiary, who is not named.

23.    Although there was purported assignment of the AHL Deed of Trust recorded in the Placer County Recorder's Office in November 2009, the record shows that such assignment was

not done by AHL but fraudulently conveyed by the "nominee" of record, Mortgage Electronic

Registration Systems, Inc. See, **Exhibit 6.** This assignment was executed during the pendency of

the surrogate Lenders', AHL, Bankruptcy proceeding without Notice of the US Trustees' approval

for assigning an asset of the estate of the Debtor, Accredited Home lenders, Inc. It was also

assigned to Deutsche Bank as Indenture Trustee for the "AMLT 2006-2" trust a full three years and

three months after the Note and Deed were allegedly already conveyed into the "AMLT 2006-2"

trust, pursuant to the trust construction. Pursuant to the trusts' own construction, the laws of New

York strictly govern the conveyances of assets into this trust, particularly at NY CLS EPTL § 7-

2.4. While California law applies to the real property aspects of the Note and Deed, it is the asset

conveyance that must be construed under the laws of this Defendants' trust, which is New York.

The Defendant would have the Court believe that the Note can somehow be in two places at once,

when, as the law dictates, the deed always follows the Note. These Defendants used false

information regarding the individuals executing such mortgages and assignments, holding such

individuals out to be officers of MERS.  In a substitution of trustee recorded on November 25,

2009 See, **exhibit 5** , but executed by Wayne Hessler" on August 21, 2009 as a "duly appointed

officer of Deutsche", Deutsche did not hold a beneficial interest as shown by the Corporate

Assignment of Deed of Trust recorded on November 30, 2009, wherein MERS tries to assign rights

to Deutsche.**.** The original Substitution of Trustee from 3/10/2009 still has no authority since the

Lender did not execute it.  **See, Exhibit 4.**

24.    MERS purportedly acted as nominee for AHL under a fraudulent assignment of

AHL Deed of Trust, having no interest in the promissory note, assigned such deed of trust together

with the note, to Deutsche.  This Corporate Assignment of the Deed cites in its' language: "together

with the Note". This represents an impossibility known to Defendant(s) in the Assignment.

Deutsche represents the interest of the "AMLT 2006-2" trust, which is a REMIC Trust, governed

under the laws of the State of New York. Under IRS Rule 860D(a)(4), the Note and Deed, as a "Qualified Mortgage",  must have been conveyed to this trust, by lawful assignment and transfer, within 90 days of the closing date of this trust.  A "Form 15-15D" was also filed by Defendant which was filed for record with S.E.C on January 15, 2007, and evidences that the trust could not receive any assignment of assets after such a date under the Investment Company Act of 1940, § 7.

25.    There is no recorded agency agreement of assignment of the AHL Deed of Trust recorded in the Placer County Recorder's Office.  Plaintiff is informed and believes that in 2006 AHL was paid a fee by the Underwriters of the securitized trust scheme, then electronically transferred a copy of the Note only, without the deed, to Deutsche Bank without obtaining the necessary intervening endorsements and assignments required by the trust as a beneficiary, assigned its interest in the AHL Deed of Trust to an unknown entity, so that it never had  any financial interest or risk in the AHL Deed of Trust or the promissory note secured thereby, other than a non-disclosed fee arrangement with the Underwriters of the securitization scheme, which was ultimately paid by Plaintiff.

26.    MERS is a database document tracking service and was never a party to the transaction, or entitled to payment from Plaintiff. The MERS scheme was developed to attempt to circumvent the recording fees that are inherent to the California laws regarding assignments of mortgages. Plaintiff alleges that MERS never had any interest in the AHL Deed of Trust or the promissory note secured thereby.

27.    In this case, foreclosure has been filed, the entity filing the foreclosure has no pecuniary in the mortgage loan.  The foreclosing entity is a third party.  The entity lacks standing and the capacity to foreclose.  The entity has no firsthand knowledge of the loan, no authority to testify or file affidavits as to the validity of the loan documents or the existence of the loan.  The

entity has no legal authority to draft mortgage assignments relating to the loan.  The foreclosing entity and its agents regularly commit perjury in relation to their testimony.

**Securitization of Plaintiff Note and Deed of Trust**

28.    DEUTSCHE, asserts that it holds the beneficial interest and the right to foreclose on the note securing the Deed of Trust.  Plaintiff is informed and believes that AHL never lawfully assigned its  interest in Plaintiffs' note and deed of trust to "AMLT 2006-2"  in 2006, but was paid in full for its' participation in the scheme and that it no longer has an interest in the DOT or the promissory note secured thereby, and the subsequent parties in the defective chain of title have no beneficial interest in the Plaintiff's note and deed of trust and therefore no legal basis on which to claim the right to foreclose on Plaintiff's property. Plaintiff is informed and believes AHL never transferred or assigned any interest in Plaintiff's note or deed of trust to DEUTSCHE.

29.    AHL, the "Lender" on the original Promissory Note, is a fictitious "surrogate" lender.  Plaintiff's note and deed of trust were used in an investment scheme known as a "mortgage-backed" security investment trust.  These trusts, strictly governed under New York law by their express terms, were created by private institutional investment houses and large banks to use the homeowner's credit and an inflated appraisal, along with the borrower's promise to pay on a predatory loan created by these same parties, as the basis to create billion dollar Real Estate Mortgage Investment Conduit (REMIC) trusts. A monthly fee, as a percentage of the borrower homeowner's mortgage payment which was included in this REMIC to which Plaintiff's note and deed of trust were to be conveyed, was not disclosed to homeowner at the time loan was offered in violation of HOEPA, TILA, and RESPA, nor included in the Plaintiff's loan and escrow closing statements, thereby violating federal law.

30.    The originators of the loan immediately and simultaneously securitized (allegedly) the note through the means of conversion of an Article III negotiable Instrument (U.C.C.) into

Article IX (U.C.C.), non-negotiable paper.  The beneficial interest in the note was never in the surrogate lender.  In this case, MERS, acting as nominee for AHL under the Deed of Trust, was never intended to be the Obligee, but merely a "stand-in" beneficiary with no real financial interests of the mortgage loan.  Windsor Management Company ("WINDSOR") a Servicer, or some party, has declared default and is not in privity with the lender.  The true owner (s) or unknown beneficiary(s) of the mortgage loan has not declared a default, cannot declare a default under its' Trust Agreement,  and does not have any valid, documented by recordation and endorsement,  interest in the Note that allows for any remedial actions to be undertaken by the Defendant or any of their agents/affiliate).

31.     The obligation, as a contract, reflected by the note allegedly secured by the AHL Deed of Trust with MERS as Nominee, has been satisfied in whole or in part because the investors who furnish the funding for these loans have been paid to the degree that extinguishments of the debts has occurred with the result that there exist no obligations on which to base any foreclosure on the property owned by Plaintiff.  Defendants have and continue to cloud the title and illegally collect payments and attempt to foreclose upon the property of the Plaintiff when they do not have lawful rights to foreclose, and are not holders-in-due-course of the notes.

