

FILED

FEB 1 6 2012

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

*POSTED ON WEBSITE*
*NOT FOR PUBLICATION*

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**SACRAMENTO DIVISION**

| | |
|---|---|
| In re | Case No. 10-44610-E-7 |
| JAMES L. MACKLIN, | |
| Debtor(s). | |
| | |
| JAMES L. MACKLIN, | Adv. Pro. No. 11-2024 |
| Plaintiff(s), | Docket Control No. RAB-4 |
| v. | |
| DEUTSCHE BANK NATIONAL TRUST CO., AS INDENTURE TRUSTEE FOR THE ACCREDITED MORTGAGE LOAN TRUST 2006-2 ASSET-BACKED NOTES, et al., | |
| Defendant(s). | |

**This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of claim preclusion or issue preclusion.**

**MEMORANDUM OPINION AND DECISION**

This Adversary Proceeding was commenced by James Macklin ("Macklin") on January 13, 2011.  Deutsche Bank National Trust Company, as Indentured Trustee for the Accredited Mortgage Loan Trust 2006-2 Asset-Backed Notes ("DBNTC"), seeks to dismiss the First Amended Complaint in this Adversary Proceeding pursuant to Federal Rule of Civil Procedure 12(b)(6) as made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7012.



The court previously granted a motion filed by DBNTC to dismiss the Original Complaint, with leave to amend granted to Macklin.    On June 17, 2011, Macklin filed his First Amended Complaint ("FAC"), Dckt. 120) which is the subject of the present Motion to Dismiss.

### MACKLIN'S BANKRUPTCY CASE[1]

Macklin commenced a Chapter 13 case on September 16, 2010.[2] On Schedule A, Macklin listed one real property asset, described only as "Three Bedroom-Two Bath Single Family Residence."    He stated that the current value of this unidentified property was "unknown" and the amount of the secured claim was $0.00.[3]    On Schedule D, Macklin lists DBNTC as having a disputed, unliquidated claim in the amount of $532,000.00, all of which was stated to be unsecured.    No value is given for the collateral and Macklin did not identify the property which secures the claim or the value of such property.[4]    Macklin filed the Chapter 13 case *in pro se*.

On September 30, 2011, Macklin filed an election to convert his case to one under Chapter 7 and filed several Amended Schedules, several Original Schedules, and his Statement of Financial Affairs in the bankruptcy case.    For the conversion and pleadings filed from and after September 30, 2010, Macklin was

---

[1]    The court has included a detailed discussion of Macklin's bankruptcy case as it relates to this Adversary Proceeding for the benefit of his recently-retained substitute counsel.    From reviewing the pleadings filed by the new counsel, it appears that he may not be familiar with the proceedings, statements made by Macklin, and the fact that Macklin did not to comply with the orders for the requested temporary restraining order and preliminary injunction in this case.

[2]    Bankr. E.D. Cal. Case No. 10-44610 ("Bankruptcy Case").

[3]    Bankruptcy Case Dckt. 1, Schedule A.

[4]    *Id.*, Schedule D.

1 | represented by counsel.[5] These new pleadings include the following.

2 | On Amended Schedule A, Macklin affirmatively states "none" as
3 | to having any interest in real property, removing any reference to
4 | the "Three Bedroom-Two Bath Single Family Residence" previously
5 | listed.  On Schedule B, Macklin lists no personal property claims
6 | or causes of action of any kind (including any against DBNTC).  No
7 | exemption is claimed in any real property or any claims against
8 | DBNTC on Amended Schedule C.

9 | Three creditors are listed on Amended Schedule D and eight
10 | creditors are listed on Schedule F; DBNTC is not amoung them.
11 | Schedule I lists Macklin as having income of $2,200.00 per month
12 | (having been employed one month) and being divorced.  Schedule J
13 | filed by the Debtor lists monthly expenses of $6,452.60 per month,
14 | including  a  mortgage  payment  of  $2,230.00  per  month,
15 | notwithstanding no real property listed on Amended Schedule A or
16 | real property secured claim listed on Amended Schedule D.  *Id.*

17 | In response to Question 1 of the Statement of Financial
18 | Affairs, Macklin lists gross income of $17,600.00 in 2010 year to
19 | date (average of $2,200.00 per month for January through August
20 | 2010), $15,000.00 (average of $1,250.00 per month) in 2009, and
21 | $25,000.00 (average of $2,000.00 per month) in 2008.[6]  No other
22 | income is stated on the Statement of Financial Affairs.    In
23 | response to Question 5, Macklin states that property known as
24 | 10040 Wise Road, Auburn, California, was foreclosed on by Select
25 | Portfolio Servicing on December 14, 2009.

26
27 | ⁵   Bankruptcy Case Dckt. 24.
28 | ⁶   *Id.*

3

On November 17, 2010, Macklin again amended his Schedules.[7] On the Second Amended Schedule A, Macklin listed an ownership interest of unstated nature in real property commonly know as 10040 Wise Road, Auburn, California (the "Property"), with a value of $659,000.00 and subject to $0.00 in secured claims.   Amended Schedule B lists a new asset, the District Court action *Macklin v. Select Portfolio Servicing*, E.D. Cal. Case No. 2:10-cv-1097, for an unstated value.[8]   Second Amended Schedule C claims a homestead exemption in the Property and no exemption in the lawsuit or any claims relating to the lawsuit.   Amended Schedule F lists Select Portfolio Servicing as having a disputed claim for $0.00 based on a line of credit as "Alleged Creditor on 1st Mortgage."   The Amended Statement of Financial Affairs lists the District Court lawsuit, identified as breach of "contract, fraud, foreclosure."

---

[7]   Bankruptcy Case Dckt. 56.

[8]   The District Court proceeding was commenced on May 3, 2010, when defendants Matthew Hollingworth, Robert J. Jackson, Amy E. Starrett, and R.K. Arnold removed the state-court action Macklin had filed against DBNTC and others in the California Superior Court for Placer County.  As with the FAC before this court, the first amended complaint before the district court is drafted in a textually dense manner, argumentative, and includes points and authorities. The state-court complaint runs 127 pages in length.  The District Court stayed that action based on Macklin having filed bankruptcy, believing that the bankruptcy filing stayed the District Court action as a matter of law.  This was notwithstanding DBNTC correctly notifying the District Court that the automatic stay applies only as to actions against the debtor, not actions commenced by the debtor against others.  This is true even if the non-bankruptcy proceeding may result in the dismissal of or entry of summary judgment against the debtor in an action commenced by the debtor.  Unfortunately, it does not appear that the District Court was cited to authorities such as *Parker v. Bain et. al.*, 68 F.3d 1131 (9th Cir. 1995); *Alpern v. Lieb*, 11 F.3d 689 (7th Cir. 1993); *McMillan v. Mbank Forth Worth N.A.*, 4 F.3d 362 (5th Cir. 1993); *Brown v. Armstrong,* 942 F.2d 1007 (8th Cir. 1991); *Carley Capital Group v. Fireman's Fund Ins. Co*, 889 F.2d 1126 (DC Cir. 1989); *In re Way*, 229 B.R. 11 (B.A.P. 9th Cir. 1998); *In re White*, 186 B.R. 700, (B.A.P. 9th Cir. 1995); and *In re Merrick,* 175 B.R. 333 (B.A.P. 9th Cir. 1994).

Though not having stated an exemption for any of the rights or causes of action in the District Court action (or otherwise scheduled whatever rights or causes of action he asserted against DBNTC), Macklin commenced the present Adversary Proceeding on January 13, 2011.  The Chapter 7 Trustee was not a party to this action, nor were the rights or causes of action (property of the bankruptcy estate) abandoned or transferred by the Chapter 7 Trustee to Macklin.

### FACTS AS ALLEGED IN THIS ADVERSARY PROCEEDING

Macklin refinanced his home in April 2006 and executed a Note naming Accredited Home Lenders, Inc. as the payee and a Deed of Trust against the Property to secure the Note.  It is alleged that subsequently the Note was transferred to unidentified parties and then eventually transferred to DBNTC.  Several documents relating to changing the trustee under the Deed of Trust were recorded, with the beneficial interest in the deed of trust ultimately appearing in the records as transferred to DBNTC.  The transfers are summarized as follows:

| Document | Grantor | Grantee/ New Trustee | Executed Date | Recorded Date |
|---|---|---|---|---|
| Substitution of Trustee | MERS, Inc., as nominee for Accredited Home Lenders Inc. | Windsor Management Co. | Jan. 30, 2008 (Notarized Mar. 4, 2009) | Mar. 10, 2009 |
| Substitution of Trustee | DBNTC | Quality Loan Service Corporation | Aug. 21, 2009 | Nov. 25, 2009 |
| Corporate Assignment of Deed of Trust | MERS, Inc., as nominee for Accredited Home Lenders Inc. | DBNTC | Nov. 17, 2009 | Nov. 30, 2009 |

Macklin stopped making payments on the loan in 2008. DBNTC commenced nonjudicial foreclosure proceedings and eventually obtained a trustee's deed for the Property at a nonjudicial foreclosure sale held on December 14, 2009, and then recorded the trustee's deed. In January 2010, DBNTC posted a notice to vacate and later commenced an unlawful detainer action in the California Superior Court.

