# EXHIBIT "2"

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| DAVID MERRITT; SALMA MERRITT, *Plaintiffs-Appellants*, | No. 09-17678 |
| v. | D.C. No. 5:09-cv-01179-JW |
| COUNTRYWIDE FINANCIAL CORPORATION, a Delaware corporation; COUNTRYWIDE HOME LOANS, INC., a New York corporation; ANGELO MOZILO, an individual; MICHAEL COLYER, an individual; DAVID SAMBOL, an individual; BANK OF AMERICA, NA; KEN LEWIS, an individual; JOHN BENSON, *Defendants-Appellees*. | OPINION |

Appeal from the United States District Court
for the Northern District of California
James Ware, District Judge, Presiding

Argued and Submitted
November 9, 2012—San Francisco, California

Filed July 16, 2014

Before: Andrew J. Kleinfeld and Marsha S. Berzon, Circuit Judges, and William E. Smith, District Judge.[*]

Opinion by Judge Berzon;
Dissent by Judge Kleinfeld

---

**SUMMARY**[**]

---

### Truth in Lending Act / Real Estate Settlement Practices Act

The panel reversed in part and vacated in part the district court's dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) of an action under the Truth in Lending Act and the Real Estate Settlement Practices Act against Countrywide Financial Corporation and various other defendants involved in the plaintiffs' residential mortgage.

The panel reversed the district court's dismissal of the plaintiffs' TILA rescission claim for failure either to tender the rescindable value of their loan prior to filing suit or to allege ability to tender its value in their complaint. Declining to extend *Yamamoto v. Bank of New York*, 329 F.3d 1167 (9th Cir. 2003), the panel held that an allegation of tender or ability to tender is not required. The panel held that only at the summary judgment stage may a court order the statutory

---

[*] The Honorable William E. Smith, District Judge for the U.S. District Court the District of Rhode Island, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

sequence altered and require tender before rescission, and then only on a case-by-case basis, once the creditor has established a potentially viable defense.

The panel vacated the district court's dismissal of the plaintiffs' claims under § 8 of RESPA, which prohibits kickbacks and unearned fees, as barred by the one-year statute of limitations.  The panel held that although the RESPA statutory limitations period ordinarily runs from the date of the alleged RESPA violation, the doctrine of equitable tolling may, in appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the violation.  The panel declined to address two issues of first impression: (1) whether, while straight overcharges are not actionable under RESPA § 8(b), markups for services provided by a third party are actionable; and (2) whether an inflated appraisal qualifies as a "thing of value" under RESPA § 8(a).

Dissenting, Judge Kleinfeld wrote that the dismissal with prejudice should stand because the complaint failed to comply with the "short and plain statement" requirement of Fed. R. Civ. P. 8(a)(2).

---

**COUNSEL**

Jacob N. Foster (argued), Kasowitz, Benson, Torres & Friedman LLP, San Francisco, California, for Plaintiffs-Appellants.

James Goldberg (argued) and Stephanie A. Blazewicz, Bryan Cave LLP, San Francisco, California; Douglas E. Winter and Angela Buenaventura, Bryan Cave LLP, Washington D.C.,

for Defendants-Appellees Countrywide Home Loans, Inc., Countrywide Financial Corporation, Bank of America Corporation, Michael Coyler, David Sambol, and Kenneth Lewis.

Charles Elder and Caleb Bartel, Irell & Manella LLP, Los Angeles, California, for Defendant-Appellee Angelo Mozilo.

Susan H. Handelman, Ropers, Majeski, Kohn & Bently, Redwood City, California, for Defendant-Appellee John Benson.

---

# OPINION

BERZON, Circuit Judge:

Once again, we address issues arising from Countrywide Financial Corporation's residential lending business during the period shortly before novel practices by lenders resulted in widespread distress in the housing markets. *See, e.g.*, *Balderas v. Countrywide Bank, N.A.*, 664 F.3d 787 (9th Cir. 2011); *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034 (9th Cir. 2011). David Merritt and Salma Merritt ("the Merritts") sued Countrywide Financial Corporation and various other defendants (collectively "Countrywide" or "CHL") involved in their residential mortgage, alleging violations of numerous federal statutes. The district court

dismissed the claims pleaded, with prejudice.[1] This appeal followed.

We consider in this opinion two issues raised by that dismissal: (1) whether the district court properly dismissed the Merritts' Truth in Lending Act ("TILA") rescission claim because they did not tender the rescindable value of their loan prior to filing suit or allege ability to tender its value in their complaint; and (2) whether the Merritts' claims under Section 8 of the Real Estate Settlement Practices Act ("RESPA") may proceed, including whether the RESPA limitations period, 12 U.S.C. § 2614, may be equitably tolled.[2]

## Factual & Procedural Background

In March 2006, the Merritts took out both an adjustable-rate mortgage[3] and a home equity line of credit ("HELOC")

---

[1] The district court dismissed the claims not on Rule 8 grounds but on the merits for failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6). The dissent suggests we affirm on the basis of Rule 8(a)(2). The enforcement of Rule 8 rests within the district court's discretion, and defendants do not raise any Rule 8(a)(2) questions before us. Under these circumstances, it would be improper for us to affirm on Rule 8 grounds. *See Gillibeau v. City of Richmond*, 417 F.2d 426, 431 (9th Cir. 1969).

[2] We address the Merritts' other claims, and the parties' motions for judicial notice, in a memorandum disposition issued concurrently with his opinion.

[3] As is generally true in California, the legal instrument for the Merritts' home loan was a deed of trust and not, technically speaking, a mortgage. *See Siegel v. Am. Savings & Loan Ass'n*, 258 Cal. Rptr. 746, 747 (Cal. Ct. App. 1989) (defining a deed of trust); 27 Cal. Jur. 3d Deeds of Trust § 1 (2011) (same); Cal. Civ. Code § 2920(b) (distinguishing mortgage from

with Countrywide on a home they purchased in Sunnyvale, California.[4] Initially, the Merritts' Countrywide agent had told them, "I can pretty much guaranty you that we can get you in your new home for $1800 per month and possibly even as low as $1,500." Three days before closing, however, the agent told the Merritts that he had completed their loan package and that their monthly payments would be $4,400 a month for the first five years: $3,200 for the mortgage, plus $1,200 for the HELOC. When the Merritts balked, the agent replied that "the market had shifted" since his initial estimates. He told the Merritts that the $4,400 monthly payment was "the lowest that you'll find anywhere," and if they did not close right away, they would lose their good-faith deposit. He did not disclose that the $4,400/month figure was based on a temporary, "teaser" interest rate rather than a fixed rate, and that the Merritts' monthly payments would be much higher once the teaser rate expired. The Merritts would not have accepted the loan if they had understood the terms.

