



FILED

APR - 8 2015

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

*POSTED ON WEBSITE*
*NOT FOR PUBLICATION*

# UNITED STATES BANKRUPTCY COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 10-44610-E-7 |
| JAMES L. MACKLIN, | |
| Debtor. | |
| JAMES L. MACKLIN, | Adv. Proc. No. 11-2024 |
| Plaintiff, | Docket Control No. JLM-1 |
| v. | |
| DEUTSCHE BANK NATIONAL TRUST CO., | |
| Defendant. | |

**This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of claim preclusion or issue preclusion.**

### MEMORANDUM OPINION AND DECISION

James Macklin ("Macklin") is the Plaintiff in this adversary proceeding, naming Deutsche Bank National Trust Co., as Indenture Trustee for the Accredited Mortgage Loan Trust 2006-2 Certificate Holders ("DBNTC") as the only defendant. The Adversary Proceeding was commenced on January 13, 2011, and judgment was entered for DBNTC on July 2, 2013. Dckt. 349. On January 22, 2015, Macklin filed the present Motion for Relief Under Federal Rule of Civil

Procedure 60(b),[1] seeking to vacate orders and the judgment entered in this Adversary Proceeding.  Dckt. 380.

### HISTORY OF ADVERSARY PROCEEDING
### AND MACKLIN'S MULTI-COURT PARALLEL LITIGATION

The court begins with a review of what has transpired in this Adversary Proceeding (for which there are now 472 docket entries). Macklin has chosen to be represented by four different attorneys in this Adversary Proceeding (including having terminated an attorney and then rehiring her when Macklin terminated her replacement).  A review of the representation of Macklin is summarized in the following chart:

| Holly S. Burgess, Esq.[2] | January 13, 2011 - October 3, 2011 |
|---|---|
| Filed Original Complaint | January 13, 2011 |
| Filed Motion for TRO (TRO Issued) | February 7, 2011 |
| Filed Motion for Preliminary Injunction (Preliminary Injunction Granted) | February 24, 2011 |
| Opposed Motion to Dismiss Original Complaint | March 17, 2011 |
| Filed Motion to Compel Chapter7 Trustee to Abandon Claims against DBNTC | May 10, 2011 |

[1] Unless other wise stated, the court shall refer to the Federal Rules of Civil Procedure as "Rule [number]" and the Federal Rules of Bankruptcy Procedure as "Bankruptcy Rule [number]."

[2] Ms. Burgess was also Macklin's counsel in his Chapter 13 case filed on September 16, 2010, and continued in that representation when it was converted to one under Chapter 7.  On October 28, 2011, Allan Frumkin, Esq. was substituted in as counsel for Macklin in the bankruptcy case and Ms. Burgess was allowed to withdraw.  On January 31, 2015, Charles T. Marshall, Esq. was substituted in as counsel for Macklin in the bankruptcy case.

2

| Filed First Amended Complaint | June 17, 2011 |
|---|---|
| Opposed Motion to Dismiss First Amended Complaint | September 2, 2011 |
| Opposed Motion to Vacate Preliminary Injunction (Preliminary Injunction dissolved due to Macklin's failure to comply with conditions of injunction) | September 1, 2011 |

| **Allan R. Frumkin, Esq.** | **October 3, 2011 - April 23, 2012** |
|---|---|
| Filed Motion For Re-Argument of Motion to Dismiss First Amended Complaint | October 17, 2011 |
| Prepared Draft Second Amended Complaint | October 17, 2011 (Dckt. 201) |
| Filed Status Conference Statement | October 24, 2011 |
| Filed Notice of Macklin Discharging Allan R. Frumkin as Attorney | February 21, 2012 |
| Filed *Ex Parte* Motion to Withdraw as Counsel to Leave Macklin In Propia Persona (Motion denied without prejudice) | March 2, 2012 |
| Filed Noticed Motion For Substitution of Attorney (With Holly S. Burgess, Esq. to be substituted to replace Mr. Frumkin) | March 29, 2012 |

| **Holly S. Burgess, Esq.** | **April 23, 2012 - October 2, 2012** |
|---|---|
| Filed Status Conference Statement | May 16, 2012 |
| Represented Macklin For Court Setting Discovery Scheduling Order, Dispositive Motion Deadline, and Pre-Trial Conference. | June 4, 2012 |

| | |
|---|---|
| Opposed DBNTC Motion to Have Reference Withdrawn (Motion denied by District Court) | June 2012 |
| Filed Pleadings Regarding Discovery Disputes | July 30, 2012 |
| Filed Ex Parte Substitution of Attorney (Daniel Hanecak, Esq. to be counsel for Macklin) | August 23, 2012 |
| Filed Noticed Motion to Withdraw as Counsel for Macklin | September 13, 2012 |

| **Daniel J. Hanecak, Esq.** | **October 2, 2012 - February 23, 2015** |
|---|---|
| Filed Motion to Amend Complaint (Motion Denied After Noticed Hearing) | October 4, 2012 |
| Filed Motion For Summary Judgment | February 21, 2013 |
| Opposed DBNTC Request for Summary Judgment | March 14, 2013 |
| Filed Motion to Withdraw as Attorney (Motion Denied) | June 6, 2013 |

| **Charles T. Marshall, Esq.** | **January 22, 2015 - Current** |
|---|---|
| Motion to Reopen Adversary Proceeding | January 22, 2015 |
| Motion For Relief Pursuant to Rule 60(b) | January 22, 2015 |

When Macklin commenced this Adversary Proceeding, he also filed a Motion for a Temporary Restraining Order and a Motion for Preliminary Injunction. Dckts. 6 and 26. The court granted both the Motion for Temporary Restraining Order and Motion for Preliminary Injunction. Orders, Dckts. 66 and 100. The

1  preliminary injunction was subsequently dissolved when Macklin's

2  failed to provide a self-funded Rule 65(c), Bankruptcy Rule 7065,

3  bond.  Order, Dckt. 187.  No payment was being made by Macklin on

4  the  disputed  secured  claim  of  DBNTC.   The  court,  in  lieu  of

5  requiring a third-party bond, allowed Macklin to self-fund a bond,

6  making $1,500.00 a month (which approximated the monthly payment

7  asserted  to  be  due  on  the  claim  by  DBNTC)  into  a  segregated

8  account.   Macklin failed to make the $1,500.00 a month payments

9  into the segregated account.  Civil Minutes, Dckt. 186.

10      On April 4, 2011, the court granted DBNTC's motion to dismiss

11  the original Complaint.  Dckt. 64.  Macklin filed his First Amended

12  Complaint on June 17, 2011.  Dckt. 120.  On February 16, 2012, the

13  court entered its order granting the Motion to Dismiss the First

14  Amended Complaint, dismissing the causes of action 1 through 8.

15  Order, Dckt. 222.  The court's Memorandum Opinion and Decision for

16  the  Motion  contains  a  detailed  review  of  the  history  of  the

17  Adversary Proceeding to that time.  Dckt. 221.

18      While the Motion to Dismiss the First Amended Complaint was

19  under  submission,  Macklin  replaced  his  first  counsel,  Holly  S.

20  Burgess, with Allan Frumkin.  Macklin, represented by Mr. Frumkin,

21  filed a Motion to Allow Re-Argument of the Motion to Dismiss.

22  Dckt.  198.   In  the  Motion  and  Mr.  Frumkin's  declaration

23  (Dckt. 199), the court was advised that Macklin and his new

24  attorney recognized that the First Amended Complaint should be

25  amended, asserted prior counsel had failed to adequately represent

26  Macklin, and represented that Mr. Frumkin was ready, willing, and

27  able to prosecute this Adversary Proceeding.

28      The court denied Macklin's request for re-argument of the

Motion to Dismiss the First Amended Complaint. Order, Dckt. 220. In its ruling, the court noted that, if the court's ruling on the Motion to Dismiss the First Amended Complaint was adverse to Macklin, then Macklin could seek leave to file a further amended complaint at that time. Civil Minutes, Dckt. 219.

Though Macklin and Mr. Frumkin stated that they knew what amendments they wanted to make to the First Amended Complaint, no motion for leave to file a second amended complaint was filed by Macklin and Mr. Frumkin.

On April 23, 2012, the court filed its order authorizing Allan R. Frumkin to withdraw as counsel for Macklin in this Adversary Proceeding. Dckt. 243. Macklin requested, and the court so substituted in, Holly S. Burgess as Macklin's attorney in this Adversary Proceeding. Dckt. 244.

On June 4, 2012, the court issued its Scheduling Order in this Adversary Proceeding. Dckt. 250. Macklin was represented by Holly S. Burgess and the Scheduling Order was set with input from, and the participation of, Macklin's attorney. Non-Expert Witness discovery closed on October 15, 2012, and Expert Witness Discovery closed on January 31, 2013. Dispositive Motions were to be heard by March 22, 2013, and the Pre-Trial Conference was to be conducted in April 2013. *Id.*

In June 2012, DBNTC sought to have the District Court withdraw the reference to this bankruptcy court for the Adversary Proceeding. Dckt. 215. This request was opposed by Macklin. Dckt. 259. The Motion to Withdraw the Reference was denied by the District Court. Dckt. 262.

The parties proceeded with discovery. On July 30, 2012,

Macklin filed a Joint Statement re: Discovery Agreement. Dckt. 263. The court denied the Motion to Compel Production.    Order, Dckt. 268; Civil Minutes, Dckt. 267.

On August 23, 2012, Macklin filed another Notice of Substitution of Counsel. Macklin sought to terminate Holly S. Burgess as his attorney (who replaced Allan Frumkin, who replaced Holly S. Burgess the first time).    The Motion to Substitute was filed on September 13, 2012. Dckt. 275. At the September 27, 2012 hearing on the Motion to Substitute, the court confirmed with the proposed new counsel that he understood discovery was closing shortly in the Adversary Proceeding and that Macklin's desire to engage a fifth attorney to represent him (counting the termination and re-hiring of Ms. Burgess as two attorneys) was not, in and of itself, a basis for reopening discovery and further delaying the prosecution of this Adversary Proceeding.    When the proposed fifth counsel for Macklin confirmed that he clearly understood and was able to represent Macklin in the case as it then stood (with discovery closing), the court allowed Daniel J. Hanecak to be substituted in as the fifth attorney for Macklin in this Adversary Proceeding.    Order Dckt. 287; Civil Minutes, Dckt. 285.[3]

---

[3] On this point, the court's findings and conclusions stated in the Civil Minutes for the September 27, 2012 hearing on the motion to substitute counsel include:

This Adversary Proceeding has been pending for 21 months. While such a time period may not seem long when compared to California Superior Court cases or even cases pending in the District Court, this is a very old case for bankruptcy courts in this District. The Plaintiff-Debtor has changed counsel in this case multiple times, and for at lease one counsel firing her and then rehiring her when he became dissatisfied with her replacement counsel (Allan R. Frumkin) who apparently told a tale of the

7

On October 4, 2012, two days later, Macklin, represented by
Mr. Hanecak, filed his Motion to File a Second Amended Complaint.
Dckt. 288. The court denied that Motion. Dckt. 306. The court
discusses in greater detail below this Motion and the grounds for
denial of that motion.

On February 21, 2013, Macklin filed his Motion for Summary
Judgment. Dckt. 307. DBNTC opposed and requested that summary
judgment be granted in its favor pursuant to Rule 56(f).

virtues of hiring him. That counsel sought to withdraw
after losing one motion to file a second amended
complaint in this Adversary Proceeding. In requesting to
withdraw from representing the Plaintiff-Debtor, Allan R.
Frumkin sought to leave the Plaintiff-Debtor
unrepresented.
...
At the hearing, Daniel J. Hanecak, the proposed new
counsel, confirmed that he has reviewed the file and has
knowledge of the deadlines in this case. Further, he
confirmed that he has spoken with the Plaintiff-Debtor
and with full knowledge of the deadlines and scheduling
in this case, is prepared to accept the responsibility of
being counsel for the Plaintiff-Debtor. The court also
reviewed with Mr. Hanecak the causes of action which
remain in this case following the partial granting of the
motion to dismiss filed by the Defendant. Order, Dckt.
222.

Civil Minutes, pg. 3; Dckt. 285.

In Ms. Burgess' declaration in support of the present
motion she professionally and tactfully states the basis
for the Plaintiff-Debtors desire to once again change
counsel. The court paraphrases these grounds as follows.
The Plaintiff-Debtor does not believe that Ms. Burgess
understands the causes of action he wants to present and
does not arguments [sic] the way the Plaintiff-Debtor
would if he were the attorney. Because of the differences
as to how Ms. Burgess believes that the case should be
presented and that of the Plaintiff-Debtor, there has
been a strain created on the attorney-client
relationship.

*Id.*

8

Dckt. 314.   The court denied summary judgment for Macklin and granted summary judgment for DBNTC for the remaining two causes of action.   Order, Dckt. 327; Memorandum Opinion and Decision, Dckt. 325.   Judgment was entered for DBNTC and against Macklin on July 2, 2013.   Dckt. 349.   (The court having to address another motion to withdraw filed by Mr. Hanecak, the attorney for Macklin.   Order denying, Dckt. 344.)

On June 20, 2013, Macklin filed a motion to vacate the order granting DBNTC summary judgment and denying Macklin summary judgment.   Dckt. 338. Macklin filed the motion in *pro se*, with the consent of his attorney of record.[4]   The Motion to Vacate was denied on July 29, 2013.   Dckt. 357.

**Appeal of Judgment Entered In This Adversary Proceeding**

The final judgment was issued in this Adversary Proceeding on July 2, 2013.   Dckt. 349.   On August 26, 2013, Macklin filed a Notice of Appeal of the order granting DBNTC summary judgment, order denying Macklin's motion to vacate, and "all interlocutory Orders as evidenced in the Record, including the Order on Debtor's First Amended Complaint."   Dckt. 361.

On October 25, 2013, the Bankruptcy Appellate Panel issued a "Notice of Deficient Appeal and Impending Dismissal."   Dckt. 372. The Notice states that the Notice of Appeal was filed beyond the fourteen day period required pursuant to Bankruptcy Rule 8002 and 8019.   Macklin was instructed to file a "legally-sufficient

---

[4]   The court allowed Macklin to essentially serve as co-counsel to afford Macklin the opportunity to present whatever arguments he believed appropriate, notwithstanding his attorney of record not being willing to present the motion or Macklin believing that this attorney, as others, did not have the same understanding of the law as Macklin.

explanation" as to why the appeal should not be dismissed as untimely.   Macklin did not respond to the Notice or attempt to prosecute the appeal.   On December 16, 2013, the Bankruptcy Appellate Panel issued an order dismissing the appeal of the judgment and interlocutory orders issued in this Adversary Proceeding.   Dckt. 373.[5]

No other appeals have been identified by Macklin as having been taken from the judgment or any orders issued in this Adversary Proceeding.   No action, other than as stated above, had been taken (as reflected on the court's docket for this Adversary Proceeding) by Macklin to attempt prosecute any appeal from the orders and judgment of this court in this Adversary Proceeding.

**Parallel District Court Lawsuit**

When this Adversary Proceeding was commenced, Macklin was already litigating the same issues in the United States District Court for the Eastern District of California.   Dist. Ct. 2:10-cv-01097 ("District Court Action").   When DBNTC's motion for summary judgment in the District Court Action was pending, Macklin commenced his Chapter 13 bankruptcy case in this court.   Over the opposition of DBNTC, the District Court stayed the District Court Action, erroneously believing that the automatic stay prevented that action from proceeding.[6]

On April 15, 2014, Macklin filed a motion for leave to file

---

[5]   Bankruptcy Rule 8002(c)(2) in effect at the time of the Notice of Appeal allowed a party to seek leave to file a notice of appeal after the 14-day period expired upon the grounds of excusable neglect.

[6]   Memorandum Opinion and Decision, FN. 8, Motion to Dismiss First Amended Complaint, Dckt. 221.

10

a second amended complaint in the District Court Action.  10-01097, Dckt 40.  This was ten months after this court entered the final judgment in this Adversary Proceeding.  The motion was granted by the District Court and on July 1, 2014, the second amended complaint was deemed filed by Macklin in the District Court Action. DBNTC filed a motion to dismiss the second amended complaint, asserting that Macklin was barred from attempting to re-litigate those issues, the final judgment having been entered in this Adversary Proceeding.