32.     The mortgage loan contract is, at most, an unsecured debt.  The successor in interest to the original surrogate Lender, AHL, is ultimately responsible for the predatory nature of the transaction and the resulting defects in the record chain of title. However, it is evident from the record that no party of record has been conveyed any beneficial or legal interest in the loan after the Substitution of Trustee dated 3/10/2009.

33.     Certain individuals, who were the employees of the Servicers, WINDSOR and/or Select Portfolio Servicing ("SPS"), and even the employees of the law firms, executed and notarized forged documents as to the ownership of the loan.

34.     Defendant Deutsche, represented itself as a "Trustee".  However, Deutsche is not a common law Trustee, rather, they are special Corporate Trustees with limited ministerial duties. These rights, duties and obligations do not include any remedial actions, such as foreclosure, as they relate to the assets of the REMIC Trust and are strictly governed under the "AMLT 2006-2" trust Agreements, if the trust ever properly conveyed the asset. The trustee cannot represent the interests of a trust that never received the asset.

35.     The Servicers, like WINDSOR and SPS, are merely administrative entities, under limited power of attorney, who collect the mortgage payments and escrow funds. The Servicer has no greater power than its' Principal, the Trustee, and lacks the authority to bring any action on behalf of the REMIC Trust. The Trust participants have executed Trust Agreements, under oath, with the Security Exchange Commission ("SEC"), and the Internal Revenue Service ("IRS"), as mortgage asset "pass-through" entities wherein they can never own or manage the mortgage loan assets in the REMIC Trust.  This allows them to qualify as a Tax Free Real Estate Mortgage Investment Conduit ("REMIC") rather than an ordinary Real Estate Investment Trust ("REIT").  .

36.     Importantly, Deutsche, as "Trustee" or custodian, is charged with ensuring that only assets (Notes and Deeds) that are properly conveyed within 90 days of the "closing date" *(IRS Rule 860D (a)(4))*, as defined within the REMIC Trust Agreement, are part of its' scope of authority.  Every mortgage in the Trust must be conveyed pursuant to the Sale and Servicing Agreement without exception. **Exhibit 9, MSSA Mack140, §2.05.**

37.     The promissory note was never conveyed pursuant to the Trust mandates and the mortgage was never conveyed or recorded pursuant to the proper chain of custody and intervening endorsements and Assignments within the Trust Agreement(s) or under California statutory construction.

/ / / /

38.     In this scenario, even if the foreclosing entity produces a copy of a note, or even an alleged original, the mortgage loan was not conveyed into the trust under the requirements of the prospectus for the trust or the REMIC requirements of the IRS or California law. Mere possession of an Instrument does not confer the status of a person entitled to enforce the Instrument.

39.     Plaintiff alleges that Deutsche is in possession of two competing allonges which id the form of endorsement that Defendant claims gives it the rights to the note.  Both of these allonges were produced to Plaintiff by Deutsche's counsel, under penalty of perjury.  The alleged allonges create double jeopardy on the note to Plaintiff. The two allonges confirms that Defendants' agent, AHL either sold the same Note twice, to two separate parties, or Defendant has created evidence specifically for litigation purposes.  See, **Exhibits 12 and 13.**  The second allonge as an endorsement does not reflect the requisite chain of endorsements as mandated by the trust Agreements, altogether leaving out the "Depositor" (Accredited REIT Trust, a separate entity from "AMLT 2006-2") as a necessary assignee and subsequent assignor of the Deed, together with the Note. Consequently, the required Trust asset, or any part thereof (mortgage note or security interest), was not legally transferred to the Trust to allow the Trust to ever be considered a "Beneficial holder" of a mortgage loan.  Neither the "Trust" nor the Servicers, WINDSOR and SPS, would ever be entitled to bring a foreclosure or declaratory action.  The Trust will never have standing or be a real party in interest before this Court.

40.     The transfer of mortgage loans into the Trust in which Deutsche is the Trustee after the " date" (in this case June 1, 2006), destroys the trust's REMIC tax exempt status, and this Trust would owe millions of dollars to the IRS and the State of California as the income would be taxed at of one hundred percent (100%), if the Court were to find in favor of the Defendant(s). Subsequent to the "cut off date" listed in the prospectus, whereby the mortgage notes and security for these notes had to be identified, and the Note and Mortgages transferred, within 90 days, and

thereafter, the pool is <u>permanently closed</u> to future transfers of mortgage assets. See **Exhibit 8, Cut-Off date Mack bates number page 104, Exhibit 8, Section 2.05, Delivery of Mortgage Loan Docs, Mack bates number page 140-142**

41.     After the fact, Defendants fraudulently conveyed Plaintiffs' mortgage loan, which fraudulently recorded on or about December 21, 2009, in an attempt to transfer a Mortgage Assignment into a REMIC after that REMIC's "cut off" and "closing dates".

42.     Therefore, the lack of lawful acquisition of Plaintiffs' mortgage loan violates the prospectus (See, **Exhibit 17**) presented to the investors and the IRS REMIC requirements.

43.     Plaintiff signed a Promissory Note and Mortgage. They were unknowingly converting their property into an alleged asset of a Trust, while his credit and signature was used to pre-sell securities, the profits of which were to used to pre-fund the predatory "loan", (unbeknownst to Plaintiff, the loan papers were processed with an inflated appraisal and stated his income to be $30,000 per month) without his consent or knowledge of the terms and conditions of the contract.  Under the controlling trust documents, a percentage of the homeowner's monthly payment stream was used as a guarantee.  This guarantee and payment under the guarantee has resulted in accounting documents obtained by Plaintiff that show all payments have been made on Plaintiffs' alleged obligation.  A portion of Plaintiff's monthly mortgage payment was used to insure and pay his alleged obligation without his knowledge or consent and the payment is current through at least April of 2010. See **Exhibit 14,** Loan Level file and **Exhibit 17 Mack567.**

44.     Under the MBS, whether or not the homeowner/borrower stops paying on the note obligation, the Servicer is obligated to advance to the "Collection Account"  payments representing non-performing loans on behalf of the Borrower.  The money used is not the Servicers own money and there is no provision in the MBS on what is to occur when the homeowner "s".  The only

provisions for "default" under the MBS is the default of the Servicer.  **See Exhibit 9, Servicer default, 7.0 Mack 178-182.**

45.     California Commercial Code §3602(a) and UCC 3-602(a) provides that an obligation paid is an obligation extinguished.  Plaintiff was never informed of the nature of the scheme.  He was deliberately induced into signing a Negotiable Instrument which was never intended as such, but intended as collateral for the sale of securities.  Under the terms of the Master Sales and Servicing Agreement ("MSSA"), his mortgage obligation has been paid.  His alleged "default" is a fiction.  See **Exhibit 17,** prospectus and trust agreement **Exhibit 9, Section 7.0, Servicer Events of Default, Mack bates number page 178-182.**

46.     As required by SEC, this Trust has a Master Sales and Servicing Agreement ("MSSA") which dated February 1, 2006 and is publicly filed.  See **Exhibit 9.**  The only purpose for the MSSA is for the administration and distribution of funds to the investors and the obligation of the so called Trustee in administering the Trust.  The investors who put up money for the Trust and who received the securities certificates or Bonds and the Borrowers, such as Plaintiff, are purported by Defendant to not be parties to the MSSA. However, under the Step Transaction Doctrine, as adopted by the Courts, these transactions are interdependent of one another and interrelated and, therefore, fall under the scope of a "single transaction", as defined by the Doctrine. The transactions meet the "interdependence test", the "end results" test, and the "binding commitment test". The Borrowers and the Investors are the true Principals to the transaction, with the only financial and pecuniary interest in the transaction(s). Plaintiff alleges that he is a party to the "AMLT 2006-2" trust, if the asset ever legally and lawfully was conveyed into the trust. If the Court determines that the Note and Deed of trust were not properly assigned, endorsed, and conveyed into the "AMLT 2006-2" trust, then Plaintiff would have no privity to this trust whatsoever. Privity is established by lawful assignment from Lender to Assignee, thus

extinguishing the Borrower/Lender privity to contract, and establishing the new Borrower/Assignee privity to the contract. Plaintiff assumes he is in privity with his true creditor, whomsoever that may be.