Macklin filed for bankruptcy protection pursuant to Chapter 13 of the Bankruptcy Code on September 16, 2010. The bankruptcy case was subsequently converted to a proceeding under Chapter 7. DBNTC sought relief from the automatic stay provided by 11 U.S.C. § 362(a). After two hearings and permitting Macklin to offer supplemental arguments and evidence in opposition, the court granted relief from the automatic stay by an order entered on February 4, 2011.[9] The 14-day stay of enforcement provided by Federal Rule of Bankruptcy Procedure 4001(a)(3) expired on Friday, February 18, 2011.

## PROSECUTION OF ADVERSARY PROCEEDING

Macklin filed this adversary proceeding on January 13, 2011. The initial complaint sought (1) to determine the nature, extent, and validity of any lien held by DBNTC, (2) to determine that the

---

[9] Bankruptcy Case, Dckt. 100. The Chapter 7 Trustee did not file any opposition to the motion for relief from the automatic stay. As a Chapter 7 debtor, Macklin was not attempting any reorganization, as of February 2011, no interests in the lawsuit was asserted by or for the estate. In terminating the stay, the court noted that Macklin could seek injunctive relief in the Adversary Proceeding for his rights, and if the Trustee determined that there were undisclosed rights of the Estate, he could seek relief from the order granting relief from the stay as to the estate. Bankruptcy Case Dckt. 99.

underlying note has been satisfied or converted to unsecured debt, (3) damages for DBNTC's purported violation of the Truth-in-Lending Act by failing to notify Macklin that it obtained an interest in the mortgage loan, (4) a declaration that the assignments of the trust deeds were a fraudulent conveyance, (5) damages for libel, and (6) to quiet title to the Property.   Macklin prays for $1 million in general damages, $750,000.00 special damages, punitive damages, attorneys' fees and costs, an order quieting title in the property in his favor, and other just relief.   On April 7, 2011, DBNTC filed a Motion to Dismiss.[10] The court granted the Motion to Dismiss by order entered on May 20, 2011, with leave to amend.[11] Macklin then filed the FAC on June 17, 2011.[12] The FAC asserts ten causes of action: (1) Violations of the Truth-in-Lending Act; (2) Violations of the Real Estate Settlement Procedures Act; (3) Violation of the Fair Credit Report Act; (4) Fraud; (5) Unjust Enrichment; (6) Violation of Racketeer Influenced and Corrupt Organizations Act; (7) Violation of California Business & Professions Code § 17200; (8) Breach of Trust Instrument; (9) Wrongful Foreclosure; and (10) Quiet Title.

Based on the Original Complaint Macklin sought a temporary restraining order preventing DBNTC from taking possession of the Property based on an asserted trustee's deed obtained through a nonjudicial foreclosure sale.[13] The court issued a ruling granting

---

[10]   Dckt. 71.

[11]   Dckt. 97.

[12]   Dckt. 120.

[13]   Dckt. 6, filed February 7, 2011.

7

the Motion, conditioning the issuance of the temporary restraining order on Macklin posting a $5,000.00 bond.[14]  The $5,000.00 bond was never posted and the temporary restraining order was not issued by the court.

Macklin also sought issuance of a preliminary injunction.[15] The court granted the motion for a preliminary injunction on May 19, 2011.[16]  On May 20, 2011, the court entered an order enjoining DBNTC from "exercising any powers, rights, or interests under or relating to any Deed of Trust, mortgage, lien or other security interest against or relating to the 'Wise Road Property.'" In its ruling on the Motion for Preliminary Injunction, the court found that because DBNTC did not properly follow the procedures for substituting the trustee under the Deed of Trust and noticing the sale, there was a likelihood of Macklin prevailing on the issue of whether the power of sale under the deed of trust had been properly exercised.

Though Macklin had failed to fund the $5,000.00 bond, the court issued the preliminary injunction, allowing Macklin to fund a cash bond with payments of $1,500.00 a month, with the first payment due on May 31, 2011.  Because Macklin was not making either a mortgage or rent payment, the $1,500.00 a month payment was reasonable and an appropriate accommodation for a debtor who was in the midst of a Chapter 7 case to fund a cash bond rather than

---

[14]  Dckt. 66.

[15]  Dckt. 26.

[16]  Dckt. 100.

8

requiring a traditional third-party bond.[17]   On August 10, 2011, DBNTC filed a motion for the court to vacate the preliminary injunction based on Macklin's failure to fund the $1,500.00 monthly cash bond.[18]   In opposing the motion, Macklin did not dispute his failure to fund the cash bond, but boldly requested that the preliminary injunction be modified to allow Macklin to begin paying $750.00 a month to the Chapter 7 Trustee as rent for the use of the Property.[19]  Macklin unilaterally chose to ignore this court's order for the bond required by the court pursuant to Federal Rule of Civil Procedure 65 and Federal Rule of Bankruptcy Procedure 7065. The court rejected Macklin's modification of the court's order for a Rule 65(c) bond, finding that Macklin had failed to comply with the requirements for the preliminary injunction and rejecting his proposal to pay the Chapter 7 Trustee a significantly lower amount rather than funding the bond.[20]   The preliminary injunction was vacated, effective September 28, 2011.[21]

On May 12, Macklin moved the court for an order compelling the Trustee to abandon the Property.[22]   The Trustee opposed the Motion to Abandon, arguing that the Property was valuable to the Estate.[23] Based on the Trustee's opposition, the Court denied Macklin's

---

[17]  Memo. Opinion & Decision, Dckt. 98.

[18]  Dckt. 158.

[19]  Dckt. 170.

[20]  Dckt. 186.

[21]  Dckt. 187.

[22]  Bankruptcy Case Dckt. 103.

[23]  Bankruptcy Case Dckt. 116.

9

Motion without prejudice by order entered on July 5, 2011.[24]

On July 14, 2011, the Trustee filed a motion to intervene in the Adversary Proceeding.[25]  In doing so, the Trustee argued that he was vested with the exclusive power to prosecute causes of action belonging to the estate.  The court granted the Trustee's Motion to Intervene without prejudice to DBNTC's right to seek dismissal of the case based on Macklin's lack of standing by order entered on August 2, 2011.[26]

On August 19, 2011, eight months after the Adversary Proceeding was filed, the Chapter 7 Trustee filed a motion to sell all of the Estate's causes of action against DBNTC to Macklin.[27] The purchase price paid by Macklin for these claims was the first $150,000.00 in net proceeds recovered from DBNTC.  Notwithstanding the opposition of DBNTC, the court approved the sale.[28]

**ANALYSIS**

In considering a motion to dismiss, the court starts with the basic premise that the law favors disputes being decided on their merits, and a complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in

---

[24]   Bankruptcy Case Dckt. 120.

[25]   Dckt. 135.

[26]   Dckt. 149.

[27]   Bankruptcy Case Dckt. 124.

[28]   Though the court approved the sale on September 15, 2011, and the civil minutes state that Counsel for the Trustee was to submit a proposed order to the court, no order has been submitted or entered approving the sale.  An additional condition to the sale as approved by the court is that any settlement or proposed transfer of any rights of the Estate in the Property be first approved by the court pursuant to a motion to compromise filed by the Chapter 7 Trustee.  Bankruptcy Case Dckt. 136.

support of his claim which would entitle him to the relief.[29]   Any doubt with respect to whether a motion to dismiss is to be granted should be resolved in favor of the pleader.[30]   For purposes of determining the propriety of a dismissal before trial, allegations in the complaint are taken as true.[31]

The complaint must provide more than labels and conclusions, or a formulaic recitation of a cause of action; it must plead factual allegations sufficient to raise more than a speculative right to relief.[32]   Federal Rule of Civil Procedure 8, made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7008, requires that complaints contain a short, plain statement of the claim showing entitlement to relief and a demand for the relief requested.[33]   The pleading standard under Rule 8 does not require "detailed factual allegations," but it does demand more than an unadorned accusation or conclusion of a cause of action.[34]   As the court held in *Ashcroft v. Iqbal*,[35]

---

[29]   *Williams v. Gorton*, 529 F.2d 668, 672 (9th Cir. 1976).

[30]   *Pond v. General Electric Company*, 256 F.2d 824, 826-827 (9th Cir. 1958).

[31]   *Kossick v. United Fruit Co.*, 365 U.S. 731, 731 (1961).

[32]   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007).

[33]   Fed. R. Civ. P. 8(a).

[34]   *Bell Atlantic*, 550 U.S. at 555.

[35]   To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868, 884 (2009) (citations and quotation marks omitted).

11

Rule 8 also requires that allegations be "simple, concise, and direct."[36]

In ruling on a Rule 12(b)(6) motion to dismiss, the Court may consider "allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."[37] The court need not accept unreasonable inferences or conclusory deductions of fact cast in the form of factual allegations.[38] Nor is the court required to "accept legal conclusions cast in the form of factual allegations if those conclusions cannot be reasonably drawn from the facts alleged."[39]

DBNTC asserts in the Motion to Dismiss the First Amended Complaint that:

   (1)   Macklin lacks standing to continue this action because the Chapter 7 Trustee has not abandoned the action to Macklin; the Trustee's intervention does not cure standing defects;

   (2)   Macklin's Truth-in-Lending Act ("TILA") cause of action is barred by the one-year statute of limitations (15 U.S.C. § 1640(e));

   (3)   Macklin's Real Estate Settlement Procedures ("RESPA") cause of action is time-barred by the three-year statute of limitations (12 U.S.C. §§ 2605, 2607);

   (4)   Macklin's Fair Credit Reporting Act ("FCRA") cause of action fails because Macklin has not alleged two critical components of a private action under FCRA: (1) That DBNTC is subject to the FCRA; and (2) That information allegedly reported was inaccurate;

---

[36]   Fed. R. Civ. P. 8(d)(1).