The home's owner falsely represented himself throughout the process as the selling agent. As the sale approached, he spoke with the Merritts' Countrywide agent about getting the home appraised. The seller stated that he had found an appraiser who would provide an inflated appraisal of

---

deed of trust for certain purposes under California state law). We refer to the Merritts' home loan throughout this opinion as a mortgage, because that is how the parties have referred to it in their pleadings and briefs, and the precise financing instrument is not legally material to the issues addressed in this opinion.

[4] Because we are evaluating a district court's dismissal pursuant to Rule 12(b)(6), we take the facts from the Merritts' complaint and assume that they are true. *See Cervantes v. United States*, 330 F.3d 1186, 1187 (9th Cir. 2003).

$739,000, above the home's actual value of about $690,000, so as to justify a higher sale price. The Countrywide agent responded that he preferred to select the appraiser himself, but that since Countrywide had used the seller's recommended appraiser before, he would agree to using him for this sale. The Countrywide agent, the seller, and the appraiser spoke over the phone, and the appraiser agreed to provide a $739,000 appraisal before having reviewed the property. The Merritts allege that Countrywide maintained a company practice of encouraging agents to select appraisers who would provide inflated appraisals, so as to increase the total amounts financed and thereby maximize Countrywide's profits.

On the date of closing, a Countrywide representative arrived at the Merritts' home with loan documents and said, "I will not have time to wait for you to read any of the documents, but just need you to sign these and if you have any questions or concerns afterwards, you can contact your loan agent." The Merritts signed the documents, but between the small print and "confusing language," did not understand the documents provided. The Countrywide representative did not give the Merritts copies of the signed documents to keep, only form notices of their right to rescind. The spaces where the lender would ordinarily fill in the relevant dates and deadlines on the form notices were left blank. The Merritts similarly were given a form for TILA disclosures, but with the spaces left blank for the annual percentage rate, finance charge, amount financed, total of payments, schedule of payments, and variable interest rate.

The day after the closing, the Merritts called their Countrywide agent and asked him to clarify the terms of their mortgage. The agent assured them that he would send them

further documentation but never did. He also promised that they could refinance their mortgage at a lower interest rate after a year of on-time payments.

Over the next three years, the Merritts repeatedly requested from Countrywide the completed disclosures, to no avail. Meanwhile, Countrywide continued to send the Merritts monthly billing statements that did not disclose that the "minimum payment due" would only be applied to interest, and that they should pay more if they wanted to begin paying down the principal.

In 2009, Countrywide sent the Merritts the loan documents that they had been requesting for three years. By then, the Merritts had made about $200,000 in payments to Countrywide. The Merritts consulted with lawyers, who told them that they had been victims of "predatory lending." They had their loan materials audited by an underwriter, who told them that he had identified numerous violations of state and federal law, including TILA, in the documentation provided by Countrywide.

Meanwhile, in August 2008, the Merritts suffered a loss of income that made them unable to afford their monthly payments. They repeatedly asked Countrywide to refinance or modify their mortgage into a conventional loan, but Countrywide refused.

In February 2009, the Merritts notified Countrywide that they wished to rescind their loan. Countrywide did not respond to the rescission request, instead offering to modify

the loan. The modified loan offered was one the Merritts still could not afford.[5]

The Merritts filed this case *pro se* on March 18, 2009 and shortly thereafter amended the complaint.[6] Countrywide moved to dismiss the complaint in its entirety. The district court granted the motion, with prejudice. As relevant to the issues in this opinion, the district court dismissed the Merritts' claim for rescission under TILA because the Merritts did not tender the value of their HELOC to Countrywide before filing suit, and dismissed their claims under Section 8 of RESPA as time-barred.

This appeal followed. We appointed *pro bono* counsel to represent the Merritts before this court.

## Discussion

## A. TILA rescission

TILA provides two remedies for loan disclosure violations — rescission and civil damages, each governed by separate statutory procedures.[7] Under TILA, an obligor has

---

[5] Countrywide had, in the meantime, been acquired by Bank of America. The Merritts' loan was eventually sold to Wells Fargo.

[6] We refer to the amended complaint throughout simply as "the complaint."

[7] Plaintiffs' TILA claims relate solely to their home-equity line of credit, or "HELOC." TILA does not apply to residential mortgages used to finance the initial acquisition or construction of a dwelling. *See* 15 U.S.C. §§ 1635(e)(1) & 1602(x). Countrywide presents for the first time on appeal the argument that plaintiffs' HELOC falls within this residential

the "right to rescind . . . until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section . . . whichever is later." 15 U.S.C. § 1635(a). Regardless of whether the required information and forms have been delivered, "[the] obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property." *Id.* § 1635(f).

The TILA rescission provisions set out the following sequence of events for pursuing rescission: First, the obligor must notify the creditor of his intention to rescind, *id.* § 1635(a); then, within 20 days after receipt of notice of rescission, the creditor must return to the obligor any security interest, *id.* § 1635(b); and lastly, "[u]pon the performance of the creditor's obligations under this section [i.e., upon return of the security interest], the obligor shall tender the property to the creditor." *Id.* These procedures "shall apply except when otherwise ordered by a court." *Id.*

Notably, "[t]he sequence of rescission and tender set forth in § 1635(b) is a reordering of the common law rules governing rescission." *Williams v. Homestake Mortg. Co.*, 968 F.2d 1137, 1140 (11th Cir. 1992) (citing 17A Am. Jur. 2d *Contracts* § 590, at 600–01 (1991)). Specifically, "[a]lthough tender of consideration received is an equitable prerequisite to rescission, the requirement was abolished by the Truth in Lending Act." *Palmer v. Wilson*, 502 F.2d 860, 861 (9th Cir. 1974). "Under § 1635(b)," consequently,

---

mortgage exception. Because this argument was not previously raised in the district court, we do not address it here.

> all that the consumer need do is notify the creditor of his intent to rescind. The agreement is then automatically rescinded and the creditor must, ordinarily, tender first. Thus, rescission under § 1635 places the consumer in a much stronger bargaining position than he enjoys under the traditional rules of rescission.

*Williams*, 968 F.2d at 1140 (internal quotation marks and alteration omitted). By reversing the traditional sequence for common law rescission claims, TILA "shift[s] significant leverage to consumers," consistent with the statute's general consumer-protective goals. Lea Krivinskas Shepard, *It's All About the Principal: Preserving Consumers' Right of Rescission under the Truth in Lending Act*, 89 N. C. L. Rev. 171, 188 (2010).