On September 29, 2014, Charles T. Marshall, Esq. substituted into the District Court Action as Macklin's attorney.  10-01097, Dckt. 73.  Macklin's opposition (totaling 116 pages) to the motion to dismiss the second amended complaint in the District Court Action was filed on October 10, 2014.  10-01098, Dckt. 79.  The motion to dismiss the second amended complaint in the District Court Action was granted on January 14, 2015, and it was dismissed with prejudice.  10-01098, Dckts. 87 and 88.

Macklin has filed a motion to vacate the order dismissing the second amended complaint in the District Court Action pursuant to Rule 60(b).  That motion is now under submission in the District Court.

**REVIEW OF MOTION FOR RELIEF UNDER RULE 60**

The court begins its review of the Motion with consideration of Rule 7(b), as incorporated into this Adversary Proceeding by Bankruptcy Rule 7007.  This requires that the motion must state with particularity the grounds upon which the relief is based.  In addition to the pleading requirement for the motion, the Local Bankruptcy Rule and *Revised Guidelines for Preparation of Documents*

11

*in this District* require that   "[m]otions, notices, objections, responses, relies, declarations, affidavits, other documentary evidence, memoranda of points and authorities, other supporting documents, proofs of service, and related pleadings shall be filed as separate documents."  Local Bankruptcy Rule  9014-1(d)(1) and *Revised Guidelines for the Preparation of Documents*,  ¶(3)(a). Here, Macklin has failed to comply with the rule and instead filed a "Mothorities," which is a pleading in which the Rule 7(b) grounds are placed between extensive citations, quotations, arguments, speculation, facts, and conjecture.  Macklin has left it to the court to decipher what are the actual grounds (subject to the warranties of Bankruptcy Rule 9011) and the mere "argument" or "speculation."  The court has done the best it can to extract from the Mothorities the grounds asserted by Macklin.

From the 11-page Motion, the court identifies the following grounds:

I.   Macklin seeks to vacate all, unspecified, orders which are in conflict with the U.S. Supreme Court's 2015 decision in *Jesinoski v. Countrywide Home Loans*, ___ U.S. ___, 135 S. Ct. 790, 190 L. Ed. 2d 650 (2015), and the Ninth Circuit 2014 decisions in *Merritt v. Countrywide Financial Corporation*, 759 F.3d 1023 (9th Cir. 2014).

II.   The grounds are stated to be:

    A.   There was no mortgage or deed of trust encumbering the Property at the time the bankruptcy case was filed by Macklin.

    B.   Under the terms of the Truth in Lending Act ("TILA"), an unidentified "lender" failed to return Macklin's money or file a declaratory action defending the rescission of the loan transaction.

12

C.   The loan transaction was nullified and the debt became void as of the March 3, 2009 rescission.

D.   Macklin is entitled to recovery of all payment made to the (unidentified) "original lender."

E.   Because Macklin assets that the loan transaction was rescinded, DBNTC does not have standing to assert any rights with respect to the note or the asserted rescission of the loan transaction.

F.   All orders, judgments and decisions issued by the court are void by operation of law based upon the 2015 Supreme Court decision in *Jesinoski*.

G.   Macklin asserts he is entitled to relief pursuant to Rule 60(b)(1), (4), (5) and (6), and (d).

H.   Since DBNTC could not have had any interest in note because Macklin asserts that it was rescinded, DBNTC is not prejudiced by vacating all orders, judgments, and decisions of the court in this Adversary Proceeding.

I.   Macklin is prejudiced, as he lost possession of his home.

J.   Macklin executed a note and two deeds of trust with Accredited Home Loans, Inc. ("AHL") totaling $632,000.00.

K.   Macklin was not provided with the required disclosures at the time of the transaction with AHL and unidentified persons used false information to qualify Macklin for the $632,000.00 loan.

L.   On May 3, 2009, Macklin perfected a rescission of the AHL loan transaction under TILA 1635(a).   An unidentified "lender" received a rescission notice from Macklin and failed to respond with the 21-day period.

M.   On March 3, 2009, counsel for the unidentified lender provided an untimely response disputing the notice of rescission.

N.   On November 30, 2009, AHL executed what Macklin asserts was a false or forged assignment of the deed of trust to a trust, for which DBNTC is the trustee.

O.   As of the November 30, 2009, assignment AHL had no rights or interest to assign in the note and deed of trust because of the rescission by Macklin.

P.   On February 16, 2012, the court dismissed all causes

13

of action in Macklin's First Amended Complaint except that the Ninth Cause of Action for Wrongful Foreclosure, and the Tenth Cause of Action for Quiet Title. The dismissal included the cause of action under TILA.

Q.   On October 4, 2012, Macklin sought to amend his complaint to assert TILA claim for rescission. The court denied the amendment based on Ninth Circuit controlling law that Macklin failed to file an action within one-year of the rejection of the notice of rescission.

R.   The court granted DBNTC summary judgment on July 2, 2013, on the causes of action for wrongful foreclosure and to quiet title.

S.   In *Merritt v. Countrywide*, the Ninth Circuit determined that pleading a claim for rescission pursuant to TILA does not require that Macklin plead that tender has been made or is possible by the party seeking to rescind.

T.   In *Jesinoski*, the Supreme Court held that rescission under TILA requires only that the notice be given, altering the common law requirements for rescission.

U.   The decisions of the trial court, while consistent with controlling Ninth Circuit law in 2011 and 2012, are not consistent with the subsequent ruling of the Supreme Court in *Jesinoski* in 2015 and the Ninth Circuit in *Merritt* in 2014.

V.   The 2015 and 2014 decisions render DBNTC to not have had standing in the 2011 and 2012 litigation by which it asserted to have an interest in the note and deed of trust or to challenge Macklin's assertion that the loan transaction had been rescinded.

Motion to Vacate, Dckt. 380.

Most of Macklin's extensive arguments relate to why Macklin should have won, why DBNTC should not have been allowed to defend itself against the claims asserted by Macklin, and that it is "unfair" for Macklin to be bound by the orders and judgment in this litigation he commenced, prosecuted, and sought summary judgment against DBNTC, and from which he failed to prosecute an appeal.

///

**Macklin Asserts Lack of Subject Matter Jurisdiction**

In this Adversary Proceeding, Macklin sought to obtain a monetary judgment against DBNTC under several stated theories: (1) Violation of the TILA federal law claim which was property of the bankruptcy estate; (2) Violation of RESPA federal law claim which was property of the bankruptcy estate; (3) Violation of the Fair Credit Reporting Act federal law claim which was property of the bankruptcy estate; (4) Fraud state law claim which was property of the bankruptcy estate; (5) Unjust Enrichment state law claim which was property of the bankruptcy estate; (6) Violation of RICO federal law claim which was property of the bankruptcy estate; (7) Violation of state Unfair Competition (Business Practices) law which was property of the bankruptcy estate; (8) Breach of Trust Instrument state law claim which was property of the bankruptcy estate; (9) Wrongful Foreclosure under state law claim which was property of the bankruptcy estate; and (10) Quiet Title state and federal law claims, for which the Property and claim were property of the bankruptcy estate.  First Amended Complaint, Dckt. 120. Discussing the effect of the post-judgment decisions in *Jesinoski*, Macklin contends that DBNTC "never had constitution or prudential standing and this court lacked subject matter jurisdiction over DBNTC, *ab initio*."  Motion, p.2:14-16; Dckt. 380.  It appears that Macklin contends since he alleges DBNTC does not have a valid interest or rights, and further that the bankruptcy estate and Macklin have multiple federal and state claims against DBNTC, this bankruptcy court could not have "subject matter jurisdiction" over DBNTC.  However, it appears from the Motion that Macklin admits that the federal courts (district and this bankruptcy court) had

15

both *in personam* and subject matter jurisdiction over Macklin, the claims, and the Property, and had ability to adjudicate the rights asserted by Macklin against DBNTC.

After receiving DBNTC's opposition to the Motion, Macklin expanded his subject matter jurisdiction argument in his Response. Dckt. 400. Macklin states that he objects to the federal court's subject matter jurisdiction "for the reason that Defendant DBNTC has never had standing in this court, or any court, as an operation of law under Truth in Lending Act § 1635 et. seq. [asserting that Macklin had rescinded the loan and therefore DBNTC could not have, and cannot assert, any rights, or defend itself against the various claims asserted by Macklin]." Response, p. 2:1-12, Dckt. 400. Though the fallacy of Macklin's logic is evident, the court will specifically address the issue of subject matter jurisdiction *infra*.[7]

## REVIEW OF PRIOR ORDERS

In order to consider whether proper grounds exist to vacate an order or judgment under Rule 60, the court must first review the actual grounds upon which the orders and judgment of this court were based. Below is the court's analysis of the prior orders and judgments, specifically highlighting the grounds upon which the

---

[7]   If Macklin's contention is correct that, by virtue of the alleged rescission, DBNTC could have no rights and federal subject matter jurisdiction could not exist, then the Supreme Court in *Jesinoski* would have concluded that it did not have subject matter jurisdiction to determine the dispute between that borrower, who asserted that it had timely rescinded the loan and the defendant who disputed the alleged rescission, and dismissed the federal action.   The same would be true for the Ninth Circuit in *Merritt*, and the Ninth Circuit would not of had subject matter jurisdiction to determine the TILA claims.

court based the rulings.

**First Amended Complaint Prosecuted By Macklin**

On June 17, 2011, Macklin filed his First Amended Complaint. Dckt. 120. The First Amended Complaint names DBNTC as the only defendant. Macklin alleges that there are other unnamed defendants at the time of filing the First Amended Complaint. The prayer for the First Amended Complaint requests the following relief:

A. An order compelling "Defendants" to transfer or release legal title and any encumbrance to, and possession of, the Property.

B. For a declaration and determination that Macklin is the rightful holder of title to the Property, and "Defendants" have no interest in the Property.

C. For a judgment forever enjoining "Defendants" from claiming any interest in the Property.

D. For a declaration that the foreclosure which was instituted be deemed illegal and void, and further foreclosure proceedings be declared void.

The prayer does not request that the court enter judgment for the rescission of the loan transaction, but only seeks to have a declaration that Macklin has all rights and interests in the Property and "Defendants" have none, without Macklin having any corresponding obligations arising from a rescission.

**Dismissal Of Causes Of Action From First Amended Complaint**

The court's findings and conclusions in dismissing the causes of action one through eight of the First Amended Complaint, include the following statements by the court in the Memorandum Opinion an Decision, Dckt. 221:

I.   First Cause of Action – Truth in Lending

Here, however, Macklin admits that DBNTC was not the

17

creditor in the original transaction that allegedly triggered the statutory disclosure requirements. According to Macklin's FAC, the creditor was either Accredited Home Lenders, Inc. or Centennial Bank of Colorado. Therefore, the court finds that Macklin has not stated a claim against DBNTC, who was not an original party to the original underlying loan transaction.

*Id.* at 18:6-12.

In Macklin's letter to the loan servicer, however, he demanded to be repaid all of his payments on the loan ($125,713.46), have the promissory note returned by him, and retain the Property free and clear of any liens. This is not a rescission, but a demand by Macklin to be paid money, have his note returned to him, and be given property free and clear of the deed of trust.

*Id.* at 18:21-24, 19:1-3.

Section 1641(g) applies to "a mortgage loan ... sold or otherwise transferred or assigned to a third party." Section 1641 (g) was added by an Act of Congress dated May 20, 2009, and therefore may not apply to the mortgage loan transaction at issue here - the transfer of the promissory note into the Trust, not the assignment of the deed of trust or the substitution of trustee.

*Id.*, 20:7-12.

Though this Notice of Rescission is undated, it had to predate the March 31, 2009 response and demonstrates that as early as March 2009 Macklin was aware of potential TILA and other claims arising out of the loan. Therefore, the motion to dismiss the TILA claim (First Cause of Action) as untimely due to the Statute of Limitations is also granted, without leave to amend.

*Id.* at p. 21:12-17.

II.   Second Cause of Action - Real Estate Settlement Procedures Act ("RESPA")

An action alleging violation of 12 U. S. C. § 2605 must be brought within three years of such violation, and an action alleging violation of 12 U.S.C. § 2607 must be brought within one year of such a violation. The loan transaction at issue here closed in April 2006. Macklin did not file this action until January

1    13, 2011, almost five years later. Accordingly, the
2    court finds that the cause of action under RESPA is
     time-barred.

3    *Id.* at 22:3-10.

4         "Section 2605 of RESPA requires a loan servicer to
          provide disclosure relating to the assignment, sale,
5         or transfer of loan servicing to a potential or actual
          borrower: (1) at the time of the loan application, and
6         (2) at the time of transfer."   Likewise, "[t]he loan
          servicer also has a duty to respond to a borrowers's
7         inquiry or 'qualified written request.,"[67] Defendant
          DBNTC alleges without dispute that it is not a loan
8         servicer. Macklin does not allege that DBNTC is a
          "servicer," instead he makes general, nonspecific
9         allegations that "Defendant and/or its agents" were a
          servicer. The [First Amended Complaint] goes further
10        to allege that Qualified Written Responses and
          inquiries were made of others, and attempts to bring
11        in the current Defendant, DBNTC, based upon Macklin's
          interaction with others or predecessor owners of the
12        Note. Accordingly, Macklin fails to state a claim upon
          which relief can be granted.
13

14   *Id.* at 22:13-20, 23:1-7.

15   III.   Third Cause of Action – Fair Credit Reporting Act ("FCRA")

16        While not clear from the FAC, the court understands
          the argument to be that servicer was obligated on a
17        contract, to which Macklin is not a party, that if
          Macklin (or obligors on other notes) defaulted in his
18        payments, the servicer would advance monies to the
          then current note holders while the default under the
19        note was enforced . . . Thus Macklin argues that even
          though he has defaulted on his obligation and there
20        have been defaults, the "servicer" making advances on
          an unrelated contract constitutes a payment for the
21        benefit of Macklin and reduces his obligation on the
          Note.   Though argued, Macklin does not allege the
22        legal or contractual basis for his being the
          beneficiary of any third-party contract.
23

24   *Id.* at 25:8-23.

25        What Macklin also fails to allege is that DBNTC knew
          or had reasonable cause to believe that Macklin's
26        defaults under the Note were false.   Just as Macklin
          alleges, the payments were in default.   Merely because
27        there is a disagreement as to an amount due, that does
          not automatically create a FCRA violation.   The FCRA
28        establishes a clear process by which disputes

19

concerning furnished information are addressed.  There
is no indication that the process has been employed
with respect to this matter.

*Id.* at 25:24-28, 26:1-3.

Macklin admits that he first received a notice of
default in December 2008, and did not commence the
instant adversary proceeding until January 13, 2011,
a month after the statute of limitations expired.  No
sufficient basis for tolling the statue of limitations
as to a claim arising under the FCRA has been alleged
or argued.  Merely because Macklin chose to ignore
information furnished by DBNTC to a consumer reporting
agency until he decided to file a lawsuit alleging
various claims is not sufficient.

*Id.* at 26:13-21.

IV.   Fourth Cause of Action - Fraud

With respect to the alleged misrepresentations,
Macklin does not allege that he did not receive what
was represented to him at the time of the loan
transaction.  He sought, and obtained, monies on the
terms he negotiated.   All of the alleged
misrepresentations occurred after he obtained the
monies and given the note and deed of trust.

*Id.* at 29:17-22.

There are no allegations of any reasonable reliance on
the alleged misrepresentations to Macklin's detriment.

*Id.* at 29:22, 30:1.

At least two of the necessary elements of fraud are
missing — justifiable reliance on the alleged
misrepresentation and damages arising from reliance on
the alleged misrepresentation.

*Id.* at 30:5-8.

V.   Fifth Cause of Action - Unjust Enrichment

What Macklin does not allege or explain is what 'fees'
are charged as a loan transaction which are applied to
pay the loan (principal and interest).  By their very
nature, fees are owed in addition to the principal and
interest.

*Id.* at 30:20-23.

1   Although Macklin alleges that he received less than
2   what he paid for because defendant extracted fees, he
    does not assert that he suffered an actual injury.

3   *Id.* at 31:10-13.