47.     The MSSA merely sets forth what happens after the mortgages are bundled together. However, the MSSA also sets forth a ***Cut Off Date***.  The Cut off date is the date on which all mortgage loans in the Trust must be identified and set out in the SEC required list of mortgage loans.  **Exhibit 8, Cut-Off date Mack bates number page 104, Exhibit 8, Section 2.05, Delivery of Mortgage Loan Docs, Mack bates number page 140-142.**

48.     Like the cut off date, this Trust had a ***Closing Date***.  The Closing Date, in this case: June 1, 2006, is the date that the individually identified mortgages were to be transferred through the Custodian for the benefit of the investors.  The Trust Custodian must certify that for each mortgage loan, the Trust Custodian has possession of the original Promissory Note, all original endorsements and assignments transferring the Note and proof that the ownership of the Note has been lawfully transferred for the benefit of the investors.  Further proof of the ownership of a mortgage loan is required by a public recording of the Mortgage or Assignment of the mortgage itself.  This MUST have occurred by the closing date.  **Exhibit 8, Cut-Off date Mack bates number page 104, Exhibit 8, Section 2.05, Delivery of Mortgage Loan Docs, Mack bates number page 140-142.**

49.     In this case, the Trust closing date was June 1, 2006.  The November 30, 2009 attempted recorded assignment is more than three years after the closing date of this trust.  When proven in this case, this Trust has been operating illegally as a tax exempt REMIC or never held the loan as an asset.

50.     Deutsche, as the Indenture Trustee, claims to be acting on behalf of the Trust and claims that it has acquired the loan from MERS, who was not the oligee in AHL deed of trust.  The

multiple transfers of title of the mortgage loan between the originator, AHL, The REIT Trust, The Depositor and the REMIC Trust is simply ignored, as Plaintiff believes and thereon alleges, it can never be proved or shown to the Court.

**51.** Here, the Note and Mortgage were severed or bifurcated when the AHL deed of trust was fraudulently assigned to MERS as nominee for Accredited Home Lenders, Inc. without the Note. Accredited Home Lenders, Inc. never loaned any money to the Plaintiff, nor did they extend their own credit (See Cal. Fin. Code §§ 22001, 22009). MERS was never a beneficiary under the Note. MERS purportedly held the Mortgage as "nominee" for AHL, an assignee of a fraudulently conveyed deed of trust. Since then, the only party who could authorize the mortgage assignment for a bankrupt mortgage assignee (AHL filed for Bankruptcy protection in April, 2009, Case No. 09-11516; see *In re Accredited Home Lender Holding Co.*, 441 B.R. 443 (Bankr. D. Del. 2011) would be the Bankruptcy Trustee. In this case, MERS, Inc. has made an assignment of an asset during the pendency of a Bankruptcy proceeding on behalf of a bankrupt entity, a violation of the bankruptcy code.

**FIRST CAUSE OF ACTION**

**Violations of Truth In Lending Act**

Plaintiff reaffirms and re-alleges paragraphs 1 through 51 above herein as set forth fully below.

**52.** Pursuant to 15 USC §1605 and Regulation Z, 12 CFR §226.4, incident to the extension of credit, Defendant has a duty to disclose certain finance charges shown on the TILA statement and certain information, such as the identity of the creditor; each amount that is or will be paid to third persons by the creditor on the consumer's behalf, together with an identification of or reference to the third person; that the loan exceeded the fair market value of the Subject Property with, a clear and conspicuous statement that--(A) the interest on the portion of the credit extension that is greater

than the fair market value of the dwelling is not tax deductible for Federal income tax purposes; and (B) the consumer should consult a tax adviser for further information regarding the deductibility of interest and charges."

**53.** Defendant and/or its agents breached this duty by failing to include and disclose certain charges in the finance charge shown on the TILA statement, which charges were imposed on Plaintiff incident to the extension of credit to him, and were required to be disclosed, thus resulting in an improper disclosure of financial charges in violation of 15 USC §1601 et seq., 12 CFR §226.18(d) (Regulation Z).  Such undisclosed charges included some identified on the settlement statement listing the amount financed which is different from the sum listed in the original note. Other required information Defendant failed to disclose included the identity of the actual creditor; each amount that is or will be paid to third persons by the creditor on the consumer's behalf, together with an identification of or reference to the third person; that the loan exceeded the fair market value of the Subject Property and a "clear and conspicuous statement that--(A) the interest on the portion of the credit extension that is greater than the fair market value of the dwelling is not tax deductible for Federal income tax purposes; and (B) the consumer should consult a tax adviser for further information regarding the deductibility of interest and charges."

**54.** Despite Plaintiff's providing Defendant and/or its agents with his full financial information, including his tax returns, bank account statements, and accurate facts, the Defendant and/or its agents did not disclose to Plaintiff that it falsified his loan applications by filling out the application as follows: Defendant and/or its agents attributed a much higher income to him ($348,000 per year) than Plaintiff had provided ($84,000 per year); stated that Plaintiff has a balance of $65,000 in his checking account rather than a balance of less than $5,000 that Plaintiff reported; appraised the Subject Property at three different inflated amounts ($615,000, $665,000 and $685,000); and

claimed that Plaintiff had lived at the Subject Property for five years rather than one year as Plaintiff had reported.

55. Plaintiff relied on Defendant's and/or its agents documents and assurances as being truthful, accurate, and providing full disclosure.  On or about April 19, 2006, Plaintiff signed the DOT and Note against the Subject Property in the amount of $532,000.00.  The DOT identified Accredited as the "Lender", MERS, as the "beneficiary of the lender/ nominee", and Financial as the "Trustee".  Sometime later, upon inspection of the DOT and Note, Plaintiff began to question whether those documents had been properly drafted:   He had applied for a "30-year fixed conventional" loan and was told he was signing documents for such a loan.  However, his documents revealed that he had received an "interest-only loan".  Further, the Defendant and/or its agents did not disclose to him the effect of the interest-only loan on his APR, finance charges, amount financed, total payments, payment schedule, and right to cancel.  In addition, the Defendant and/or its agents did not disclose the actual Lender was Centennial Bank of Colorado, not Accredited as named on his Note and Deed, or the true identities of the beneficiaries entitled to his mortgage payments and with whom he could negotiate a re-write of his home loan. Defendant and/or its agents also did not disclose that a portion of Plaintiff's mortgage payment was used to purchase default insurance.