[37]   *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

[38]   *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

[39]   *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994)

(5)   The complaint fails to plead with particularity DBNTC's involvement in any fraudulent conveyance;

(6)   Macklin does not to state a claim for unjust enrichment because Macklin received the benefit of the bargain;

(7)   Macklin does not to state a valid Violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") pursuant to 18 U.S.C. §§ 1961-68 because he has not alleged plausible predicate acts with the requisite particularity (pursuant to Federal Rules of Civil Procedure 9(b)) to state a cause of action;

(8)   Macklin does not state a claim for violation of California Business & Professions Code § 17200 because he failed to allege that Defendant engaged in unlawful, unfair or fraudulent business acts or practices;

(9)   Macklin does not state a claim for wrongful disclosure because although the corporate assignment was executed after the Substitution of Trustee and Notice of Trustee Sale were executed, it was executed before either document was recorded; and

(10)   The complaint does not allege the required elements for a quiet title action.

## STANDING

DBNTC challenges Macklin's standing to maintain this adversary proceeding.  Once the case was converted, the Chapter 7 Trustee came into possession of all rights and property of the Estate.[40] Property of the estate includes any legal or equitable interest belonging to the debtor as of the filing of the bankruptcy petition.[41]  Pursuant to 11 U.S.C. §§ 323(a) and 704, the trustee, as the representative of the estate, has the exclusive capacity to sue and be sued on behalf of the estate.  Once appointed, the Chapter 7 Trustee had the sole authority to prosecute the action unless that action has been abandoned to the debtor or the debtor

---

[40]   11 U.S.C. § 323(a) (Trustee is the representative of the Estate).

[41]   11 U.S.C. § 541.

13

1    hold a pecuniary interest in the surplus estate.[42]

2        Here, Macklin's bankruptcy case was commenced on September 16,
3    2010, as one under Chapter 13 of the Bankruptcy Code which was
4    subsequently converted to Chapter 7 by order entered on October 6,
5    2010.  The Chapter 7 Trustee filed his report of no distribution on
6    December 23, 2010, indicating that there was no property available
7    for distribution.[43]    Macklin was granted his discharge on
8    February 7, 2011.[44]

9        Property that is scheduled and not otherwise administered at
10   the closing of the case is abandoned to the debtor unless the court
11   orders otherwise.[45]  In his bankruptcy case, Macklin eventually
12   disclosed a lawsuit then pending before the District Court styled
13   *Macklin v. Select Portfolio Servicing*, and DBNTC's claim (under
14   Select Portfolio Servicing's name as unsecured) in amended
15   Schedules filed November 17, 2010.  A review of the docket in the
16   bankruptcy case shows that the bankruptcy case has not been closed.
17   Therefore, the asset relating to that lawsuit had not been
18   abandoned to Macklin at the time this Adversary Proceeding was
19   commenced.

20       The Chapter 7 Trustee and Macklin achieved an agreement by
21   which all rights in this action, both the exempt and nonexempt
22   interests which are in the bankruptcy estate, were to be sold to

23

24       [42]  *Moneymaker v. CoBen (In re Eisen)*, 31 F.3d 1447, 1451 n.2 (9th
     Cir. 1994); *Donovan & Schuenke v. Sampsell*, 226 F.2d 804, 809-10 (9th
25   Cir. 1955); *Stoll v. Quintanar (In re Stoll)*, 252 B.R. 492, 495
     (B.A.P. 9th Cir. 2000).

26       [43]  Bankruptcy Case Dckt. 71.

27       [44]  Bankruptcy Case Dckt. 101.

28       [45]  11 U.S.C. § 554(c).

                                    14

and litigated by Macklin. DBNTC's assertion of the general statement in *Houston v. Eiler* (*In re Cohen*)[46] that intervention by one with standing does not retroactively cure a jurisdictional standing defect is not determinative of the issue in this Adversary Proceeding. First, Movant neglects to address that the decision in *Houston* related to a situation where the judgment had already been entered in the adversary proceeding. The authority for the holding in *Houston* is cited as *United States ex rel. Texas Portland Cement Co. v. McCord*,[47] which addressed a statute by which Congress expressly granted the United States, and only the United States, the exclusive right to bring the action in that case. The intervention in that case did not cure the fact that no right to bring the action under the statute existed (no cause of action could be brought by creditors until six months after the completion of the contract if the United State had not brought suit). Since no cause of action existed, it did not matter who attempted to bring the suit.

In *Benavidez v. Eu*,[48] cited by Movant, the Ninth Circuit Court of Appeals addresses this issue in the context of whether the federal court had original subject matter jurisdiction. Footnote 4 in *Benavidez* includes a discussion of cases for the proposition that (1) intervention is not proper when no federal cause of action (subject matter jurisdiction) existed, (2) invention was proper where intervening party could establish subject matter

---

[46]  305 B.R. 886, 892 (B.A.P. 9th Cir. 2004)

[47]  233 U.S. 157, 163-64, 58 L. Ed. 893, 34 S. Ct. 550 (1914)

[48]  34 F.3d 825 (9th Cir. 1994)

15

jurisdiction, and (3) intervention was improper where intervenors were indispensable parties and joinder would destroy diversity subject matter jurisdiction.

Under the principles addressed by the Ninth Circuit Court of Appeals in *Dunmore v. United States*,[49] the filing of this complaint by the Debtor during the pendency of this Chapter 7 case may be cured as provided in Federal Rules of Civil Procedure 17(a). The issue turns on whether the filing of this Complaint by Macklin was an "understandable mistake" and not a strategic decision. On December 23, 2010, the Chapter 7 Trustee filed his Report of No Distribution. The Debtor listed the real property which is the subject of this Adversary Proceeding on Amended Schedule A and claimed it exempt on Schedule C filed on November 17, 2011.[50] It is reasonable for Macklin to conclude that the Report of No Distribution meant what it said, the Chapter 7 trustee did not intend to prosecute any claims or take any action which would protect Macklin's exemption in the Property.

Facing a hearing on a motion for relief from the automatic stay, Macklin commenced this adversary proceeding asserting interests and rights in the Property which the Chapter 7 Trustee was not asserting. While not correct, the court believes that it is an "understandable mistake" for Macklin to believe that he could and should commence the action to protect his interests in the Property.[51] There is nothing to indicate that the filing was a

---

[49]    358 F.3d 1107 (9th Cir. 2004)

[50]    Bankruptcy Case Dckt. 56.

[51]    In *Dunbar*, the Ninth Circuit Court of Appeals remanded to the district court to expressly address this issue of "understandable

16

strategic decision or gamesmanship undertaken by Macklin. The principles underlying Federal Rules of Civil Procedure 17(a) are to prevent prejudice to the initial plaintiff (such as claims being time barred) and preventing the wasting of limited judicial time and resources though multiple filings of the same proceeding.

The Motion to dismiss on the grounds that Macklin did not have and does not have standing to prosecute the adversary proceeding is denied.

### TRUTH-IN-LENDING ACT ("TILA") – FIRST CAUSE OF ACTION

Macklin asserts a claim (First Cause of Action) based on "Defendant and/or its agents[']" failure to disclose,

> [c]ertain finance charges shown on the TILA statement and certain information, such as the identify of the creditor; each amount that is or will be paid to third persons by the creditor on the consumer's behalf, together with an identification or or reference to the third person; that the loan exceeded the fair market value of the Subject Property, with a clear and conspicuous statement that –(A) the interest on the portion of the credit extension that is greater than the fair market value fo the dwelling is not tax deductible for Federal income tax purposes; and (B) the consumer should consult a tax adviser for further information regarding the deductibility of interest and charges.[52]

Macklin further alleges that (1) "Defendant and/or its agents" falsified his loan application; and (2) "Defendant and/or its agents" did not respond to his alleged Notice of Rescission. Finally, Macklin alleges he did not receive the proper disclosure of the finance charges that were incident to his refinancing the Property on April 19, 2011.

---

mistake" and whether intervention pursuant to Federal Rules of Civil Procedure 17(a) cured any defect in having the proper party plaintiff before the court.

[52]   FAC ¶ 52.

Pursuant to 15 U.S.C. § 1631, the creditor is required to disclose to the person obligated on a consumer credit transaction "the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit." Here, however, Macklin admits that DBNTC was not the creditor in the original transaction that allegedly triggered the statutory disclosure requirements. According to Macklin's FAC, the creditor was either Accredited Home Lenders, Inc. or Centennial Bank of Colorado.[53] Therefore, the court finds that Macklin has not stated a claim against DBNTC, who was not an original party to the original underlying loan transaction.

Macklin further asserts that "Defendants and/or its agents" did not respond to his attempt to rescind his loan pursuant to 15 U.S.C. § 1635. Section 1635(a) of TILA, the "buyer's remorse" provision, gives borrowers three business days to rescind a loan agreement without penalty. If the lender does not disclose important terms of the loan accurately, 15 U.S.C. § 1635(f) gives the borrower the right to rescind until "three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first."[54] In Macklin's letter to the loan servicer, however, he demanded to be repaid all of his payments on the loan ($125,713.46), have the promissory note returned by him, and retain the Property free and clear of any

---

[53]  FAC ¶ 55, Lines 12-14.