At the same time, consumer protection is not the only goal of statutory rescission under TILA; "another goal of § 1635(b) is to return the parties most nearly to the position they held prior to entering into the transaction." *Williams*, 968 F.2d at 1140. Balancing the two goals, the case law construing TILA has long recognized courts' equitable power to modify the statutory rescission process. *See id.* at 1140; *Palmer*, 502 F.2d at 862. Congress confirmed this equitable role for courts overseeing TILA rescission proceedings when it amended TILA in 1980 to clarify that the § 1635(b) sequence of procedures "shall apply except when otherwise ordered by a court." *See* Truth in Lending Simplification and Reform Act, Pub. L. No. 96-221, § 612(a)(4), 94 Stat. 175 (1980), *codified at* 15 U.S.C. § 1635(b).

Invoking this permission, the district court dismissed the Merritts' TILA rescission claim because their *complaint* did not "allege that they tendered the Home Equity Line of Credit or its reasonable value to CHL or Bank of America when they sought rescission." In so ruling at the pleading stage, the district court erred.

In accordance with the statutory provision that courts may order an alteration of the sequence of events otherwise prescribed by the TILA rescission provision, *see id.*, we have held that district courts may, if warranted by the circumstances of the particular case, require the obligor to provide evidence of ability to tender as a condition for denial of a summary judgment motion advanced by the creditor. *See Yamamoto v. Bank of New York*, 329 F.3d 1167, 1171–73 (9th Cir. 2003). *Yamamoto* concluded that where "it is clear from the evidence that the borrower lacks capacity to pay back what she has received (less interest, finance charges, etc.), the court does not lack discretion to do before trial what it could do after," i.e., refuse to enforce rescission. *Id.* at 1173. In so ruling, *Yamamoto* relied on earlier cases which had permitted judges after a resolution of the TILA claim on the merits to condition rescission on tender. *Palmer*, one of those earlier cases, had instructed courts considering such a condition to take into account "the equities present in a particular case, as well as consideration of the legislative policy of full disclosure that underlies [TILA] and the remedial-penal nature of the private enforcement provisions of the Act." *Id.* at 1171 (quoting *Palmer*, 502 F.2d at 862); *see also LaGrone v. Johnson*, 534 F.2d 1360, 1362 (9th Cir. 1976) (holding that court should condition rescission on tender where TILA violations "were not egregious and the equities heavily favor the creditors").

Like some other district courts in this circuit, the district court in this case extended *Yamamoto* to require that plaintiffs plead ability to tender in their complaint. *See Botelho v. U.S. Bank, N.A.*, 692 F. Supp. 2d 1174, 1180 (N.D. Cal. 2010) (collecting cases). We reject this extension.

As *Botelho* noted, *Yamamoto* "was decided in the procedural context of summary judgment, when the district court was in a position to consider a full range of evidence in deciding whether to condition rescission on tender." *Id.* at 1180. Without such evidentiary development, a district court is in no position to evaluate equitable considerations of the sort identified in *Yamamoto* and its predecessors. The equities to be considered, *Yamamoto* noted, might include the nature of the TILA violations (such as whether they were or were not egregious); whether the obligor had gone into bankruptcy; and the borrower's ability to repay the proceeds (including, perhaps, whether that ability to repay was itself dependent upon a rescission order because without such an order, the obligor could not refinance or sell the property). 329 F.3d at 1171, 1173. "Whether the call is correct must be determined on a case-by-case basis, in light of the record adduced." *Id.* at 1173. In making the call, the court may consider evidence such as affidavits and deposition testimony or may hold an evidentiary hearing. *See Palmer*, 502 F.2d at 862. To prescribe the pleading of ability to tender in every TILA rescission case would be inconsistent with this evidence-grounded, case-by-case approach.[8]

---

[8] Indeed, even in a common-law equitable rescission action where the plaintiff is required to tender first, the plaintiff need not necessarily plead ability to tender in the complaint. *See* 1 Dan B. Dobbs, Law of Remedies: Damages—Equity—Restitution § 4.8, at 463 (2d ed. 1993).

Further, our approach better comports with the TILA statutory text, which prescribes an enforcement sequence except when "otherwise ordered by a court." 15 U.S.C. § 1635(b). If all obligors had to allege ability to tender payment when seeking rescission and so allege in a complaint for enforcement of the rescission obligation, then (1) the requirement of doing so would no longer be an exception, and (2) the requirement would not be "otherwise ordered by a court," as a complaint initiates suit before any court order issues.

Moreover, *Yamamoto* recognized that if a creditor acquiesces at the outset in the notice of rescission, "then the transaction [is] rescinded automatically, thereby causing the security interests to become void and triggering the sequence of events laid out in subsections (d)(2) and (d)(3) [of Regulation Z, 12 C.F.R. § 226.23, which implements 15 U.S.C. § 1635(b)]." 329 F.3d at 1172. *Yamamoto*'s holding allowing district courts to vary that sequence was targeted at situations in which the creditor "produce[s] evidence sufficient to create a triable issue of fact about compliance with TILA's disclosure requirements." *Id.* Where no such evidence (or viable legal argument) is produced, then the situation is legally indistinguishable for judicial remedy purposes from one in which the creditor initially acquiesced in the rescission; that is what *should* have happened in the absence of a tenable defense. Automatically to require tender in the pleadings before any colorable defense has been presented would encourage creditors to refuse to honor indisputably valid rescission requests, because doing so would allow the security interest to remain in place absent tender. The result would be to allow creditors to vary the statutory sequence simply through intransigence.

In addition, in many cases, it will be impossible for the parties or the court to know at the outset whether a borrower asserting her TILA rescission rights will ultimately be able to return the loan proceeds as required by the statute. That ability may depend upon the merits of her TILA rescission claim or on other claims related to the same loan transaction. *See, e.g.*, *Prince v. U.S. Bank Nat'l Ass'n*, 2009 WL 2998141, at *5 (S.D. Ala. Sept. 14, 2009) (denying creditor's motion to dismiss as based on "mere speculation" that plaintiffs would be unable to tender, and indicating that court would address the proper sequences for implementing the rescission, if necessary, only after resolving the rescission claim on the merits). For instance, if a TILA rescission claim is meritorious and the creditor relinquishes its security interest in the property upon notice of rescission as required by the default § 1635(b) sequence, the obligor may then be able to refinance or sell the property and thereby repay the original lender. *Cf. Burrows v. Orchid Island TRS, LLC*, 2008 WL 744735, at *6 (C.D. Cal. Mar. 18, 2008) (declining to require pleading of tender where the court inferred that borrower would be able to tender by selling or refinancing the property if rescission was found to be appropriate); *Williams v. Saxon Mortg. Co.*, 2008 WL 45739, at *6 n.10 (S.D. Ala. Jan. 2, 2008) (declining to condition rescission on tender as was done in *Yamamoto*, because it was not clear that borrower would not be able to refinance the loan). Or her complaint may allege damages claims arising from the same loan transaction, the proceeds of which, if successful, could then be used to satisfy her TILA tender obligation. *See* Shepard, *supra*, at 205 & n.200, 210.