4   Here, there is a valid loan agreement (express
5   contract) between Macklin and Defendant.[85]

6   *Id.* at 31:18-19, FN. 85. [Footnote 85, from which there cannot then
    be a claim for quasi-contract or implied-in-fact contract, citing
7   *Lance Camper Mfb. Corp. v. Republic Indem. Co.,* 44 Cal.App. 4th
    194, 203 (1996).]
8

9   VI.   Sixth Cause of Action - Civil Racketeer Influenced and
    Corrupt Organizations Act (RICO)
10

11  The RICO claim does not attribute specific conduct to
    individual defendants.   The claim also does not
    specify either the time or the place of the alleged
12  wrongful conduct, except to state that "[a]t all
    relevant times, Defendants have engaged in a
13  conspiracy, common enterprise, and common course of
    conduct, the purpose of which is to engage in the
14  violations of law alleged in the complaint."  This is
    insufficient.
15

16  *Id.* at 34:9-15.

17  VII.  Seventh Cause of Action - Unfair Business Practices, Cal.
    Bus. & Professional §§ 17200 et seq.
18

19  In this case, the seventh claim for relief is
    dismissed because it does not state a claim under any
20  of the three prongs of the UCL.  As to the "unlawful"
    prong, the Complaint does not allege the violation of
    any other law that would serve as an underlying
21  violation for the UCL.  As to the "unfair" prong, the
    Complaint does not allege any legislatively-declared
22  policy to which allegedly wrongful conduct may be
    tethered.
23

24  *Id.* at 36:21-22, 37:1-5.

25  VIII. Eighth Cause of Action - Breach of Trust Instrument

26  The Notice of Default [attached as Exhibit 2 First
    Amended Complaint, Dckt. 129], however, clearly states
27  that Macklin could bring his account into good
    standing by paying the past-due amounts no later than
28  five days before the foreclosure sale.  The Deed of

21

> Trust contained an acceleration clause, and the Notice
> of Default was therefore allowed to contain a notice
> of acceleration.
>
> Because the text of the Notice of Default contradicts
> Macklin's claim that Defendant did not to inform him
> of the possibility of acceleration and his right to
> cure, the Motion is granted and the Eighth Cause of
> Action is dismissed, without leave to amend.

*Id.* at 39:2-12.

**Summary Judgment For Ninth and Tenth Causes of Action**

For the remaining two causes of action, the parties completed discovery. The court's discovery, dispositve motion, and pre-trial conference order was filed on June 4, 2012 (after approximately 18 months of motions to dismiss, amended complaint, and an answer being filed). Dckt. 250. All discovery closed on January 31, 2013. Dispositive motions were to be heard by March 22, 2013.

After discovery was completed, on February 21, 2013, Macklin filed his motion for summary judgment. Dckt. 307. DBNTC filed its opposition and requested summary judgment in its favor [*citing Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 311-12 (9th Cir. 1982); *see also* Rule 56(f)(1)]. After hearing and considering the evidence and determining material facts for which there was no genuine dispute (Rule 56(a), Bankruptcy Rule 7056), the court granted summary judgment for DBNTC and against Macklin on all remaining claims.

The court issued a Memorandum Opinion and Decision stating the ruling on the motion for summary judgment. Dckt. 325. A summary of the specific grounds upon which summary judgment was granted by the court for the Ninth Cause of Action (Wrongful Foreclosure) and Tenth Cause of Action (Quiet Title) is:

> At this juncture the court notes that many of the

1    "undisputed facts" asserted by Plaintiff [Macklin] are
     actually his own personal conclusions of law based
2    upon his review of the undisputed evidence presented
     by the Parties.  Plaintiff's reading of the Assignment
3    of the Deed of Trust and Substitution of Trustee,
     results in his legal determination that Defendant
4    [DBNTC] had no interest in the Note.  Plaintiff shows
     no basis for having any personal knowledge of what
5    Defendant did or did not do with respect to the Note,
     Allonge, Assignment of Deed of Trust, and Substitution
6    of Trustee, but only draws conclusions in his
     declaration from the undisputed documents.
7

8  Dckt. 325; Memorandum Opinion and Decision, p. 16:13-22.

9        The court has before it requests for summary judgment
         asserted by both the Plaintiff and Defendant.  Neither
10       provides conflicting evidence with respect to a
         material fact.  Rather, both sides argue what
11       conclusions of law should be made from this undisputed
         universe of evidence presented to the court.
12

13 *Id.* at p. 18:16-21.

14       Therefore, the court concludes that [Cal. Civ.]
         § 2932.5 only applies to mortgages and not to deeds of
15       trust.

16 *Id.* at p. 29:11-12.

17       However, the undisputed evidence presented to the
         court is that Defendant holds the Note, with the
18       Allonge transferring the Note to the Defendant.
         Defendant recorded the Assignment of Deed of Trust and
19       Substitution of Trustee in advance of the substitute
         trustee conducting the non-judicial foreclosure sale.
20       No evidence has been presented that the Defendant did
         not have the Note or the right to enforce the Note
21       when the substitute trustee conducted the non-judicial
         foreclosure sale.
22

23 *Id.* at p. 29:18-26.

24       The Plaintiff has come before this court seeking a
         determination that the Trustee's Deed held by
25       Defendant is invalid.  In attacking that deed, the
         Plaintiff bears the burden of proof that such deed is
26       ineffective or may be avoided.  The Trustee's Deed
         contains the recitals that the requirements of law for
27       mailing, posting, and publication of the notice of
         sale have been complied with for the December 14, 2009
28       non-judicial foreclosure sale.  Trustee's Deed, Pl.

                                   23

Ex. D, Dckt. 129 at 15.  This constitutes prima facie evidence that all such notices were given in compliance with the statute.  Cal. Civ. Code § 2924(c).

*Id.* at p. 30:20-28, 31:1.

The undisputed evidence presented to the court is that Defendant holds the Note, with the Allonge transferring the Note to Defendant.

*Id.* at p. 31:10-12.

At best, after two years of discovery Plaintiff presents this court with only his speculation and argument that the transfer must be defective.

*Id.* at p. 31:15-17.

Based on the uncontroverted evidence presented, the Plaintiff has not provided the court with any basis for concluding that the Note was not transferred to Defendant, that Defendant did not have the right to substitute the trustee, or that Defendant did not have the right to enforce the deed of trust at the time of the December 2009 non-judicial foreclosure sale.

*Id.* at p. 32:19-24.

The absence of any discovery obtained during the two years of this litigation by Plaintiff on the point is deafening in its absence. The Plaintiff offers no evidence to counter the Trustee's Deed. There is no evidence of any material dispute to Defendant asserting ownership of the Property pursuant to the Trustee's Deed.

*Id.* at p. 33:3-8.

The court having determined that § 2932.5 does not apply to deeds of trust and that there is no evidence contrary to Defendant having been transferred the Note and being entitled to enforce the Deed of Trust, no basis exists to quiet title to the Property in favor of the Plaintiff exists.

*Id.* at p. 33:17-21.

Plaintiff was afforded an opportunity and has opposed Defendant's request for entry of summary judgment based on Plaintiff's Motion.  Plaintiff has not provided the court with any evidence disputing the ownership of the Note and right to enforce the Deed of

24

> Trust as of the 2009 substitution of trustee and
> foreclosure.

*Id.* at p. 34:15-20.

> The Plaintiff put his best evidence forward, which are
> copies of the Substitution of Trustee, Assignment of
> Deed of Trust, the two undated allonges, and the
> Trustee's Deed.  Defendant adds the Note and Deed of
> Trust, Allonge, additional substitutions of attorneys
> by prior holders of the Note, the Notice of Default,
> and the Notice of Sale.  It is from this undisputed
> universe of documents that the Parties assert their
> competing interests.

*Id.* at p. 35:7-13.

> Based on the uncontroverted evidence presented to the
> court, the court finds that Defendant has title to the
> Property pursuant to the Trustee's Deed.

*Id.* at p.35:20-22.

**Order Denying October 4, 2012 Motion To
File Second Amended Complaint**

While not addressing the specifics of the court's ruling on the Motion to Dismiss and the Motion for Summary Judgment, Macklin does point to the court's ruling on Macklin's Motion to File a Second Amended Complaint, which was filed on October 4, 2012. Dckt. 304. Macklin provides what appears to be a block quote from this court's ruling on the Motion to Amend in his Rule 60(b) Motion. The quote as stated by Macklin makes it appear that the only reason for denying the Motion to Amend is that the one-year and three-year statutes of limitation has expired. Such is not a "fair representation" of the ruling, which is set forth in the Civil Minutes for that hearing and states the grounds for the ruling. Dckt. 304.

The court attaches as Addendum A to this ruling the Civil Minutes from the November 8, 2012 hearing on the Motion for File a

Second Amended Complaint.   The grounds are summarized, and cross-referenced to Addendum A, as follows:

A.   "First and foremost, the Plaintiff brings this Motion for Leave to Amend on the close of discovery in the Adversary Proceeding."  The court concluded that after more than two years and discovery closing, Macklin had ample opportunity to amend his complaint and raise additional claims.  The court determined that granting such leave at the close of discovery, and in light of the prosecution of the Adversary Proceeding by the various attorneys of Macklin's choosing, allowing such further amendment "[i]s prejudicial to the Defendant and frustrating to the court."  Addendum A, p. 5 at A.

B.   Allan Frumkin, counsel for Macklin, represented to the court in October 2011 that the First Amended needed to be amended to address the deficiencies which resulted in the court having dismissed Causes of Action 1 through 8.  Mr. Frumkin testified that he had advised Macklin of such necessary amendments at that time. Addendum A, p. 5 at B.

C.   Though Macklin and his counsel knew they need to amend the complaint and Macklin was aware of such possible amendments and claims as early as October 2011, when represented by Alan R. Frumkin, Macklin and Mr. Frumkin did not seek leave to amend the First Amended Complaint.  Addendum A, p. 6 at C.

D.   At the September 27, 2012 hearing on the Motion to Substitute Daniel Hanecak, Esq. as new counsel in the place of Holly Burgess, Esq. (Macklin terminating her a second time in this Adversary Proceeding), Mr. Hanecak assured the court he was aware of the discovery and pre-trial conference deadlines in this Adversary Proceeding.  Addendum A, pg. 6 at D.

E.   After 22 months of prosecution of the Adversary Proceeding and the close of discovery, the attempted amendment occurred too late.   Macklin's counsel clearly was aware of (and so testified previously) that possible amendments were desired by Macklin. Macklin and his attorneys did not timely seek leave to amend the First Amended Complaint.  Addendum A, p. 6 at E.

F.   In denying the Motion, the court concluded,

> To allow for Mr. Macklin and his latest counsel to reset all of the litigation at the close of discovery for claims which Mr. Macklin and Mr. Frumkin testified that they were well aware of more than

> 20 months earlier is an abuse of the judicial process. As is clear from this courts decision on the motion to dismiss the FAC, leave was not given to file a second amended complaint due to the abusive and unclear pleading practices of Mr. Macklin and his counsel. The requirement for filing a motion for leave to amended, with a copy of any proposed second amended complaint, afforded the court with a minimally intrusive opportunity to insure that the pleading practices and deficiencies from the original Complaint and [First Amended Complaint] would not be repeated wasting judicial resources and putting the Defendant to unreasonable and repeated duplicate pleadings. Mr. Macklin and his counsel chose not to take up the court on the opportunity to timely and reasonably seek leave to file a second amended complaint.

Addendum A, p. 6 at F.

Macklin's reference to this denial fails to address these grounds for denying the Motion to File a Second Amended Complaint. Rather, the Motion merely strings together several sentences in another portion of the ruling where the court considered the possible amendments and see whether they represented some grossly extraordinary circumstances by which a close of discovery amendment would be warranted. The court found none.

With respect to this review of the proposed Second Amended Complaint, which merely attempted to rehash the First Amended Complaint, the court's comments include the following:

G.   Macklin failed to show any basis for a failure to verify income as the basis of a TILA violation. Addendum A, p. 7 at G.

H.   Macklin failed to show or plead any basis for an assignee of a note assuming personal liability for TILA violations of the lender. Addendum A, p. 7 at H.

I.   The court applied then controlling Ninth Circuit law

27

in determining whether a claim for rescission was stated, concluding it was not. Addendum A, p. 8 at I.[8]

J.    The court also still concluded that what Macklin pleads as a Notice of Rescission was not a notice of rescission. Addendum A, p. 8 at J.[9]

K.    Macklin did not plead a claim for a "table-funded loan" and any basis of liability for DBNTC for such a loan. Addendum A, p. 8 at K.

L.    Macklin did not plead an unfair business practices claim under California Business and Professionals Code §§ 17200 et seq. Additionally, Macklin failed to plead a basis for DBNTC being liable for the acts of others asserted to be such violations. Addendum A, p. 9 at L.

M.    Macklin failed to plead a claim for failure to form a contract, by which the loan money could only be funded from a bank account of AHL. Addendum A, p. 9 at M.

N.    Macklin failed to plead grounds by which Mortgage Electronic Registration Systems, Inc. could not serve as a nominee of the lender. Additionally, why the current holder of the note could not enforce the note and deed of trust. Addendum A, p. 10 at N.

O.    Macklin failed to plead grounds for which the holder of the note obtaining insurance in the event the borrower defaults absolves Macklin of paying the obligation on the note. Plaintiff failed to plead grounds for how DBNTC, as the asserted holder of the note, was liable for the alleged misconduct of others. Addendum A, p. 11 at O.

P.    Macklin failed to address several other legal issues which were identified by the court if Macklin sought leave to amend after the order dismissing the Causes of Action 1 through 8 of the First Amended Complaint. Addendum A, pp. 11-12 at P.

The Conclusion to the Memorandum Opinion and Decision ties

---

[8]    While Macklin latches on this one point, this was not the basis for the court denying the Motion to File Second Amended Complaint.

[9]    Again, this was not the basis for denying the Motion to File Second Amended Complaint. It reflects that Macklin was merely continuing to rehash old pleadings, attempting to repeatedly present the same thing to the court.

1  together the grounds for denying the Motion to File a Second
2  Amended Complaint - which would not be altered by the subsequent
3  decisions in *Jesinoski* or *Merritt*.

4      The court summarizes above the review of the prior Memorandum
5  Opinion and Decision not as an invitation for Macklin's current
6  counsel to "re-chew the cud," but to demonstrate that: (1) the
7  issues presented to the court by Macklin's counsel at the time
8  concerning dismissal of the case were not as "simple" as phrased by
9  Macklin in the current Motion and (2) the court went to
10 extraordinary lengths to review the proposed Second Amended
11 Complaint to see if there was anything presented which would
12 warrant an eleventh and one-half hour, eve of trial amendment.[10]

13
14              **SUBJECT MATTER JURISDICTION EXISTS**
                **FOR THIS ADVERSARY PROCEEDING**

15     Macklin, in his Reply, makes the argument that the court does
16 not have subject matter jurisdiction over the instant Adversary
17 Proceeding in light of the *Jesinoski* and *Merritt* decision. This
18 argument is similar to the standing argument Macklin makes,
19 contending DBNTC cannot have standing to defend itself since
20 Macklin has determined that DBNTC cannot have any rights.

21

22     [10]   As bankruptcy attorneys know, Congress has done parties
23 a great favor in establishing the bankruptcy courts and having
   judges dedicated to getting matters quickly to trial.  Because a
24 bankruptcy judge is able to focus on the bankruptcy and the state
   and federal law bankruptcy related matters (as opposed to state
25 court and district court judges who are presented with criminal,
   family law, immigration, Social Security, environmental,
26 Constitutional challenges, administrative, maritime cases; to
   name just a few), a bankruptcy judge can get a matter to a
27 guaranteed trial date within two months of a pre-trial conference
   - if the parties are actively prosecuting their matter in good
28 faith.

                                29

1    Subject matter jurisdiction is the cornerstone of federal

2 judicial proceedings.  Parties may not "consent" to create federal

3 court jurisdiction, and even if not raised by the parties, a

4 federal judge may, and must, raise the issue if he or she believes

5 that subject matter jurisdiction does not exist.  The United States

6 Constitution provides that,

7         The [federal] judicial Power shall extend to all
          Cases, in Law and Equity, arising under this
8         Constitution, the Laws of the United States, and
          Treaties made, or which shall be made, under their
9         Authority;--to all Cases affecting Ambassadors, other
          public Ministers and Consuls;--to all Cases of
10        admiralty and maritime Jurisdiction;--to Controversies
          to which the United States shall be a Party;--to
11        Controversies between two or more States;--between a
          State and Citizens of another State;--between Citizens
12        of different States,--between Citizens of the same
          State claiming Lands under Grants of different States,
13        and between a State, or the Citizens thereof, and
          foreign States, Citizens or Subjects.