56. Because of Defendant and/or its agent's breach Plaintiff relied to his detriment on Defendant and/or its agent's documents and assurances, which resulted in (a) his not getting the "30-year fixed conventional" loan for which he had applied; (b) not knowing the true Lender to contact to have his loan re-written to conform to a "30-year fixed conventional" loan; (c) his obtaining a loan that he never would have accepted if he knew the true facts; (d) his inevitable default on the loan and the catastrophic effect on his credit; (e)  numerous attempts to wrongfully evict him from his home; (f) having his home foreclosed and sold even through his mortgage

payments were current as a result of the default insurance that he had unknowingly purchased; (g) fraudulent information attached to his name and credit; and (h)  a toll on his personal well-being.

**57.** Under 12 C.F.R. § 226.15 and 15 U.S.C.A. § 1635 Plaintiff has a right to rescind the security interest in his home, the Subject Property, within three years from the date of consummation of the transaction**.**

58. Plaintiff timely filed his Notice of Rescission. See, **Exhibit 16**.  Plaintiff consummated his loan on or about April 19, 2006.  Lender and Lender's representatives received Plaintiff's Notice of Rescission, including his offer to tender, on February 12, 2009.

59. Under the statute, once Plaintiff rescinded the loan transaction, the security interest in the Subject Property became void, and Plaintiff was no longer liable for any amounts, including any finance charge.

60. Within 20 calendar days after receipt of Plaintiff's Notice of Rescission, Defendant and/or its agents was required to return any money or property that Plaintiff had given in connection with the loan and to take any action necessary to indicate the termination of the security interest.

61. Defendant and/or its agents did not take possession of the money or property within 20 calendar days after Plaintiff's tender.

62. Because Defendant and/or its agents did not take possession of Plaintiff's tender within 20 calendar days after his Notice of Rescission and tender, Plaintiff is entitled to keep the Subject Property without further obligation. See, 15 USC 1635(b); 12 CFR 226.15(d)(1)and 226.31(d)(1).

63. Defendant and/or its agent's failure to provide the required disclosures provides Plaintiffs with the right to rescind the transaction, and Plaintiff, through this public complaint which is intended to be construed, for purposes of this claim as a formal notice of rescission, hereby elects to rescind the transaction.

/ / / /

64. Plaintiff first learned of the actions of Defendant and/or its agents, including their failure to disclose and the fraud committed upon him, in December of 2008.  He rescinded his loan in February of 2009, which was ignored.  He filed his state court complaint, which was removed to federal court by Defendant, within the one year of learning of the fraud committed upon him. Plaintiff could not have learned of these violations at the time the loan was obtained by looking at his loan documents and escrow closing statements as the true facts of the Defendant and/or its agents and the securitization of his note and deed of trust and the fees attached thereto, which was undisclosed to him, were not apparent from the face of the loan documents, nor deed of trust.

65. Plaintiff timely rescinded within the TILA three-year statute.   However, any alleged delays as to the statute of limitations for any causes of action for which Plaintiff is now bringing a claim are excusable as no reasonable person could have known sooner of the existence of a possible claim.  Despite due diligence, Plaintiff was unable to obtain vital information relevant to the existence of a claim.  Not only did Defendant and/or its agent's fraudulently conceal information that they were required to disclose, but it was only after Plaintiff spent more than 7,000 hours of intense research into "securitization" financing that he was able to obtain vital information bearing on the existence of a possible claim.

### SECOND CAUSE OF ACTION

### Violations of Real Estate Settlement Procedures Act

Plaintiff reaffirms and re-alleges paragraphs 1 through 65 herein as set forth fully below.

66. Defendant is subject to the provisions of the real estate settlement procedures act ("RESPA"), 12 USC §2601 et. seq., particularly §2605 regarding **(a)** Disclosure to applicant relating to assignment, sale, or transfer of loan servicing and §2607 regarding prohibition against kickbacks and unearned fees.

67. In violation of 12 USC §§2605 and 2607 in connection with the mortgage loan to Plaintiffs, Defendant and/or its agents excepted charges for the rendering of real estate services which were in fact charges for other than services actually performed, interest only adjustable rate mortgage, which in fact was used to purchase securities and the attendant fees provided for in the MBST Master Sales and Servicing Agreement.

68. Under 12 U.S.C.A. § 2605 a servicer has a duty to respond to borrower inquiries.  When a servicer receives a Qualified Written Request ("QWR") the servicer has a duty to provide a written response acknowledging receipt of the correspondence within 20 days.

69. The servicer also has a duty not later than 60 days after conducting an investigation, to provide the borrower with a written explanation or clarification that includes--

**(i)** to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and

**(ii)** the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or

**(C)** after conducting an investigation, provide the borrower with a written explanation or clarification that includes--

**(i)** information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and

**(ii)** the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

70. Here, the Servicer breached that duty.  In June 2008, Plaintiff sent to Accredited's servicer a valid QWR.  In the QWR, he questioned the validity of his loan, stated why he believed his account was erroneous, and provided sufficient detail to request specific information about his loan, including information about the Lender and whom to contact to re-write his loan to comport with the "30-year fixed conventional" loan that Accredited told Plaintiff he was receiving.  Rather than

the "action with respect to inquiry" that is required by 12 U.S.C.A. § 2605, the servicer sent a copy of the Note and a payment history. The history showed that Plaintiff's payments were perfect at the time. At no time did the servicer, or its successor in interest, Select Portfolio Services, Inc. ("Select"), answer Plaintiff's QWR as required under the statute, nor did they timely provide him with a full accounting as required. Plaintiff sent subsequent certified letters to the Lender's representatives, however, none ever responded to his debt dispute and QWR.

71. On February 12, 2009, Lender's representatives (Lender's servicer and Select's counsel Ronald Roup & Associates) received by certified mail Plaintiff's written Notice of Rescission of his loan. See. **Exhibit 16.** However, Lender, servicer and counsel for both failed to respond properly to the Notice of Rescission. The servicer replied to Plaintiff that his claims were "not a servicing issue", and that he should address these with the new creditor, whom they refused to identify.

72. As a result of the Defendants violations of RESPA, Defendants are liable to Plaintiffs in an amount equal to three (3) times the amount of charges paid by Plaintiffs for "settlement services" pursuant to 12 USC §2607 (d) (2). The Servicer of MBST is making money off of Plaintiff's predatory loan, in violation of RESPA, all to their damage according to proof.

73. Plaintiffs first learned of the actions of Defendants, including their failure to disclose and the fraud committed upon them in December of 2008. He rescinded his loan in January of 2009, which was ignored. He filed his state court complaint which was removed to federal court by Defendant within the one year statute of limitations for violations of §2605 and within three years for violations of §2607.