[54]  *King v. California*, 784 F.2d 910, 913 (9th Cir. 1986).

liens.[55]  This not a rescission, but a demand by Macklin to be paid money, have his note returned to him, and be given property free and clear of the deed of trust.[56]

Accordingly, based on the foregoing, the Motion to Dismiss is granted as to the First Cause of Action without leave to amend.

**Additional Statute of Limitations Grounds**

DBNTC further argues that this claim is bared by TILA's one-year statute of limitations.[57]  Macklin replies that any statute of limitation was equitably tolled.

The Ninth Circuit applies equitable tolling to TILA's one-year statue of limitations.[58]  Equitable tolling is applied to effectuate the congressional purpose of TILA.[59]  "[C]ourts have construed TILA as a remedial statute, interpreting it liberally for the consumer."[60]  Specifically, the Ninth Circuit held:[61]

> [T]he limitations period in Section 1640(e) runs from the date of consummation of the transaction but that the doctrine of equitable tolling may, in the appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud *or nondisclosures* that form the basis of the TILA action.

Where, here, the borrower alleges that the required disclosure was

---

[55]  Exhibit 15 to FAC.

[56]  Once the note is returned and there is no enforceable obligation, there is nothing for the deed of trust to secure.

[57]  *See* 15 U.S.C. § 1640(e).

[58]  *King v. California*, 784 F.2d 910, 914 (9th Cir. 1986).

[59]  *Id.* at 914-15.

[60]  *Id. (citing Riggs v. Gov't Emps. Fin. Corp.*, 623 F.2d 68, 70-71 (9th Cir. 1980)).

[61]  *Id.* (emphasis added).

not provided, it is proper to toll the statute of limitations until the borrower discovered or had a reasonable opportunity to discover the nondisclosure.   This does not mean that the statute of limitations is tolled until the borrower decides he or she wants to file litigation.

However there is a more foundational issue that must be addressed.   Section 1641(g) applies to "a mortgage loan . . . sold or otherwise transferred or assigned to a third party."   Section 1641(g) was added by an Act of Congress dated May 20, 2009, and therefore may not apply to the mortgage loan transaction at issue here — the transfer of the promissory note into the Trust, not the assignment of the deed of trust or the substitution of trustee. Macklin's complaint alleges that this occurred simultaneously with the transfer in the beneficial interest in the deed of trust in November 2009.   However, this factual assertion is based solely upon the assignment of the trust deed, not a review of the underlying note.

Therefore, to the extent the mortgage loan transaction occurred after enactment of Section 1641(g), the one-year statute of limitations was tolled until Macklin discovered or had a reasonable opportunity to discover the nondisclosure. However, if the transaction occurred before May 20, 2009, the cause of action fails as the obligation to provide the notice did not yet exist.

The FAC alleges that the transfer occurred on November 30, 2009.   Therefore, the notice required by Section 1641(g), if required at all, was due on December 30, 2009.   Macklin's cause of action therefore accrued on December 31, 2009.   Normally the statute of limitations would require the cause of action based on

20

this TILA violation to be brought no later than December 31, 2010. This complaint was not filed, however, until January 13, 2011, 13 days later.

Construing the facts pled in the complaint in the light most favorable to Macklin, for purposes of the present Motion the court concludes that at this juncture the mortgage loan transaction occurred after the effective date of Section 1641(g). However, prior to March 31, 2009 (the date of the response to the Notice of Rescission), Macklin sent a Notice of Rescission which asserts extensive TILA violations, rights arising under the California Commercial Code, and Fair Debt Collection Practices Act violations. Though this Notice of Rescission is undated, it had to predate the March 31, 2009 response and demonstrates that as early as March 2009 Macklin was aware of potential TILA and other claims arising out of the loan.[62] Therefore, the motion to dismiss the TILA claim (First Cause of Action) as untimely due to the Statute of Limitations is also granted, without leave to amend.

## REAL ESTATE SETTLEMENT PROCEDURES ACT ("RESPA") — SECOND CAUSE OF ACTION

Macklin's Second Cause of Action alleges Defendant violated 12 U.S.C. §§ 2605 and 2607. Macklin alleges that "Defendant and/or its agents" accepted fees for real estate services which were actually used to purchase securities and the attendant fees provided for in the Master Sales and Servicing Agreement. Macklin further alleges that the "Servicer" breached 12 U.S.C. § 2605 by

---

[62] Exhibits 15 and 16, which include USPS certified mail receipts showing delivery on Roup & Assoicates and Windsor Management (the persons to whom the Notice of Rescission was addressed) on February 12, 2009. Dckt. 125.

not adequately responding to a "qualified written request" pursuant to 11 U.S.C. § 2605(e).[63]

DBNTC alleges that the RESPA claims are time-barred. An action alleging violation of 12 U.S.C. § 2605 must be brought within three years of such violation, and an action alleging violation of 12 U.S.C. § 2607 must be brought within one year of such a violation.[64] The loan transaction at issue here closed in April 2006. Macklin did not file this action until January 13, 2011, almost five years later. Accordingly, the court finds that the cause of action under RESPA is time-barred.

DBNTC further asserts that RESPA requires the disclosures complained of here to be made by a "servicer" of any federally related mortgage loan.[65] "Section 2605 of RESPA requires a loan servicer to provide disclosure relating to the assignment, sale, or transfer of loan servicing to a potential or actual borrower: (1) at the time of the loan application, and (2) at the time of transfer."[66] Likewise, "[t]he loan servicer also has a duty to respond to a borrowers's inquiry or 'qualified written request.'"[67] Defendant DBNTC alleges without dispute that it is not a loan servicer. Macklin does not allege that DBNTC is a "servicer,"

---

[63] Imposing on the servicer a duty to provide a written response acknowledging receipt of the correspondence within 20 days and a duty to conduct an investigation to provide the borrower with a written explanation or clarification.

[64] *See Lee v. Aurora Loan Servs.*, No _____, 2010 U.S. Dist. LEXIS 56094, *14-15 (N.D. Cal. May 18, 2010).

[65] *See* 12 U.S.C. § 2601 *et seq.*

[66] *McGill v. Wachovia Mortg., FSB Loan,* 2010 U.S. Dist. LEXIS 43393, *20 (E.D. Cal. Mar. 3, 2010).

[67] *Id.* at *20 (citing 12 U.S.C. § 2605(e)).

22

instead he makes general, nonspecific allegations that "Defendant and/or its agents" were a servicer. The FAC goes further to allege that Qualified Written Responses and inquiries were made of others, and attempts to bring in the current Defendant, DBNTC, based upon Macklin's interaction with others or predecessor owners of the Note. Accordingly, Macklin fails to state a claim upon which relief can be granted.

Based upon the foregoing, the Second Cause of Action is dismissed without leave to amend.

**FAIR CREDIT REPORTING ACT ("FCRA") – THIRD CAUSE OF ACTION**

Macklin's Third Cause of Action alleges "Defendants" and "Defendant and/or its agents" falsely reported that his loan payments were in default when the loan payments were actually current and were paid by the servicer, in violation of the FCRA.

The FCRA contains two provisions, 15 U.S.C. § 1681n and 1681o, establishing a private right of action on behalf of consumers against violators of the Act. Here, DBNTC asserts that Macklin has not alleged the critical components of the FCRA: (1) that DBNTC is subject to the FCRA; and (2) that the information allegedly reported was inaccurate.

DBNTC's argument misses the point because Macklin does not allege that DBNTC is a consumer reporting agency[68] or that it issues consumer reports.[69] Rather, it states that DBNTC provided

---

[68] 15 U.S.C. § 1681a(f) defines a consumer reporting agency to be any person, for monetary fees, dues, or a cooperative nonprofit basis engages in assembling or evaluating consumer credit information for the purpose of providing consumer reports to third parties.

[69] 15 U.S.C. § 1681a(d) defines a consumer report to be a communication of information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, capacity, character,

information to Consumer Reporting Agencies — i.e. a furnisher[70] of information subject to the FCRA.  The FAC asserts that "defendant and/or its agent wrongfully, improperly, and illegally reported negative information as to Plaintiff, by falsely reporting the mortgage loan payments were in default . . . ."[71]  This paragraph of the FAC goes further to allege that the amount reported includes excessive (unstated) amounts that the "plaintiffs" (though referenced as multiple plaintiffs, there is only one plaintiff in this Adversary Proceeding) were tricked into signing and that "plaintiffs" made each and every payment on time from the closing of the loan *until "plaintiffs' default."*[72]  Further, it is alleged that "plaintiff's" loan is current because the payments are being made by the loan servicer.[73]

Pleading the grounds in a complaint is more than merely reciting the statutory grounds.  In reading the FAC, Macklin admits that the payments went into default.[74]  He then states that the loan is "current" as payments are being made by the servicer.  However, there is not an allegation that the servicer or any other person is making the payments due on the Note for Macklin.  It is alleged in Paragraph 44 of the FAC that the servicer is obligated to make

---

general reputation, personal characteristics, or mode of living, to be used in whole or in part for specific uses, including consumer credit.

[70]  15 U.S.C. § 1681s-2 prohibits a person from furnishing information to a consumer reporting agency if that person knows or has reason to believe that the information is inaccurate.

[71]  FAC ¶ 75.

[72]  Emphasis added.