For all these reasons, any requirement that *all* TILA rescission plaintiffs allege ability to tender cannot be reconciled with the statute, *Yamamoto*'s holdings, and

*Yamamoto*'s underpinnings. Any suggestion that such a pleading requirement may apply in some cases but not others fares no better, for two reasons:

First, requiring a subset of TILA rescission plaintiffs to plead tender would effectively impose a special pleading requirement upon those plaintiffs, without any advance notice as to who those plaintiffs are. After *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), as before, "Rule 8(a)'s simplified pleading standard applies to *all* civil actions, with [only] limited exceptions." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (emphasis added); *see Starr v. Baca*, 652 F.3d 1202, 1215–16 (9th Cir. 2011) (discussing how to reconcile *Iqbal* and *Swierkiewicz*). Under this standard, a plaintiff need only plead "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and "the factual allegations that are taken as true must plausibly suggest an entitlement to relief." *Starr*, 652 F.3d at 1216. There is no authority for altering the pleading requirements for a given statutory claim for *some* plaintiffs making that claim and not for others.

Second, there would be no principled way to determine which plaintiffs should be required to plead tender in the complaint. *Yamamoto* and its predecessors indicate that major factors as to whether to require tender in advance of rescission are the strength of any defense to rescission and the egregiousness of any TILA violation. Neither of these considerations can be evaluated before the creditor advances its defense, factually and legally. Nor do we see how the other "case-by-case" considerations pertinent under *Yamamoto* can be set out in such a way as to notify TILA plaintiffs in advance of any special, heightened pleading requirements applicable to them in particular.

For all these reasons, we hold that plaintiffs can state a claim for rescission under TILA without pleading that they have tendered, or that they have the ability to tender, the value of their loan. Only at the summary judgment stage may a court order the statutory sequence altered and require tender before rescission — and then only on a "case-by-case basis," *Yamamoto*, 329 F.3d at 1173, once the creditor has established a potentially viable defense.

In light of this holding, we reverse the district court's Rule 12(b)(6) dismissal of the Merritts' TILA rescission claim and remand for further proceedings on that claim.

## B.  The RESPA Section 8 claims

Congress enacted RESPA in 1974 in response to abusive practices that inflate the cost of real estate transactions. 12 U.S.C. § 2601(a); *see Sosa v. Chase Manhattan Mortg. Corp.*, 348 F.3d 979, 981 (11th Cir. 2003). Section 8 of RESPA prohibits kickbacks and unearned fees and may be enforced criminally or civilly. 12 U.S.C. § 2607. Civil actions under this section must be brought within one year of the alleged violation. *Id.* § 2614. The district court dismissed the Merritts' claims under Section 8 of RESPA as "barred by the one-year statute of limitations because Plaintiffs filed suit nearly three years after closing on their loan." The district court held that "the [RESPA] limitations period begins to run as of the date of the closing," and did not address whether the statute might have been equitably tolled to the date in 2009 when the Merritts allege that they actually received their loan documents.

There is no direct precedent in this court on the RESPA equitable tolling issue, although we have held that the closely

similar TILA limitations period provision may be equitably tolled. *See King v. California*, 784 F.2d 910, 914–15 (9th Cir. 1986). Before proceeding to the question whether we should reach the same conclusion as to tolling under RESPA as we did under TILA, we first consider whether we should pretermit that issue by affirming on a separate ground.

### 1.   Plaintiffs' RESPA Section 8 claims

We may affirm a dismissal on any properly preserved ground supported in the record. *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008); *Papa v. United States*, 281 F.3d 1004, 1009 (9th Cir. 2002). However, we are not required to do so, "and as a prudential matter can properly remand to the district court" rather than "decide *ab initio* issues that the district court has not had an opportunity to consider and that present questions of first impression in our circuit." *Badea v. Cox*, 931 F.2d 573, 575 n.2 (9th Cir. 1991) (internal quotation marks omitted).

After considering the two RESPA Section 8 claims briefly, we have determined, as we shall explain shortly, that each raises fairly complex legal questions of first impression in this circuit neither decided by the district court nor fully briefed before this court. We therefore conclude that prudence counsels against addressing those claims on the merits in advance of any district court decision on them.

Plaintiffs alleged two theories of liability under Section 8 of RESPA, which we address in turn.

a. *Section 8(b)*

RESPA Section 8(b) prohibits the "giv[ing] . . . [of] any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service . . . other than for services actually performed." 12 U.S.C. § 2607(b). The Merritts allege that defendants violated Section 8(b) by "charg[ing] [them] . . . cost[s] for copying, insurance and other costs associated with the loan, which cost Defendants significantly less," thereby "pass[ing] on charges which falls within the definition of 'markups' and were charges not actually earned for any service."

A case closely similar, but not identical, to this one as to the RESPA Section 8 "markup" issue, *Martinez v. Wells Fargo Home Mortg., Inc.*, 598 F.3d 549, 553 (9th Cir. 2010), held that RESPA Section 8(b) "prohibits only the practice of giving or accepting money where *no service whatsoever* is performed in exchange for that money" (emphasis added). "By negative implication, Section 8(b) cannot be read to prohibit charging fees, excessive or otherwise, when those fees are for services that were actually performed." *Id.* at 553–54.

The plaintiffs in *Martinez* did not press a third-party "markup" theory on appeal — that is, a theory that depended on the provision of services by a party other than by the defendant who charged the fee and collected it from the consumer. *See id.* at 552 n.2. The Merritts, therefore, urge us to distinguish *Martinez* and follow the Second Circuit's decision in *Kruse v. Wells Fargo Home Mortg., Inc.*, 383 F.3d 49 (2d Cir. 2004). *Kruse* held that while straight overcharges are not actionable under Section 8(b), markups for services provided by a third party are actionable. *Id.* at 58–62.

The circuits are divided on the third-party markup issue under RESPA. In holding that third-party markups were actionable under Section 8(b), *Kruse* held that the statute itself was ambiguous and therefore deferred to a HUD policy statement interpreting the provision to prohibit markups. *See Kruse*, 383 F.3d at 57. *Santiago v. GMAC Mortg. Corp., Inc.*, 417 F.3d 384, 388–89 (3d Cir. 2005), like *Kruse*, held that markups are actionable under Section 8(b), although it relied on the statutory language as unambiguous, rather than on an agency interpretation of an ambiguous statute. In contrast, several circuits have held or strongly implied that third-party markups are not actionable under RESPA Section 8(b). *See Freeman v. Quicken Loans, Inc.*, 626 F.3d 799, 804 (5th Cir. 2010) ("RESPA is an anti-kickback statute, not an anti-price gouging statute"); *Haug v. Bank of Am., N.A.*, 317 F.3d 832, 836 (8th Cir. 2003) (holding that charging plaintiffs more for third-party services than defendant paid for them, "standing alone, does not violate Section 8(b) of RESPA"); *Boulware v. Crossland Mortg. Corp.*, 291 F.3d 261, 266, 268 (4th Cir. 2002) ("§ 8(b) requires fee-splitting or a kickback"; "Congress chose to leave markups . . . to the free market"); *Krzalic v. Republic Title Co.*, 314 F.3d 875, 881 (7th Cir. 2002) (holding that markups are not actionable under RESPA, which "is not a price-control statute").[9]

This question, which raises complicated issues of statutory interpretation and administrative law of first impression in this circuit, was not addressed by the district court and only minimally briefed before this court. We therefore decline to decide the question in the first instance on appeal.