14

15 U.S. Const. Art. III, Sec. 2.  The federal judicial power is vested

16 in the Supreme Court and such other inferior court's as Congress

17 establishes.  U.S. Const. Art. III, Sec. 1; Art. I, Sec.8, Cl 9.

18 The Constitution also vests in Congress the responsibility, and

19 authority, to establish, as a matter of federal law, "uniform Laws

20 on the subject of Bankruptcies throughout the United States."  U.S.

21 Const. Art. 1, Sec.8, Cl 4.

22    Congress has generally provided for the United States

23 District Courts to exercise federal court jurisdiction when,

24        § 1331.  Federal question

25        The district courts shall have original jurisdiction
          of all civil actions arising under the Constitution,
26        laws, or treaties of the United States.

27 28 U.S.C. § 1331.

28    Congress has enacted various uniform bankruptcy laws over

30

time.    The current Bankruptcy Code (11 U.S.C. § 101, et seq.) provides a comprehensive legal and jurisdictional scheme for the determination of matters arising under the Bankruptcy Code, arising in a bankruptcy case, and state and federal non-Bankruptcy Code matters to a bankruptcy case.    A much broader grant of federal judicial power, for which the federal courts (district and bankruptcy judges) has been enacted by Congress in 28 U.S.C. §§ 1334 and 157.    In addition to providing that district courts and bankruptcy courts have jurisdiction for all matter arising under the Bankruptcy Code, in a bankruptcy case, and related to the bankruptcy case, the federal courts have exclusive jurisdiction over property of the bankruptcy estate.    28 U.S.C. § 1334(e).

First, most of the claims asserted by Macklin arise under federal statutes.    Second, the claims were property of the bankruptcy estate and the bankruptcy estate retained the right to the first $150,000.00 recovered, if any, in this litigation. Third, the claims are related to the bankruptcy case, both as an asset of the estate and as litigation initially commenced by Macklin as the Chapter 13 debtor (exercising the powers of a bankruptcy trustee with respect to the management of property of the estate), the Chapter 7 Trustee after conversion, and then Macklin in continuing to litigate the claims for the benefit of the bankruptcy estate and himself pursuant to the agreement with the Trustee.

This federal court has subject matter jurisdiction for the claims asserted by Macklin, and the defenses, rights, and interests raised by DBNTC to the First Amended Complaint.
///

31

**DBNTC HAS STANDING TO ASSERT AND DEFEND ITS RIGHTS,
AND LITIGATE TO JUDGMENT THE ACTION COMMENCED BY MACKLIN**

Standing is a fundamental requirement for the exercise of federal judicial power.  Article III of the Constitution confines federal courts to decisions of "Cases" or "Controversies."

> Article III of the Constitution confines federal courts to decisions of "Cases" or "Controversies." Standing to sue or defend is an aspect of the case-or-controversy requirement.  (Citations omitted.)   To qualify as a party with standing to litigate, a person must show, first and foremost, "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent.' (Citations omitted.)...Standing to defend on appeal in the place of an original defendant, no less than standing to sue, demands that the litigant possess 'a direct state in the outcome.'  (Citations omitted.)

*Arizonans for Official English v. Arizona*, 520 U.S. 43, 64, 117 S.Ct. 1055 (1997).

As the court understands Macklin's standing argument, since Macklin asserts that the loan transaction has been rescinded, the note and deed of trust are void.  Therefore, DBNTC cannot have any rights therein and cannot attempt to assert such rights that Macklin alleges do not exist.  Further, DBNTC cannot contest or defend itself and any interest it asserts in the note, deed of trust, or in any rescission asserted by Macklin to have been or to be completed.

Macklin overstates the effect of the asserted rescission – turning himself into the judge, jury, and executioner.  DBNTC asserts that it obtained the note and deed of trust from AHL. DBNTC disputes that the loan transaction was rescinded and asserts that it, as the owner of whatever interests there are in the note and deed of trust, and the owner of the property pursuant to a non-

judicial foreclosure sale, can defend such interests and rights. The court also understands DBNTC to assert that it, as the transferee of the note and deed of trust, is the real party in interest to receive any monies which Macklin would have to pay for his part of the rescission.[11]

While Macklin asserts that he has rescinded the loan transaction, DBNTC contends it is the holder of the note which is the subject of the asserted rescinded transaction, and that it is the owner of the Property, having acquired it through a non-judicial foreclosure sale. DBNTC has standing to: (1) defend the interests in the note and deed of trust from the asserted rescission; (2) defend the asserted rights and interests in the Property obtained through the non-judicial foreclosure sale; and (3) if the rescission has been properly made, to receive payment of all of the monies due from Macklin as part of the rescission.

## FEDERAL RULE OF CIVIL PROCEDURE 60(b) RELIEF

Rule 60(b), as made applicable by Bankruptcy Rule 9024, governs the vacating of a judgment or order. Grounds for relief from a final judgment, order, or other proceeding are limited to:

(1)    mistake, inadvertence, surprise, or excusable neglect;

(2)    newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

---

[11]    In *Merritt*, the Ninth Circuit concluded that for purposes of basic pleading, the borrower seeking rescission need not plead that tender had been made or was possible. However, the Ninth Circuit stated that tender, and the ability of the borrower seeking to enforce rescission could be a requirement at the time of summary judgment or judgment. Clearly, a party had standing to assert the rights of the holder of the note being rescinded to receive the required tender of monies back from the borrower.

(3)   fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4)   the judgment is void;

(5)   the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6)   any other reason that justifies relief.

Red. R. Civ. P. 60(b). A Rule 60(b) motion may not be used as a substitute for a timely appeal. *Latham v. Wells Fargo Bank, N.A.,* 987 F.2d 1199 (5th Cir. La. 1993). The court uses equitable principals when applying Rule 60(b). *See* 11 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE §2857 (3rd ed. 1998). The so-called catch-all provision, Rule 60(b)(6), is "a grand reservoir of equitable power to do justice in a particular case." *Compton v. Alton S.S. Co.,* 608 F.2d 96, 106 (4th Cir. 1979) (citations omitted). The other enumerated provisions of Rule 60(b) and Rule 60(b)(6) are mutually exclusive, *Liljeberg v. Health Servs. Corp.,* 486 U.S. 847, 863 (1988), and relief under Rule 60(b)(6) may be granted in extraordinary circumstances. *Id.* at 863 n.11.

A condition of granting relief under Rule 60(b) from the entry of a default judgment is that the requesting party show that there is a meritorious claim or defense. This does not require a showing that the moving party will or is likely to prevail in the underlying action. Rather, the party seeking the relief must allege enough facts, which if taken as true, allows the court to determine if it appears that such defense or claim could be meritorious. 12 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶¶ 60.24[1]-[2] (3d ed. 2010); *Falk v. Allen,* 739 F.2d 461, 463

(9th Cir. 1984) ("Second, judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits.")

The Ninth Circuit in *Falk* further addressed the proper application of Rule 60(b) in even the default judgment context, stating,

> We note, however, that these concerns are not intended to allow challenges to the correctness of the judgment itself. See *Inryco, Inc. v. Metropolitan Engineering Co. Inc.*, 708 F.2d 1225, 1230 (7th Cir.), *cert. denied*, 464 U.S. 937, 104 S. Ct. 347, 78 L. Ed. 2d 313 (1983). A Rule 60(b) motion to vacate should not be treated as a substitute for an appeal. *De Filippis v. United States*, 567 F.2d 341, 342 (7th Cir. 1977).

*Id.*

The judgment in this Adversary Proceeding was not granted as a default judgment, but based on the evidence Macklin and DBNTC chose to present on cross summary judgment requests. As stated by the court, the evidence was not in dispute. Even considering the standard for vacating default judgments, in which the defendant is not afforded the opportunity to conduct discovery and present evidence, Macklin has not shown (1) he has meritorious claims; (2) that DBNTC will not be prejudiced by continued delay and further multiple court litigation over the same issues with respect to its interests in the note and Property; and that (3) that Macklin and his multiple attorneys are not culpable in connection with the entry of the final judgment in this case in light of how they chose to draft the complaints, prosecute the case, not seek to amend the complaint, conduct discovery, requesting summary judgment, and present evidence to the court. See discussion in *Falk* of the three basic considerations of vacating a default

35

judgment.  *Id.*

### THE POST-JUDGMENT RULINGS IN *JESINOSKI* AND *MERRITT* DO NOT WARRANT VACATING THE JUDGMENT AND ORDERS IN THIS ADVERSARY PROCEEDING PURSUANT TO RULE 60(b)(6)

Conspicuously missing from Macklin's Motion is any discussion of the controlling law of when a final judgment may be vacated based upon a post-final judgment change in controlling law stated by an appellate court.  Macklin merely asserts that it is fair, right, equitable, and necessary to prevent Macklin from being further prejudiced.

The court begins its consideration of the application of Rule 60(b)(6) based on the 2015 decision in *Jesinoski* and the 2014 decision in *Merritt* by reviewing the Supreme Court ruling in *Ackermann v. United States*, 340 U.S. 193 (1950).  When presented with a request for relief under Rule 60(b)(6), the Supreme Court held that the requisite "extraordinary circumstances" warranting such relief did not exist where a party, who was otherwise able to, failed or elected not to prosecute an appeal of the judgment.  *Id.* at 201.

More recently, the Supreme Court addressed the Rule 60(b)(6) standards in *Gonzalez v. Crosby*, 545 U.S. 524 (2005), stating:

> Second, our cases have required a movant seeking relief under Rule 60(b)(6) to show "extraordinary circumstances" justifying the reopening of a final judgment.  *Ackermann v. United States*, 340 U.S. 193, 199, 95 L. Ed. 207, 71 S. Ct. 209 (1950); accord, id., at 202, 95 L. Ed. 207, 71 S. Ct. 209; *Liljeberg*, 486 U.S., at 864, 100 L. Ed. 2d 855, 108 S. Ct. 2194; id., at 873, 100 L. Ed. 2d 855, 108 S. Ct. 2194 (Rehnquist, C. J., dissenting) ("This very strict interpretation of Rule 60(b) is essential if the finality of judgments is to be preserved").
> ...
> Petitioner's only ground for reopening the judgment denying his first federal habeas petition is that our decision in *Artuz* showed the error of the District

Court's statute-of-limitations ruling. We assume for present purposes that the District Court's ruling was incorrect. As we noted above, however, relief under Rule 60(b)(6)--the only subsection petitioner invokes--requires a showing of "extraordinary circumstances." Petitioner contends that *Artuz*'s change in the interpretation of the AEDPA statute of limitations meets this description. We do not agree. The District Court's interpretation was by all appearances correct under the Eleventh Circuit's then-prevailing interpretation of *28 U.S.C. § 2244 (d)(2)*. It is hardly extraordinary that subsequently, after petitioner's case was no longer pending, this Court arrived at a different interpretation.

. . .

The change in the law worked by *Artuz* is all the less extraordinary in petitioner's case, because of his lack of diligence in pursuing review of the statute-of-limitations issue. At the time *Artuz* was decided, petitioner had abandoned any attempt to seek review of the District Court's decision on this statute-of-limitations issue.

. . .

This lack of diligence confirms that *Artuz* is not an extraordinary circumstance justifying relief from the judgment in petitioner's case. Indeed, in one of the cases in which we explained *Rule 60(b)(6)*'s extraordinary-circumstances requirement, the movant had failed to appeal an adverse ruling by the District Court, whereas another party to the same judgment had appealed and won reversal. *Ackermann, 340 U.S., at 195, 95 L. Ed. 207, 71 S. Ct. 209.* Some years later, the petitioner sought *Rule 60(b)* relief, which the District Court denied. We affirmed the denial of *Rule 60(b)* relief, noting that the movant's decision not to appeal had been free and voluntary, although the favorable ruling in the companion case made it appear mistaken in hindsight. See *id., at 198, 95 L. Ed. 207, 71 S. Ct. 209.*

*Id.* at 535-538.

In 2009, the Ninth Circuit visited the "extraordinary circumstances" requirement for Rule 60(b)(6) in *Phelps v. Alameida*, 569 F.3d 1120 (9th Cir. 2009). As with *Gonzales*, the Ninth Circuit was considering whether an order relating to a *habeas corpus* petition (involving the liberty interests of an incarcerated person) should be vacated. The vast majority of the appellate cases addressing this issue relate to such writs, as opposed to

37

1  basic civil litigation.[12]

2      In applying the "extraordinary circumstances" requirements

3  for Rule 60(b)(6) relief required under the Supreme Court decisions

4  in connection with *habeas corpus* petitions, the Ninth Circuit

5  considered factors used by the Eleventh Circuit in *Ritter v. Smith*,

6  811 F.2d 1398 (11th Cir. 1987) and the Supreme Court in *Gonzales*.

7  The factors considered (and expressly stated not to be a "rigid or

8  exhaustive checklist") in *Phelps* were:

9      A.   Did the change in law overrule what was otherwise
           settled legal precedent and was the trial court ruling
10          correct under the prior law? *Gonzales*, 545 U.S. at
           536. "It is hardly extraordinary that subsequently,
11          after petitioner's case was no longer pending, this
           Court arrived at a different interpretation [of the
12          law]." *Id.*

13     B.   Had the party seeking the Rule 60(b)(6) been diligent
           in pursuing review of the issue for which the relief
14          is now sought? *Id.*  The lack of diligent pursuing an
           appeal "[c]onfirms that [a subsequent change in the
15          law by the Supreme Court] is not an extraordinary
           circumstance justifying relief from the judgment . .
16          . ."  *Id.*[13]

17     C.   Would reconsidering the final judgment undo the past,
           executed effects of the judgment.  *Ritter v. Smith*,
18          811 F.2d at 1402.

19

20     [12]  In *Phelps,* the Ninth Circuit noted that Rule 60(b)(6)
21  has application well beyond petitions for habeas corpus, and
   "while some of the factors we emphasize here may be useful in
22  contexts other than the one before us, we express no opinion on
   their applicable *vel non* [or not] beyond the scope of *habeas*
23  *corpus.  Phelps v. Alameida*, 569 F.3d at 1135 n. 19.

24     [13]  In making this point, the Supreme Court cited to its
25  decision in *Ackermann* in which it denied Rule 60(b)(6) relief to
   one party to the action who failed to appeal, notwithstanding
26  another party to the same action who did prosecute an appeal and
   won reversal of the ruling as to that party.  "We affirmed the
27  denial of Rule 60(b) relief, noting that the movant's decision
   not to appeal had been free and voluntary, although the favorable
28  ruling in the companion case made it appear mistaken in
   hindsight." *Id.* at 538.

D.   The delay between the finality of the judgment and the
     Rule 60(b)(6) motion. *Id.* at 1403.

E.   The close relationship between the original judgment
     and the subsequent decision changing the law. *Id.* at
     1402.[14]

F.   When considering a petition for habeas corpus, there
     is a serious issue of comity between the state and
     federal judiciaries. *Id.* at 1404.

In *Phelps*, the Ninth Circuit concluded that the movant hit
all six of the non-exclusive, non-mechanical application factors:

> In this case, the lack of clarity in the law at the
> time of the district court's original decision, the
> diligence Phelps has exhibited in seeking review of
> his original claim, the lack of reliance by either
> party on the finality of the original judgment, the
> short amount of time between the original judgment
> becoming final and the initial motion to reconsider,
> the close relationship between the underlying decision
> and the now controlling precedent that resolved the
> preexisting conflict in the law, and the fact that
> Phelps does not challenge a judgment on the merits of
> his *habeas* petition but rather a judgment that has
> prevented review of those merits all weigh strongly in
> favor of granting *Rule 60(b)(6)* relief.

*Phelps*, 569 F.3d at 1140.[15]

---

[14]   This factor presents the court with an interesting
dilemma.  If the change in law in the second case is not closely
related, then it is unlikely that the change will have a
significant impact on other case.  Thus, the subsequent change in
law decision will be relevant only when it is closely related.
To give this factor disproportionately significant weight would
be to say that it is a *per se* basis for granting such relief.
That interpretation would be contrary to the well-established
Supreme Court rulings for when Rule 60(b)(6) relief should be
granted.

[15]   The facts considered by the Ninth Circuit in coming to
this conclusion included:

(1) the prevailing law upon which the trial court decision was
based was not well settled, but in flux.  The same issue was
pending before three different Ninth Circuit, which reached
diametrically opposite outcomes, for which no published decisions
were issued.  The law was unsettled.