74. Plaintiff could not have learned of these violations at the time the loan was obtained by looking at his loan documents and escrow closing statements as the true facts of the lender and the

securitization of his note and deed of trust and the fees attached thereto, which was undisclosed to him, were not apparent from the face of the loan documents, nor deed of trust.

## THIRD CAUSE OF ACTION

### Violations Of Fair Credit Reporting Act

### (As to All Defendants and DOES)

Plaintiff reaffirms and re-alleges paragraphs 1 through 74 above as if set forth fully herein below.

75. At all times material, Defendants qualified as a provider of information to the Credit Reporting Agencies, including but not limited to Experian, Equifax and Trans Union, under the fair credit reporting act. Defendant and/or its agent wrongfully, improperly, and illegally reported negative information as to Plaintiff, by falsely reporting the mortgage loan payments were in default, to one or more credit reporting agencies, resulting in Plaintiffs having negative information on their credit reports and the lowering of their FICO scores.

A.   The negative information included but was not limited to an excessive amount of debt into which Plaintiffs were tricked into seed into signing;

B.   Notwithstanding the above, Plaintiffs have paid each and every payment on time from the time of the closing of the loan and until Plaintiffs' default.

76. The information reported to the above-named credit agencies, included the "fact" that Plaintiffs defaulted on the obligation under the note. This was in fact false, as the defendant did not own or otherwise have a right to Plaintiffs payments AND the plaintiff's loan is current as the payments are being made by the servicer.

77. Pursuant to 15 USC §1681 (s) (2) (b), Plaintiffs are entitled to maintain a private cause of action against Defendants for an award of damages in an amount to be proven at the time of trial

for all violations of The Fair Credit Reporting Act which caused actual damages to Plaintiffs, including emotional distress and humiliation.

78. Plaintiffs are entitled to recover damages from Defendants for negligent non-compliance with The Fair Credit Reporting Act pursuant to 15 USC§1681 (n) (a) (2) in an amount to be proven at the time of trial.

79. Plaintiffs first learned of the actions of Defendants, including their failure to disclose and the fraud committed upon them in December of 2008.  He rescinded his loan in January of 2009, which was ignored.  He filed his state court complaint which was removed to federal court by Defendant within the one year of learning of the fraud committed upon him.

80. Plaintiff could not have learned of these violations at the time the loan was obtained by looking at his loan documents and escrow closing statements as the true facts of the lender and the securitization of his note and deed of trust and the fees attached thereto, which was undisclosed to him, were not apparent from the face of the loan documents, nor deed of trust.

## FOURTH CAUSE OF ACTION

## FRAUD

Plaintiff reaffirms and re-alleges paragraphs 1 through 80 above as if set forth fully herein below.

81. Defendant DEUTSCHE knowingly and intentionally concealed material information from Plaintiff which is required by federal and state statutes and regulations to be disclosed to the Plaintiff both before and after closing, namely that as soon as his loan was finalized, his note and deed of trust would be conveyed to a MBST and that the lender, AHL would be paid in full. Plaintiff was not told that part of his loan payments would be used to pay service fees to the Servicer and to buy insurance and other credit enhancements to be used by the Servicer of the MBST. These payments are currently being used to keep Plaintiff's note current.

82. Defendants, by their actions, participated in the scheme in the contracting to provide mortgage loan services and a loan program to Plaintiffs [which was not only to be best suited to the Plaintiffs] given his income and expenses, but by which Plaintiff would also be able to satisfy his obligations without risk of losing his home, were "fiduciaries" in which Plaintiff reposed trust and confidence, especially given that Plaintiff was not and is not an investment banker, securities dealer, mortgage lender or mortgage broker.  Plaintiff was defrauded and duped into a loan and an obligation that he  could not afford.  Plaintiff will lose all that he has put into the Subject Property, while  Defendants will lose nothing and in fact make money off of the MBST and the subsequent sale of Plaintiff home and then insurance claim to the federal government for the deficiency. Plaintiff promise to pay and credit were stolen from him to use in the MBST investment scheme and a higher mortgage and mortgage rate were charged to him, and the increased "fees" all used for the enrichment of DEUTSCHE and the other parties to the MBS.  See, Exhibit 17, Prospectus.

83. Defendants breached their duty of care Plaintiff by fraudulently inducing Plaintiffs to enter into a mortgage transaction which was contrary to the Plaintiffs' stated intentions; contrary to the Plaintiffs' interest; and contrary to the Plaintiffs' preservation of his home. (See **Exhibit 14,** Loan application documents.)

84. Defendant DEUTSCHE, though they have no right title or interest in Plaintiff's note and deed of trust, falsely filed documents with the Placer County Recorder's Office claiming that Plaintiff had defaulted on the obligation, and falsely invoked non judicial foreclosure clause and the power of sale in the deed of trust, though there was no proper substitution of trustee and an invalid and false "assignment of deed of trust" filed with the County Recorder.  No valid assignment agreement between Plaintiff's original lender and the current foreclosing entities has been filed as required by California law.

85. Defendants fraudulently misrepresented its standing to foreclose on Plaintiff's note and deed of trust Plaintiff, to the state of California, through the recorder's office and to the public, by falsely reporting a default on the loan and ruining Plaintiff's credit, with full knowledge of that their representations were false, fraudulent, and misrepresented the truth at the time said representations were made.  As further evidence of Defendant Deutsche's fraud against Plaintiff, it has produced two separate allonges to the note.  Both allonges and endorsements derive from the same alleged lender.

86. Plaintiff not being an investment banker, securities dealer, mortgage lender, or mortgage broker, reasonably relied upon the fraudulent and false representations of the Defendants in agreeing to execute the mortgage loan documents.

87. Had Plaintiff known of the falsity of Defendants' fraud and false representations, Plaintiffs would not have entered into the transaction the subject of this action.

88. As a direct and proximate cause of Defendants' fraud, material omissions and material misrepresentations, Plaintiff has suffered damages, all according to proof at trial.

89. Under the totality of the circumstances, these fraudulent acts were malicious with the intent to trick and harm Plaintiff.  Defendants' actions were willful, wanton, intentional, and with a callous and reckless disregard for the rights of Plaintiff justifying an award of not only actual compensatory damages, but also exemplary punitive damages to serve as a deterrent not only as to future conduct of the named Defendants herein, but also to other persons or entities with similar inclination.

90. Plaintiff first learned of the actions of Defendants, including their failure to disclose and the fraud committed upon them in December of 2008.  He rescinded his loan in January of 2009, which was ignored.  He filed his state court complaint which was removed to federal court by Defendant within the one year of learning of the fraud committed upon him.

91. Plaintiff could not have learned of these violations at the time the loan was obtained by looking at his loan documents and escrow closing statements as the true facts of the lender and the securitization of his note and deed of trust and the fees attached thereto, which was undisclosed to him, were not apparent from the face of the loan documents, nor deed of trust.

## FIFTH CAUSE OF ACTION

### Unjust Enrichment

Plaintiff reaffirms and re-alleges paragraphs 1 through 91 above as if set forth fully herein below.