[73]  FAC ¶ 76.

[74]  FAC ¶ 75.

"advance" payments for nonperforming loans when the borrower defaults.  The statement is then made that the monies advanced are not the servicer's "own money" and that "there is no provision in the [mortgage backed securities] on what is to "occur when the homeowner 's' [sic]."  Further, Macklin alleges that, "The only provision for 'default' under the [mortgage backed securities] is the default of the Servicer."

While not clear from the FAC, the court understands the argument to be that servicer was obligated on a contract, to which Macklin is not a party, that if Macklin (or obligors on other notes) defaulted in his payments, the servicer would advance monies to the then current note holders while the default under the note was enforced.  Additionally, once the Note on which Macklin was obligated was combined with other notes as part of a mortgage back securities transaction, then there could no longer be a default on the Macklin Note (and therefore the corollary argument that Macklin had no further obligation to repay the obligation).  Thus, Macklin argues that even though he has defaulted on his obligation and there have been defaults, the "servicer" making advances on an unrelated contract constitutes a payment for the benefit of Macklin and reduces his obligation on the Note.  Though argued, Macklin does not allege the legal or contractual basis for his being the beneficiary of any third-party contract.

What Macklin also fails to allege is that DBNTC knew or had reasonable cause to believe that Macklin's defaults under the Note were false.  Just as Macklin alleges, the payments were in default.  Merely because there is a disagreement as to an amount due, that does not automatically create a FCRA violation.  The FCRA

establishes a clear process by which disputes concerning furnished information are addressed.[75]   There is no indication that the process has been employed with respect to this matter.

The Motion is properly granted to dismiss, without leave to amend, the claim for violation of the FCRA.

**Additional Statute of Limitations Grounds**

Further, DBNTC alleges that the FRCA claims are time-barred. According to 15 U.S.C. 1681p, "[A]n action to enforce any liability created under this title . . . may be brought . . . not later than the earlier of — (1) [two] years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or (2) [five] years after the date on which the violation that is the basis for such liability occurs."   Macklin admits that he first received a notice of default in December 2008, and did not commence the instant adversary proceeding until January 13, 2011, a month after the statute of limitations expired.   No sufficient basis for tolling the statue of limitations as to a claim arising under the FCRA has been alleged or argued.   Merely because Macklin chose to ignore information furnished by DBNTC to a consumer reporting agency until he decided to file a lawsuit alleging various claims is not sufficient.

Based upon the foregoing, the Third Cause of Action is dismissed without leave to amend.

**FRAUD — FOURTH CAUSE OF ACTION**

Macklin also alleges in his Fourth Cause of Action that DBNTC defrauded him by assigning the deed of trust to itself without

---

[75]   15 U.S.C. § 1681s-2(a)(2),(6), (8), and (b).

having authority to do so.  Macklin asserts that he was not told that part of his loan payments would be used to pay service fees to the servicer and to buy insurance and other credit enhancements to be used by the servicer.  Macklin asserts that "Defendants" were fiduciaries, and they breached their duty of care to Macklin by fraudulently inducing Macklin to enter into a mortgage transaction which was contrary to Macklin's intent and to his best interest. However, Macklin does not allege that any fees paid by him were for amounts other than as represented to him when obtaining the loan. At best, Macklin asserts that he should have the right to know how and direct how the lender intends to use those monies paid by him on the loan.

Macklin further contends that "Defendants" fraudulently misrepresented "its standing" to foreclose on Macklin's note and deed of trust to the State of California by falsely reporting a default on the loan to the Recorder's Office.  Macklin states that Defendants made these representations with full knowledge that their representations were false as further evidenced by Defendant's production of two separate allonges to the Note, which derive from the same lender.  Macklin asserts that because he was not an investment banker, securities dealer, mortgage lender or broker — (or, in other words, that he was unsophisticated with regards to financial matters) — he reasonably relied upon the misrepresentations made by "Defendants" when he agreed to execute the loan documents.  According to Macklin, as a direct and proximate cause of "Defendants'" false representations and material omissions, his credit was ruined and he has either lost or is about to lose his home.

Under California law, the elements of fraud are a "misrepresentation, knowledge of its falsity, intent to defraud, justifiable reliance, and resulting damages."[76] Under Federal Rule of Civil Procedure 9(b), as made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7009, fraud must be pled "with a high degree of meticulousness."[77] In fraud cases, "the who, what, when, where and how" of the misconduct must be alleged so as to give defendants sufficient information to defend the charge against them.[78]

Rule 9(b) prevents a complaint from merely lumping multiple defendants together; "plaintiffs [must] differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud."[79] "Rule 9(b) serves three purposes: (1) to provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the filing of complaints 'as a pretext for the discovery of unknown wrongs'; (2) to protect those whose reputation would be harmed as a result of being subject to fraud charges; and (3) to "prohibit [] plaintiff[s] from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual

---

[76] *Gil v. Bank of America, N.A.* 138 Cal. App. 4th 1371, 1381 (2006).

[77] *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022-23 (9th Cir. 2000); *Moore v. Brewster*, 96 F.3d 1240, 1245-46 (9th Cir. 1996).

[78] *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

[79] *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (citation and quotation omitted) (second alteration supplied).

basis.'"[80]

As stated in *Nymark v. Heart Fed. Savings & Loan Assn.*:[81]

> [The court has found no] California case specifically addressing whether a lender has a duty of care to a borrower in appraising the borrower's collateral to determine if it is adequate security for a loan. However, as a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money. (*Wagner v. Benson* (1980) 101 Cal.App.3d 27, 34-35 [161 Cal.Rptr. 516]; *Fox & Carskadon Financial Corp. v. San Francisco Fed. Sav. & Loan Assn.* (1975) 52 Cal.App.3d 484, 488, 489 [125 Cal.Rptr. 549]; *Bradler v. Craig* (1969) 274 Cal.App.2d 466, 473, 476 [79 Cal.Rptr. 401].) Thus, for example, a lender has no duty to disclose its knowledge that the borrower's intended use of the loan proceeds represents an unsafe investment. (*Wagner v. Benson, supra,* 101 Cal.App.3d at pp. 33-35.) 'The success of the [borrower's] investment is not a benefit of the loan agreement which the [lender] is under a duty to protect [citation].' (*Id.,* at p. 34.) 'Liability to a borrower for negligence arises only when the lender "actively participates" in the financed enterprise "beyond the domain of the usual money lender."' (*Id.,* at p. 35; *quoting Connor v. Great Western Sav. & Loan Assn.* (1968) 69 Cal.2d 850, 864 [73 Cal.Rptr. 369, 447 P.2d 609, 39 A.L.R.3d 224].)

With respect to the alleged misrepresentations, Macklin does not allege that he did not receive what was represented to him at the time of the loan transaction. He sought, and obtained, monies on the terms he negotiated. All of the alleged misrepresentations occurred after he obtained the monies and given the note and deed of trust. There are no allegations of any reasonable reliance on

---

[80] *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. Cal. 2009)(*quoting In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996) (*quoting Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985)) (internal quotations omitted, brackets in original)).

[81] 231 Cal. App. 3d 1089, 1095-96 (1991); *see also Cross v. Downey S&L Ass'n*, 2009 U.S. Dist. LEXIS 17946, *12-13 (C.D. Cal. Feb. 23, 2009).

the alleged misrepresentations to Macklin's detriment.  He disputes DBNTC's interest in the Property and contends that misrepresentations were made to the County when DBNTC and its representatives proceeded with the steps necessary to notice and conduct a nonjudicial foreclosure sale.  At least two of the necessary elements of fraud are missing — justifiable reliance on the alleged misrepresentation and damages arising from reliance on the alleged misrepresentation.

Accordingly, the Motion to Dismiss is granted as to the Fourth Cause of Action without leave to amend.

### UNJUST ENRICHMENT – FIFTH CAUSE OF ACTION

Macklin asserts in his Fifth Cause of Action that Defendant DBNTC should have disclosed to him whatever fees were not applied to the payment of the loan.  Macklin alleges that Defendant retained the benefits of charging a higher interest rate, rebates, kickbacks, and profits (from the resale of mortgages and notes using Macklin's identity, credit score, and reputation without consent, and as part of an illegal scheme).  As a result, Defendants have been unjustly enriched at the expense of Plaintiff Macklin.  What Macklin does not allege or explain is what "fees" are charged as a loan transaction which are applied to pay the loan (principal and interest).  By their very nature, fees are owed in addition to the principal and interest.

According to *First Nationwide Savings v. Perry*:[82]

> An individual is required to make restitution if he or she is unjustly enriched at the expense of another. (Rest., Restitution, § 1; *California Federal Bank v. Matreyek* (1992) 8 Cal.App.4th 125, 131 [10 Cal.Rptr.2d

---

[82]   11 Cal.App.4th 1657, 1662 (Cal. App. 6th Dist. 1992)

58].)   A person is enriched if the person receives a benefit at another's expense. (Rest., Restitution, supra, § 1, com. a.)   Benefit means any type of advantage. (Rest., supra, § 1, com. b; *California Federal Bank v. Matreyek*, *supra*, 8 Cal.App.4th at p. 131.)

However, "it is of course the law that when one obtains a benefit which may not be justly retained, unjust enrichment results, and restitution is in order."[83]   "However, the 'mere fact that a person benefits another is not of itself sufficient to require the other to make restitution therefor.'"[84]

DBNTC asserts that Macklin received the benefit of the bargain.  He borrowed money to purchase a home.  Although Macklin alleges that he received less than what he paid for because defendant extracted fees, he does not assert that he suffered an actual injury.