---

[9] The Eleventh Circuit has reserved whether a third-party markup theory might be viable under RESPA Section 8(b). *See Sosa*, 348 F.3d at 982–84.

b.  *Section 8(a)*

Section 8(a) prohibits the "giv[ing] . . . [of] any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person." 12 U.S.C. § 2607(a). Plaintiffs' theory of Section 8(a) liability is that Countrywide referred appraisal business to the appraiser, Benson, in exchange for a "thing of value," namely, an inflated appraisal.

At oral argument, defendants disputed the facts underlying the Section 8(a) claim. Specifically, defendants argued that the Merritts have admitted that the appraisal referral was made "before [they] first contacted Countrywide." These factual claims rely on documents that were not before the district court, and in any event, are unavailing in light of this court's duty to accept the plaintiffs' allegations as true at the pleading stage of the litigation. Contrary to defendants' representation at oral argument, the operative complaint alleges that the Merritts were in contact with their Countrywide agent as early as February 2006, and that the agent and the appraiser were in contact in early March. To the extent that there are possible inconsistencies in the timeline alleged in the complaint, the district court as well as this court must construe the complaint in the light most favorable to the plaintiffs and grant leave to amend if any defects could be cured. *See Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam) (*pro se* complaints should be dismissed without leave to amend only if it is clear that deficiencies could not be cured by amendment).

Countrywide also argued in its brief that the Merritts' Section 8(a) claim cannot survive dismissal because the statute only provides for liability "to the person or persons charged for the settlement service involved in the violation," 12 U.S.C. § 2607(d)(2), and the Merritts did not allege that they were charged for the appraisal. However, this failing could be cured if the Merritts were granted leave to amend the complaint to allege that, as they contend in their reply brief, they paid the appraiser directly.

A more complicated question is whether an inflated appraisal would qualify as a "thing of value" as that term is defined for RESPA purposes. The answer is not self-evident, the parties briefed this question only in passing, and the district court did not decide it. Moreover, the determination of this question may depend on factual development as to the precise structure of the agreement and the sequence of events. We therefore do not decide this question in the first instance either. We conclude only that we are not prepared to affirm at this juncture on the ground that the inflated appraisal was *not* a "thing of value" for RESPA purposes, and so must reach the limitations issue.

## 2.   Equitable tolling

The district court dismissed the Merritts' claims under Section 8 of RESPA as "barred by the one-year statute of limitations because Plaintiffs filed suit nearly three years after closing on their loan," and, although the issue was raised, did not consider whether the statute might have been equitably tolled to the date in 2009 when the Merritts allege that they actually received their loan documents. Only at that time, the Merritts allege, did they learn about the markups charged, as well as key information about their loan that could help to tip

them off to the appraisal kickback scheme, including that the individual they thought had been the home's selling agent was actually also its owner.

The pertinent RESPA limitations provision states:

> **Jurisdiction of courts; limitations.** Any action pursuant to the provisions . . . of this title may be brought in the United States district court or in any other court of competent jurisdiction, for the district in which the property involved is located, or where the violation is alleged to have occurred, within . . . 1 year in the case of a violation of section 2607 . . . of this title from the date of the occurrence of the violation . . . .

12 U.S.C. § 2614.

We have not previously decided whether the RESPA statutory limitations period may be equitably tolled. *King* did, however, address a closely similar question concerning the TILA limitations period. *King*, 784 F.2d 910. *King* held that the TILA limitations period was subject to equitable tolling. *Id.* at 195. We reach the same conclusion here with regard to the RESPA limitations period.

There has, however, been considerable development since *King* in the general principles governing the availability of equitable tolling of statutory limitations periods. Consequently, we conduct a somewhat more extensive analysis of the pertinent considerations than did *King*, albeit with the same result.

Our departure point under post-*King* case law is the proposition that "[t]ime requirements in lawsuits between private litigants are customarily subject to 'equitable tolling.'" *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95 (1990) (citing *Hallstrom v. Tillamook Cnty.*, 493 U.S. 20, 27 (1989)). To determine whether the RESPA limitations period falls within that customary rule, we must first determine whether it is jurisdictional; courts "[have] no authority to create equitable exceptions to jurisdictional requirements." *Bowles v. Russell*, 551 U.S. 205, 214 (2007). If the RESPA limitations period is non-jurisdictional, we must assess whether Congress has clearly precluded equitable tolling. *See United States v. Brockamp*, 519 U.S. 347, 350 (1997).

a.   *The RESPA limitations period is not jurisdictional*

In a series of recent cases, the Supreme Court has "pressed a strict[] distinction between truly jurisdictional rules, which govern 'a court's adjudicatory authority,' and nonjurisdictional 'claim-processing rules,' which do not." *Gonzalez v. Thaler*, 132 S. Ct. 641, 648 (2012) (quoting *Kontrick v. Ryan*, 540 U.S. 443, 454–55 (2004)). In doing so, the Court has clarified that "the term 'jurisdictional' properly applies *only* to prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) implicating [the court's adjudicatory] authority." *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 160–61 (2010) (emphasis added) (internal quotation marks omitted). Moreover, a rule is "jurisdictional" only if "Congress has 'clearly state[d]' that the rule is jurisdictional." *Sebelius v. Auburn Reg'l Med. Ctr.*, 133 S. Ct. 817, 824 (2013) (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515–516 (2006) (alteration in original)). To determine whether Congress clearly intended a statutory restriction to be jurisdictional,

courts review factors such as the statute's language, "context, and relevant historical treatment." *Reed Elsevier*, 559 U.S. at 166. Applying this test, the Court has repeatedly held that "filing deadlines ordinarily are not jurisdictional; indeed, [the Court has] described them as 'quintessential claim-processing rules.'" *Sebelius*, 133 S. Ct. at 825 (quoting *Henderson ex rel. Henderson v. Shinseki*, 131 S. Ct. 1197, 1203 (2011)). With these precepts in mind, we proceed to examine the relevant factors.