**Macklin Fails to Provide Grounds For
Relief Pursuant to Rule 60(b)(6)**

Macklin requests the court vacate the judgment and order
dismissing Causes of Action 1-8 based on the pronouncement of law
in *Jesinoski* and *Merritt*.  However, the Motion does not have any
discussion of the proper application of Rule 60(b)(6) based on a
change of law for cases in which there is a final judgment.
Rather, it contains only a general discussion of Rule 60(b) itself
and the conclusion, "[t]he catch-all provision, Rule 60(b)(6), has

---

(2) Phelps had actively appealed the decision and sought
reconsideration, including seeking a rehearing *en banc* and a
petition for certiorari, all while litigating from his jail cell.

> We cannot imagine a more sterling example of diligence
> than Phelps has exhibited. At every stage of this case
> over the past decade, Phelps has pressed all possible
> avenues of relief, has been remarkably undeterred by
> the repeated and often unjustified setbacks he has
> suffered, and has put forward cogent, compelling, and
> correct legal arguments, at times doing so without the
> benefit of professional legal advice. No one should
> have to work so hard to have the merits of his
> constitutional claims reviewed by a federal judge.

*Id.* at 1137.

(3).  The judgment at issue did not alter the positions of the
parties taken in reliance thereon.  For Phelps, he merely stayed
in custody and the state held him in custody.

(4).  The Motion for relief was originally filed only four months
after the original judgment became final.

(5).  The change in law was directly related to the issue
advanced by Phelps and resolved a conflict between competing and
coequal legal authorities.

(6).  Granting 60(b)(6) relief does not raise significant comity
concerns because the order being vacated was not one based on the
merits.

been invoked to relive a party of a final judgment in 'extraordinary circumstances.'   This case warrants extraordinary circumstance."   Motion, p. 10:16-17.

As addressed above, Rule 60(b)'(6) is not a "catch-all," "judge make up whatever rule you want" grant of power.   It is a very carefully circumscribed power which is to be executed only in limited "extraordinary circumstances."   It cannot overlap with or be used to circumvent the requirements of other provisions of Rule 60.

In *Jesinoski*, the Supreme Court was presented with a very narrow issue to address - whether a borrower was required to commence suit to enforce a rescission under 15 U.S.C. § 1635 within three years of the transaction, or provide notice of the election to rescind within the three-year period.   The Supreme Court decided,

> The language leaves no doubt that rescission is effected when the borrower notifies the creditor of his intention to rescind. It follows that, so long as the borrower notifies within three years after the transaction is consummated, his rescission is timely. The statute does not also require him to sue within three years.

*Jesinoski v. Countrywide Home Loans*, 135 S. Ct. at 792.

The first question for the court is whether any portion of the prior ruling on the motion to dismiss or the summary judgment is based on the grounds that suit had to be commenced within three years, not merely a notice of rescission provided by Macklin.

With respect to the Supreme Court determining that the suit for rescission need not be filed within the three-year period, Macklin does not direct the court to any portion of the ruling on

41

the motion to dismiss or ruling on the summary judgment motion in which the decision was made on that ground. The court's own review of both rulings, as discussed *supra*, does not uncover any such grounds being relied upon by the court.

The Ninth Circuit decision in *Merritt* is equally narrow, addressing only whether the tender, or the ability to tender, by borrower as a condition of rescission must be pleaded. The *Merritt* court held:

> For all these reasons, we hold that plaintiffs can state a claim for rescission under TILA without pleading that they have tendered, or that they have the ability to tender, the value of their loan. Only at the summary judgment stage may a court order the statutory sequence altered and require tender before rescission -- and then only on a "case-by-case basis," *Yamamoto*, 329 F.3d at 1173, once the creditor has established a potentially viable defense.

*Merritt v. Countrywide Financial Corporation*, 759 F.3d at 1033.

With respect to the Ninth Circuit decision in *Merritt*, the court again looks to the ruling on the motion to dismiss and the ruling on the motion for summary judgment. In ruling on these, the court did not base the decision on Macklin failing to plead tender or the ability to tender. The various causes of action were dismissed for much more substantial deficiencies.

The Motion fails for this reason.

**Consideration Of *Gonzalez*, *Ackermann*, and *Phelps* Factors**

Assuming, *arguendo*, that the decisions in *Jesinoski* and *Merritt* changed the law upon which the orders dismissing Causes of Action 1-8 and denying the Motion to File a Second Amended Complaint after discovery closed, and the Summary Judgment were based, Macklin has failed to show that such changes should apply to vacate the orders and judgment.

First, the law at the time of the orders and Summary Judgment was not unsettled in this Circuit and other Circuits.  All of the rulings of this court were in compliance with the then-binding appellate case law.  Those appellate cases were consistent with ruling in other Circuits.

Second, Macklin has not been diligent in pursuing an appeal of the orders and judgment.  Rather, he abandoned the appeal, failing to respond to the Bankruptcy Appellate Panel notice or seek relief pursuant to Bankruptcy Rule 8002(c)(2) in effect at the time of the appeal.  Further, it is clear that Macklin's strategy has been to pursue a parallel action in the District Court rather than pursuing an appeal.  It is now, after the District Court dismissed that action, that Macklin now seeks to reopen the final orders and judgment in this Adversary Proceeding.

At this juncture, denying the Motion falls squarely in the rulings of the Supreme Court in *Gonzalez* and *Ackermann*.  Nothing more is required for denial of a Rule 60(b)(6) motion pursuant to the standard established by Supreme Court.

Third, this court issued a final judgment in which it has determined that DBNTC owns the Property.  While Macklin may have worked to cloud the title to the Property and collaterally undo the judgment of this court by improperly pursuing the parallel action in District Court after final judgment in this Adversary Proceeding, that does not diminish the rights and interests of DBNTC as owner of the Property.  The court determined that title had changed and DBNTC is the owner of the Property.  With that judgment, from which no appeal was taken, DBNTC could move forward as the judicially determined owner of the Property.

43

Fourth, this Rule 60(b) motion is being brought twenty months after the Judgement was entered. It is nineteen months after Macklin abandoned any effort to pursue an appeal of that Judgment. It is being made after Macklin has attempted to relitigate, and ultimately lost, in the District Court the same issues which were determined in the final judgment issued by the bankruptcy court. Macklin has engaged in slipping back and forth between the Bankruptcy Court and District Court, attempting to shop for the most favorable ruling from whomever Macklin believes is the most favorable judge at the moment. Macklin has not been diligent in the prosecution of his rights and the appeal of the final judgment of this court.

Fifth, the changes in law stated in *Jesinoski* and *Merritt* bear no relation to the basis for the rulings in the Order and the Judgment. Therefore, Macklin's request for relief pursuant to Rule 60(b)(6) is denied.

## THE POST-JUDGMENT RULINGS IN *JESINOSKI* AND *MERRITT* ARE NOT A BASIS FOR RELIEF PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 60(b)(4)

Macklin argues that, pursuant to Rule 60(b)(4), *Jesinoski* and *Merritt* have made the court's decisions void and that the orders violated due process. Rule 60(b)(4) allows for a party to seek relief from a final judgment if the judgment is void. Rule 60(b)(4) applies "only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010). For instance, a judgment is not void "simply because it is or may have been erroneous." *Id.* at 270

44

(internal citations omitted). A motion under Rule 60(b)(4) is not a substitute for a timely appeal. *Id.*

Under Rule 60(b)(4), a judgment may be set aside as void for lack of jurisdiction generally when the rendering court lacked even an "'arguable basis' for jurisdiction." *DiRaffael v. California Military Dep't*, No. 12-57200, 2015 WL 625197, at *1 (9th Cir. Feb. 13, 2015) (citing *Espinosa,* 559 U.S. at 271).

It is worth noting first that Macklin does not specifically argue anywhere in the Motion or the Reply specifics grounds to justify relief under Rule 60(b)(4). Rather, the one reference to Rule (b)(4) is the reference to the Seventh Circuit decision in *Simer v. Rios*, 661 F.2d 655 (7th Cir. 1981), for the proposition that vacating a judgment is proper when it is void because it was obtained in violation of the party's procedural Due Process rights. Macklin fails to state what Due Process violation was sufficient for vacating the judgment in *Simer*. The Seventh Circuit provides the following guidance in its decision:

> Mere error in the entry of a judgment does not render a judgment void for purposes of Rule 60(b)(4). *Chicot County Drainage District v. Baxter State Bank*, 308 U.S. 371, 374-78, 60 S. Ct. 317, 318-20, 84 L. Ed. 329 (1940). But where an error of constitutional dimension occurs, a judgment may be vacated as void. One such constitutional error for concluding that a judgment is void for purposes of Rule 60(b)(4) is if the judgment was entered in violation of due process.

> As is discussed below, in greater detail, entry of the settlement decree without notice to putative class members violated the due process rights of the class members. Entry of the settlement decree, while not binding on absent individuals, nonetheless did prejudice the rights of these individuals. Therefore, as a matter of due process, notice was required to protect their rights. Because this notice never was delivered the judgment must be vacated as void. *Sertic v. Cuyahoga Lake, etc., Carpenters District Council*, 459 F.2d 579, 581 (6th Cir. 1972); *Sagers v. Yellow*

1     *Freight System, Inc.*, 68 F.R.D. 686 (N.D. Ga.1975).
2 *Id.* at 663-664.

3     Macklin does not contend that he was not provided notice, nor
4 provided with the opportunity to petition the court, nor provided
5 the opportunity to file his motion for summary judgment, nor
6 provided the opportunity to respond to the defense and request for
7 relief by DBNTC. Macklin does not allege any procedural
8 deficiency. Rather, he merely argues that the court got it wrong,
9 based on his reading of the post-judgment decisions in *Jesinoski*
10 and *Merritt* (and ignoring the detailed rulings of the court on the
11 various motions in this Adversary Proceeding).

12     First, as discussed *supra*, DBNTC clearly is a party-in-
13 interest with standing. Macklin attempts to argue that under
14 *Jesinoski* and *Merritt* that the recession was valid and thus the
15 security interest is void. As such, Macklin argues that DBNTC has
16 no interest and thus the court has no subject-matter jurisdiction.
17 This is incorrect and DBNTC can defend its rights and interests
18 against Macklin's claims, including asserting that it held the
19 title to the Property. Further, this federal court had and has
20 subject matter jurisdiction.

21     Second, a motion under Rule 60(b)(4) cannot be a substitute
22 for an appeal. Macklin, after having attempted and lost in both
23 the District Court and this court in his actions against DBNTC,
24 Macklin now seeks to reverse the final judgment of this court.
25 Macklin's grounds are that because the court made an alleged error
26 of law, the final judgment of this court is void. It is clear that
27 Macklin has engaged in forum shopping in order to try and achieve
28 a favorable ruling. Once Macklin the final judgment was entered in

1   this court, Macklin attempted to prosecute a nearly identical
2   complaint in the district court.

3       Instead of taking an appeal from this court's ruling, Macklin
4   implemented a litigation strategy to prosecute the same claims in
5   the District Court.  Macklin made a conscious decision to forego
6   the appellate process and instead circumvent it through
7   collaterally attacking the judgment by seeking a different decision
8   in another court.  The time to appeal the final judgment in this
9   court has come and gone, and a Rule 60(b)(4) motion will not serve
10  as a substitute for Macklin's decision not to pursue an appeal.

11      This court has and had subject matter jurisdiction, has and
12  had *in personam* jurisdiction of parties who have and had standing
13  to litigate the rights and interests at issue, and no Due Process
14  violation have been identified (such as failure to be provided
15  notice of the proceeding(s)).  Macklin's request for relief under
16  Rule 60(b)(4) is denied.

17  **THE POST-JUDGMENT RULINGS IN *JESINOSKI* AND *MERRITT***
18  **ARE NOT A BASIS FOR GRANTING RELIEF PURSUANT TO**
    **FEDERAL RULE OF CIVIL PROCEDURE 60(b)(5)**

19      Rule 60(b)(5) allows a party to obtain relief from a judgment
20  or order if, in relevant part, "applying [the judgment or order]
21  prospectively is no longer equitable." A party may not challenge
22  the legal conclusions on which a prior judgment or order rests.
23  *Horne v. Flores*, 557 U.S. 433, 447, 129 S. Ct. 2579, 2593, 174 L.
24  Ed. 2d 406 (2009).  Instead, Rule 60(b)(5) provides a means by
25  which a party can ask a court to modify or vacate a judgment or
26  order if "a significant change either in factual conditions or in
27  law" renders continued enforcement "detrimental to the public
28  interest." *Id.* (*citing Rufo v. Inmates of Suffolk County Jail*,

47

502 U.S. 367, 384, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992)). The party seeking relief bears the burden of establishing that changed circumstances warrant relief. *Rufo* at 383.

Rule 60(b)(5) applies only to those judgments that have prospective application. "The standard used in determining whether a judgment has prospective application is whether it is executory or involves the supervision of changing conduct or conditions." *Harvest v. Castro*, 531 F.3d 737, 748 (9th Cir. 2008) (citing *Maraziti v. Thorpe*, 52 F.3d 252, 254 (9th Cir.1995) (internal quotation marks and citations omitted). Merely because a court's actions have some continuing consequences, "does not necessarily mean that it has 'prospective application' for the purposes of Rule 60(b)(5)." *Twelve John Does v. District of Columbia*, 841 F.2d 1133, 1138-1139 (D.C. Cir. 1988). For instance, declaratory judgments that have no "future-directed" declarations are not considered prospective for purposes of Rule 60(b)(5). 12 MOORE'S FEDERAL PRACTICE, § 60.47[1][c] (Matthew Bender 3d ed.).

Here, Macklin asserted various federal law and related state law claims against DBNTC, as well as seeking a determination of whether Macklin or DBNTC held title to the Property. The court has made those determinations, which are embodied in the final judgment issued by this court, for which no appeal was prosecuted. The court in its final judgment made determinations as to the rights and obligations of the parties as they existed at the time of the litigation. No part of the judgment is prospective. The court has not ordered parties to do anything in the future, does not have to "supervise" the enactment of the judgment, and has no further hearings to determine the rights, conduct, and actions of the

48

parties in the future.   There was nothing in either the order dismissing, the order granting summary judgment, nor the final judgment which has prospective application. The determinations made by the court were not ones that required continued court oversight nor were they executory - they were determinations of the rights of the parties.

Macklin argues, though not stating grounds with particularity as required by Rule 7(b) nor specifically citing Rule 60(b)(5)(C), that the rulings in *Jesinoski* and *Merritt* have somehow altered the court's rulings in such a way that the orders themselves are "no longer equitable." However, relief under Rule 60(b)(5) requires that the judgment is prospective before the court determines whether its continued application is no longer equitable.  Macklin has failed to reach the initial burden of showing that the dismissal and summary judgment orders (although Macklin attempts to have all orders vacated) are somehow executory or require further court oversight.   Instead, Macklin merely makes a blanketed assertion that the two recent cases act as an automatic reset for Macklin's claim with no regard to the requirements under Rule 60(b)(5).

Macklin's request to vacate under Rule 60(b)(5) is denied.

**RELIEF PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 60(b)(1) IS NOT PROPER, MACKLIN FAILING TO SEEK RELIEF WITHIN ONE YEAR OF THE JUDGMENT**

Macklin argues that under Rule 60(b)(1), the court should vacate all prior orders and judgments. However, the time for Macklin to make a motion to vacate under 60(b)(1) has come and gone.

Pursuant to Rule 60(b)(1), the court may vacate a final

judgment, order, or proceeding for "mistake, inadvertence, surprise, or excusable neglect." However, Rule 60(c)(1) specifically limits the timing of motions "for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order of the date of the proceeding."

Here, the order dismissing the first (Trust in Lending Act), second (Real Estate Settlement Procedures Act), third (Fair Credit Reporting Act), fourth (Fraud), fifth (Unjust Enrichment), sixth (Civil RICO, seventh (Business and Professions Code § 17200), and eighth (Breach of Security Agreement) causes of action was entered February 16, 2012. Dckt. 221. The order granting summary judgment to DBNTC for the ninth (Wrongful Foreclosure) and tenth (Quiet Title) cause of action was entered May 24, 2013.