92. Defendant should have disclosed and ensured that Plaintiff understood all fees which would be paid to the Defendants to obtain credit on Plaintiffs' behalf and not to charge any fees which were not related to the settlement of the loan and without full disclosure to Plaintiffs.

93. Defendants cannot, in good conscience and equity, retain the benefits from their actions of charging a higher interest rate, fees, rebates, kickbacks, profits (including but not limited to from the resale of mortgages and notes using Plaintiffs' identity, credit score and reputation without consent, right, justification or excuse as part of an illegal enterprise scheme) and gains and yield spread premium fees, fees paid to Servicer, unrelated to the settlement services provided at closing.

94. Defendants have been unjustly enriched at the expense of the Plaintiff, and maintenance of the enrichment would be contrary to the rules and principles of equity.

95. Defendants have also been additionally enriched to the receipt of payment from third parties, including but not limited to, investors, insurers, the United States Department of the Treasury, the United States Federal Reserve, the FDIC and other banks.

96. Plaintiff demands restitution from the Defendants in the form of actual damages, exemplary damages, and attorney's fees.

97. Plaintiff first learned of the actions of Defendants, including their failure to disclose and the fraud committed upon them in December of 2008. He rescinded his loan in January of 2009, which was ignored. He filed his state court complaint which was removed to federal court by Defendant within the one year of learning of the fraud committed upon him.

98. Plaintiff could not have learned of these violations at the time the loan was obtained by looking at his loan documents and escrow closing statements as the true facts of the lender and the securitization of his note and deed of trust and the fees attached thereto, which was undisclosed to him, were not apparent from the face of the loan documents, nor deed of trust.

## SIXTH CAUSE OF ACTION

## Civil RICO Violations

Plaintiff reaffirms and realleges paragraphs 1 through 98 above as if set forth fully herein below.

99. Defendants' actions and use of multiple corporate entities, multiple parties, and concerted and predetermined acts and conduct specifically designed to defraud Plaintiffs constitute an "enterprise", with the aim and objective of the enterprise being to perpetuate a fraud upon the Plaintiff through the use of intentional nondisclosure, fraud, and creation of the fraudulent loan documents.

100. The predicate acts alleged here cluster around violations of federal law involving mortgage lending, bank regulations and consumer credits laws as alleged in this complaint along with violations of various California state laws concerning conveyance of notes and deeds of trust. See 15 U.S.C.§§1601 et seq., 1639 et.seq., 1681; 12 U.S.C. 2601 and California Civil Code §2923.5, §2924 and §2934, California Commercial Code § 3602 and California Corporations Code §313, respectively.

101.  Other RICO predicate acts were part of the overall conspiracy and pattern of racketeering *activity* alleged herein, *e.g.* mail fraud and bank fraud.  See 18 U.S.C. §§1341 and 1344, respectively.

102.  Plaintiff alleges that the list of exhibits attached to this Amended Complaint, show the false and fraudulent documents filed with the Placer County Recorder Office constitutes probable cause for granting all relief requested in this Complaint.  Plaintiff alleges that Defendant DEUTSCHE did, each, act wrongfully to take or attempt to take and to deprive him of his property, knowing that he,  without his knowledge converted his note and deed of trust to a Mortgage Backed Security, to charge him for insurance and other forms of credit enhancements, which have paid Plaintiff's note, thereby falsely claiming a "default" on the obligation.

103.  At various times and places enumerated in Plaintiff's Exhibits 1 – 19 , Defendants did acquire and/or maintain, directly or indirectly, an interest in or control of a RICO enterprise of individuals who were associated in fact and who did engage in, and whose activities did affect, interstate and foreign commerce, all in violation of 18 U.S.C. §§ 1961(4), (5), (9), and 1962(b). Specifically, the notarizations on the notice of default and the notice of Trustee sale (See, **Exhibits 3 and 7**) were not as attested due under notarization or penalty of perjury or were falsely attested to.  On information and belief, Plaintiff alleges these persons were what have commonly become known as "robo-signers", without the proper identification or personal knowledge claimed on the documents.

104.  The primary cause of this action is a widespread civil and criminal enterprise engaged in a pattern of racketeering activity across State lines, and a conspiracy to engage in racketeering activity involving numerous RICO predicate acts during at least the past five years.

105.  During the pertinent time in question, Defendant participated in the in the commission of two or more of the RICO predicate acts that are itemized in the RICO laws at 18 U.S.C. §§

1961(1)(A) and (B), and did so in violation of the RICO law at 18 U.S.C. 1962(b). These acts include falsifying signatures. Specifically, DEUTSCHE or its agents used false signatures of what are commonly known as "robo-signers".

106.  Plaintiff further alleges that Defendant did commit two or more of the offenses itemized above in a manner in paragraphs 12-51 above which they calculated and premeditated intentionally to threaten continuity, *i.e.* a continuing threat of their respective *racketeering activities*, also in violation of the RICO law at 18 U.S.C. 1962(b) *supra*.

107.  Under the principles of Respondent superior, the principal is liable for agents' misconduct, including knowledge of, participation in, and benefit from a RICO enterprise.

108.  Any allegation about acts of any corporate or other business Defendant means that the corporation or other business did the acts alleged to by its officers, directors, employees, agents and/or representatives while they were acting within the actual or ostensible scope of their authority.

109.  At all times each Defendant committed the acts, Defendant directed others to commit the acts, or permitted others to commit the acts alleged in this complaint.

110.  At all relevant times, Defendant knew or realized that the other parties were engaging in or plan to engage in the violations of law as alleged in the amended complaint.  Knowing or realizing that the other parties were engaging in and are planning to engage in unlawful conduct, Defendant nevertheless facilitated the commission of those unlawful acts.  Defendant intended to and did encourage, facilitate, or assist in the commission of the unlawful acts, and thereby aided and abetted the other parties in the unlawful conduct.

/ / / /

111.  At all relevant times, Defendants have engaged in a conspiracy, common enterprise, and common course of conduct, the purpose of which is to engage in the violations of law alleged in the

complaint.  This conspiracy, common enterprise, and common course of conduct continue to the present.

112.  As a direct result of the actions of the Defendants, Plaintiff has and continues to suffer damages.

**113.**  Plaintiff first learned of the actions of Defendants, including their failure to disclose and the fraud committed upon them in December of 2008.  He rescinded his loan in January of 2009, which was ignored.  He filed his state court complaint which was removed to federal court by Defendant within the one year of learning of the fraud committed upon him.

**114.**  Plaintiff could not have learned of these violations at the time the loan was obtained by looking at his loan documents and escrow closing statements as the true facts of the lender and the securitization of his  note and deed of trust and the fees attached thereto, which was undisclosed to him, were not apparent from the face of the loan documents, nor deed of trust

**SEVENTH CAUSE OF ACTION**

**Violation Of California Business And Professions Code Sections 17200 Et Seq.**

Plaintiff reaffirms and realleges paragraphs 1 through 114 above as if set forth fully herein below.

115.  California Business & Professions Code Section 17200, et seq., prohibits acts of unfair competition, which means and includes any "fraudulent business act or practice . . ." and conduct which is "likely to deceive" and is "fraudulent" within the meaning of Section 17200.