DBNTC asserts that as to a claim for unjust enrichment resulting in an implied-in-fact contract, "it is well settled that an action based on an implied-in-fact or quasi-contract cannot lie where there exists between the parties a valid express contract covering the same subject matter."[85]   Here, there is a valid loan agreement (express contract) between Macklin and Defendant.

Accordingly, the Motion to Dismiss is granted as to the Fifth Cause of Action for unjust enrichment without leave to amend.

---

[83]   *Marina Tenants Ass'n v. Deauville Marina Dev. Co.*, 181 Cal. App. 3d 122, 134 (1986) (citations omitted).

[84]   *Id.* (citation omitted).

[85]   *Lance Camper Mfg. Corp. v. Republic Indem. Co.*, 44 Cal. App. 4th 194, 203 (1996).

## RACKETEER INFLUENCED AND CORRUPT
## ORGANIZATIONS ACT ("RICO") – SIXTH CAUSE OF ACTION

Macklin's Sixth  Cause of Action alleges violations of RICO arising under 18 U.S.C. §§ 1961-1968.  Through his FAC, Macklin alleges that nonspecific "Defendants" used multiple corporate entities and parties to perpetrate a fraud against Macklin through the use of intentional nondisclosure, fraud, and the creation of fraudulent loan documents.  As to DBNTC, Macklin asserts Defendant recorded fraudulent or false documents with the Placer County Recorder Officer in an attempt to take the Property.  The specific acts at issue are the alleged use of false signatures on recorded documents which are alleged to violate federal mortgage lending laws, banking regulations, consumer credit laws, and various California state laws concerning conveyance of notes and deeds of trust.

According to 18 U.S.C. § 1962(c), "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in or the activities of which effect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."  According to *Flores v. Emerich & Fike*:[86]

> Section 1961 enumerates acts which are considered to be 'racketeering activity' (i.e., 'predicate acts'). Included is 'any act or threat involving murder, kidnaping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in Section 102 of the Controlled Substances Act), which is chargeable under State Law and punishable by imprisonment for more

---

[86]   416 F. Supp. 2d 885, 911 (E.D. Cal. 2006)

32

than one year.' § 1961(1)(A).  Also included are any of more than twenty types of conduct indictable under enumerated provisions of the United States Code, ranging from mail fraud and wire fraud, through robbery and extortion, to white slave trade. § 1961(1)(B).  Finally, a 'predicate act' may also be established by any offense involving fraud 'connected with' a bankruptcy case, 'fraud in the sale of securities,' or any act related to a controlled substance or listed chemical '"punishable" under federal law.' § 1961(1)(C).

A civil RICO complaint must at least allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's business or property.'"[87]   As a threshold matter, Federal Rule of Civil Procedure 9(b) applies to RICO Fraud allegations, including Mail Fraud and Wire Fraud.[88]   "Rule 9(b) requires that the pleader state the 'time, place, and specific content of the false representations, as well as the identities of the parties to the misrepresentation.'"[89]

Here, Macklin has failed to allege a cause of action pursuant to RICO with the required specificity.  Macklin asserts that "[a]t various times and places[,]" nonspecific "defendants" did acquire and maintain an interest in or control of a RICO enterprise of individuals who were associated, and who engaged in some type of interstate commerce in violation of RICO.[90]  Macklin alleges that the notarizations on the Notice of Default and Notice of Trustee's

---

[87]   *Flores*, F. Supp. 2d at 911 (quoting *Living Designs, Inc. v. E.I. Dupont de Nemours and Co.*, 431 F.3d 353, 361 (9th Cir. 2005)).

[88]   *Id.* (*citing Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989))

[89]   *Id.*

[90]   FAC ¶ 103.

33

Sale were not notarized properly under penalty of perjury, or were falsely attested to by someone.[91]  Macklin alleges that during the "pertinent" time, Defendant participated in the commission of two or more of the RICO predicate acts.  According to Macklin, it is alleged that DBNTC or its agents used false signatures of what are commonly known as "robo-signers."  Macklin asserts that as a result of the Defendant's actions, he continues to suffer unspecified damages.

The RICO claim does not attribute specific conduct to individual defendants.  The claim also does not specify either the time or the place of the alleged wrongful conduct, except to state that "[a]t all relevant times, Defendants have engaged in a conspiracy, common enterprise, and common course of conduct, the purpose of which is to engage in the violations of law alleged in the complaint."[92]  This is insufficient.  "[The Ninth Circuit has] interpreted Rule 9(b) to mean that the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation."[93]

Because Macklin has failed to allege a civil RICO cause of action with the required specificity, the Motion to Dismiss is

---

[91]  *Id.*

[92]  *Id.* at ¶ 111.

[93]  *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. Cal. 1986) (citing *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985) (citing *Miscellaneous Service Workers, Drivers & Helpers v. Philco-Ford Corp.*, 661 F.2d 776, 782 & n.16 (9th Cir. 1981)); *Bosse v. Crowell Collier & MacMillan*, 565 F.2d 602, 611 (9th Cir. 1977); *see also Lewis v. Sporck*, 612 F. Supp. 1316, 1325 (N.D. Cal. 1985) (allegations of mail fraud under section[s] 1962(a)-1962(c) "must identify the time, place, and manner of each fraud plus the role of each defendant in each scheme").

granted as the Sixth Cause of Action, without leave to amend.

## UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE § 17200) – SEVENTH CAUSE OF ACTION

Macklin's Seventh Cause of Action, pursuant to California's Unfair Competition Law, assert that the foreclosing defendants engage in deceptive business practices with respect to mortgage loan servicing, assignments of notes and deeds of trust, and foreclosure of residential properties and related matters in a number of ways.[94] Macklin states that the foreclosing defendants engage in an uniform pattern and practice of overly-aggressive servicing that results in unfair and illegal foreclosure proceedings, generating unfair fees to California consumers and premature default.[95] Macklin asserts that the defendants have been unjustly enriched and should be enjoined from continuing in such practices pursuant to California Business & Professions Code §§ 17203 and 17204.[96] Macklin also asserts that he is entitled to injunctive relief and attorney's fees for defendant's violation of this Code Section.

In order to state a claim upon which relief may be granted, a claim under California's Unfair Competition Law[97] (the "UCL") a plaintiff must allege that the defendant committed a business act that is either fraudulent, unlawful or unfair.[98]  A business act

---

[94]  FAC ¶ 117.

[95]  *Id.* at ¶ 119.

[96]  *Id.* at ¶ 122.

[97]  Cal. Bus. & Prof. Code § 17200, et seq.

[98]  *Levine v. Blue Shield of California*, 189 Cal.App.4th 1117, 1136 (2010).

need only meet one of the three criteria - unlawful, unfair, or fraudulent, to be considered unfair competition under the UCL. In order for a business act to be considered "unlawful" there must be some underlying violation of a law.[99]

A "fraudulent" business act, for the purposes of the UCL, is unlike common law fraud or deception. A violation can be shown even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage. Instead, it is only necessary to show that members of the public are likely to be deceived.[100]

"Unfairness" under the UCL is an equitable concept that involves an examination of the impact of the business practice on the alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer in order to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim. For the purposes of a motion to dismiss, in order to state a claim for relief resulting from an allegedly unfair business practice under the UCL, the complaint must state "a *prima facie* case of harm, having its genesis in an apparently unfair business practice."[101] The complained of practice must be tethered to a legislatively-declared policy.[102]

In this case, the seventh claim for relief is dismissed because it does not state a claim under any of the three prongs of

---

[99] *See Cisneros v. Instant Capital Funding Group*, 263 F.R.D. 595, 610 (E.D. Cal. 2009).

[100] *Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144, 1167 (2000).

[101] *Motors, Inc. v. Times Mirror Co.*, 102 Cal. App. 3d 735, 740 (1980); *see also Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144, 1167.

[102] *Lozano v. AT&T Wireless Servs., Inc.*, 405 F.3d 718, 736 (9th Cir. 2007).

the UCL. As to the "unlawful" prong, the Complaint does not allege the violation of any other law that would serve as an underlying violation for the UCL. As to the "unfair" prong, the Complaint does not allege any legislatively-declared policy to which allegedly wrongful conduct may be tethered.

Accordingly, the Motion to Dismiss is granted as to the Seventh Cause of Action, without leave to amend.

## BREACH OF TRUST INSTRUMENT – EIGHT CAUSE OF ACTION

In the Eighth and Ninth Causes of Action, Macklin asserts that the Deed of Trust is the document which permits a nonjudicial foreclosure sale to proceed and gives Power of Sale to the duly appointed Trustee.[103] According to Macklin, only the Lender can invoke the foreclosure, and may appoint a Trustee. Macklin alleges that the substitution of Trustee in this case is void due to fraud, and was not executed in compliance with California Civil Code § 2934(a). Macklin further argues that the substitution of Trustee was invalid because it was not executed by the lender. As of the recording of the Notice of Default on December 8, 2008, the duly appointed Trustee was Financial Title Company. Quality Loan was substituted as Trustee on November 25, 2009. Macklin asserts that the Notice of Default was obtained prior to the assignment, but the California Civil Code requires that a trustee under a deed of trust property be appointed prior to commencing the nonjudicial foreclosure. Macklin asserts that in the case of a deed of trust with a power of sale, an assignee can only enforce the power of sale if the assignment is recorded, since the assignee's authority

---

[103]   FAC ¶ 123.