### i.  *Language*

By its terms, § 2614 provides that any RESPA Section 8 action "*may* be brought . . . within 1 year . . . from the date of the occurrence of the violation." 12 U.S.C. § 2614 (emphasis added). This non-mandatory language is far more permissive than several limitations provisions that have been held amenable to equitable tolling. For example, the limitations provision held to be non-jurisdictional and tollable in *Henderson*, 131 S. Ct. at 1204, stated that a claimant "*shall* file . . . within 120 days" (emphasis added). If not all "mandatory prescriptions, *however emphatic*, are . . . properly typed jurisdictional," *Henderson*, 131 S. Ct. at 1205 (emphasis added) (internal quotation marks omitted), then the use of permissive, non-mandatory language such as RESPA's "may file" language weighs considerably against a finding that the limitations period is jurisdictional.

### ii.  *Statutory placement*

In examining whether or not a rule is jurisdictional, a few of the Supreme Court's recent cases have assigned some significance to whether the rule is "located in a jurisdiction-granting provision." *Reed Elsevier*, 559 U.S. at 166; *see also*

*Henderson*, 131 S. Ct. 1205;  *Payne v. Peninsula Sch. Dist.*, 653 F.3d 863, 870–71 (9th Cir. 2011) (en banc), *overruled in part on other grounds by Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014). Countrywide primarily relied upon this factor to support its argument against equitable tolling, citing the D.C. Circuit's holding that "the [RESPA] time limitation is a jurisdictional prerequisite to suit and as such not subject to equitable tolling." *Hardin v. City Title & Escrow Co.*, 797 F.2d 1037, 1038 (D.C. Cir. 1986). To reach its conclusion, *Hardin* relied upon the placement of the RESPA time limitation in "the same sentence" that, in *Hardin*'s characterization, "creates federal and state court jurisdiction" under RESPA, and upon the subtitle of the section, "Jurisdiction of Courts." *See id.* at 1039.

In light of Supreme Court cases decided since *Hardin*, we cannot agree with the D.C. Circuit that the RESPA time limitation is placed in a sentence that "*creates* federal and state court jurisdiction." It is true that the provision appears under the heading "Jurisdiction of courts; limitations." But, as the Supreme Court has noted in recent years, "jurisdiction" has "many, too many meanings." *Arbaugh*, 546 U.S. at 510. In particular, use of the word "jurisdiction" does not make a provision "jurisdiction-*granting*." *Reed Elsevier* so indicated, rejecting the argument that the "presence of the word 'jurisdiction'" in a provision renders the entire provision jurisdictional. 559 U.S. at 163.  Moreover, "[a] requirement we would otherwise classify as nonjurisdictional . . . does not become jurisdictional simply because it is placed in a section of a statute that also contains jurisdictional provisions." *Sebelius*, 133 S. Ct. at 825 (citing *Gonzalez*, 132 S. Ct. at 651–52). "Mere proximity will not turn a rule that speaks in nonjurisdictional terms into a jurisdictional hurdle." *Gonzalez*, 132 S. Ct. 651.

Here, although the RESPA limitations period appears in a provision that references the court's "jurisdiction," the section, read as a whole, is not a "jurisdiction-*granting* provision." *Reed Elsevier*, 559 U.S. at 166 (emphasis added). The provision's reference to "United States district court[s] . . . [and] other court[s] of competent jurisdiction" implies, instead, that the source of the referenced courts' "competent jurisdiction" lies elsewhere. And that is in fact the case with regard to federal district courts, which have jurisdiction to hear claims "arising under" RESPA because it is a "law[] . . .of the United States." *See* 28 U.S.C. § 1331. Other than providing for a limitations period, then, the RESPA provision at 12 U.S.C. § 2614 simply clarifies that, when determining in *which* court of competent jurisdiction they will file their claim, RESPA litigants have a choice of venue: either "the district in which the property involved is located," or, if it differs, "where the violation is alleged to have occurred." 12 U.S.C. § 2614.

### iii.  *Historical treatment*

In some statutory contexts, there is a venerable, consistent line of Supreme Court cases construing whether a particular limitations provision is jurisdictional. *See, e.g.*, *Bowles*, 551 U.S. at 210–13; *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 137–39 (2008). Here we have no such historical guidance, as the Supreme Court has not addressed whether RESPA's limitations period is jurisdictional, nor has our court. In the absence of Supreme Court precedents the case for deference to historical guidance is much weaker here than in cases such as *Bowles*, 551 U.S. 205.

We do, however, have pertinent established law in this circuit, namely *King*, 784 F.2d 910; *see also Ramadan v.*

*Chase Manhattan Corp.*, 156 F.3d 499, 501–05 (3d Cir. 1998) (following *King*'s holding as to TILA). *King* is precedent in this circuit, and is persuasive authority in this case.

*King* construed TILA's similarly worded limitations period, and held it amenable to equitable tolling. The TILA limitations provision is as follows:

> (e) Jurisdiction of courts; limitations on actions; State attorney general enforcement
>
> Except as provided in the subsequent sentence, any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation . . . .

15 U.S.C. § 1640(e). Like the RESPA limitations period, then, the parallel TILA provision appears in the same sentence as a reference to "jurisdiction" and under the heading "Jurisdiction of courts; limitations on actions."[10]

---

[10] There is one distinction. The TILA limitations provision, as passed by Congress, appeared as one subsection in a section headed "Civil liability." *See* Consumer Credit Protection Act, Pub. L. 90-321, § 130(e), 82 Stat. 146, 157 (1968). The subheading "Jurisdiction of courts" was added in the codification process. In contrast, the RESPA limitations provision, as passed by Congress, appeared under the heading "Jurisdiction of Courts." *See* Real Estate Settlement Procedures Act of 1974, Pub. L. 93-534, § 16, 88 Stat. 1724, 1731 (1974). We do not ascribe significance to this distinction for present purposes. Whatever its origin, the heading just identifies a subject matter; it does not identify the subsection as jurisdiction-*creating*.

*King* was decided without the benefit of the Supreme Court's recent admonitions against "profligate use" of the term "jurisdiction[al]." *Payne*, 653 F.3d at 868 (internal quotation marks omitted); *see Arbaugh*, 546 U.S. at 510. But *King* necessarily relied upon an understanding that the TILA limitations period was non-jurisdictional; otherwise, *King* could not have held the limitations period contained in the subsection subject to equitable tolling. Reflecting that understanding of *King*, the Seventh Circuit, in *Lawyers Title Insurance Corp. v. Dearborn Title Corp.*, 118 F.3d 1157 (7th Cir. 1997), relied in part upon *King*'s reasoning when it expressly declined to follow the D.C. Circuit's contrary holding in *Hardin*. *Lawyers Title* held, instead, that the RESPA limitations period is not jurisdictional and may be equitably tolled. *See Lawyers Title*, 118 F.3d at 1166–67.[11]

Countrywide argues that Judge Posner's opinion for the court in *Lawyers Title* is not persuasive, because it relies upon the premise that federal limitations periods "are universally . . . nonjurisdictional" unless they involve "actions against the United States." *Id.* at 1166 (quoting *Cent. States, Se. & Sw. Areas Pension Fund v. Navco*, 3 F.3d 167, 173 (7th Cir. 1993)). The Supreme Court's more recent equitable tolling jurisprudence indicates that the line is not quite so bright. For example, in *Bowles*, the Court held that "time limits for filing a notice of appeal are jurisdictional in nature." 551 U.S. at 206.