Macklin did not file the instant Motion until January 22, 2015. This is thirty-four months after the order dismissing the first eight causes of action and eighteen months after the judgment was entered by this court.  As stated by the Supreme Court in *Ackermann*, "[A] motion for relief because of excusable neglect as provided in Rule 60 (b) (1) must, by the rule's terms, be made not more than one year after the judgment was entered." *Ackerman v. United States*, 340 U.S. at 197. "The one-year limitations period for filing a Rule 60(b)(1) motion is absolute. *Warren v. Garvin*, 219 F.3d 111, 114 (2d Cir. 2000) (citing 12 James Wm. Moore, *Moore's Federal Practice*, P 60.65[2][a], at 60-200 (3d ed. 1997)); *United States v. Berenguer*, 821 F.2d 19, 21 (1st Cir. 1987) (citing 11 Wright & Miller, § 2866)." *Tool Box, Inc. V. Ogden City Corp.*, 419 F.3d 1084, 1088 (10th Cir. 2005).

Therefore, because Macklin filed the present Motion seeking

relief pursuant to Rule 60(b)(1) more than one year after the orders and the judgment were entered, the relief is denied.

## THE POST-JUDGMENT RULINGS IN *JESINOSKI* AND *MERRITT* DO NOT WARRANT VACATING THE JUDGMENT AND ORDERS IN THIS ADVERSARY PROCEEDING PURSUANT TO RULE 60(d)

Macklin lastly requests relief under Rule 60(d). In Macklin's Motion, the only mention of Rule 60(d) is where Macklin states: "FRCP Rule 60(d) Other Powers to Grant Relief. This rule does not limit a court's power to: (1) entertain an independent action to relieve a party from a judgment, order, or proceeding." Dckt. 380, pg. 3. Even in Macklin's conclusion, Macklin fails to raise any grounds that would support relief pursuant to Rule 60(d). Rather, Macklin leaves it for the court to determine what, if any, of the statements in the Motion would be the grounds that Macklin seeks to assert to support this relief.  Macklin does not even address any grounds for Rule 60(d) relief in Macklin's reply to the Opposition. Dckt. 400.

Rule 60(d) provides that the rule does not limit a court's power to: "(1) entertain an independent action to relieve a party from a judgment, order, or proceeding; (2) grant relief under 28 U.S.C. § 1655 to a defendant who was not personally notified of the action; or (3) set aside a judgment for fraud on the court." Rule 60(d) does not create a new right of action but rather it merely preserves the existence of a "procedural remedy . . . by a new or independent action to set aside a judgment upon those principles which have heretofore been applied in such an action." Rule 60, Advisory Committee note of 1946. The typical grounds justifying an independent actions in equity is fraud. *See United States v. Beggerly*, 524 U.S. 38 (1998).

1    In order for a party to seek relief under Rule 60(d), the
2 moving party must also show a meritorious claim or defense.
3 Furthermore, courts have found that when there is both a Rule 60(b)
4 motion and an independent action based on the very same ground, the
5 Rule 60(d) motion should be dismissed since the court is
6 considering the same issues in the context of Rule 60(b). *Goodyear*
7 *Tire & Rubber Co. v. H.K. Porter Co.*, 521 F.2d 699, 700 (6th Cir.
8 1975).

9    Here, Macklin has not provided any grounds in which a motion
10 under Rule 60(d)(1) is proper.  Nowhere in the Motion nor Reply
11 does Macklin mention any fraud or independent actions in equity
12 that may even be construed as a ground for relief under Rule
13 60(d)(1).

14    From the court's review of the case law, the court finds no
15 basis that justifies relief under Rule 60(d)(1) for the post-
16 judgment rulings. Rule 60(d)(1) is not the catch-all provision that
17 allows a party a last gasp attempt to retry litigation which they
18 lost. Instead, Rule 60(d)(1) was meant to "preserve whatever power
19 federal courts had prior to the adoption of Rule 60 to relieve a
20 party of judgment by means of an independent action according to
21 traditional principles of equity."   12 MOORE'S FEDERAL PRACTICE,
22 § 60.80 (MATTHEW BENDER 3D ED.) (citing *Treadaway v. Academy of Motion*
23 *Picture Arts & Sciences*, 783 F.2d 1418 (9th Cir. 1986).

24    Macklin has not identified any independent action which pre-
25 dates Rule 60 that would justify relief under Rule 60(d)(1).
26 Rather, this appears to be a hail mary reference for the court to
27 just set the judgment aside because Macklin lost, irrespective of
28 Macklin not having, and failing to show, proper grounds for relief

under Rule 60(b).

Therefore, because Macklin failed to provide grounds of an independent action in equity and failed to plead with particularity as required by Rule 7(b), the relief is denied.

**CONCLUSION**

After review of the law; consideration of all arguments presented by the parties; the orders, findings of fact and conclusions of law, and final judgment in this Adversary Proceeding; the documents and evidence presented; and the proceedings in the District Court; this court concludes that Macklin has failed to show grounds for relief under Federal Rule of Civil Procedure 60.  The court denies Macklin's Motion in its entirety.

This Memorandum Opinion and Decision constitutes the court's findings of fact and conclusions of law pursuant to Rule 52 and Bankruptcy Rule 7052.

The court shall issue a separate order consistent with this Memorandum Opinion and Decision.

Dated: April 8, 2015

RONALD H. SARGIS, Judge
United States Bankruptcy Court

Case Number: 2011-02024   Filed: 11/8/2012   Doc # 304

# ADDENDUM A

## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF CALIFORNIA
### CIVIL MINUTES

| | | | |
|---|---|---|---|
| **Adversary Title :** | Macklin v. Deutsche Bank National Trust Co. | **Case No :** | **10−44610 − E − 7** |
| | | **Adv No :** | **11−02024 − E** |
| | | **Date :** | **11/8/12** |
| | | **Time :** | **09:30** |

**Matter :**  [288] − Motion/Application to Amend [DJH−1] 120 Amended Complaint Filed by Plaintiff James L. Macklin (pdes)

**Judge :**  Ronald H. Sargis
**Courtroom Deputy :**  Janet Larson
**Reporter :**  Diamond Reporters
**Department :**  E

**APPEARANCES for :**
**Movant(s) :**
    Plaintiff's Attorney − Daniel J. Hanecak
**Respondent(s) :**
    Defendant's Attorney − Craig Crawford

---

MOTION was :
Denied
See Findings of fact and conclusions of law below

The court will issue a minute order.

Local Rule 9014−1(f)(1) Motion Opposition Filed.

Proper Notice Provided. The Proof of Service states that the Motion and Notice of Hearing were served on the Defendants Attorneys on October 4, 2012. By the courts calculation, 35 days notice was provided. 28 days notice is required.

The Motion for Leave to Amend Complaint has been properly set for hearing on the notice required by Local Bankruptcy Rule 9014−1(f)(1). The failure of the respondent and other parties in interest to file written opposition at least 14 days prior to the hearing as required by Local Bankruptcy Rule 9014−1(f)(1)(ii) is considered to be the equivalent of a statement of nonopposition. Cf. Ghazali v. Moran, 46 F.3d 52, 53 (9th Cir. 1995). As Defendant filed an opposition, the court will address the merits of the case.

The courts decision is to deny the Motion for Leave to Amend Complaint.

Plaintiff seeks leave to amend his First Amended Complaint (FAC) which was filed in this case on June 17, 2011.

Legal Standard for Leave to Amend Pleading

A party may amend its pleading only with the opposing partys written consent or the courts leave. The court should freely give leave when justice so requires. Fed. R. Civ. P. § 15(a)(2), as incorporated by Fed. R. Bankr. P. 7015. There is a strong policy of liberal authorization to amend pleadings in the Federal Courts. In re Kashami, 190 B.A.P. 875 (9th Cir. 1995). In situations where Plaintiffs causes of actions have been dismissed without leave to amend, the Plaintiff bears the burden of proving there is a reasonable possibility of amendment. Blank v. Kirwan, 39 Cal.3d 311 (1985).

# ADDENDUM A

Case 11-02024   Filed 04/08/15   Doc 423

While there is a strong policy of liberal authorization to amend pleadings in the Federal Courts, the court is correct to deny leave where there is undue delay, bad faith, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the opposing party. Foman v. Davis, 371 U.S. 178, 182 (1962); Moore v. Kayport Package Exp., Inc. 885 F.2d 531 (9th Cir. 1989). Furthermore, an amendment that would serve no useful purpose, i.e. be subject to a motion to dismiss, should not be allowed. Foman v. Davis 371 U.S. at 182.

Original Complaint

The Plaintiff filed his Original Complaint (17 pages of pleading in length) on January 13, 2011. Dckt. 1. The court entered an order on May 20, 2011, granting the Defendants motion and dismissed the Third, Fourth, Fifth, and Sixth Causes of Action with leave to amend. The Plaintiff was represented by Holly S. Burgess when filing the Original Complaint.

First Amended Complaint

The Plaintiff filed the FAC (46 pages of pleadings, without exhibits, in length) on June 17, 2011. He was again represented by Holly S. Burgess.

On October 3, 2011, the Plaintiff filed a substitution of attorney, replacing Holly Burgess with Allan R. Frumkin. Dckt. 192, Order authorizing, Dckt. 193.

On February 16, 2012, the court granted the Defendants motion to dismiss this Adversary Proceeding, ordering that the First, Second, Third, Fourth, Fifth, Sixth, Seventh, and Eighth Causes of Action were dismissed. Order, Dckt. 222. The court denied the motion as to the Ninth and Tenth Causes of Action. The court ordered that the Defendant file its answer on or before February 28, 2012. No leave to amend was automatically granted for the Plaintiff.

The court issued a detailed ruling explaining the dismissal of the various claims in the FAC and not granting leave to amend. Memorandum Opinion and Decision, Dckt. 221. In the Decision the court addressed a proposed second amended complaint that Alan Frumkin stated that he intended to file for the Plaintiff. The draft second amended complaint was 45 pages in length and (as described by this court),

[c]continues to use dense text in attempting to communicate the grounds upon which the relief is based, including single paragraphs running more than a page in length. Rather than alleging the basis for a claim, the FAC is written more as an editorial and argumentative treatise in support of Macklins contention that he owns the Property and has no obligation to pay for the monies he received as part of the loan transaction.

Decision, FN. 112, Dckt. 221.

In denying any automatic right to file a second amended complaint, the court addressed the pleading deficiencies and outlined the process for Plaintiff to file a motion for leave to file a second amended complaint. In the February 16, 2012 Decision the court outlined the following minimum requirements for granting leave to amend:

(1) Provide the legal authorities which are identified to support their good faith contentions;

(2) Preemptively address,

a. Established California law that the deed of trust always follows the note;

b. California Commercial Code provisions governing the negotiation, enforceability, and enforcement of notes;

c. That forfeiture of property rights is not favored;

d. How payments made by insurance companies, loan servicers, or others pursuant to a separate agreement not including Macklin provide for the payment of Macklins obligations under the Note and why the principles of subrogation do not apply; and

e. The holding of the Ninth Circuit Court of Appeals in Cervantes v. Countrywide Home Loans, Inc., 650 F.3d 1034 (9th Cir. 2011).

(3) Further, Macklins practice of routinely and indiscriminately for each cause of action incorporating all of the prior paragraphs of the complaint does not lead to the court and other parties being able to clearly

ADDENDUM A

understand the short and plain statement of the claim showing that the pleader is entitled to relief as required by Fed. R. Civ. P. 8(a)(2) and Fed. R. Bankr. P. 7008.

Memorandum Opinion and Decision, pg. 47:13–28,48, 49:1–5.

The plaintiff has generally addressed items 1 and 2(e), Plaintiff has clearly ignored items 2(a), 2(b), 2(c), 2(d) and 3 for the Proposed Second Amended Complaint.

On February 21,2012, merely one week after granting the motion to dismiss various causes of action in the FAC, James Macklin and Allan Frumkin filed a Notice that Alan Frumkin was being substituted out of the case and seeing to have the court order that James Macklin, having most of his claims stricken, but substituted to represent himself in pro se. Mr. Macklin and Mr. Frumkin ignored the Local Bankruptcy Rules and Local District Court Rules (which are incorporated into the Bankruptcy Rules, requiring that the court allow and order the withdrawal and substitution of counsel.

On March 2, 2012, Allan R. Frumkin filed a Motion for leave to withdraw as counsel, leaving James Macklin to continue in the case in pro se. The court denied this request, ordering Mr. Frumkin to file a noticed motion to withdraw. Order, Dckt. 235. By orders filed on April 23, 2012 the court allowed Alan Frumkin to withdraw as counsel and allow Holly S. Burgess to reenter the case as Mr. Macklins counsel. Dckt. 243, 244. In approving this substitution, the court notified Mr. Macklin and Holly S. Burgess that the court would not allow the Plaintiff to engage in a game of musical chairs, changing attorneys to disrupt the reasonable prosecution of this Adversary Proceeding.

The Defendant filed its answer on February 28, 2012. Based on the discovery plans submitted by the Plaintiff (represented by counsel Holly S. Burgess) and Defendant, the court issued a scheduling order providing that (1) expert witnesses be disclosed by August 15, 2012, (2) expert witness reports be exchanged by September 15, 2012, (3) non-expert discovery closed on October 15, 2012, (4) rebuttal expert witnesses disclosed by October 15, 2012, and expert witness discovery closed January 31, 2013. Pretrial Conference and Scheduling Order, Dckt. 250.

On August 23, 2012, Holly Burgess filed a third motion to substitute attorneys for the Plaintiff, proposing to substitute Daniel Hanecak as Plaintiffs counsel. Dckt. 270. The court denied the substitution, without prejudice, requiring the Plaintiff to file a noticed motion to explain this third substitution of counsel in this Adversary Proceeding. Civil Minutes, Dckt. 272; Order, Dckt. 274.

On September 27, 2012, the court held a hearing on a new motion to allow Holly Burgess to withdraw as counsel and allow Daniel Hanecak to substitute in as counsel. Though the Plaintiff sought this substitution of counsel on the eve of discovery closing, the court granted the request, relying on the representations of Daniel Hanecak that he was not only up to speed on the case, but also cognizant of the impending close of discovery and the fact that trial would be set shortly after the Pretrial Conference. Civil Minutes, Dckt. 285; Order, Dckt. 287. Holly Burgess was allowed to withdraw as counsel for the Plaintiff. The court expressly advised Mr. Hanecak that the scheduling order was issued in this case and discovery was closing shortly. Mr. Hanecak assured the court that he was familiar with the file and order in this Adversary Proceeding. Further, he represented to the court that he was an experienced attorney and up to the task of taking on a client on the eve of trial. The court accepted Mr. Hanecaks representations as to his experience and ability to represent Mr. Macklin. For his party, Mr. Macklin enthusiastically sought this substitution of counsel (much in the same way that he enthusiastically sought the substitution of his prior attorneys).

On October 4, 2012, after the time for disclosing expert witnesses and expert reports exchanged expired, and with non-expert discovery (including the hearing of all discovery motions) closing on October 15, 2012, the Plaintiff, represented by Daniel Hanecak, filed the present motion for leave to file the Proposed Second Amended Complaint.

Grounds Stated in Motion

The Motion states with particularity (as required by Federal Rule of Civil Procedure 7(b) and Federal Rule of Bankruptcy Procedure 7007) the following grounds upon which the requested leave to file the Proposed Second Amended Complaint should be granted, to add three new claims.

Truth in Lending Act Violations

A.Plaintiff seeks to amend his complaint and set forth these allegations and amended causes of action under the Truth in Lending Act.

B.Deutsche Bank National Trust Company has liability as a co-venturer and alleged creditor for the

ADDENDUM A

underlying failed disclosures.

C.Plaintiff has the right to rescind under 11 U.S.C. § 1635.

D.Plaintiffs loan was table funded and presumed to be predatory by the OCC.

E.Plaintiff has a claim under California Business & Professions Code §§ 17200 et seq.

Failed Contract Assertions

F.The material terms of the agreement for the loan were never set forth and the transaction as stated in the deed and note never transpired as stated.

G.Conditions precedent could never have been met because the wrong parties were named.

H.Plaintiff challenged the documents and MERS standing as nominee.

J.MERS never carried a beneficial interest and could never have assigned anything.

K.Deutsche Bank National Trust Company was a co-venturer in the alleged failed securitization of the Plaintiffs note and deed of trust, and does not hold any interest in the loan obligation.

Addressing Issues From Prior Ruling

L.The ruling in Cervantes is distinguishable because Plaintiff did not bring a fraud count against MERS.

Motion, Dckt. 288. Conspicuously absent are any grounds relating to the closing of discovery and the bringing of this Motion 22 months after the Original Complaint was filed by the Plaintiff.