116.  As more fully described above, the Foreclosing Defendants' acts and practices are likely to deceive, constituting a fraudulent business act or practice.  This conduct is ongoing and continues to this date.

117. Specifically, the Foreclosing Defendants engage in deceptive business practices with respect to mortgage loan servicing, assignments of notes and deeds of trust, foreclosure of residential properties and related matters by

(a)  Assessing improper or excessive late fees;

(b)  Improperly characterizing customers' accounts as being in default or delinquent status to generate unwarranted fees;

(c)  Instituting improper or premature foreclosure proceedings to generate unwarranted fees;

(d)  Misapplying or failing to apply customer payments;

(e)  Failing to provide adequate monthly statement information to customers regarding the status of their accounts, payments owed, and/or basis for fees assessed;

(f)  Seeking to collect, and collecting, various improper fees, costs and charges, that are either not legally due under the mortgage contract or California law, or that are in excess of amounts legally due, pursuant to the MBST and MSAA.

(g)  Mishandling borrowers' mortgage payments and failing to timely or properly credit payments received, resulting in late charges, delinquencies or default;

(h)  Treating borrowers as in default on their loans even though the borrowers have tendered timely and sufficient payments or have otherwise complied with mortgage requirements or California law;

(i)  Failing to disclose the fees, costs and charges allowable under the mortgage contract;

(j)  Ignoring grace periods;

(k)  Executing and recording false and misleading documents; and

(l)  Acting as beneficiaries and trustees without the legal authority to do so.

FIRST AMENDED ADVERSARY COMPLAINT

118.  The Foreclosing Defendants fail to act in good faith as they take fees for services but do not render them competently and in compliance with applicable law.

119.  Moreover, the Foreclosing Defendants engage in a uniform pattern and practice of unfair and overly-aggressive servicing that result in the assessment of unwarranted and unfair fees against California consumers, and premature default often resulting in unfair and illegal foreclosure proceedings.  The scheme implemented by the Foreclosing Defendants is designed to defraud California consumers and enrich the Foreclosing Defendants.

120.  The foregoing acts and practices have caused substantial harm to California consumers.

121.  As a direct and proximate cause of the unlawful, unfair and fraudulent acts and practices of the Defendant, Plaintiff and California consumers have suffered and will continue to suffer damages in the form of unfair and unwarranted late fees and other improper fees and charges.

122.  By reason of the foregoing, the Defendant have been unjustly enriched and should be required to disgorge their illicit profits and/or make restitution to Plaintiff and other California consumers who have been harmed, and/or be enjoined from continuing in such practices pursuant to California Business & Professions Code Sections 17203 and 17204.  Additionally, Plaintiff is therefore entitled to injunctive relief and attorney's fees as available under California Business and Professions Code Sec. 17200 and related sections.

### EIGHTH CAUSE OF ACTION

### Breach of Trust Instrument

Plaintiff reaffirms and realleges paragraphs 1 through 122 as if set forth fully herein below.

123.  The Deed of Trust is the document which allows a non-judicial foreclosure to proceed and gives Power of Sale to the duly appointed Trustee.  Per the Deed of Trust, only the Lender can invoke the foreclosure (See, Deed of Trust, **Exhibit 2,** paragraph 22).  Per Deed of Trust paragraph 24, the Lender may appoint a trustee.  The Substitution of Trustee in this case is void, due to fraud,

and was not executed in compliance with California Civil Code§2934(a).  The Substitution of Trustee was invalid also because it was not executed by the Lender, per requirement of the Deed of Trust.  The duly appointed Trustee under the Deed of Trust as of the recording of the Notice of Default on December 8, 2008 was Financial Title Company.   Quality Loan was not substituted in as trustee effectively until November 25, 2009.  (See, Substitution of Trustee, **Exhibit 5)**  The Notice of Default was recorded PRIOR to the assignment, which if it were the true holder-in-due-course, it would be mandatory to obtain beneficial interest in the Deed of Trust, prior to invoking foreclosure.   In the case of a deed of trust  with a power of sale, an assignee can only enforce the power of sale if the assignment is recorded, since the assignee's authority to conduct the sale must appear in the public records.   A non-judicial foreclosure sale under the power-of-sale in a deed of trust or mortgage, on the other hand, must be conducted in strict compliance with its provisions and applicable statutory law. A trustee's powers and rights are limited to those set forth in the deed of trust and laws applicable thereto.

**124.**    The notice of acceleration and notice to cure given to borrower pursuant to Section 22 of the deed of trust, and the notice of  acceleration given to borrower pursuant to Section 18, is a condition precedent to non-judical foreclosure of the power of sale.  If the Lender fails to carry out its obligation, any subsequent foreclosure is invalid.   Defendant has not complied with any expressed provisions of the Deed of Trust, has speciously trespassed upon the Deed of Trust and Plaintiff's property, and the foreclosure and  sale must be rendered void and rescinded under California Civil Code §3513.  Any one may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement. California Civil Code §3514.  All the acts of Defendant as described in this Amended Complaint are a breach of the security instrument, the Deed of Trust.

1

### NINTH CAUSE OF ACTION

2

### Wrongful Foreclosure

3

Plaintiff reaffirms and realleges paragraphs 1 through 124 as if set forth fully herein below.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

FIRST AMENDED ADVERSARY COMPLAINT

125.  California Civil Code Section 2924 mandates that a non-judicial trustee's sale "SHALL NOT TAKE PLACE" unless it is done on behalf of the beneficiary of a deed of trust securing a note and certain technical procedures are met.  California Civil Code §2924 requires strict compliance to foreclose non-judicially, "and a trustee's sale based on a statutorily deficient notice of default is invalid.  California Civil Code §2924c requires that the notice of default provide the name and contact information of the beneficiary or mortgagee for borrowers to find out the amount they must pay, or to arrange for payment to stop the foreclosure.  Here, the Defendants' NOD advises the borrower: "Upon written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. …. To find out the amount you must pay, or arrange for payment to stop the foreclosure… contact: Accredited Home Lenders, Inc., c/o Windsor Mangement Co., 15253 Avenue of Science, San Diego, CA  92128, 1858-451-7322. . See, **Exhibit 3**, Notice of default.  WINDSOR is a stranger to the transaction yet appears on the NOD in the capacity reserved for the beneficiary.   WINDSOR  was not the beneficiary or entitled to act as such, yet WINDSOR  purported to have that authority.   At the time the NOD was recorded, AHL, was the beneficiary under the Deed of Trust.

126.    Corporations Code 313 requires that the NOD state the corporate *signatory capacity* of the signer.  Cathy Garcia signed the NOD as follows:  Windsor Management Co., as gent for beneficiary , By: LSI Title Company.  It appears that LSI Title was acting on behalf of WINDSOR, who was acting for the unnamed beneficiary.  However, WINDSOR 's participation did not comport with Corporations Code 313.  LSI Title's signature as "Authorized Agent" does not satisfy this requirement.  This makes the NOD void, not a voidable document.