37

to conduct the sale must appear in the public records. According to Macklin, a nonjudicial foreclosure sale under the power of sale in a deed of trust or mortgage must be conducted in strict compliance with its provisions and applicable statutory law.

Macklin asserts that the notice of acceleration and notice to cure are conditions precedent to nonjudicial foreclosure of the power of sale.[104] Macklin further asserts that if the lender fails to carry out the foregoing obligation, any subsequent foreclosure sale is invalid. Macklin alleges that the Defendant has trespassed "upon the Deed of Trust and Plaintiff's property," and the foreclosure sale must be rendered void and rescinded pursuant to California Civil Code § 3513. Macklin contends that because the law was established for public reason, it cannot be contravened by a private agreement pursuant to California Civil Code § 3514.

In support of his claim for breach of the trust instrument, Macklin alleges that Quality Loan Service Corp. ("QLS") filed the Notice of Default before it was substituted as trustee.[105] However, Windsor Management Co. recorded the default "[a]s agent for the current beneficiary,"[106] arguably rendering the notice proper under California Civil Code § 2924(a)(1), which authorizes the beneficiary, trustee, or their agents to record the Notice of Default.

Macklin also alleges that Defendant breached the trust

---

[104]   *Id.* at ¶ 124.

[105]   The Substitution of Trustee by DBNTC recorded on November 29, 2009, purporting to substitute Quality Loan Service Corp for Windsor Management Co. as trustee under the Deed of Trust, states that it was signed by DBNTC on August 21, 2009.

[106]   Dckt. 154 at 23.

instrument by failing to follow the provisions regarding notice of acceleration and notice to cure.  The Notice of Default, however, clearly states that Macklin could bring his account into good standing by paying the past-due amounts no later than five days before the foreclosure sale.  The Deed of Trust contained an acceleration clause, and the Notice of Default was therefore allowed to contain a notice of acceleration.

Because the text of the Notice of Default contradicts Macklin's claim that Defendant did not to inform him of the possibility of acceleration and his right to cure, the Motion is granted and the Eighth Cause of Action is dismissed, without leave to amend.

### WRONGFUL FORECLOSURE- NINTH CAUSE OF ACTION

In the Ninth Cause of Action Macklin asserts that the foreclosure sale was improper.  This focuses on whether the Defendant has complied with California law for conducting a nonjudicial foreclosure sale.  The court throughly addressed the issue of the filing of the notice of default prior to the filing of the notice of assignment in connection with issuing the preliminary injunction.  The court's view on the issue has not changed.[107]  The Assignment of the Deed of Trust was recorded on November 30, 2009.  However, the Substitution of Trustee by DBNTC recorded on November 29, 2009, purporting to substitute Quality Loan Service Corp. for Windsor Management Co. as trustee under the Deed of Trust.

Civil Code § 2932.5 provides that, where a power of sale for

---

[107]  Memo. Opinion & Decision, Dckt. 98.

real property is given to a mortgagee or other encumbrancer to secure an obligation, such power of sale may be exercised by the assignee who is entitled to receive payment of the obligation "if the assignment is duly acknowledged and recorded." If the assignment has not been recorded, then the power cannot be exercised. The application of Civil Code § 2932.5 to all encumbrances, including deeds of trust, works to protect the borrower (trustor), lender (beneficiary), trustee, purchaser at a foreclosure sale, and subsequent owners of the property. Before persons purport to take action and exercise rights under a Deed of Trust, the assignment documenting the acquisition of those rights is recorded with the county recorder. This results in the real property records clearly and unambiguously stating who held the rights and who asserted the rights. This minimizes title disputes years later as to whether a notice of default or notice of sale was given by a properly authorized party and whether the purported sale under the Deed of Trust is void. This imposes a minimal burden on the beneficiary acquiring a Note secured by a Deed of Trust — merely recording the notice of assignment before purporting to change the trustee or authorize a foreclosure.

In the present case, Macklin and DBNTC have demonstrated that the recording of the assignment of the Deed of Trust postdated DBNTC recording documents purporting to change the trustee to Windsor Management and then Windsor Management purporting to give a notice of sale. While DBNTC missed its obligation to record the assignment of the trust deed by a few days, a record has been created that someone not of record title purported to take action on a Deed of Trust prior to compliance with Civil Code § 2932.5.

The court will not sanction conduct by this Defendant which puts into question the validity of the nonjudicial foreclosure process and California real property records. Though this issue could have been simply addressed by the recording of a new notice of default months ago, the ninety days under the new notice of default allowed to run and this creditor be on the door step of conducting a nonjudicial foreclosure sale consistent with the California statues, it has elected to continue with the existing notice of default, subsequent substitution of trustee, and sale.[108]

While titled as "wrongful foreclosure," this cause of action reads in substance as a breach of contract action. The contract between the parties is the Note and Deed of Trust. Macklin has certain obligations and rights under these contracts and law applicable to the contract, and DBNTC as the current owner of the Note and beneficiary under the Deed of Trust has certain rights and obligations in connection with exercising those rights. Macklin contends that DBNTC has not met its obligations in connection with exercising those rights and has improperly asserted that it acquired title to the Property. This has necessitated Macklin bringing this action and seeking to quite title as between their

---

[108]    The Chinese proverb that the best time to plant a tree was 20 years ago, and the next best time is now, provides guidance in compliance with statutory schemes. To the extent that an error occurred in the handling of the substitution of trustee (having not done it correctly in the past), the time to correct it is now. This avoids future lawsuits and significant costs and expenses if a dispute based on noncompliance with the statute is raised later. Examples of not taking a proactive approach to correcting defects include the Ford Motor Company decision in the 1970's not to replaced an inexpensive bolt on the fuel tank mount for the Ford Pinto, instead electing to pay for the deaths and disfiguring injuries resulting from the gas tank exploding when the Pinto was involved in minor rear-end collisions. *See Grimshaw v. Ford Motor Co.*, 119 Cal. App. 3d 757 (1981).

41

competing claims.

The Motion to dismiss the Ninth Cause of Cause of Action for wrongful foreclosure is denied.

## QUIET TITLE – TENTH CAUSE OF ACTION

The Tenth Cause of Action seeks to quiet title in the Property. Macklin argues that he holds superior title to the Property than DBNTC. DBNTC seeks to dismiss this cause of action, arguing that the cause of action fails to properly plead the elements of quiet title.

According to *Matracia v. JP Morgan Chase Bank, NA*,[109] "[t]he purpose of a quiet title action is to establish one's title against adverse claims to real property. A basic requirement of an action to quiet title is an allegation that plaintiffs 'are the rightful owners of the property, i.e.[,] that they have satisfied their obligations under the Deed of Trust.'"[110] California Code of Civil Procedure § 761.020 states that a claim to quiet title requires: (1) a verified complaint, (2) a description of the property, (3) the title for which a determination is sought, (4) the adverse claims to the title against which a determination is sought, (5) the date as of which the determination is sought, and (6) a prayer for the determination of the title.

Though not artfully done, Macklin sufficiently explains that he asserts a superior title to the Property over the Trustee's Deed through which DBNTC asserts its interest in the Property. Given

---

[109] No. _____, 2011 U.S. Dist. LEXIS 84066, *15 (E.D. Cal. July 29, 2011).

[110] *Kelley v. Mortg. Elec. Registration Sys., Inc.*, 642 F. Supp. 2d 1048, 1057 (N.D. Cal. 2009).

42

1  that Macklin has asserted that DBNTC cannot show that it complied
2  with the minimal requirements for properly conducting a nonjudicial
3  foreclosure sale, the motion to dismiss the Tenth Cause of Action
4  to Quiet Title is denied.

5      Accordingly, the Motion to Dismiss is denied as to the Tenth
6  Cause of Action.

7                  **DISCRETIONARY ABSTENTION**

8      Pursuant to 28 U.S.C. § 1334(c)(1), this court may abstain
9  from any matter arising under, arising in, or related to the case
10 under Title 11 in the interests of justice, comity with state
11 courts, or respect for state law.  In this case the Chapter 7
12 Trustee has "sold" the estate's interest in the Property for a
13 contingent future recovery if Macklin succeeds in this case.
14 Macklin is asserting, enforcing, and attempting to recover for the
15 benefit of creditors the Estate's interest in the Property.

16     Though Macklin is not attempting to prosecute a Chapter 11 or
17 Chapter 13 reorganization which incorporates this adversary
18 proceeding, the Estate has a continuing economic interest in the
19 litigation.  Further, through this motion to dismiss the parties
20 and court have substantially focused the issues to those of
21 substance.  For the court to abstain at this point would throw out
22 all of the time and money invested by the parties, in addition to
23 significant judicial resources, in coming to this point in the
24 litigation.

25     The court concludes that discretionary abstention is not
26 appropriate in this case.

27           **CONTENTIONS OF INABILITY TO SUFFICIENTLY RESPOND**
28     While this matter was under submission, Macklin filed a motion

43

1 for further argument on this Motion to Dismiss, arguing that he
2 recently substituted the Law Offices of Allan R. Frumkin, Inc. as
3 his counsel of record in this case.  It is not alleged that there
4 is any additional law or authorities which Macklin intends to
5 present to the court.  Macklin has been represented by counsel,
6 with his arguments and theories effectively presented, since the
7 commencement of this Adversary Proceeding 12 months ago, as well as
8 in the Chapter 7 case itself filed on September 16, 2010.