---

[11] Two other circuits have reserved the question of whether RESPA's limitations period may be equitably tolled. *See Egerer v. Woodland Realty, Inc.*, 556 F.3d 415, 424 n.18 (6th Cir. 2009); *Snow v. First Am. Title Ins. Co.*, 332 F.3d 356, 361 n.7 (5th Cir. 2003).

But *Irwin*, decided before *Lawyers Title*, began from a similar premise — that "time requirements in lawsuits between private litigants are customarily subject to 'equitable tolling.'" *Irwin*, 498 U.S. at 95. The difference between the "universally" adverb in *Lawyers Title*, 118 F.3d at 1166, and the "customarily" adverb in *Irwin*, 489 U.S. at 95, appears to reflect hyperbole in the former, but not a difference in fundamental concept. In contrast, *Hardin* applied the sort of rigidly formalistic jurisdictional analysis that the Supreme Court's recent cases have eschewed.

All of these factors point towards a conclusion that the RESPA limitations period does not "implicat[e] [the district court's adjudicatory] authority," *Reed Elsevier*, 559 U.S. at 161, but, instead, is an ordinary "filing deadline," a "quintessential claim-processing rule[]." *See Sebelius*, 133 S. Ct. at 825. We so conclude.

### b.    *The presumption of equitable tolling applies*

As the RESPA limitations period is not jurisdictional, RESPA claims are presumptively amenable to equitable tolling, *see Irwin*, 489 U.S. at 95, unless Congress has clearly indicated otherwise. There is no such indication in the statute.

Many of the considerations on which we relied as to the jurisdictional issue, particularly the permissive language used in the limitations provision, also help to negate any clear barrier to equitable tolling. In addition, we are guided by the analysis in *King*, 784 F.2d 910, which applied an approach with respect to equitable tolling generally consistent with the recent cases. *King*'s logic with regard to the TILA limitation period applies equally to the parallel RESPA provision.

*King* began by asking "whether tolling the statute in certain situations [would] effectuate the congressional purpose" of the statute, always "our basic inquiry" when determining whether a limitations period may be equitably tolled. *Id.* at 914–15. Because TILA is a broadly remedial consumer-protection statute, *King* reasoned, "an inflexible rule that bars suit one year after consummation [of the loan]" would be "inconsistent with legislative intent." *Id.* at 914. *King* also recognized, however, that Congress did not intend to expose lenders "to a prolonged and unforeseeable liability." *Id. King* therefore struck the balance between consumer protection and predictable liability by holding that the TILA limitations period could, "in the appropriate circumstances," be equitably tolled, but only "until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action." *Id.* at 915.

As we have recently recognized, RESPA is, like TILA, "intended . . . to serve consumer-protection purposes." *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 665 (9th Cir. 2012). Consistent with those purposes, we have concluded that "RESPA's provisions relating to loan servicing procedures should be construed liberally to serve the statute's remedial purpose." *Id.* at 665–66 (internal quotation marks omitted). By the same token, "tolling the statute [of limitations] in certain situations [would] effectuate the congressional purpose" of protecting consumers. *King*, 784 F.2d at 915. There may be situations in which a consumer is unable to file suit within the statutory limitations period precisely because of a real estate service provider's obfuscation or failure to disclose.

We hold, therefore, that although the limitations period in 12 U.S.C. § 2614 ordinarily runs from the date of the alleged RESPA violation, "the doctrine of equitable tolling may, in the appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover" the violation. *King*, 784 F.2d at 915. Just as for TILA claims, district courts may evaluate RESPA claims case-by-case "to determine if the general rule would be unjust or frustrate the purpose of the Act and adjust the limitations period accordingly." *Id.*

\* \* \*

The district court dismissed plaintiffs' RESPA Section 8 claims as time-barred, holding that "the [RESPA] limitations period begins to run as of the date of closing," and thereby assuming that the period could not be equitably tolled. Rather than "decide *ab initio* issues that the district court has not had an opportunity to consider and that present questions of first impression in our circuit," *Badea*, 931 F.2d at 575 n.2, we decline, for the reasons explained, to affirm the dismissal of the Merritts' Section 8 claims on alternate grounds. Instead, we reach the issue that was the basis for dismissal, failure to comply with the statutory limitations period. In light of our holding today regarding equitable tolling, we vacate the dismissal of the Section 8 claims on limitations grounds and remand for reconsideration. On remand, the district court may consider such evidence as it deems appropriate to determine on what date the Merritts discovered or had reasonable opportunity to discover the alleged Section 8 violations and whether they filed their complaint within a year of that date. If the district court determines that the plaintiffs' RESPA Section 8 claims are not time-barred, it should permit *substantive* amendment of the claims upon an appropriate

request and continue with further proceedings consistent with this opinion. *See Lucas*, 66 F.3d at 248 ("Unless it is absolutely clear that no amendment can cure the defect . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend.").

## Conclusion

We reverse the district court's dismissal of plaintiffs' TILA rescission claim and remand for further proceedings on that claim. As to plaintiffs' RESPA Section 8 claims, we vacate the dismissal and remand to the district court for further consideration in accordance with this opinion.

## REVERSED IN PART, VACATED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.

---

KLEINFELD, Senior Circuit Judge, dissenting:

I respectfully dissent.

We review a 12(b)(6) dismissal de novo,[1] and can affirm on any ground, regardless of whether the district court relied on it.[2]

---

[1] *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1061 (9th Cir. 2004).

[2] *Janicki Logging Co. v. Mateer*, 42 F.3d 561, 564 (9th Cir. 1994). The majority cites dicta in *Gillibeau v. City of Richmond*, 417 F.2d 426, 431 (9th Cir. 1969), a 1969 case, for the proposition that we should not, in the first instance, affirm a dismissal on Rule 8 grounds where the district court did not act upon the Rule 8 motions. On the other hand, we said, possibly in dicta, but possibly in holding, in a 1988 case, *Sparling v. Hoffman*

This complaint violated Federal Rule of Civil Procedure 8(a)(2). The Rule requires a "short and plain statement of the claim showing that the pleader is entitled to relief."[3] We are indulgent with pro se complaints, but even for them, there are limits.