Defendants Opposition

Defendant Deutsche Bank National Trust Company (Defendant) opposes the motion on the basis that Plaintiff Macklin fails to offer an legitimate reason for amending the same claims that the court has previously considered and dismissed. Defendant argues that after the close of discovery, Plaintiffs third substitution of counsel and after four prior unsuccessful attempts to plead legally sufficient causes of action related to the origination, underwriting and servicing of his home loan, that the Motion to Amend be denied. Defendant cites the following to support denial of the Motion:

A.Plaintiff seeking leave to amend three weeks after discovery closed and just before trial was imminently prejudicial as the Defendant was unable to prepare for an defend itself at trial.

B.Plaintiffs failure to meet his burden to establish a satisfactory explanation for the undue delay. Defendant asserts that substituting new counsel is not an excuse for filing an amended complaint.

C.Prejudice exists against a party if extensive additional discovery would be required, if proceedings would be delayed significantly or if an imminent danger exists that the moving party would seek to abuse the discovery process. Defendant cites Plaintiffs previous broad discovery requests and Plaintiffs agreement on a discovery plan.

D.Plaintiffs failure to cure the defects in his amended claim.

E.Plaintiffs failure to cure the defects in his TILA claims, specifically statute of limitations defects and failure to state a claim against Defendant as they were not a party to the alleged transactions.

F.Plaintiff has failed to argue how the alleged disclosure violation would have been plain on its face to Deutsche Bank National Trust Company when transferred three years later.

G.Even if disclosure was plain on its face, the statute of limitations had run on Plaintiffs claim.

H.Plaintiffs assertion of rescission is contrary to the courts finding that rescission had not occurred.

I.Plaintiffs failure to properly plead the elements of a UCL violation.

Plaintiffs Response

ADDENDUM A

Plaintiff responds to Defendants opposition, arguing that Defendants will not be prejudiced by allowing the amendment, that the court order has been thoroughly addressed, and Plaintiffs claims are not time barred. The Plaintiff asserts the following:

A.New facts are not being asserted, simply addressed to better plead the issues in the case. As such, discovery would not be burdensome, since Plaintiff intends to request Defendant to produce only its own documents

B.Plaintiff did properly address the requirements in the Order

C.Defendant did not address the authorities cited by Plaintiff

D.The amended pleading presents support that Plaintiffs claims are not time barred

E.Plaintiff reargues his positions from his Motion


DISCUSSION

Timeliness of the Motion

First and foremost, the Plaintiff brings this Motion for Leave to Amend on the close of discovery in the Adversary Proceeding. This Adversary Proceeding case has been pending for over two years and Plaintiff has had ample opportunity to amend his complaint and raise additional claims. Plaintiff has been represented by various counsel of his choosing, each with their own opportunities to seek to amend the Complaint. However, Plaintiff now chooses to do so, with his latest attorney, as discovery is closing. This is prejudicial to the Defendant and frustrating to the court.

**A**

Plaintiff is on his fourth attorney in the present case. This includes firing and the rehiring one counsel when he became dissatisfied with her replacement counsel, who apparently told a tale of the virtues of hiring him.

When Alan R. Frumkin was substituted in as Mr. Macklins counsel in this Adversary Proceeding he filed a Motion seeking re-argument on the motion to dismiss the FAC. October 17, 2011 Motion, Dckt. 198. In that Motion Mr. Frumkin argues that Mr. Frumkin was only recently substituted in as counsel and that being the new counsel constitutes new or changed circumstances. In support of that Motion Mr. Frumkin provided his declaration and testified under penalty of perjury,

A.I have reviewed the file in this matter and concur that certain causes of action were not plead with sufficient specificity and/or did not allege necessary facts to withstand Defendants motion to dismiss. I believe deficiencies in some or all of these causes of action can be remedied through filing of a Second Amended Complaint. Declaration 5, Dckt. 199.

**B**

B.It would be unconscionable for the complaint to be or remain dismissed as the result of the negligence and inattention of Plaintiffs previously counsel; any error or neglect by Plaintiff himself was understandable and excusable.... Declaration 6, Dckt. 199.

Mr. Frumkin also provided the Declaration of James Macklin in support of the motion for re-argument. In his Declaration Mr. Macklin testifies under penalty of perjury,

A.He testifies to having been rushed through signing of the loan application because the notary public had to leave. Declaration 2, Dckt. 200.

B.I later discovered the documents I was pressured into signing did not accurately reflect information crucial to an appropriate determination as to my eligibility. Declaration 2, Dckt. 200.

C.In early June 2011, Mr. Macklin contacted his former (and future repeat) counsel (Holly S. Burgess) concerning the drafting of the FAC. He was told that the FAC was not completed and not available for his review. Declaration 3, Dckt. 200.

D.On June 17, 2011, he was contacted his former (and future repeat) counsel (Holly S. Burgess) to come in and verify the FAC. Mr. Macklin states that again, this time by his counsel, he was given only minutes to sign his name because it had to be filed immediately. He states that he has insufficient time to review the FAC before filing it. Declaration 4, Dckt. 200.

E.Some time later he carefully read the FAC and learned that many of the causes of action were

ADDENDUM A

inaccurately pled. (He does not testify when this occurred, but he court would believe that within a day or two of June 17, 2011 he would have read his copy of the FAC.) Declaration 5, Dckt. 200.

F. Mr. Macklin testified that he review this with his former (and future repeat) counsel, and the decision was made to address the issues at trial. Declaration 5, Dckt. 200.

Though Mr. Frumkin was confident that the FAC could and should be amended by competent counsel (such as himself), when the court issued its ruling granting the motion to dismiss most of the causes of action in the FAC, Mr. Frumkin and Mr. Macklin did not file a motion for leave to amend the FAC. The courts order granting the motion to dismissed was entered on the docket on February 16, 2011 (Dckt. 222). On February 21, 2011, rather than filing a motion to amend the FAC as Mr. Frumkin earlier testified was warranted and could be done in good faith, he instead filed a notice that he was discharged as counsel and Mr. Macklin was being left to appear in pro se (ignoring the Local District Court and Local Bankruptcy Court Rules for substitution of counsel and substitution of a party in pro se).   【C】

Mr. Macklin then sought to re-hire Holly S. Burgess, the former attorney that he and Mr. Frumkin sought to blame for the FAC. Apparently satisfied with Ms. Burgess representation, possibly in light of Mr. Frumkin seeking to tell the court that he was withdrawing from the Adversary Proceeding without leave of the court, Mr. Macklin continued to be represented by counsel

The court then allowed the substitution of attorney, Daniel J. Hanecak, on September 27, 2012. At this hearing, all parties were made aware of the Discovery Scheduling and Pre-trial Conference Order (Dckt. 250) in the adversary proceeding, which stated all non-expert witness discovery must be completed (including the hearing of all discovery motions) on or before October 15, 2012. Further, Mr. Hanecak confirmed at the hearing that he reviewed the file and was aware of the deadlines in the case. See Civil Minutes, Dckt. 285. However, the following Motion for Leave to Amend was filed to be heard three weeks after the end of the October 15, 2012 closing of discovery.   【D】

After the 22 months this case has been pending, the number of attorneys involved, and the disclosure of the deadlines, the Plaintiffs Motion comes too little, too late. There is no dispute that as early as October 17, 2011, Mr. Macklin and his attorneys (Mr. Frumkin and Ms. Burgess from reading the pleadings in this case) knew that the claims had been dismissed and a motion for leave to file a second amended complaint was required if additional bona fide claims existed. The court accepts Mr. Frumkins testimony under penalty of perjury that he advised Mr. Macklin of those claims. Further, that if such bona fide claims existed, Mr. Frumkin stood ready to fulfill his obligations to Mr. Macklin and advance those claims (which merely required the filing of a motion for leave to file a second amended complaint). Mr. Frumkin chose not to file such a motion, instead electing to terminate the representation with Mr. Macklin.   【E】

Whatever basis Mr. Macklin had for disparaging the prior representation by Ms. Burgess, which arose when it was part of Mr. Frumkins motion to be granted leave to re-argue the motion to dismiss the FAC (while the pleadings admitted that the claims had not been sufficient pled), those concerns evaporated when he rehired her to continue in the prosecution of this Adversary Proceeding. No steps were taken to file a motion for leave to file a second amended complaint by Mr. Macklin.

Now, on the eve of getting his day in court, a new attorney arises who seeks leave to file a second amended complaint, adding complex causes of actions and claims. No credible, good faith explanation is provided for why Mr. Macklin did not file a motion for leave to file a second amended complaint for 20 months after the motion to dismiss the FAC was granted.

To allow for Mr. Macklin and his latest counsel to reset all of the litigation at the close of discovery for claims which Mr. Macklin and Mr. Frumkin testified that they were well aware of more than 20 months earlier is an abuse of the judicial process. As is clear from this courts decision on the motion to dismiss the FAC, leave was not given to file a second amended complaint due to the abusive and unclear pleading practices of Mr. Macklin and his counsel. The requirement for filing a motion for leave to amended, with a copy of any proposed second amended complaint, afforded the court with a minimally intrusive opportunity to insure that the pleading practices and deficiencies from the original Complaint and FAC would not be repeated wasting judicial resources and putting the Defendant to unreasonable and repeated duplicate pleadings. Mr. Macklin and his counsel chose not to take up the court on the opportunity to timely and reasonably seek leave to file a second amended complaint.   【F】

The court denies the motion to file the Proposed Second Amended Complaint at this late date.

THE PROPOSED SECOND AMENDED COMPLAINT FAILS TO STATE PLAUSIBLE CLAIMS

# ADDENDUM A

The court has also considered the merits of the motion, and denies it for each of the following separate and independent grounds.

Truth in Lending Act Violations

Failure To Verify Income

The Plaintiff seeks to amend his cause of action by adding a second count under TILA for failure to verify his income. The court finds no requirement under the applicable statute (15 U.S.C. § 1602) or regulation (Regulation Z, 12 C.F.R. § 226.32) to verify income in this transaction.

The Plaintiff in his Points and Authorities asserts a violation of 12 C.F.R. § 226.32(e)(1). The court is unable to find this statute, finding § 226(d)(8)(iii) as the final text in § 226.32. FN.1. Since the Plaintiff has cited Reg. Z, 12 C.F.R. § 226.34 to support an income verification requirement and 15 U.S.C. § 1641(e)(1) to support assignee liability, the court has reviewed the issue in this light.

Subsection (a) of 12 C.F.R. § 226.34 cites meeting the requirements of § 226.32 as a condition precedent to the application of § 226.34. The Plaintiff has not plead that this transaction meets those requirements. Exhibit B, attached to the motion, is a copy of the Note that shows a 6.125% interest rate. Dckt. 290, Ex. B.

Section 226.32(a)(1)(I) applies only to loans that are more than eight (8) percent above the current Treasury rate for a similar term. Subsection (ii) indicates it would apply to loans where more than eight (8) percent was spent on points and fees. Section 226.32(a)(2)(I) indicates it does not apply to a residential mortgage transaction. The court finds that a 6.125% interest rate cannot be more than eight percent above a Treasury rate, even if that rate was zero. The Plaintiff has not plead that he has met this condition precedent.

G

The court finds the condition precedent was not met, hence the lender had no requirement to verify income under TILA for this transaction, thus no TILA violation.

————————————————————————————————————————————
FN.1. The court reviewed 12 C.F.R. § 226.23 [presuming a typographic error] which discusses the right to rescind. However, subsection (e) refers to the Consumers waiver of the right to rescind, which clearly is not Plaintiff intention.
————————————————————————————————————————————

Assignee Liability For Failure To Verify Income

The plaintiff argues that liability for TILA violations at signing extend to Deutsche Bank National Trust Company as an assignee of the deed of trust. To be liable for TILA violations as an assignee, the TILA violation must be apparent on the face of the disclosure statement from the assignor. 15 U.S.C. § 1641(e)(1)(A).

To support that the violation was plain on its face, the Plaintiff cites Reg. Z, 15 U.S.C. 226.34(a)(4)(ii)(A) requiring the lender to verify income or assets relied upon to determine the borrowers ability to repay by using IRS forms or other reasonably reliable documents. To support a TILA violation, the lack of income documentation as described by this statute must make it apparent to a purchaser of the note that a violation existed at inception. The Plaintiff does not allege the disclosure statement would make it apparent that a violation existed at inception to a later purchaser of the note.

As discussed above, the court does not find a TILA violation linked to income verification. Assuming arguendo there is an income verification requirement, the court finds the Plaintiff has not plead how a person purchasing the note would realize there was a failure to verify income from the documents accompanying the note. The Plaintiff alleges that his production of the documents would make it apparent if someone researched the materials supporting the disclosure statement. Requiring research to validate the disclosure statement against underlying documentation does not make a violation plain on its face.

H

Presumably there would be an assertion in the contract language that such had been checked. As such, Deutsche Bank National Trust Company would have a fraud action against the seller, but unlikely that assignee liability would arise. The court finds in the alternative that the falsified income contained within the disclosure statement would not appear plain on its face to a future purchaser.

Plaintiffs Right To Litigate His Rescission Under 11 U.S.C. § 1635

The Plaintiff argues that under 11 U.S.C. § 1635, the Plaintiff has an absolute right to rescind for TILA

ADDENDUM A

Case 11-02024    Filed 04/08/15    Doc 423

violations. Plaintiff asserts only notice to the lender is required to effect rescission. The court finds the Plaintiff was entitled send a notice of his intent to rescind, however, the court finds the time to litigate the validity of the rescission has passed.

The Plaintiff cites extensively the Consumer Financial Protection Bureaus (CFPB) Amicus Curae brief filed in Rosenfield v. HSBC Bank, USA, et al. Case No. 10–1442, (10th Cir. 2012). The CFPB has been granted the authority to interpret and promulgate TILA rules as of July 21, 2011. See 12 U.S.C. §§5581(b)(1),(d). In the cited brief, the CFPBs interpretation of the regulation is that a Debtor must provide notice of an intent to rescind within the three year period.

The CFPB Amicus brief states in several places that as part of the rescission, the consumer must offer to tender the loan principal. The CFPB interprets the statute to mean that notifying the lender either effects the rescission as a matter of law (because the consumer had the right to rescind and properly exercised it), or does nothing (because the consumer did not have the right to rescind or improperly exercised it). Subsequent judicial proceedings are for the purpose of confirming and enforcing the rescission. Peterson v. Highland Music, Inc., 140 F.3d 1313, 1322 (9th Cir. 1998).

The requirement to return the loan principal is further supported by the Bureaus citing of Griggs v. E.I. DuPont de Nemours & Co., 385 F.3d 440, 445–56 (4th Cir. 2004), Rescission itself is effected when the plaintiff gives notice to the defendant that the transaction has been avoided and tenders to the defendant the benefits received by the plaintiff under the contract. CFPB, Amicus Curae Brief, at 15 (Emph. added).

Assuming a proper rescission notice was sent, the CFPB Amicus brief states that once the notice is sent, the lender has two options. Either the lender will unwind the transaction as contemplated by 15 U.S.C. § 1635(b) or if the lender contests the rescission, litigation will ensue: either the lender will refuse to unwind the transaction (and the consumer will sue), or the consumer will stop paying (and the bank will sue or attempt to foreclose). Challenges to the validity of the rescission will be litigated at that time. CFPB, Amicus Curae Brief, at 23–24.

The CFPB brief states the fact that § 1635 does not expressly limit the time period for litigation does not mean no limit exists. Some courts have concluded that TILAs general one–year statute of limitations, 15 U.S.C. § 1640, permits consumers to bring suit to compel compliance with their rescission within one year of the lenders refusal to unwind the transaction after receiving the notice of rescission. CFPB, Amicus Curae Brief, at 24, FN. 4. The Ninth Circuit ruling in Miguel v. Country Funding Corporation, 309 F.3d 1161, 1165 (9th Cir. 2002), holds that 15 U.S.C. § 1640(e) provided the borrower one year from the refusal of cancellation to file a suit.

| I |

The court follows the controlling Ninth Circuit precedent finding the one–year statute of limitations began when the lender made clear its intention not to unwind the transaction in the March 31, 2009 letter from Roup & Associates. FN.2.

----------------------------------------------------------------
FN.2. The court finds that even if the one year statute of limitations did not begin until the actual foreclosure sale on December 14, 2009, the statute of limitations had run prior to the filing of this suit.
----------------------------------------------------------------

| J |

In the alternative, the court finds that the Plaintiffs Notice of Rescission was not a proper notice of rescission because it did not offer to tender the loan principal. 12 C.F.R. §§ 1026.15(d)(3), 1026.23(d)(3). As such, the Plaintiffs right to assert TILA violations would have expired at the later of 3 years or sale of the property, which occurred on December 19, 2009.