127.    California statutes also require strict compliance to substitute a trustee under the DOT.  California Civil Code § 2934(a)(2)A through D, provides that a trustee substitution is accomplished only:  "by the recording in the county in which the property is located of a substitution executed

and acknowledged by all of the beneficiaries under the trust deed, or their successors in interest"; or "the holders of more than 50 percent of the record beneficial interest."   Since the beneficial interest in Plaintiffs' mortgage is believed to be in the investors/certificate-holders of the MBST, if the lien has not been extinguished by operation of law, then a substitution executed and acknowledged by all of the beneficiaries under the trust deed must comply with the statute.  In this case, nothing was filed in the County Recorder's Office to show compliance with this statute.   At a minimum, a substitution executed and acknowledged by all of the beneficiaries under the trust deed, DEUTSCHE should have filed a notarized document that either all the beneficiaries under the DOT and Note or that more than fifty percent (50%) of the holders of the record beneficial interest executed a notarized substitution of trustee pursuant to all the requirements of Civil Code§2934(a).

Further California Civil Code §2924b(4), states in pertinent part:

*A "person authorized to record the notice of default or the notice of sale" shall include an agent for the mortgagee or beneficiary, an agent of the named trustee, any person designated in an executed substitution of trustee, or an agent of that substituted trustee.*

The law clearly states that a Substitution of Trustee shall be recorded prior to a Notice of Default.

128.  Moreover, The California Legislature passed Senate Bill 1137, impacting residential mortgage lenders, foreclosure procedures and eviction procedures.  The law has three pertinent parts.  It amends California Code of Civil Procedure § 1161(b) regarding notice of an eviction.  It adds a provision strengthening the right of local governments to adopt "blight" ordinances and moreover, it modifies the non-judicial foreclosure procedures set forth in California Civil Code § 2924.  The legislature recognized that the need for such legislation by stating as follows:

"…It is essential to the economic health of California for the state to ameliorate the deleterious effects on the state economy and local economies and the California housing market that will result from the continued foreclosures of residential properties in unprecedented numbers by modifying the foreclosures process to require mortgagees, beneficiaries, or authorized agents to contact borrowers and explore options that could avoid foreclosure…"

129. Cal. Civ. Code § 2932.5 provides a condition precedent for an assignee of a Deed of Trust prior to commencing a foreclosure:

> Where a power to sell real property is given to a mortgagee, or other encumbrancer, in an instrument intended to secure the payment of money, the power is part of the security and vests in any person who by assignment becomes entitled to payment of the money secured by the instrument. The power of sale may be exercised by the assignee *if* the assignment is duly *acknowledged and recorded*. (Emphasis added)

130. Defendants in this case had a duty to Plaintiffs to follow the laws, including the foreclosure laws. It did not do so in this case.

131. Defendants are not the beneficiaries of the note and/or the mortgage. Rather, DEUTSCHE and/or WINDSOR and/or some other Servicer are acting as a Servicer of the REMIC Loan Pool Trust known as ACCREDITED MORTGAGE LOAN TRUST 2006-2 ASSET-BACKED NOTES, (See, **Exhibit 8, Mack bates page number 45**) pursuant to a Master Sales and Servicing Agreement. (**Exhibit 9, Mack bates page number 136.**

132. Plaintiff called the purported lender/servicer of the subject mortgage to advise about his financial situation and to request assistance in the form of a repayment plan or other modification relief designed to avoid foreclosure and the loss of his home. Despite the Plaintiff's efforts, the purported lender/servicer failed, refused and/or neglected to work with Plaintiff in any reasonable way to avoid foreclosure during the time of their financial difficulties. The purported lender/servicer failed, refused and/or neglected to disclose to Plaintiff what options were available to the Plaintiffs, to avoid foreclosure and the loss of their home.

133. As a result, Plaintiff was not provided with the specialized assistance and default loan servicing that the lender/servicer was obligated to provide that comported with the Plaintiff's ability to pay and that served to assist Plaintiff in his efforts to avoid the default and the acceleration of the subject mortgage debt and foreclosure. Defendant and/or its agents failed,

refused and/or neglected to evaluate the particular circumstances surrounding Plaintiff's claimed default; failed to evaluate Plaintiff or the subject property; failed to determine the Plaintiff's capacity to pay the monthly payment or a modified payment amount; failed to ascertain the reason for the Plaintiff's claimed default, or the extent of the Plaintiff's interest in keeping the subject property.

134.    Instead, the purported lender/servicer, was secretly was transferring the Deed of Trust and then has attempted to foreclose, without notice to Plaintiff.

135.    Due to Defendants actions, Plaintiff has been damaged, both financially and is being deprived of his residence, which is a unique asset to him. Plaintiff demands damages for these harms and a permanent injunction against Defendant, to prevent him from being evicted from his home.

**TENTH CAUSE OF ACTION**

**Quiet Title**

Plaintiff reaffirms and realleges paragraphs 1 through 135 as if set forth fully herein below.

136.  Plaintiff has sent notice of his rescission of the subject loan transaction, but only sent those notices to the entities that have been disclosed. Hence, without this action, neither the rescission nor the reconveyance to which the Plaintiff is entitled, gives Plaintiff full and clear title to the property.

137.    The real party in interest on the lender's side may be the owner of the asset-backed security issued by the servicing and pooling vendor, the insurer through some claim equitable interests, or the Federal Government through the United States Department of the Treasury or the Federal Reserve. The security is "securitized" bond deriving its value from the underlying mortgages, of which the subject mortgage is one. Thus Plaintiff is entitled to quiet title against Defendant, clearing title of the purported subject mortgage encumbrance.

138.  Defendant claims an interest in the property.  However, Defendant's claims are without any right whatsoever, and said Defendants have no legal or equitable rights, claim, or interest in said property.

139.  Plaintiff therefore seeks a declaration that the title to the subject property is vested in Plaintiff alone and that the Defendant, be declared to have no estate, right, title or interest in the subject property and that said Defendant,  be forever enjoined from asserting any estate, right, title or interest in the subject property adverse to the Plaintiff's herein.

**WHEREFORE**, Plaintiff prays this court to enter judgment against Defendants and each of them, as follows:

1.    For an order compelling said Defendants, and each of them, to transfer or release legal title and any alleged encumbrances thereon, and possession of the subject property to Plaintiffs herein;

2.    For a declaration and determination that Plaintiffs are the rightful holders of title to the property and that Defendants herein, and each of them, be declared to have no estate, right, title or interest in said property;

3.    For a judgment forever enjoining said Defendants, and each of them, from claiming any estate, right, title or interest in the subject property;

4.    For a declaration that the foreclosure which was instituted be deemed and declared illegal and void, and that further proceedings in connection with the foreclosure be enjoined;

5.    For attorneys fees according to statutes;

6.    For actual, compensatory and punitive damages;

///

///

///

FIRST AMENDED ADVERSARY COMPLAINT

7.    For costs of the suit herein incurred;

For such other further relief as the court may deem just and proper

Dated:  June 17, 2011                    Respectfully submitted,
                                          LAW OFFICES OF HOLLY S. BURGESS

                                          By:  _/s/_ **HOLLY S. BURGESS**_____.
                                                  HOLLY S. BURGESS
                                                  Attorneys for Debtor