9      Two declarations were filed in support of the motion.  The
10 first is by Mr. Frumkin, Macklin's new counsel in this Adversary
11 Proceeding.  The substance of Mr. Frumkin's testimony is that after
12 reviewing the court's tentative ruling, he concludes that the First
13 Amended Complaint did not contain necessary allegations to
14 withstand the motion to dismiss.  He believes that unspecified
15 additional allegations could be made, however, he does not state,
16 nor does the motion allege, any such allegations.  This declaration
17 leaves it to the court to either divine the additional allegations
18 which may exist or blindly accept that such allegations will not be
19 made in the case after two motions to dismiss.

20      Macklin has also provided his declaration in support of the
21 motion for further argument.  He first testifies that when he went
22 to sign the original loan application, he was not allowed to review
23 the application because the notary had to leave.  Macklin offers no
24 explanation why a loan application was being notarized — something
25 which is not common in California loan transactions.   Macklin
26 testifies that he instead relied on his loan broker's
27 representations that the application reflected the information in
28 Macklin's tax returns.  He further testifies that only later did he

44

discover that the information in the loan application that he was "pressured" into signing did not contain accurate information. Macklin offers no testimony as to why and how he was "pressured" into signing a loan application. He merely states that the notary had to leave.

Macklin further testifies that in June 2011, he contacted his former attorney regarding the status of the First Amended Complaint and was told that it was not ready for review. Then, on June 17, 2011, he was contacted by his former counsel to come to her office and verify the First Amended Complaint. Once again, he was "forced" to sign a document without reviewing it because it had to be filed immediately. As with the loan application, Macklin states that he was not provided adequate time to review the document before signing it.[111] Macklin states that he subsequently reviewed the complaint and drew the legal conclusion that many of the causes of action had not been adequately pled, but was told by his former counsel that it was too late to file a corrected First Amended Complaint.[112] Macklin further states that he tried at the hearing

---

[111] Notwithstanding this declaration having been prepared with the assistance of his present counsel and clearly stating under penalty of perjury that "I signed the verification," the First Amended Complaint does not contain any verification. Dckt. 120. A verification, dated June 17, 2011, is separately filed on June 21, 2011. Dckt. 132. Attached to the First Amended Complaint are a series of exhibits, Dckts. 121-129. The Complaint, with exhibits attached, runs 606 pages (46 of which constitute the unverified First Amended Complaint).

[112] In finding that the FAC did not adequately plead claims, and as is continued through the exhibit of what would be a second amended complaint, Macklin and his counsel continue the "more is better" theme of pleading. The FAC is 46 pages in length and has over 200 pages of exhibits. The second amended complaint is 45 pages in length, and continues the using dense text in attempting to communicate the grounds upon which the relief is based, including single paragraphs

45

1  on the Motion to Dismiss the First Amended Complaint to instruct
2  his prior counsel of the issues and corrections, "but she did not
3  appropriately or persuasively address them in open court.[113]

4      Macklin and his new counsel filed a document titled Second
5  Amended Complaint without obtaining leave from the court.[114]   The
6  court deemed this to be an exhibit to the motion for further
7  argument, rather than Macklin intentionally filing pleadings which
8  do not comport with the Federal Rules of Civil Procedure and prior
9  orders of this court.[115]

10     The Second Amended Complaint filed as an exhibit states
11 conclusions that New York Trust law controls over California Real
12 Property law, that the Note and Deed of Trust have been rendered
13 unenforceable, that because the transfer of the Note to a trust as
14 part of a securitized loan portfolio may not have complied with the
15 Internal Revenue Code no obligation is enforceable against Macklin,
16 MERS is named as the nominee of the lender and the Deed of Trust is
17 ineffective, Macklin's loan was funded with monies obtained other
18 than the Lender named in the Note, the Note has been separated from
19 the Deed of Trust, and that the Note and Deed of trust have been
20 forfeited, rendered unenforceable, and a nullity.   Therefore, for
21 these various grounds, Macklin owns the Property free and clear of

22

23 ──────────────
   running more than a page in length.   Rather than alleging the basis
24 for a claim, the FAC is written more as an editorial and argumentative
   treatise in support of Macklin's contention that he owns the Property
25 and has no obligation to pay for the monies he received as part of the
   loan transaction.

26     [113]  Dckt. 200.

27     [114]  Dckt. 201.

28     [115]  Dckt. 213.

46

1  any lien, has no obligation to repay the money he borrowed, and
2  DBNTC is obligated to pay him damages.

3       In opposing the motion to dismiss, the motion for a temporary
4  restraining order, the motion for preliminary injunction (which was
5  granted and then dissolved when Macklin did not comply with the
6  minimal conditions imposed by the court for creating a cash bond
7  funded through a monthly payment which approximated a monthly loan
8  payment), and proceedings in the Chapter 7 case, Macklin has not
9  provided the legal authority for the underlying proposition that
10 the Note (personal property) and Deed of Trust (interest in real
11 property) have been destroyed, forfeited, or otherwise been
12 rendered null and void.

13      If Macklin and his counsel intend to file a motion for leave
14 to file a second amended complaint, such motion shall be
15 accompanied by a points and authorities providing the legal basis
16 underlying an allegation, as well as the proposed amended complaint
17 being filed as an exhibit.  In this Adversary Proceeding Macklin
18 has been afforded the opportunity to file two Complaints (Original
19 and FAC) and put DBNTC to the test of initiating motions to dismiss
20 to challenge the legal sufficiency of the allegations and law
21 underlying the allegations.  Such is the privilege of a plaintiff
22 for the original complaint and first amended complaint.  However,
23 the complaint amendment process is not one in which repeated,
24 unsupported contentions are made with impunity.  It is not too much
25 for any second or further amended complaint to be allowed only
26 after counsel and Macklin have shown that they have engaged in at
27 least the minimal legal research and base the claims on actual
28 existing legal authorities and principles, or the good faith

47

extension or reversal of existing authorities.

In considering seeking leave to file a further amended complaint, and in addition to providing the legal authorities which are identified to support their good faith contentions, Macklin and his counsel should preemptively address established California law that the deed of trust always follows the note;[116] the California Commercial Code (negotiation, enforceability, and enforcement of notes); forfeiture of property rights not favored; how payments made by insurance companies; loan servicers or others pursuant to agreement not including Macklin provide for the payment of Macklin's obligations under the Note and the principles of subrogation do not apply; and the holding of the Ninth Circuit Court of Appeals in *Cervantes v. Countrywide Home Loans, Inc.*[117]

Finally, if Macklin and his counsel intend to seek leave to file a second amended complaint, rather than merely patching the bloated FAC, they would be well served to draft a complaint which clearly states the relevant alleged grounds upon which each cause of action is based. While the practice of each cause of action indiscriminately incorporating all of the prior paragraphs of the complaint by reference may be easier, it does not lead to the court and other parties being able to clearly understand the "short and plaint statement of the claim showing that the pleader is entitled to relief" as required by Federal Rule of Civil Procedure 8(a)(2) and Federal Rule of Bankruptcy Procedure 7008.  The court and

---

[116]  *Henley v. Hotaling*, 41 Cal. 22, 28 (1871); *Seidell v. Tuxedo Land Co.*, 216 Cal. 165, 170 (1932);  *Adler v. Sargent*, 109 Cal. 42, 49-50 (1895); Cal. Civ. Code § 2936.

[117]  650 F.3d 1034 (9th Cir. 2011).

48

opposing parties should be able to step through each allegation and understand the factual basis for each claim, rather than being presented with an argumentative treatise and re-regurgitated allegations which may or may not be relevant to the identified claim.

## CONCLUSION

The court grants the motion to dismiss, without leave to amend for the first (Truth in Lending Act), second (Real Estate Settlement Procedures Act), third (Fair Credit Reporting Act), fourth (Fraud), fifth (Unjust Enrichment), sixth (Civil RICO), seventh (Business and Professions Code § 17200), and eighth (Breach of Security Agreement) causes of action.

The motion is denied as to the ninth cause of action (Wrongful Foreclosure) and tenth cause of action (Quiet Title).

DBNTC shall file and serve its answer on or before **February 28, 2012.**

This Memorandum Opinion and Decision constitutes the court's findings of fact and conclusions of law pursuant to Federal Rules of Civil Procedure 7052 and Federal Bankruptcy Rules of Procedure 7052.

The court shall issue a separate order consistent with this Memorandum Opinion and Decision.

Dated: February 16, 2012

RONALD H. SARGIS, Judge
United States Bankruptcy Court

49

This document does not constitute a certificate of service.  The parties listed below will be served a separate copy of the attached document(s).

---

Allan Frumkin
5996 Horseshoe Bar Road
Loomis, CA 95650

Gregory Hughes
3017 Douglas Blvd #300
Roseville, CA 95661

Robert Bleicher
216 Park Rd
PO Box 513
Burlingame, CA 94001

James Macklin
670 Auburn-Folsom Rd #106-303
Auburn, CA 95603

Thomas Aceituno
PO Box 189
Folsom, CA 95763

Office of the U.S. Trustee
Robert T Matsui United States Courthouse
501 I Street, Room 7-500
Sacramento, CA 95814