The Merritt complaint is neither "short" nor "plain." It is 68 pages long, 398 paragraphs. Nor were they deprived of opportunities to clarify what their claims were. Though they call the complaint their "Second Amended Complaint," the truth is that it is their fifth version. They got leave to file this version of their complaint by filing a motion explaining that the amendments would be "clarifications," along with a "stipulation" to which Countrywide did not stipulate. The leave to amend they thus obtained mooted out Countrywide's pending motion to dismiss, so it was not adjudicated. The plaintiffs then filed their amended complaint which was materially different from the one submitted to the district court with their motion for leave to amend. Far from "clarifying" their previous complaints, this new complaint

---

*Construction Co.*, 864 F.2d 635, 640 (9th Cir. 1988), that even if the pleading did state a claim upon which relief could be granted, "the complaint would be deficient under Rule 8(a) of the Federal Rules of Civil Procedure which requires 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" In the case before us, the court noted that the Merritts' second amended complaint was "mostly unintelligible." The district court further noted that the Merritts' allegations and claims purported to be "made, at least in part, 'hypothetically.'" It took note of the defendant's motion to dismiss under Rule 8, but treated it as moot, because of the dismissal for failure to state a claim under Rule 12. I think we should affirm on Rule 8 grounds, and may, under *Sparling*.

[3] Fed. R. Civ. P. 8(a)(2).

added an additional 69 paragraphs, 16 pages, and yet another cause of action.

We have articulated five factors for evaluating whether a plaintiff should be given leave to amend: "(1) bad faith, (2) undue delay, (3) *prejudice to the opposing party*, (4) futility of amendment; and (5) *whether plaintiff has previously amended his complaint*."[4] We have held that the "district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint."[5] Here, the Merritts have submitted five different complaints to the district court. Further amendment would unduly prejudice the defendants. The defendants have responded to two of the Merritts' five prolix, incomprehensible complaints, doubtless at great expense for their own lawyers. Defendants have filed numerous motions addressing those complaints, for violation of Rule 8, misrepresentations, failure to state claims upon which relief may be granted, and lack of appropriate service. That is a lot of wasted money. Plaintiffs imposed this unfair prejudice on defendants by their vague prolixity and multiple filings.

The Merritts' most recent amendments made their complaint even more prolix, and less "short and plain." Countrywide's combined motion to strike and dismiss placed the Merritts on notice that their complaint failed to comply with Rule 8, but they made no attempt to bring their complaint into compliance with the rules. Because of this

---

[4] *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (emphasis added).

[5] *Id.* (quoting *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989)).

history, dismissal with prejudice was justified. Although dismissal with prejudice for failure to comply with the rules requires consideration of less drastic alternatives,**6** here there were none, as it did not appear that plaintiffs were prepared, even after five tries, to make a short and plain statement of claims for which they were entitled to relief. Their misleading stipulation had already burdened Countrywide with the need to brief a second motion to dismiss. Allowing the Merritts a sixth attempt to plainly state their claims would be too prejudicial to the defendants to be a fair alternative under these circumstances.

The majority opinion does a heroic job of stating claims clearly on behalf of the Merritts. But plaintiffs did not state them. It is not fair to defendants to perform these legal services for plaintiffs, even pro se plaintiffs, where the plaintiffs do not evidently have good claims. "Prolix, confusing complaints such as the ones plaintiffs filed in this case impose unfair burdens on litigants and judges. As a practical matter, the judge and opposing counsel, in order to perform their responsibilities, cannot use a complaint such as the one plaintiffs filed, and must prepare outlines to determine who is being sued for what. Defendants are then put at risk that their outline differs from the judge's, that plaintiffs will surprise them with something new at trial which they reasonably did not understand to be in the case at all, and that res judicata effects of settlement or judgment will be different from what they reasonably expected. [T]he rights

---

**6** *See, e.g.*, *Nevijel v. N. Coast Life Ins. Co.*, 651 F.2d 671, 674 (9th Cir. 1981).

of the defendants to be free from costly and harassing litigation must be considered."[7]

If plaintiffs had what looked like a strong claim that ought to be adjudicated on the merits, judicial creation of a complaint for them might not be so unfairly prejudicial.[8] But they do not. What they appear to be saying in their 398-paragraph complaint is that they bought a $729,000 house, and borrowed $739,000 for it, because the seller lowballed them into thinking they were going to get the house for $719,000. They seem to be saying that Countrywide's agent persuaded them to lie, which they did, in their loan application, such as by saying that Mrs. Merritt was employed when she was actually receiving disability payments (later terminated). And they seem to be saying that because they were minorities they were offered a more ample adjustable rate mortgage instead of a less ample fixed rate mortgage loan than they would otherwise be entitled to.

Were we limited to 12(b)(6) dismissal, we would have to assume for purposes of decision that the plausible factual statements (but not the legal conclusions and editorializing rhetoric) in the complaint were true.[9] We are not so limited

---

[7] *McHenry v. Renne*, 84 F.3d 1172, 1179–80 (9th Cir. 1996) (internal quotation marks omitted) (alteration in original).

[8] *See, e.g.*, *Von Poppenheim v. Portland Boxing & Wrestling Comm'n*, 442 F.2d 1047, 1052 n.4 (9th Cir. 1971) ("Since harshness is a key consideration in the district judge's exercise of discretion, it is appropriate that he consider the strength of a plaintiff's case if such information is available to him before determining whether dismissal with prejudice is appropriate.").

[9] *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012).

under Rule 8 analysis, which I suggest ought to be applied. Under Rule 12 analysis, some of the claims are plausible at least in part. Obviously, if Countrywide did not properly provide the loan papers to the Merritts, a claim if timely could be made. Tender of the full amount received is not in all circumstances a sine qua non for a pleading claiming rescission, though some sort of equitable judgment requiring tender must be made if rescission is granted, to assure that the plaintiff does not get to keep what it bought and also get all the money back.[10]

It is hard to say whether plaintiffs even seek a rescission remedy that could be allowed. The prayer in their complaint seeks a return of all the money they have "invested in their property," plus compensatory damages, plus $2,000,000 in punitive damages, plus a "prime loan at current market rates" (far lower than the housing bubble interest rates that prevailed when they bought their $729,000 house), or for them to be able to walk away with the reimbursements and damages. Their appellate brief is more modest, but was not before the district court.

Their pleading seems to say that they have been living in a $729,000 house for what is now almost six years without paying anything toward the price. If they got past their Rule 8 problems, and their Rule 12 problems, their equities appear to be weak. The Merritts have had five chances to state this claim. Prejudice and futility counsel against giving them a sixth try. We ought to let the dismissal with prejudice stand.

---

[10] *See Yamamoto v. Bank of New York*, 329 F.3d 1167, 1171, 1173 (9th Cir. 2003).