Table Funded Loan Presumed Predatory

In the Points and Authorities, the Plaintiff makes reference to the loan as a table-funded loan. However, there are no allegations in the complaint regarding the table-funded nature of the loan. The Plaintiff fails to link why table-funded loans create a liability for Deutsche Bank National Trust Company. The Plaintiff cites an advisory letter from the Office of the Comptroller of the Currency (OCC), asserting it holds that table-funded loans are presumed predatory. The court does not find the letter to hold that such loans are per se predatory. The OCC letter defines table funded loans as loans that are brought to the table by a broker and funded and immediately acquired by the lender. Here the loan was brought to the table by Accredited Home Loans, Inc., who acquired the note and according to the complaint, retained the loan until just prior to foreclosure in December 2009. The court finds that a three year retention period fails to meet the immediacy element of a table-funded loan.

| K |

The defendant in this case, Deutsche Bank National Trust Company is not acting as a bank in this

ADDENDUM A

environment and is acting solely as the Trustee for the pool of mortgages.

The court does not find a cause of action relevant to this argument. The court finds the Plaintiff has failed to plead sufficiently for the court to hold the loan to be per se predatory.

Amendment to Add California Business & Professions Code §§ 17200 et seq. Claim

The Plaintiff has reiterated his claim under California Business & Professions Code § 17200 et seq. The Points and Authorities seek to amend the complaint to plead a violation of Californias Unfair Competition Law (UCL) under the unlawful prong based on the TILA violations.

The Plaintiff has alleged two different basis for his TILA violations, failure to verify income and failure to rescind following notification. The court has addressed both of these issues above and found no support for the alleged TILA violations. Since no violation was found, the Plaintiffs pleading of unlawful acts fails to support the motion to amend the UCL cause of action.

$\boxed{\text{L}}$

In the alternative, the court finds that Plaintiff has failed to plead sufficiently Deutsche Bank National Trust Company liability since it was not a party to any of stated TILA violations.

Failure To Form A Contract

The Contemplated Contract Was Never Formed

The Plaintiff asserts that he attempted to enter into a contract with Accredited Home Loans, Inc. Plaintiff asserts reliance upon representations by Accredited Home Loans, Inc. that they were a bona fide lender capitalized sufficiently to lend funds in a consumer finance transaction memorialized by a trust deed and note. Plaintiff states that since the wire transfer into escrow arrived from a different source, the money was not advanced by Accredited Home Loans, Inc. Thus no contract was formed between the Plaintiff and Accredited Home Loans, Inc. FN.3. The court views this transaction as follows:

Borrower wants to borrow ten dollars, he asks Lender who agrees and they enter a contract. When it comes time to perform by delivering the money, Lender contracts with Funding Source to provide the money for Lender to make the loan to Borrower. Nothing in the entirety of common law contract prohibits a party from contracting with another to fulfill a obligation. In fact, we often refer to those people as sub-contractors.

$\boxed{\text{M}}$

_____
FN.3. The essential elements of a contract are: (1) Parties capable of contracting; (2) Their consent; (3) A lawful object; (4) A sufficient cause or consideration. 1 Witkin, Summary of California Law 10th, Contracts, § 3 (2012); Calif. Civil Code § 1550. If consent is not freely given to the contract, for example due to fraud, the contract is not absolutely void, but may be rescinded by the parties. Calif. Civ. Code § 1566.
_____

Plaintiff asserts that he relied upon these disclosures that the loan was from Accredited Home Loans, Inc. Assuming the plaintiffs belief that a transfer from a bank into escrow meant the loan was not funded by Accredited Home Loans, the plaintiff has failed to allege how that such reliance was detrimental. The transaction was consummated by Accredited Home Loans, and the note and deed of trust were issued to Accredited Home Loans.

Furthermore, even if Plaintiff were to plead that his consent was not freely given to the contract, California Civil Code § 1556, holds the contract is not void. Instead, the contract must be rescinded under the rules addressing proper rescission.

The Inclusion of MERS Means The Wrong Parties Were Named In Escrow

The Plaintiff argues that identifying MERS as the beneficiary in the Deed of Trust violates the escrow instructions to record a deed of trust in favor of Accredited Home Loans, Inc. The Deed of Trust contains a common paragraph identifying MERS as the nominee of the Lender (Accredited Home Loans, Inc.) and Lender's successors and assigns. MERS is then identified as the "beneficiary" under the Deed of Trust. The beneficiary is identified on page 2 of the Deed of Trust, as the nominee of the Lender and Lender's successors and assigns.

The Deed of Trust secures the repayment of the Note to Lender and Plaintiff's performance under the Deed of Trust and Note. Page 3 of the Deed of Trust continues to state that Borrower understands and agrees that MERS holds only legal title to the interests granted to the Lender, but MERS, as the nominee for the

ADDENDUM A

Lender and Lender's successors and assigns, may exercise the interests of the lender and take any action of Lender.

Courts have widely found that MERS may act as an agent for the owner of a note secured by the deed of trust, including assigning the beneficial interest in the deed of trust. See Baisa v. Indymac Fed. Bank, No CIV−09−1464 WBS JMR, 2009 WL 3756682, *3 (E.D. Cal. Nov. 6, 2009) ("MERS had the right to assign its beneficial interest to a third party"); Weingartner v. Chase Home Finance, LLC, 702 F. Supp. 2d 1276, 1280 (D. Nev. 2010) ("Courts often hold that MERS does not have standing as a beneficiary because it is not one, regardless of what a deed of trust says, but that it does have standing as an agent of the beneficiary where it is the nominee of the lender (who is the 'true' beneficiary)." (emphasis added)); Taasan v. Family Lending Services, Inc., No. A132339, 2012 WL 2774967 (July 10, 2012) (MERS as nominee beneficiary holds only the right to title, not to the underlying note, but may assign that right to others, enabling foreclosure by other entities).

Additionally, this argument misses the mark because the focus has to remain on who owns or has the right to enforce the Note. The security, irrespective of what the Deed of Trust originally states, will follow the Note. Here, Accredited Home Loans, Inc. is the holder of the bearer paper, the Note.

MERS Standing As Nominee

As discussed above, the legal limits of the nominee beneficiary role of MERS was clearly acknowledged and agreed to on page 3 of the deed of trust. The security follows the note. The borrower acknowledged the right of MERS to foreclose by placing his initials on the page and signing at the bottom of the Deed of Trust.

Plaintiff argues that he was never the principal over MERS, and as such, he cannot grant MERS any agency relationship with alleged principal Accredited Home Loans, as written in the deed. This confuses the concept of agency law. MERS would be the agent of the lender, Accredited Home Loans, Inc. A person may enter a contract with an agent acting on behalf of another, which may grant the agent certain powers. The ability of a lender to insert an agent between the borrower and the lender is not a right that can be granted by a borrower. Its an action that can be taken by either party. Conceivably, if the borrower had sufficient negotiation power, the borrower could have placed an agent between himself and the lender. The principal/agent relationship between Accredited Home Loans, Inc. and MERS, Inc. is not a relationship the borrower has any say in.

By signing the deed of trust, the borrower acknowledged that under the terms the lender was willing to offer, MERS would be the nominee beneficiary and have these powers.

MERS Not A True Beneficiary And Could Not Assign Anything

As discussed above, the legal limits of the nominee beneficiary role of MERS was clearly acknowledged and agreed to on page 3 of the deed of trust. The security follows the note. The borrower acknowledged the right of MERS to foreclose by placing his initials on the page and signing at the bottom of the Deed of Trust.

Next, Plaintiff argues that the parent of AHL, Accredited Home Loans Holding Company, filed Chapter 11 and that the agency relationship between AHL and MERS was extinguished at that time. However, Plaintiff fails to state any legal authority on which to base this claim.

Plaintiff then argues that there are two undated allonges, used a alleged endorsements of the note, which Defendant contends are executed by them for the purpose of facilitating an endorsement. Plaintiff argues that these carry no evidentiary weight and support the fact that MERS never transferred any interest in the debt and never held the note. Again, the MERS argument has been addressed in the prior ruling, and Debtor has not brought any new legally supported contentions against the present Defendant, Deutsche Bank National Trust Company.

Deutsche Bank National Trust Company Does Not Hold Any Interest In The Loan Obligation.

Plaintiff argues that all the contracts involved including the alleged consummation of Plaintiffs loan and its alleged transfer into the AMLT 2006−2 Trust should be taken together under the step transaction doctrine. Plaintiff argues that the doctrine is met here because the plaintiff signing the note and trust deed as contracts and taking a loan was essential to the end result.

As a result, Plaintiff argues that the step doctrine requires all associated contracts be considered as one. Thus, a separate contract between the Trust and a servicer is only effective because of Plaintiffs execution

ADDENDUM A

of the loan documents. The specific language in the trust contract with the servicer indicates a servicer is obligated to fund advances to the trust for accounts that are delinquent. The Plaintiff argues the Servicers obligation to advance funds against a delinquent account means he cannot be delinquent because his obligation to the trust is being paid by a guarantor.



As requested by the Court, this analysis fails to address how these payments eliminate his obligation. The Plaintiff does not plead that the Servicer is obligated to provide advances for delinquent payees for the entire term of the trust. The court finds it illogical that an advance would be something that would be unrecoverable by the Servicer. Were it unrecoverable, it would not be an advance but instead would simply be a payment of the debt owed by the mortgagor.

Even if the payments were permanent and were to continue until the end of the trust, the Plaintiff has not plead how the principal of subrogation would not apply leaving the Plaintiff obligated to pay the servicer for their pre-payment of his delinquency.

The Plaintiff pleads that Deutsche Bank National Trust Company is required to maintain a detailed accounting on a loan-by-loan basis, but cites language in the Trust document indicating it is the obligation of the Servicer to maintain those documents. Plaintiff has not plead how this contractual obligation of one party is transmuted to the other, regardless of if all of the contracts must be considered terms in one giant contract.

Plaintiff fails to state how this imputes liability onto Defendant Deutsche Bank National Trust Company.

Addressing Issues From Prior Ruling

Distinguishing Cervantes v. Countrywide Home Loans

Lastly, Plaintiff attempts to distinguish Cervantes v. Countrywide Home Loans, Inc. 656 F.3d 1034 (9th Cir. 2011) by arguing that Plaintiff has not named or alleged fraud against MERS, as in Cervantes. Plaintiff asserts that any involvement by MERS is simply void. Plaintiff also states that he denies that MERS has any agency relationship and MERS failed to assign an interest in debt on behalf of the lender Accredited Home Loans, Inc. Plaintiff also asserts the pleadings in Cervantes were grossly insufficient as they failed to object to the use of a nominee coupled with an unsubstantiated agency relationship. Plaintiff then concludes that Defendant has no evidence of the assignment of the deed, together with the note with the required consideration, acceptance and accounting showing a valid transaction.

Basically Plaintiff attempts to distinguish Cervantes by stating that they are not naming or alleging fraud against MERS, but rather Deutsche Bank National Trust Company. This does not address the legal principals and 9th Circuit law stated in Cervantes, including the conclusion that even if MERS were a sham beneficiary, the lenders would still be entitled to repayment of the loans and would be the proper parties to initiate foreclosure after the plaintiffs defaulted on their loans. Cervantes at 1044.

Macklin's argument would essentially eviscerate the Commercial Code and the concept of negotiable instruments. Division 3 of the California Commercial Code establishes a comprehensive body of law addressing instruments and negotiable instruments (such as a promissory Note), the negotiation of such instruments, and the rights of persons acquiring instruments. Division 3 is substantially the same as Article 3 of the Commercial Codes enacted in other states. By his argument, Macklin attempts to rewrite commercial law, Division 3 of the Commercial Code, and alter the Note he executed and delivered to obtain the loan monies he desired. The fact that the Note is purchased by entities which sell securities does not alter the Note. Thus, Macklin's contention does not have merit.

Unaddressed Issues

In denying any automatic right to file a second amended complaint, the court addressed the pleading deficiencies and outlined the process for Plaintiff to file a motion for leave to file a second amended complaint. Those issues were listed above. The Plaintiffs motion has not adequately addressed:

a. Established California law that the deed of trust always follows the note;

b. California Commercial Code provisions governing the negotiation, enforceability, and enforcement of notes;

c. That forfeiture of property rights is not favored;

Memorandum Opinion and Decision, pg. 47:13-28,48, 49:1-5.

ADDENDUM A

The Plaintiff has argued extensively about defects in the deed of trust, but has failed to address established California law that the deed of trust follows the note. The sole mention is that a nominee cannot assign a note, but does not address the issue related to rights granted to MERS by virtue of the deed of trust.

No discussion was presented regarding the California Commercial Code and its applicability to the facts. No discussion about the disfavor of forfeiture of property rights under California law.


CONCLUSION

Furthermore, the plaintiff has not addressed the minimum requirements for granting leave in its ruling on February 16, 2012.

First, the Plaintiff consciously and with the assistance of at least two attorneys elected not to file a motion for leave to file a second amended complaint for 20 months. At the close of discovery, the Plaintiff, with his fourth and newly hired attorney, comes in to file a second amended complaint to assert retreaded claims which were earlier dismissed. The Plaintiff offers no credible or good faith reasons why these known claims, to the extent that actually exist, were not acted on earlier. This is a situation where the Plaintiff has engaged in undue delay, bad faith in failing for 20 months to assert the claims and waiting to do so until the close of discovery, failure to cure the deficiencies with the FAC or take advantage of seeking leave from the court to file a second amended complaint, and will cause undue prejudice on the Defendant by either prosecuting new claims after discovery has closed or unreasonably protract the case by forcing the court to reopen discovery.

Second, Plaintiff ignored the courts direction that each cause of action not incorporate all of the prior paragraphs of the complaint by reference so that the court and other parties would be able to clearly understand the short and plain statement of the claim showing that the pleader is entitled to relief. This pleading style adopted by the Plaintiff results in an abusive pleading which creates unnecessary and unreasonable burden on the court and Defendant to determine what allegations actually relate to a cause of action and which are merely swept up in a I dont know what applies but Ill just say everything pleading strategy. The court specifically stated that the complaint should clearly state the relevant alleged grounds upon which each cause of action is based as required by the Federal Rules of Civil Procedure and the Federal Rules of Bankruptcy Procedure. The Proposed Second Amended Complaint fails to do this.

Third, as discussed above, Plaintiff has merely re−alleged causes of actions from his FAC, which the court had previously dismissed as having no merit. The court warned Plaintiff that the complaint amendment process is not one in which repeated, unsupported contentions are made with impunity. Plaintiff further failed to properly distinguish Cervantes, as required by the court. Simply stating that MERS is not a proper party to the present action does not distinguish the legal principals and allow this court to ignore current 9th circuit law.

Lastly, Plaintiff has failed to explain to the court how payments made by insurance companies, loan servicers, or others pursuant to a separate agreement not including Macklin provide for the payment of Macklins obligations under the Note and why the principles of subrogation do not apply.

As Plaintiff has not timely brought this motion, failed to address the minimum requirements stated by this court, and attempted to raise issues already determined by this court to be without merit, the Motion for Leave to Amend Complaint is denied.


ADDENDUM  A

# Instructions to Clerk of Court
### Service List - Not Part of Order/Judgment

**The Clerk of Court is instructed to** send the Order/Judgment or other court generated document transmitted herewith *to the parties below*.  The Clerk of Court will send the Order via the BNC or, if checked _____, via the U.S. mail.

        **Debtor(s)**, **Attorney for the Debtor(s)**, **Bankruptcy Trustee** (if appointed in the case), **and __XX____** Other Persons Specified Below:

Office of the U.S. Trustee
Robert T. Matsui United States Courthouse
501 I Street, Room 7-500
Sacramento, CA 95814

Gregory J. Hughes
3017 Douglas Blvd., #300
Roseville, CA 95661

Thomas A. Aceituno
Chapter 7 Trustee
2795 E. Bidwell Street, Ste. 100 #321
Folsom, CA 95630

James L. Macklin
P.O. Box 789
Crystal Bay, NV 89402

Charles T. Marshall
415 Laurel Street, #405
San Diego, CA 92101

Robert A. Bleicher
216 Park Road
P.O. Box 513
Burlingame, CA 94001

John C. Crawford
216 Park Road
P.O. Box 513
Burlingame, CA 94001